UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware corporation<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Vassilios Kukorinis ("Plaintiff") brings this complaint on behalf of himself and all others similarly situated. All allegations in this Complaint are based upon Plaintiff's experiences, investigation of counsel, and information and belief. Plaintiff hereby alleges the following in support of this Class Action Complaint:

## NATURE OF THE ACTION

1. This action seeks to address and remedy the unfair, deceptive and unconscionable business practices Defendant Walmart, Inc. ("Walmart," or "Defendant"), has engaged in with respect to systematic overcharging for beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing and sold accordingly thereto (the "Weighted Goods").

2. Specifically, from February 13, 2015, to the present (the "Class Period"), Walmart advertised false unit prices for Weighted Goods placed on sale close to their respective expiration dates. Walmart advertised those Weighted Goods at specific unit sale prices, but upon closer inspection, the final sale prices did not coincide with the unit sale prices based on the weight of the products as represented on the original labels (the "Pricing Practice"). As a result, Walmart consumers did not receive the promised value for the Weighted Goods they purchased.

1

3. For example, on November 18, 2018, Walmart sold a package of chicken tenders that weighed 1.18 pounds, at a unit price of $5.78 per pound, that originally retailed for $6.82. Walmart provided this information on the original label of the chicken tenders. As the product's expiration date approached, Walmart reduced the unit sale price to $3.77 per pound, which should have resulted in a reduced sale price of $4.45. Instead, the sale price was $5.93, which Walmart charged upon checkout. As a result, Walmart obtained $1.48 (i.e., the difference between $5.93 and $4.45) more than what was justified by the unit sale price. Based upon the unit sale price, a reasonable consumer would have expected to receive 1.57 pounds of chicken tenders, but instead only received 1.18 pounds. *See* **Exhibit 1**.

4. In another example, on November 18, 2018, Walmart sold a package of chicken wings that weighed 1.36 pounds, at a unit price of $3.87 per pound, that originally retailed for $5.26. Walmart provided this information on the original label of the chicken wings. As the product's expiration date approached, Walmart reduced the unit price to $1.67 per pound, which should have resulted in a reduced sale price of $2.27. Instead, the sale price was $3.52 which Walmart charged upon checkout. As a result, Walmart obtained $1.25 (i.e., the difference between $3.52 and $2.27) more than what was justified by the unit sale price. Based upon the unit sale price, a reasonable consumer, would have expected to receive 2.1 pounds of chicken wings, but instead only received 1.36 pounds. *See* **Exhibit 2**.

5. Consumers are provided with an item's unit price in addition to its overall price as a tool to help them make informed purchasing decisions.[1] Walmart's sale labels and pricing

---

[1] *See, e.g.*, *Unit Prices can Help You Save on Groceries*, Consumer Reports (Aug. 14, 2013) *available at*: https://www.consumerreports.org/cro/news/2013/08/save-on-groceries-with-unit-prices/index.htm (explaining that when shopping for groceries, stores will charge different prices for different sizes, and encouraging consumers to instead shop based on unit pricing).

2

practices were deceptive, unfair, and unconscionable, depriving consumers of the promised value of the Weighted Goods they purchased.

6. Plaintiff brings this action against Walmart alleging damages sustained as a direct and proximate result of Walmart's deceptive, unfair, and unconscionable Pricing Practice in violation of Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes Sections 501.201, *et seq.*, and for unjust enrichment under Florida common law.

7. Plaintiff brings this action on behalf of a class of persons who purchased Weighted Goods from Walmart stores located in Florida, and seeks, *inter alia*, actual damages, refunds, injunctive relief, attorneys' fees, and the costs of this litigation.

## PARTIES

### A. Plaintiff

8. Mr. Kukorinis is currently a resident of Hillsborough County, Florida; however, during the Class Period, Mr. Kukorinis purchased the Weighted Goods in this District, including in Miami, Florida, which Walmart purportedly offered on sale with reduced unit sale prices that did not accurately correspond to the final sales prices, and thereby deceived Mr. Kukorinis into thinking he was getting more value for the Weighted Goods than he actually received.

9. Mr. Kukorinis shops in part based on unit pricing, and considers this a material element in making shopping decisions.

10. Prior to purchasing reduced unit priced items, Mr. Kukorinis read and relied upon false and misleading statements that were prepared and approved by Walmart and its agents and disseminated through bright yellow labels placed directly on the sale items. For each purchase, he understood that he was paying a specific unit price for the item and that such pricing was being offered by Walmart for a limited time due to the imminent expiration date of the item.

11.  By incrementally marking up the "sales" price, Plaintiff and Class members did not receive the promised value for which they bargained, and were damaged as a result.

12.  Upon information and belief, Walmart continues to employ these deceptive, unfair, and unconscionable Pricing Practices from which it has reaped millions of dollars in unlawful gains.

**B.  Defendant**

13.  Walmart is a multi-national corporation that operates chains of retail and grocery stores. Walmart is headquartered in Little Rock, Arkansas, and distributes, markets, advertises, and sells food "on sale" in Florida and throughout the United States.

## JURISDICTION

14.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.  Venue is proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

### A. Walmart's Grocery Business Model

16. Walmart's business model focuses on "delight[ing] customers in ways they might not have even thought of yet…provid[ing] an easy, fast, friendly and fun shopping experience for them…."[2] Walmart boasts that it is "making shopping at Walmart faster and easier,"[3] and has "nearly 2,100 grocery pickup locations" since November 15, 2018.[4]

17. Walmart represents that it does business in three strategic merchandise units: 1) grocery; 2) health and wellness; and 3) general merchandise, which includes entertainment, hardlines, apparel, and home/seasonal items.[5] According to Walmart's 2018 annual report, grocery sales comprised 56% of its strategic merchandise units for the last three (3) years (i.e., 2018, 2017, and 2016).[6]

18. Walmart highlighted its grocery growth prowess as one of three categories of business with strong growth:

> "On a two-year stack basis, the grocery comp was the best in nearly nine years. Strength was broad-based, but particularly strong in fresh food. Overall, our pricing strategy, omni offer and improved private brands are resonating with customers."[7]

19. For its fiscal years, Walmart reported: $500.343 billion in revenues from February 1, 2017 to January 31, 2018; $485.873 billion in revenues from February 1, 2016 to January 31,

---

[2] Walmart 2018 Annual Report, Walmart, Inc. (March 30, 2018), *available at*: https://s2.q4cdn.com/056532643/files/doc_financials/2018/annual/WMT-2018_Annual-Report.pdf (the "2018 Annual Report").
[3] Walmart U.S. Q3 Earnings Press Release, Walmart, Inc. (Nov. 15, 2018), *available at* https://s2.q4cdn.com/056532643/files/doc_financials/2019/Q3/Q3FY19-Earnings-Release-Final.pdf (the "Third Quarter Press Release").
[4] Walmart Management Commentary, Walmart, Inc. (Nov. 15, 2018), *available at* https://s2.q4cdn.com/056532643/files/doc_financials/2019/Q3/Q3FY19-Combined-Script-Final.pdf (the "Third Quarter Management Commentary").
[5] 2018 Annual Report, at 1.
[6] 2018 Annual Report, at 9.
[7] Walmart Q3 Earnings Presentation, Walmart, Inc. (Nov. 15, 2018), *available at*: https://s2.q4cdn.com/056532643/files/doc_financials/2019/Q3/Q3FY19-Earnings-Presentation-Final.pdf (the "Third Quarter Earnings Presentation").

2017; $482.130 billion in revenues from February 1, 2015 to January 31, 2016; and $485.651 billion in revenues from February 1, 2014 to January 31, 2015.[8]

20. Based on the foregoing, the majority of Walmart's revenue originates from Walmart's grocery sales, totaling well in excess of one trillion dollars over the past four years.

**B. Walmart's Grocery Sales Pricing Scheme**

21. The majority of Walmart's revenue is derived from grocery sales.

22. Walmart employs a sophisticated inventory and pricing system, which, among other things, catalogues items, tracks the date they were made available for sale, how long they have been on store shelves, and when the items will become unsaleable (the "Pricing System").

23. The Weighted Goods Walmart sells are tracked with the Pricing System. As the Weighted Goods approach their expiration dates,[9] Walmart's Pricing System reduces the price of those Weighted Goods and produces a new, bright yellow sales label which is affixed to the product. Although the original label represents the net weight, unit price, and total price, the sales label represents only the unit price, total price, and amount saved.

24. For example, on November 18, 2018, Walmart sold a package of chicken drumsticks that weighed 1.74 pounds, at a unit price of $2.68 per pound, that originally retailed for $4.66. Walmart provided this information on the original label of the chicken drumsticks. As the expiration date approached, Walmart reduced the unit price of drumstick to $1.27 per pound, which should have resulted in a sale price of $2.21. Instead, the sale price was $3.54. This resulted in Walmart obtaining $1.33 (i.e., the difference between $3.54 and $2.21) more than justified given the unit sale price. Based upon the unit sale price, a reasonable consumer would

---

[8] 2018 Annual Report, at 33.
[9] Typically, the sales label is printed one or two days before the "sell by" or "freeze by" date on the Weighted Goods.

have expected to receive 2.79 pounds of chicken drumsticks, but instead only received 1.74 pounds. *See* **Exhibit 3**.

25. Walmart's deceptive Pricing Practices affected a broad range of Weighted Goods. For example, the original label on a package of wild caught grouper stated that the fish weighed 0.70 pounds, at a unit price of $17.94 per pound, that retailed for $12.56. As the product's expiration date approached, Walmart reduced the unit price of the grouper to $15.70 per pound which should have resulted in a sale price of $10.99. Instead, the sale price was $11.18. As a result, Walmart obtained 19¢ (i.e., the difference between $11.18 and $10.99) more than justified by the unit sale price. Based upon the unit sale price, a reasonable consumer would have expected to receive 0.71 pounds of grouper, but instead only received 0.70 pounds. *See* **Exhibit 4** (November 18, 2018).

26. In another example, the original label on a package of wild caught grouper stated that the fish weighed 0.72 pounds, at a unit price of $17.94 per pound, that retailed for $12.92. As its expiration date approached, Walmart reduced the unit price of the grouper to $15.70 per pound, which should have resulted in a sale price of $11.34. Instead, the sale price was $11.50. As a result, Walmart obtained 16¢ (i.e., the difference between $11.50 and $11.34) more than justified by the unit sale price. Based upon the unit sale price, a reasonable consumer would have expected to receive 0.73 pounds of grouper, but instead only received 0.72 pounds. *See* **Exhibit 5 (**November 18, 2018).

27. In yet another example, wild caught grouper that weighed 0.74 pounds, at the same unit price of $17.94 per pound, originally retailed for $13.28. Walmart subsequently reduced the price of the grouper to the same unit price of $15.70 per pound, which should have resulted in a sale price of $11.62. Instead, the sale price was $11.82. As a result, Walmart

obtained 20¢ (i.e., the difference between $11.82 and $11.62) more than the justified by the unit sale price. Based upon the unit sale price, a reasonable consumer would have expected to receive 0.75 pounds of grouper, but instead only received 0.74 pounds. *See* **Exhibit 6 (**November 18, 2018).

### C. The Federal Trade Commission Forbids Walmart's Deceptive Pricing Practices

28. The FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

29. When a retailer offers an item for sale, then, the offer must be entirely genuine and truthful, and not contain any deceptive or unfair aspect.

30. Walmart, however, fails to comply with this FTC guideline. Instead, Walmart employs deceptive and unfair practices to deceive customers into paying artificially inflated prices for goods that Walmart places on sale. These goods include all Weighted Goods.

31. These practices are false, deceptive, unfair, and unconscionable because the marketed, advertised, warranted, and represented sales price did not reflect the appropriate weight of the item being purchased. Walmart advertised a reduced unit price, but the final sale prices reflected a lesser weight than that marketed, advertised, warranted, and represented on the label. As a result, consumers did not receive the promised value for the Weighted Goods they purchased during the Class Period.

### D. Walmart Deceived Plaintiff and Class Members with their Pricing System Resulting in Damage to the Plaintiff and Class Members

32. Walmart's labels are designed to, and do, induce consumers, including Plaintiff and Class members, into believing that they were receiving more of the product than they actually received. For example, in **Exhibit 3**, if the advertised unit price of $1.27 per pound was

the actual unit price for the chicken, and the customer paid the actual advertised price of $3.54, the customer should have received 2.79 pounds of chicken, but in fact only received 1.74 pounds of chicken—a difference of over a pound of chicken the customer was not provided.

33. Believing they were purchasing and obtaining more of the product than they actually did, Walmart induced Plaintiff and Class members to purchase less of the product at a higher price. Plaintiff and Class members relied on Walmart's false, deceptive, unfair, and unconscionable marketing, advertising, warranties, and representations to their detriment. Plaintiff and Class members would not have purchased such products or, at the very least, would have demanded the appropriate price upon purchase had they known the prices were false, deceptive, unfair, and unconscionable.

34. Walmart deceitfully capitalizes on consumers' reliance on what consumers believe to be fair and accurate representations of those prices, when in fact Walmart adjusts those prices in a nearly imperceptible fashion resulting in the Weighted Goods being sold at higher and inaccurate prices, and consumers not receiving the promised value for the Weighted Goods they purchased during the Class Period.

## CLASS ALLEGATIONS

35. Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of himself and as a class action on behalf of the following class:

> All persons who purchased Weighted Goods from Walmart in Florida from February 13, 2015 to present, whose Weighted Goods' unit sale price was not accurately reflected in the final sale price.

36. Excluded from the Class are Defendant and any entities in which any Defendant or its subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and

employees. Also excluded from the Class are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family.

37. **Numerosity:** The members of each Class are so numerous that joinder of all members of any Class would be impracticable. Plaintiff reasonably believes that Class members number hundreds of thousands of people or more in the aggregate and well over 1,000 in the smallest of the classes. The names and addresses of Class members are identifiable through documents maintained by Defendant.

38. **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

    a.    Whether Walmart violated Fla. Stat. § 501.201, *et seq*.;

    b.    Whether Walmart has unjustly enriched itself by deceptively overcharging customers for the Weighted Goods;

    c.    Whether Plaintiff and Class members sustained actual damages; and

    d.    Whether Walmart should be enjoined from continuing to overcharge customers for the Weighted Goods.

39. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

40. **Typicality:** Plaintiff's claims are typical of the claims of the other members of their respective classes because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct by Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are

no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

41.     **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

42.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

43.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

44. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Florida Statute Section 501.201, *et seq.*

45. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 44.

46. The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, ("FDUTPA") is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

47. Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203(7).

48. The subject transaction for Weighted Goods is "trade or commerce" as defined by Fla. Stat. § 501.203(8).

49. FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, and in unfair methods of competition.

50. For the reasons discussed herein, Defendant violated FDUPTA by engaging in the Pricing Practices described herein and proscribed by Florida Statute § 501.201, *et seq.* Defendant's unconscionable, deceptive, and unfair acts and practices described herein were likely to, and did in fact, deceive members of the public, including consumers (like Plaintiff and Class members) acting reasonably under the circumstances and to their detriment.

51. In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices acts by charging more for the Weighted Goods than the sales unit price conveyed, without providing the proper amount of Weighted Goods.

52. Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant advertised, marketed, and sold the Weighted Goods at one value but charged consumers a higher value at checkout, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to consumers.

53. Defendant's conduct is unconscionable, deceptive and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances.

54. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been harmed, in that they were wrongfully deprived of the proper value of Weighted Goods based on the sales unit price advertised on the labels.

55. Plaintiff reserves the right to allege other violations of FDUPTA as discovery unfolds and as Defendant's conduct is ongoing.

56. As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff has been damaged and is entitled to recover actual damages, to the extent permitted by law, including § 501.211, Florida Statutes, in an amount to be proven at trial. In addition, pursuant to § 501.211, Florida Statutes, Plaintiff seeks equitable relief and to enjoin Defendant on terms the Court considers reasonable. Plaintiff also seeks reasonable attorneys' fees and costs, as prescribed by §§ 501.211(2) Florida Statutes.

## COUNT II
## Unjust Enrichment

57. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 44.

58. Plaintiff and Class Members conferred a monetary benefit on Defendant by purchasing the Weighted Goods from Defendant. In exchange, Plaintiff and Class Members should have received from Defendant the proper amount of Weighted Goods at the value Defendant represented with the unit sale price. For example, in **Exhibit 3**, the customer should have received 2.79 pounds of chicken, but in fact only received 1.74 pounds of chicken—a difference of over a pound of chicken.

59. Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted or retained that benefit. Through its Pricing Practice, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged.

60. By and through the implementation of the Pricing Practice, Defendant has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

61. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to provide the proper amount of Weighted Goods at the value Defendant represented with the unit sale price, and Defendant has not provided compensation to Plaintiff and Class members.

62. Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Defendant's inequitable conduct.

63. If Plaintiff and Class members knew that Defendant was not properly representing the amount and value of Weighted Goods Plaintiff and Class members would receive, they would not have purchased the Weighted Goods from Defendant.

64. Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in his and the Class members' favor and against Defendant as follows:

a. For an Order certifying the proposed Class, and appointing Plaintiff and his Counsel to represent the Class;

b. For an Order that Defendant is permanently enjoined from its improper conduct and practices as alleged;

c. A judgment awarding Plaintiff and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained as a result of its unfair, deceptive, and unconscionable business practices and conduct (i.e., the Pricing Practices);

d. For an award of actual damages and compensatory damages, in an amount to be determined at trial;

e. For an award of costs of suit and attorney's fees, as allowable by law; and

f. Such other and further relief as this Court may deem just and proper.

Dated: February 13, 2019                Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

/s/ John A. Yanchunis
John A. Yanchunis (Bar No. 324681)
jyanchunis@forthepeople.com
Ryan McGee (Bar No. 64957) (*attorney admission pending*)
rmcgee@forthepeople.com
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434