# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

VASSILIOS KUKORINIS, on behalf of
himself and those similarly situated,

        Plaintiff,

  v.

WALMART, INC., a Delaware corporation

        Defendant.

Case No.:
1:19-CV-20592-MARTINEZ/OTAZO-REYES

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION AMENDED COMPLAINT

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

*/s/ John A. Yanchunis*
John A. Yanchunis (Bar No. 324681)
Ryan McGee (Bar No. 64957)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Dated: May 31, 2019

*Attorneys for Plaintiff and the Proposed Class*

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

FACTUAL BACKGROUND .....................................................................................................1

    A.  Walmart's Grocery Business Model ............................................................1
    B.  Walmart's Grocery Sales Pricing Scheme.................................................2
    C.  The FTC Forbids Walmart's Deceptive Pricing Practices ........................3
    D.  Walmart Deceived Plaintiff and Class Members with its
        Pricing System Resulting in Damage to the Plaintiff and Class Members .................3

LEGAL STANDARD................................................................................................................5

ARGUMENT.............................................................................................................................5

    I.  Defendant has not Challenged Plaintiff's Allegations insofar as Defendant's
        Practices are Unfair and Unconscionable, Therefore this Matter should
        Proceed Regardless of the Court's Ruling Regarding Deceptive Practices .................5

    II.  Plaintiff's Claims Comply with the Pleading Requirements of the
        Federal Rules of Civil Procedure ........................................................................6

        A.  Plaintiff's Amended Complaint Sufficiently Specifies
            Defendant's Deceptive Practices (FDUTPA)....................................6
        B.  Plaintiff's Amended Complaint Adequately Alleges
            How Defendant Misled Plaintiff and Consumers .............................9

    III.  Plaintiff has Standing to Pursue this Litigation.............................................10

    IV.  Plaintiff's Amended Complaint Sufficiently Alleges a FDUTPA Claim...................12

        A.  Plaintiff's FDUTPA Claim Survives Dismissal................................12
        B.  Plaintiff's Amended Complaint Alleges Actual Damages ..............14

    V.  Plaintiff's Amended Complaint Sufficiently States a Claim for Unjust Enrichment ..15

        A.  At the Dismissal Stage, Plaintiff's FDUTPA and Unjust
            Enrichment Claims may Share a Factual Predicate.........................15
        B.  Plaintiff's Unjust Enrichment Claim Survives Dismissal...............17

    VI.  Conclusion.......................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel, Ltd., et al.*,
  No. 10-22153-CIV, 2011 WL 4434891(S.D. Fla. Sept. 23, 2011) .................................7, 8, 16

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997) ..................7

*Charouhis v. Am. Auto. Ins. Co.*, No. 11-24547,
  2012 WL 13014693 (S.D. Fla. June 18, 2012) ........................................................................16

*Coleman v. CubeSmart*, 328 F. Supp. 3d 1349 (S.D. Fla. 2018) .............................................11, 16

*Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819 (Fla. 4th DCA 2010) ............................12, 13

*Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011).............................................10

*Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297 (S.D. Fla. 2011) .............................10

*Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) .......6

*Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV-Martinez-Otazo-Reyes,
  2019 WL 1468555 (S.D. Fla. Feb. 25, 2019) .........................................................................14

*James v. Yamaha Motor Corp.*, No. 15-23750, 2016 WL 3083378 (S.D. Fla. May 31, 2016) .....16

*Mac-Gray Serv., Inc. v. DeGeorge*, 913 So. 2d 630 (Fla. 4th DCA 2005)...................................13

*Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014) ................................7

*SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178 (S.D. Fla. 2013) ................................6

*Solution Z v. Alma Lasers, Inc.*, No. 11-21396-CIV,
  2012 WL 13012765 (S.D. Fla. Jan. 25, 2012) ......................................................................7, 8

*Southern Pan Servs. Co. v. S.B. Ballard Const. Co.*, No. 3:07-cv-592-J-33TEM,
  2008 WL 3200236 (M.D. Fla. Aug. 6, 2008) .........................................................................16

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ............................................................................11

*U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027 (S.D. Fla. 2007) ................10

*U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217 (11th Cir. 2012) ................8

## <u>TABLE OF AUTHORITIES</u>
### <u>(continued)</u>

**Cases (continued)**

*Vital Pharm., Inc. v. Balboa Capital Corp.*, No. 14-cv-62469,
   2016 WL 4479370 (S.D. Fla. Aug. 25, 2016).................................................................12, 13

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006) ...................................10

*Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017)..........................16–18

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001) ......................................................7

**Statutes**

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*................*passim*

16 C.F.R. § 233.5 ............................................................................................................................3

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................................7

Fed. R. Civ. P. 9 .......................................................................................................................6–8, 10

Fed. R. Civ. P. 12(b)(1)..................................................................................................................10

Fed. R. Civ. P. 12(b)(6)....................................................................................................................5

**Pleadings**

Amended Complaint ..............................................................................................................*passim*

Defendant's Motion to Dismiss .............................................................................................*passim*

Plaintiff, Vassilios Kukorinis ("Plaintiff"), files this Response in Opposition to Defendant's, Walmart, Inc. ("Defendant" or "Walmart"), Motion to Dismiss Plaintiff's Class Action Amended Complaint (the "Motion") (Doc. No. 24), and states the following:

## INTRODUCTION

The labels Defendant attaches to beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing (the "Weighted Goods") and sold to consumers at its retail stores unquestionably demonstrate that Defendant represents one unit price, but charges an undisclosed, different unit price at the point of sale in a deceptive, unfair, and unconscionable manner. This practice is real, rampant, and widespread in Defendant's retail outlets throughout the state of Florida. Defendant ignores the standard for dismissal because it cannot escape having been caught mislabeling and systematically overcharging for the Weighted Goods in numerous Florida cities. Faced with this indisputable evidence, Defendant implores this Court to summarily resolve clear factual issues in an attempt to undermine the well-plead allegations in the Amended Complaint. Defendant would, instead, have the Court speculate what shoppers rely on to make purchases, rather than accepting Plaintiff's clear articulation that he uses unit prices as a comparison mechanism when he shops for Weighted Goods. The Court should deny Defendant's Motion, consistent with its past rulings in similar cases, which are discussed herein.

## FACTUAL BACKGROUND

### A. Walmart's Grocery Business Model

Walmart's business model focuses on "delight[ing] customers in ways they might not have even thought of yet…provid[ing] an easy, fast, friendly and fun shopping experience for them.…" Walmart boasts that it is "making shopping at Walmart faster and easier," and has "nearly 2,100 grocery pickup locations" since November 15, 2018. Amended Complaint, (Doc.

No. 15, ¶ 16) (hereinafter, "AmComp."). According to Walmart, grocery sales comprised 56% of its strategic merchandise units for the last three (3) years (i.e., 2018, 2017, and 2016). AmComp., ¶ 17. Walmart represented that its grocery business "was the best in nearly nine years. Strength was broad-based, but particularly strong in fresh food. Overall, our pricing strategy, omni offer and improved private brands are resonating with customers," and from February 1, 2014, to February 1, 2017, Walmart reported $1.468 trillion dollars in revenue, with the majority of Walmart's revenue originating from Walmart's grocery sales. AmComp., ¶¶ 18–20.

### B. Walmart's Grocery Sales Pricing Scheme

Walmart employs a sophisticated inventory and pricing system, specifically cataloguing items, tracking the date the items were made available for sale, how long they have been on store shelves, and when the items will become unsaleable (the "Pricing System"). AmComp., ¶ 22. The Pricing System tracks Walmart's Weighted Goods, and as they approach expiration dates, the price is reduced with new, bright yellow labels affixed to the Weighted Goods. Although the original label represents the net weight, unit price, and total price, the sales label represents only the unit price, total price, and amount saved. AmComp., ¶ 23. For example, a package of chicken drumsticks weighing 1.74 pounds, with a unit price of $2.68 per pound, originally retailed for $4.66. This information remained on the original label, but as the expiration date approached, the unit price was reduced to $1.27 per pound; 1.74 pounds of chicken at $1.27 per pound should have been $2.21, but was priced at $3.54. This resulted in Walmart obtaining $1.33 (the difference between $3.54 and $2.21) more than justified given the unit sale price. AmComp., ¶ 24, (Doc. No. 1-3). Additional examples demonstrate this practice is neither unique nor limited to one store, AmComp., ¶¶ 3, 4, 25–27, 33–35 (Doc. Nos. 1-1, 1-2, 1-4, 1-5, 1-6), with examples

2

spanning the Southern and Middle Districts of Florida—at stores in Citrus Park, Davie, Delray Beach, Dunedin, Greenacres, Lake Worth, Orlando, and Tampa. AmComp., ¶¶ 36(a)–(l).

### C. The Federal Trade Commission Forbids Walmart's Deceptive Pricing Practices

The FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful." 16 C.F.R. § 233.5; AmComp., ¶ 28. When a retailer offers an item for sale, the offer must be entirely genuine and truthful, and not contain any deceptive or unfair aspect. AmComp., ¶ 29. Instead of complying with the FTC's mandate, Walmart employs deceptive, unfair, and unconscionable practices to deceive customers into paying artificially inflated prices for goods, including Weighted Goods placed on sale. AmComp., ¶ 30. These practices are deceptive, unfair, and unconscionable because the marketed, warranted, and represented sales price contained disingenuous and untruthful representations: Walmart represented a reduced unit price, but the final sale prices reflected a lesser weight than that marketed, warranted, and represented on the label. As a result, consumers did not receive the promised value for the Weighted Goods they purchased during the Class Period. AmComp., ¶ 31.

### D. Walmart Deceived Plaintiff and Class Members with its Pricing System Resulting in Damage to the Plaintiff and Class Members

Walmart's labels are designed to mislead and induce consumers, including Plaintiff, into believing that they were receiving more of the product than they actually received. AmComp., ¶ 32. Specifically, on April 19, 2018, Plaintiff purchased a premium spiral ham at Walmart's storefront located at 12700 South Military Trail, Delray Beach, Florida 33436, where Walmart's original label on the ham stated a weight of 11.61 pounds, and a unit price of $2.18 per pound, for a retail price of $25.31. AmComp., ¶ 33. As its expiration date approached, Walmart reduced the unit price to $0.64 per pound; 11.61 pounds of ham at $0.64 per pound should have cost

$7.43, but was priced at $16.45. AmComp., ¶ 33. This resulted in Walmart obtaining $9.02 (the difference between $16.45 and $7.43) more than justified given unit sale price. AmComp., ¶ 33. Also, on April 26, 2018, Plaintiff purchased a spiral ham at Walmart's storefront located at 11250 East Colonial Drive, Orlando, Florida 32817, where Walmart's original label on the ham stated a weight of 9.13 pounds, and a unit price of $1.58 per pound, for a retail price of $14.43. AmComp., ¶ 35. As its expiration date approached, Walmart reduced the unit price to $0.69 per pound; 9.13 pounds of ham at $0.69 per pound should have cost $6.30, but was priced at $10.10. AmComp., ¶ 35. This resulted in Walmart obtaining $3.80 (the difference between $10.10 and $6.30) more than justified by the unit sale price. Moreover, on January 4, 2018, Plaintiff purchased a pork loin at Walmart's storefront located at 4301 S. University Drive, Davie, Florida 33328, where Walmart's original label on the pork loin stated a weight of 1.77 pounds, and a unit price of $3.54 per pound, for a retail price of $6.27. AmComp., ¶ 34. As its "use or freeze by" date of January 5 approached, Walmart reduced the unit price to $2.28 per pound; 1.77 pounds of pork loin at $2.28 per pound should have cost $4.03, but was priced at $4.05. AmComp., ¶ 34. This resulted in Walmart obtaining 2¢ (the difference between $4.05 and $4.03) more than justified by the unit sale price. AmComp., ¶ 34.

Walmart engaged in deceptive, unfair, and unconscionable conduct to induce and mislead Plaintiff and Class members to purchase less of the product at a higher price and to their detriment. Plaintiff and Class members would not have purchased such products or, at the very least, would have demanded the appropriate price upon purchase had they known the prices were deceptive, unfair, and unconscionable. AmComp., ¶ 37. Walmart deceitfully capitalized on what consumers believed to be fair and accurate representations of those prices, when in fact Walmart adjusted those prices in a nearly imperceptible fashion, resulting in the Weighted Goods selling

at higher and inaccurate prices, and consumers not receiving the represented value for the Weighted Goods they purchased during the Class Period. AmComp., ¶ 38.

## LEGAL STANDARD

Pursuant to Defendant's request for dismissal under Rule 12(b)(6), the Court must accept "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *see also Carmichael v. Kellogg, Brown, and Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claims advanced in the complaint. *Twombly*, 550 U.S. at 545.

## ARGUMENT

I.   **Defendant has not Challenged Plaintiff's Allegations insofar as Defendant's Practices are Unfair and Unconscionable, Therefore this Matter should Proceed Regardless of the Court's Ruling Regarding Deceptive Practices**

In its Motion, Defendant only addresses the deceptive element of Plaintiff's claim of deception, but does not challenge the unfair and unconscionable nature of Defendant's Pricing Practices. Accordingly, even if the Court were to conclude that the Amended Complaint's allegations do not support a deceptive act under FDUTPA, the Amended Complaint cannot be

dismissed—Defendant has not challenged and has therefore waived any argument that Count I does not advance claims that Defendant's conduct is unfair and unconscionable.

A practice can be unfair even if it is found not to be deceptive. *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 (1972) (holding that unfairness is broader than deception). In Florida, a deceptive act or practice is one that is likely to mislead consumers, *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000), while an unfair practice is one that offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001). Unconscionable acts are not clearly defined under FDUTPA, but courts have found the term should be liberally construed to effectuate the purpose of FDUTPA and similar state consumer protection statutes. *See, e.g.*, *Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529 (N.J. Super. Ct. App. Div. 2001). Although Defendant would have this Court dismiss this case at the pleadings stage, whether Defendant's conduct is unfair, deceptive, or unconscionable under FDUTPA is a question of fact for a jury to decide. *Nature's Products, Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013).

## II.    Plaintiff's Claims Comply with the Pleading Requirements of the Federal Rules of Civil Procedure

### A.    Plaintiff's Amended Complaint Sufficiently Specifies Defendant's Deceptive Practice (FUDTPA)

Rule 9 does not apply to all FDUTPA claims. *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014); *see SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013) (holding that FDUTPA claims based on FTC regulatory violations "need not be pled with particularity"). Here, Plaintiff has alleged Defendant violated FTC provisions and engaged in unfair, deceptive, and unconscionable acts, but has not

brought a cause of action for fraud. However, should the Court find that Rule 9 does apply to Plaintiff's Amended Complaint, Rule 9(b)'s requirement that plaintiffs plead their allegations with particularity serves to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted). "Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1239 (S.D. Fla. 2014) ("[T]his Court is persuaded that Rule 9(b) does not apply to FDUTPA claims.").

To the extent that the Court believes such a requirement exists for a plaintiff advancing a FUDTPA claim predicated on deceptive acts or conduct, Plaintiff has met the heightened requirements of Rule 9(b). Under both Rules 8 and 9(b), Plaintiff sufficiently pleads a factual predicate for his claims, including with specificity the "who, what, when, where, and how" for Defendant's deceptive, unfair, and unconscionable practices. Defendant relies on three cases to argue Plaintiff failed to meet his burden; however, Defendant's reliance is misplaced and those cases are distinguishable. In *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel, Ltd., et al.*, this Court dismissed a multi-defendant complaint for failure to sufficiently specify which defendant performed what acts and when. No. 10-22153-CIV, 2011 WL 4434891, at *7 (S.D. Fla. Sept. 23, 2011) (Martinez, J.). Similarly, in *Solution Z v. Alma Lasers, Inc.*, the court dismissed the complaint for summarily rehashing the elements of the causes of action and failing to sufficiently specify any details in support thereof. No. 11-21396-CIV, 2012 WL 13012765, at **3–5 (S.D. Fla. Jan. 25, 2012) (Lernard, J.). Finally, even if this case was predicated on fraud, and it is not,

in *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, the Eleventh Circuit reasoned that in reviewing a complaint under the False Claims Act, "the pleading standards [under Rule 9(b) are satisfied if alleging precisely what statements were made, in what documents, when, where and by whom, the content, the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud." 671 F.3d 1217, 1222 (11th Cir. 2012). While no such heightened standard is imposed here, even if it were, Plaintiff has met the standard in *U.S. ex rel. Matheny*. The decisions in *Begualg* and *Solution Z* are inapposite; there is only one defendant.

Even if rule 9(b) applies to a claim under FUDTPA, Plaintiff amply meets the Rule 9(b) requirements: he alleges the obvious actor—Defendant—made specific representations concerning unit price, weight, and final price that do not align under any methodology or calcuation. AmComp., ¶¶ 2, 5, 8–12, 24–27, 31–38, 55–57, 59, 64–69. Plaintiff also satisfactorily alleges when these representations were made: January 4, 2018; April 19, 2018; and April 26, 2018. AmComp., ¶¶ 33–35. Plaintiff further satisfies his burden by demonstrating how Defendant retained extra compensation: Defendant represented one unit price, charged an undisclosed unit price at the point of sale, and has not relinquished the overcharged amounts to Plaintiff and Class members. AmComp., ¶¶ 3, 4, 24–27, 33–35.

While Defendant may seek to cast this case as "isolated errors," and improperly inviting this Court to conduct a trial on the merits in addressing Defendant's motion to dismiss, Motion at 8, Plaintiff has sufficiently pled that he personally purchased products at three separate locations on three separate dates across the state of Florida, AmComp., ¶¶ 33–35, and that an investigation revealed the practice is present in at least twelve locations throughout the entire state of Florida across multiple districts in this state: Davie, Delray Beach, Greenacres, and Lake Worth (Southern District of Florida); and Citrus Park, Dunedin, Orlando, Tampa (Middle District of

Florida). AmComp., ¶¶ 2–4, 24–27, 32–36. Defendant dubiously insists Plaintiff must perform the impossible: to infiltrate and audit Defendant's information technology systems to determine whether the incorrect unit prices result from a faulty labeling machine, computer glitch, or human error. Curiously, despite its suggestion and forgetting the four corner analysis when considering a motion to dismiss, Defendant provides no evidence supporting its proposition that twelve identified Florida stores may have suffered from "isolated" faulty machines, an "isolated" computer glitch, or human error. The Court should dismiss Defendant's argument in whole.

> **B.** **Plaintiff's Amended Complaint Adequately Alleges how Defendant Misled Plaintiff and Class Members**

Plaintiff clearly articulated how he was misled: the unit price charged at the point of sale was wrong, consumers use the unit price as a comparison tool, and consumers did not receive the promised value for the Weighted Goods. AmComp., ¶¶ 2, 5, 8–12, 24–27, 31–38, 55–57, 59, 64–69. Further, Plaintiff articulated the FTC's requirement that price comparisons "should make certain that the bargain offer is genuine and truthful." AmComp., ¶ 28. Read in full and with context, Plaintiff's allegations provide the appropriate level of detail required at the pleadings stage, and Defendant's attempt to subjectively piecemeal the allegations is unavailing. While Defendant may advocate that the "You Pay" and "Save" representations are sufficient, Motion at 10, the law requires the entire label to be correct and free from any misrepresentations— including the unit price. Defendant, however, represents one unit price to consumers, yet charges another, undisclosed unit price at the point of sale, and has done so in numerous examples throughout the state of Florida. AmComp., ¶¶ 2–4, 24–27, 32–36. Although Defendant may *presume* the "You Pay" and "Save" representations are sufficient, Plaintiff alleges the contrary, avers that he and consumers use unit prices to comparison shop, and states the FTC explicitly requires "genuine and truthful" representations under these circumstances. *Id.* And despite

Defendant's argument to the contrary, Plaintiff need not demonstrate reliance to succeed on his FDUTPA claim; instead, Plaintiff must simply allege a reasonable person would have been deceived by Defendant's scheme, which Plaintiff has sufficiently alleged in his Amended Complaint. *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011); *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297 (S.D. Fla. 2011). Simply because Defendant *disagrees* with Plaintiff's point, does not require dismissal of Plaintiff's class action. And "the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of..."). Plaintiff has sufficiently placed Defendant on notice of the "who, what, when, where, and how" required under Rule 9, and this Court should deny Defendant's Motion.

## III.   Plaintiff has Standing to Pursue this Litigation

Defendant—briefly—challenges Plaintiff's standing, claiming Plaintiff has not suffered any "actual injury," because Plaintiff received what he bargained for, the incremental amounts Defendant retained were small, and Plaintiff continued to shop at Walmart. Motion, at 12–13. To accept such an argument would impose a new paradigm in jurisprudence; in other words, a defendant can engage in deceptive, unfair, and unconscionable conduct with impunity if the economic harm is considered small or perhaps, it is small from the perspective of the defendant. That clearly is not and hopefully will never be the law in this State or this Country. To demonstrate standing under Rule 12(b)(1), "a plaintiff must have (1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. An injury in fact is an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1360 (S.D. Fla. 2018) (Martinez, J.) (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (internal marks omitted)). While Defendant, one of the largest retailers in the World, may trivialize Plaintiff's injury, Plaintiff has sufficiently alleged damages in this case: overpayment for the Weighted Goods, with specific examples throughout Defendant's Florida stores, which adequately meets the test for Article III standing. Specifically, Plaintiff overpaid $9.02 for premium spiral ham in Delray Beach, Florida, AmComp., ¶ 33; $3.80 for spiral ham in Orlando, Florida, AmComp., ¶ 35; and $0.02 for pork loin in Davie, Florida, AmComp., ¶ 34. While Defendant may find these sums trivial, Plaintiff has alleged the contrary, and specifically brought his action through the class action device to recover these sums for the people who cannot afford attorney's fees, court costs, and the burden of litigation against a behemoth like Defendant.

Defendant's challenge, however, conflates the legal standard for standing, reading a requirement that Plaintiff cease his purchases or otherwise give up any legal redress. This Court has held, however, that when a defendant challenges a plaintiff's standing, "the court 'must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party.'" *Begaulg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *7 (S.D. Fla. Sept. 23, 2011) (Martinez, J.). That Plaintiff continued to make purchases does not destroy his standing in this case—it demonstrates how Defendant's deceptive, unfair, and unconscionable practices were slight, and how easily Defendant took advantage of consumers until Defendant was caught and called out for its practices.

11

IV.     **Plaintiff's Amended Complaint Sufficiently Alleges a FDUTPA Claim**

     A.     **Plaintiff's FDUTPA Claim Survives Dismissal**

Defendant argues Plaintiff's FDUTPA claim is deficient because the unit prices are contradicted by the sales prices and weights; however, Defendant mischaracterizes the Amended Complaint by assuming the reflected prices were correct, Motion, at 14, when the Amended Complaint contradicts Defendant's assertion—Plaintiff explicitly alleged Walmart overcharges for the Weighted Goods, AmComp., ¶ 1, and as a result, Plaintiff and Class members were not provided the value; i.e., the final price was wrong. AmComp., ¶¶ 2, 5, 8, 11, 31–38. The Court need look no further than Plaintiff's proposed class definition to definitively resolve this issue:

> All persons who purchased Weighted Goods from Walmart in Florida from February 7, 2015 to present, whose Weighted Goods' *unit sale price was not accurately reflected in the final sale price.*

AmComp., ¶ 39 (emphasis added). As Defendant acknowledges, the Court is required to accept all well-pled allegations as true, and resolve any disputes in Plaintiff's favor. Motion, at 5–6.

Defendant's reliance on *Vital Pharm., Inc. v. Balboa Capital Corp.*, No. 14-cv-62469, 2016 WL 4479370, at *7 (S.D. Fla. Aug. 25, 2016), and *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 825 (Fla. 4th DCA 2010), are misplaced, distinguishable, and unavailing.

In *Vital Pharmaceuticals*, the district court resolved the case at summary judgment—not dismissal—and analyzed a complex contract for the lease of goods. 2016 WL 4479370, at *7. There, a dispute arose whether plaintiffs were entitled to purchase leased equipment following expiration of the lease. *Id.* at **1–2. Plaintiffs alleged defendant made pre- and post-lease representations concerning a purchase option, upon which plaintiffs relied, and defendant engaged in bait-and-switch tactics by only offering a lease agreement without a purchase option. *Id.* at *6. The court first determined plaintiffs' reliance on one single paragraph, which did "not

affirmatively afford Plaintiffs a purchase option for the leased equipment," and instead had language contemplating a potential sale if the parties agreed, could not support plaintiffs' theory under FDUTPA. *Id.* at \*7. The court further held plaintiffs' arguments unreasonable because the contract contained "a number of express provisions that clearly indicate that all leased equipment shall remain the property of [Defendant], the lessor." *Id.* at 7. Based on the totality of that analysis, the court found for defendants, holding "any alleged misrepresentations by [defendant] are clearly contradicted by the express terms of the [contract]." *Id.* at 7.

In *Dorestin*, the plaintiffs sued a car dealership for alleged misrepresentations concerning the requirement to purchase extended warranties with their vehicles. 45 So. 3d at 825. The plaintiffs claimed defendant's employees told them the extended warranty was a requirement to purchase the vehicle. *Id.* The court, following a jury trial and verdict for plaintiffs, rejected that argument because the plain language of the warranty contract stated the "purchase of this contract is not a requirement to purchase your vehicle or obtain financing." *Id.* The court further ruled that "[a] FDUTPA claim cannot be stated based upon oral representations which are in contradiction of written terms of a contract, because reliance on such representations is unreasonable as a matter of law." *Id.* (citing *Mac-Gray Serv., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005)).

Here, there is a genuine dispute about whether the unit price was a deceptive, unfair, and unconscionable act that Defendant must now correct and refund the difference to consumers during the four years preceding the filing of this case. Plaintiff has not alleged any analogous behavior under either *Vital Pharmaceuticals* or *Dorestin*: Plaintiff does not allege Walmart's employees stated the prices were one value but he was charged a different price, and Plaintiff does not allege any vagueness promoted Defendant's deceptive, unfair, and unconscionable

13

practices. Instead, Plaintiff uses clear examples where Defendant made absolute misrepresentations, which are prohibited by law. ¶¶ 2, 5, 8–12, 24–27, 31–38, 55–57, 59, 64–69. Therefore, Defendant's Motion should be denied, and Plaintiff should be permitted to pursue his FDUTPA claim through the ordinary course of litigation.

### B. Plaintiff's Amended Complaint Alleges Actual Damages

Defendant next argues Plaintiff's theory of damages—the difference between the sales price and what the consumer should have been charged—does not amount to actual damages. This Court has held the opposite. *See, e.g.*, *Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV-Martinez-Otazo-Reyes, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019) (Martinez, J.) (finding that the difference between what a plaintiff paid and what a plaintiff should have paid satisfies the pleading requirement for actual damages). Here, Plaintiff has clearly alleged actual damages under FDUTPA: the profits Defendant collected via misrepresentations. While Defendant explicitly represented it would charge Plaintiff $0.64 per pound for spiral ham, Defendant instead charged an undisclosed $1.42 per pound, which resulted in a profit of $9.02 (i.e., actual damages to Plaintiff and Class members). AmComp., ¶ 33. These actual damages are further represented in examples throughout the Amended Complaint where Defendant represented it would charge one unit price, but instead charged an undisclosed unit price:

| AmComp. ¶ | Represented Unit Price | Undisclosed Unit Price | Collected Profit |
|---|---|---|---|
| ¶ 3 | $3.77 per pound | $5.03 per pound | $1.48 |
| ¶ 4 | $1.67 per pound | $2.59 per pound | $1.25 |
| ¶ 24 | $1.27 per pound | $2.03 per pound | $1.33 |
| ¶ 25 | $15.70 per pound | $15.97 per pound | $0.19 |
| ¶ 26 | $15.70 per pound | $15.75 per pound | $0.16 |
| ¶ 27 | $15.70 per pound | $15.97 per pound | $0.20 |
| ¶ 33 | $0.64 per pound | $1.42 per pound | $9.02 |
| ¶ 34 | $2.28 per pound | $2.29 per pound | $0.02 |
| ¶ 35 | $0.69 per pound | $1.10 per pound | $3.80 |

*See, e.g.*, AmComp., ¶¶ 3, 4, 24–27, 33–35.

Even taking Defendant's proposed damages model (i.e., the difference in market value) as the only viable damages model (which Plaintiff disputes), Plaintiff's Amended Complaint would still survive because Defendant set the market value when it reduced the unit price for the Weighted Goods but failed to deliver them at that value. For example, the 11.61 pound spiral ham Plaintiff purchased on April 19, 2018, was reduced from $2.18 per pound to $0.64 per pound. AmComp., ¶ 33. It is beyond dispute that Defendant marked the unit price down to $0.64, thus denoting the market value for the ham was $0.64 per pound; however, Defendant sold the spiral ham for $16.45, with a unit price of $1.42 per pound, which is $0.78 per pound over the market value Defendant explicitly represented on the Weighted Goods. AmComp., ¶ 33. Analyzing the specific information Plaintiff provided in the Amended Complaint, it is clear Defendant represented one price, but charged a different price, thus a difference in market value:

| AmComp. ¶ | Represented Unit Price | Undisclosed Unit Price | Difference in Market Value |
|:---:|:---:|:---:|:---:|
| ¶ 3 | $3.77 per pound | $5.03 per pound | $1.26 per pound |
| ¶ 4 | $1.67 per pound | $2.59 per pound | $0.92 per pound |
| ¶ 24 | $1.27 per pound | $2.03 per pound | $0.76 per pound |
| ¶ 25 | $15.70 per pound | $15.97 per pound | $0.27 per pound |
| ¶ 26 | $15.70 per pound | $15.75 per pound | $0.05 per pound |
| ¶ 27 | $15.70 per pound | $15.97 per pound | $0.27 per pound |
| ¶ 33 | $0.64 per pound | $1.42 per pound | $0.78 per pound |
| ¶ 34 | $2.28 per pound | $2.29 per pound | $0.01 per pound |
| ¶ 35 | $0.69 per pound | $1.10 per pound | $0.41 per pound |

*See, e.g.*, AmComp., ¶¶ 3, 4, 24–27, 33–35. Plaintiff has sufficiently alleged actual damages pursuant to FDUTPA at the dismissal stage, and this Court should deny Defendant's Motion.

## V.     Plaintiff's Amended Complaint Sufficiently States a Claim for Unjust Enrichment

### A.     At the Dismissal Stage, Plaintiff's FDUTPA and Unjust Enrichment Claims may Share a Factual Predicate

This Court has specifically rejected Defendant's contention that an unjust enrichment claim must be dismissed at this stage when that equitable remedy shares predicate with a

statutory cause of action. *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1367 (S.D. Fla. 2018) (Martinez, J.) (holding that FDUTPA and unjust enrichment counts may be pled in the alternative); *Charouhis v. Am. Auto. Ins. Co.*, No. 11-24547, 2012 WL 13014693, at *5 (S.D. Fla. June 18, 2012) (Martinez, J.) (citing *Southern Pan Servs. Co. v. S.B. Ballard Const. Co.*, No. 3:07-cv-592-J-33TEM, 2008 WL 3200236, at *3 (M.D. Fla. Aug. 6, 2008) (recognizing that "it is perfectly permissible under Florida law for a plaintiff to state claim in the alternative for recovery under a contract theory or a quasi-contract theory"); *Begualg Invest. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *7 (S.D. Fla. Sept. 23, 2011) (Martinez, J.) (holding that alternative theory of unjust enrichment "may be appropriately pleaded in the alternative" at the pleadings stage); *see Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289, 1289 (S.D. Fla. 2017) (Martinez, J.) (permitting FDUTPA and unjust enrichment claims to proceed past dismissal); *see James v. Yamaha Motor Corp.*, No. 15-23750, 2016 WL 3083378, at **11–13 (S.D. Fla. May 31, 2016) (permitting FDUTPA and unjust enrichment claims to proceed when unjust enrichment was explicitly pled in the alternative).

While Defendant would have this Court dismiss the unjust enrichment claim with prejudice due to the alleged fatal nature of overlapping factual predicate, it is clearly "premature to require Plaintiff[] to elect [his] remedy" at the dismissal stage, *James*, 2016 WL 3083378, at *12, but the Court should permit Plaintiff to correct any identified deficiency if the Court identifies one. *See Coleman*, 328 F. Supp. 3d. at 1367 (dismissing without prejudice and granting leave to amend); *Charouhis*, 2012 WL 13014693, at *5 (same); *Begualg Invest. Mgmt.*, 2011 WL 4434891, at *7 (permitting plaintiffs to correct and reassert unjust enrichment claim). At this stage, Plaintiff has satisfied this Court's consistent holdings—that unjust enrichment, pled in the alternative, survives dismissal despite overlap with a FDUTPA claim.

**B.     Plaintiff's Unjust Enrichment Claim Survives Dismissal**

Defendant argues Plaintiff's unjust enrichment claim fails for the same reasons as his FDUTPA claim; however, Plaintiff has met his burden under FDUTPA, as well as unjust enrichment. First, for the reasons argued in section IV(A) and (B), Plaintiff's FDUTPA claim should survive. Also, because Defendant has not raised any additional legal or factual bases why the unjust enrichment claim should fail, Plaintiff's unjust enrichment claim should proceed.

Additionally, Plaintiff has plausibly alleged Defendant's behavior resulted in unjust enrichment. In Florida, unjust enrichment has three elements: 1) plaintiff conferred a benefit on defendant; 2) defendant voluntarily accepted and retained that benefit; and 3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it. *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289, 1301 (S.D. Fla. 2017) (Martinez, J.).

In *Zamber*, this Court analyzed American Airlines' representation that insurance was sold by a third party, but American charged consumers undisclosed amounts by either including an undisclosed "pass through" fee or receiving an undisclosed kickback from every policy sold. *Id.* at 1295. This Court held plaintiff met the first element of unjust enrichment because "money was transferred from [plaintiff]'s pocket and into [defendant's]." *Id.* at 1301. The Court further found the second element of unjust enrichment, voluntary acceptance, was met because "[defendant] voluntarily accepted and retained the alleged overcharge." *Id.* Finally, the Court concluded that plaintiff met the final element, because "it would be inequitable for [defendant] to retain the money because it obtained the money through alleged deceptive acts." *Id.*

Here, Plaintiff has met this burden: 1) Plaintiff over paid for the Weighted Goods (i.e., conferred a benefit); 2) Defendant took the overpayment (i.e., voluntarily accepted and retained the benefit); and 3) the circumstances require Defendant to forfeit the profits obtained above the

value indicated via the unit price (i.e., it would be inequitable for Defendant to retain the benefit, having promised one unit price value but charging another unit price value), AmComp., ¶¶ 33–35, 37, 38, 64–68; *Zamber*, 282 F. Supp. 3d at 1301. Therefore, this Court should deny Defendant's request for dismissal of the unjust enrichment claim, and permit Plaintiff to pursue that claim at this stage.

## CONCLUSION

For the reasons stated herein, Plaintiff has met and exceeded his legal requirements at the dismissal stage, and this Court should deny Defendant's Motion outright. In the event that the Court finds any aspect of the Motion to have merit, Plaintiff requests leave to amend the complaint.

Dated: May 31, 2019                            Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

 _/s/ John A. Yanchunis_
John A. Yanchunis (Bar No. 324681)
Ryan McGee (Bar No. 64957)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on this <u>31st</u> day of May, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*   /s/ John A. Yanchunis
John A. Yanchunis
