UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-CV-20592-MARTINEZ/OTAZO-REYES

VASSILIOS KUKORINIS, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

WALMART, INC., a Delaware corporation,

    Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

**GREENBERG TRAURIG, P.A.**
Mark A. Salky (Bar No. 058221)
James E. Gillenwater (Bar No. 1013518)
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717

and

Chad J. Doellinger
(*Admitted Pro Hac Vice*)
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive
Suite 3100
Chicago, IL  60601
Telephone: (312) 456-1014

Dated: June 7, 2019

*Attorneys for Defendant Walmart Inc.*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Plaintiff's Generic Claims of False Advertising Fail Under Rule 9(b). ..............................2

II.     Plaintiff's FDUTPA and Unjust Enrichment Claims Fail Because He Lacks Standing. ........................................................................................................................4

III.    The Amended Complaint Fails to State a FDUTPA Claim. ................................................6

        A.      Plaintiff's FDUTPA Claim Is Barred Because Any Unit Price Misrepresentations Are Contradicted on the Face of the Labels. ..........................6

        B.      The Amended Complaint Fails to Allege Actual Damages. ...................................7

IV.    The Amended Complaint Fails to State a Claim for Unjust Enrichment. ..........................9

CONCLUSION ....................................................................................................................9

Defendant Walmart Inc. ("Walmart")[1] respectfully submits this reply in support of its Motion to Dismiss ("Motion") [D.E. 24] Plaintiff's Amended Class Action Complaint ("Amended Complaint") [D.E. 15], pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

## INTRODUCTION

As anticipated in the Motion, and confirmed by Plaintiff's Opposition [D.E. 25], Plaintiff cannot identify *a single case* that has ever been successfully pled under *any state's* unfair trade practices statute, like the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), on an erroneous unit price theory like the one Plaintiff advances here. That is, no claim has ever been successful based on the purchase of a *correctly-stated amount* of product at an *agreed-upon, prominently-advertised sale price*, simply because the unit price was incorrectly stated on the label. For good reason. Plaintiff's theory has a fatal flaw: he received exactly what he paid for.

From this flaw flow three conclusions. *First*, Plaintiff is unable to meet Rule 9(b)'s heightened pleading requirements, because he cannot back up his claim that Walmart perpetrated a "false advertising" scheme with any specific allegations, such as how he or anyone else was misled. *Second*, Plaintiff lacks standing, as he alleges only a procedural violation, not concrete injury. *Third*, Plaintiff's FDUTPA claim and impermissibly duplicative unjust enrichment claim are incurably defective, as Plaintiff cannot plead "actual damages"—that the market value of what he received was less than what he paid for as a result of the incorrectly stated unit prices—or any benefit inequitably retained by Walmart.

Faced with these fundamental legal failings, Plaintiff's Opposition resorts to stretching the allegations of the Amended Complaint—and common sense—further than they will go in an attempt to make this a *misstated weight* case, or an *undisclosed charge* case. In Plaintiff's misstated weight framing, "Walmart's labels are designed to mislead and induce consumers . . . into believing that they were receiving *more of the product* than they actually received." Opp. at 3 (emphasis added); *see also id* ("[T]he final sale prices reflected a lesser weight than marketed"). This theory might work, had Plaintiff actually supported it with factual allegations—*i.e.*, if Plaintiff had alleged that, when Walmart places its meat products on sale, it secretly removes meat from the packages and reseals them (Walmart does not do this), such that the originally-stated weight is incorrect; or, that it covers up the correctly-stated weight on the original labels with a new,

---

[1] The case caption incorrectly refers to Defendant as "Walmart, Inc.," rather than Walmart Inc.

1

inaccurately-inflated weight on the sales labels (it does not do this either). But that is not what Plaintiff alleges, and that is not how sales work. Consumers are aware that, when a product is placed on sale, you get the *same* amount of that product at a *reduced* price. That is what happened here, as the allegations in the Amended Complaint confirm.

In Plaintiff's undisclosed charge framing, he was "charged an undisclosed unit price" when he checked out at the register in Walmart. Opp. at 14. This theory, too, might work had Plaintiff alleged that, at the register, Walmart cashiers entered a secret unit price for each of his purchases that resulted in him being charged, involuntarily, a higher price than he knew he was paying (Walmart's cashiers also do not do this). But, again, that is not how sales work, and not what the Amended Complaint alleges. For each of his purchases, Plaintiff was charged the reduced *sale price* that was prominently-stated on the labels of each product, the identical one he agreed to pay. Plaintiff saved money on every sale purchase in relation to the original price, and he received the exact amount of meat originally advertised, notwithstanding any unit-price errors.

Because Plaintiff paid the amount he agreed to and received the amount of meat he expected, he has no claim. Not surprisingly, no case, including Plaintiff's here, has ever has ever been successfully pled on such a theory. The Amended Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

### I.    Plaintiff's Generic Claims of False Advertising Fail Under Rule 9(b).

Plaintiff tacitly acknowledges that Rule 9(b) applies to his claims sounding in "false [or] deceptive . . . advertising." *See* Opp. at 5-6; Am. Compl. ¶ 37. But Plaintiff argues that "even if the Court were to conclude that the Amended Complaint's allegations do not support a deceptive act" under Rule 9(b), the Court should parse his allegations and apply a *different* standard to those falling under his alternative characterization that "Defendant's conduct is unfair and unconscionable." *Id.* Plaintiff cites no case, because there is none, applying Rule 9(b) to *some* of the allegations underlying a FDUTPA claim and not to others, or dismissing claims to the extent they sound in "deception" but allowing them to proceed to the extent they sound in "unfairness." Because both of the causes of action pled in the Amended Complaint arise from Plaintiff's theory that Walmart engaged in false and deceptive advertising, they both must be pleaded with particularity pursuant to Rule 9(b) under the clear precedent of this Court and other district courts in this Circuit. *See* Mot. at 7-8 & n.2 (citing *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,

2

No. 10-cv-22153-JEM, 2011 WL 4434891, at *1, 5 (S.D. Fla. Sept. 23, 2011), and other analogous decisions).

Although Plaintiff attempts to distinguish *Begualg* and the other decisions cited in the Motion, he acknowledges that, under those authorities, a plaintiff alleging false and deceptive advertising must specifically allege "the manner in which [the advertising] misled the plaintiff" to survive dismissal under 9(b). Opp. at 8 (internal quotation marks omitted). This Plaintiff has failed to do, notwithstanding the Opposition's conclusory assertion that "Plaintiff clearly articulated how he was misled." *Id.* at 9. Plaintiff's only explanation of *how* he was misled is that "he and consumers use unit prices to comparison shop." Opp. at 9 (citing Am. Compl. ¶¶ 2, 5, 8-12, 24-27, 31-38, 55-57, 59, 64, 69).[2] Such generalized assertions fall far short of the particularity required by Rule 9(b).

As for himself, Plaintiff alleges only that he "shops *in part* based on unit pricing, and considers this a material element in making shopping decisions." Am. Compl. ¶ 9. He does not allege that when he purchases Walmart meats placed on sale at reduced prices, he makes his purchasing decisions based on the reduced-sale unit prices—as opposed to the reduced *sales price* ("YOU PAY") or *savings* in relation to the original price ("SAVE") that were prominently reflected in much bigger print on new, "bright yellow labels." Opp. at 2, 9. Plaintiff certainly does not allege that he decided to make any of the three purchases at issue here based on their reduced-sale unit prices. Am. Compl. ¶¶ 33-35. To the contrary, that he was *not* buying based on unit prices is evident from his allegations that, after he purchased his first Walmart product at an incorrectly-stated unit price, he continued to purchase Walmart products with *different* incorrectly-stated unit prices for months thereafter, without explaining how the different unit prices factored into his purchasing decisions or that he had an "Aha moment" when he realized that he was being misled (presumably, such a moment never occurred, as he was not buying based on the unit prices in the first instance and was satisfied with his purchases and savings). *Id.*

Unable to point to specific allegations as to how *he* was misled, Plaintiff argues that he "must simply allege a reasonable person would have been deceived." Opp. at 10. The cases he

---

[2] Plaintiff also argues that he "articulated the FTC's requirement that price comparisons 'should make certain that the bargain offer is genuine and truthful,'" Opp. at 9 (quoting Am. Compl. ¶ 28), but the FTC regulations Plaintiff cites do not mention unit prices, and he does not allege that he relied on the FTC regulations in any way.

3

cites for this proposition—*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) and *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297 (S.D. Fla. 2011)—do not involve false advertising allegations, and thus Rule 9(b)'s heightened pleading requirement of specific allegations as to "the manner in which [the statements] misled *the plaintiff*," *Begualg*, 2011 WL 4434891, at *1 (emphasis added), was not triggered. But even accepting that the "reasonable person," standard applies in the Rule 9(b) context, Plaintiff has failed to allege how it would have been reasonable for anyone to be misled by the erroneous unit prices at issue. The best Plaintiff can do in this regard is to claim that reasonable consumers would have been "misle[d] . . . to purchase less of the product at a higher price." Opp. at 4. As pointed out in the Motion, it would have been unreasonable for any consumer to expect *more* of the product than they received based on an erroneous unit price when the correct weight of the product is clearly stated on the package and the consumer can see and feel the quantity of meat they are purchasing as they take it to the register to pay the agreed-upon reduced sales price. *See* Mot. at 11 ("For a consumer to pick up a ham that weighs 11.61 pounds, with a label stating that it weighs 11.61 pounds, and yet to purchase the ham expecting it to weigh 25.7 pounds—nearly 2.5 times more than its actual weight—can never be reasonable.").

As Plaintiff acknowledges, under even Rule 8's more lenient pleading standard, "'determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.'" Opp. at 5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Plaintiffs' allegations that a customer can reasonably expect a product to weigh over twice as much as (i) it says it weighs and (ii) the customer observes that it weighs, fail the plausibility/common sense test under Rule 8. They certainly do not meet Rule 9(b)'s heightened standard to explain how the plaintiff was misled. Because Plaintiff's claims sounding in false advertising lack the requisite specificity, the Amended Complaint should be dismissed with prejudice.

**II. Plaintiff's FDUTPA and Unjust Enrichment Claims Fail Because He Lacks Standing.**

Rather than addressing the standing argument raised in the Motion—that Plaintiff has failed to allege *any* injury, because he received exactly what he paid for—Plaintiff devotes his Opposition to knocking down a straw man. According to Plaintiff, Walmart, "one of the largest retailers in the World"—a "behemoth"—"trivialize[s] Plaintiff's injury" and seeks to divest Plaintiff of standing because the "economic harm is . . . small from the perspective of the

4

defendant." Opp. at 10-11. Plaintiff's need to resort to such distortions, instead of addressing Walmart's true standing argument, is telling.

Walmart is not challenging Plaintiff's standing because his injury is "small"; Walmart is challenging Plaintiff's standing because, based on his own allegations, his injury is *non-existent*. When Plaintiff agreed to pay $4.05 for 1.77 pounds of pork loin from Walmart on January 4, 2018, he received 1.77 pounds of pork loin for $4.05, as stated on the sales label. Am. Compl. ¶ 34. When he agreed to pay $16.45 for 11.61 pounds of spiral ham from Walmart on April 19, 2018, he received 11.61 pounds of spiral ham for $16.45, as stated on the sales label. *Id.* ¶ 33. And when Plaintiff agreed to pay $10.10 for 9.13 pounds of spiral ham from Walmart on April 26, 2018, he received 9.13 pounds of spiral ham for $10.10. *Id.* ¶ 35. Although Plaintiff now claims that he "overpaid" for these items based on their incorrect unit prices, Opp. at 11, he does not allege that the true *value* of the products he received corresponded to the incorrect unit prices, *i.e.*, that he could have purchased similar quantities of meat for lesser prices anywhere else. *See infra*, at III.B. Put differently, Plaintiff does not allege that, if the 11.61 pounds of spiral ham had reflected its true unit price of $1.42/lb, rather than its incorrectly-stated unit price of $.64/lb—he would not have purchased it.[3]

Instead, apparently satisfied with the quantity and value of the product he received, Plaintiff continued purchasing products from Walmart notwithstanding incorrect unit prices. While Plaintiff argues that this "does not destroy his standing in this case," Opp. at 11, courts in this Circuit have found such continued conduct to be illustrative of the speculative nature of a plaintiff's alleged injuries. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) (where plaintiff "continue[d] to pay the price charged by [the Defendant] . . . any damages . . . [are] too speculative to be the premise of an 'actual injury' under Article III"); *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-cv-3201, 2016 WL 727173, at *6 (M.D. Fla. Feb. 22, 2016) ("Here, much like in *Prohias*, the fact that the Plaintiffs continue to purchase and use the

---

[3] To be sure, Plaintiff alleges, in conclusory fashion, that "Plaintiff and Class members would not have purchased such products or, at the very least, would have demanded the appropriate price upon purchase had they known the prices were false, deceptive, unfair, and unconscionable." Am. Compl. ¶ 37. But such conclusory pleading is deficient under both Rule 8 and Rule 9(b), and it is not the same as alleging that the specific products Plaintiff purchased were worth less than the reduced-sale price he paid or that he did not consider that sales price to be fair.

5

Defendants' 'flushable' wipes makes their theory of damages too speculative to constitute an actual injury under Article III.").

Because Plaintiff's Amended Complaint and Opposition establish that he is alleging, at most, "a bare procedural violation, divorced from any concrete harm," he has failed "to satisfy the injury-in-fact requirement of Article III" and his claim should be dismissed under Rule 12(b)(1). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

### III.   The Amended Complaint Fails to State a FDUTPA Claim.

#### A.   Plaintiff's FDUTPA Claim Is Barred Because Any Unit Price Misrepresentations Are Contradicted on the Face of the Labels.

Plaintiff does not seriously dispute the principle that a FDUTPA claim is legally deficient where it is based on misrepresentations that are contradicted on the face of an agreement. *See* Opp. at 12-14 (attempting only to distinguish two of the three cases cited in the Mot., at 14, on procedural grounds); *Sol. Z v. Alma Lasers, Inc.*, No. 11-cv-21396, 2013 WL 12246356, at *11 (S.D. Fla. Jan. 22, 2013) (cited in the Mot. at 14 but not addressed in Opp. at 12-14) (dismissing FDUTPA claim on a motion to dismiss based on alleged misrepresentations that were rebutted on the face of an agreement). Rather, Plaintiff takes issue with Walmart's assertion that "the prices were correct" on the goods he purchased because those prices did not correlate with the products' erroneous reduced-sale unit prices. Opp. at 12. But this is circular logic, and Plaintiff cannot have it both ways. That is, Plaintiff cannot claim that *both* the reduced unit prices *and* the reduced sales prices were incorrect on the product labels. His entire lawsuit is centered on his allegations that "Walmart advertised *false unit prices* for Weighted Goods placed on sale," and his explanation for *why* the unit prices are false is by reference to the sale price, *i.e.*, because they "did not coincide with" the "final sale prices." Am. Compl. ¶ 2 (emphasis added).

More importantly, Plaintiff *agreed* to pay the price on the label of every product he purchased in exchange for the correctly-stated weight of meat. Dividing that agreed-upon price by the correctly-stated weight yields the correct unit price.[4] The incorrectly-stated unit prices are

---

[4] To determine this, a consumer need only do what the article referenced in the Amended Complaint suggests consumers do to check unit prices: "do some cogitating" or "use the calculator app built into your cell phone." *Unit Prices can Help You Save on Groceries*, Consumer Reports (Aug. 14, 2013) https://www.consumerreports.org/cro/news/2013/08/save-on-groceries-with-unit-prices/index.htm (cited in Am. Compl. ¶ 5 n.1). In the case of Plaintiff's 11.61 pound spiral

thus rebutted on the face of the agreement Plaintiff accepted with each purchase. The "false unit prices" Plaintiff complains of cannot provide the basis for a FDUTPA claim as a matter of law. *See Sol. Z*, 2013 WL 12246356, at *7 ("Courts routinely dismiss FDUTPA claims" under such circumstances).

### B. The Amended Complaint Fails to Allege Actual Damages.

The Eleventh Circuit is clear that, when it comes to pleading actual damages under FDUTPA in connection with the purchase of a product, a Plaintiff must allege "difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 529 (11th Cir. 2017) (internal quotation marks omitted). Although the Opposition includes a chart reflecting the differences between the incorrect *unit prices* and the correct unit prices of the goods he purchased (the price he agreed to pay divided by the correctly-stated weight of the product), *see* Opp. at 15, Plaintiff does not identify a single allegation claiming that the *amount* of goods he received had a market value less than the sales price he agreed to pay.

For example, Plaintiff has not alleged, by reference to any relevant market, that the 11.61 pounds of ham he received was worth less than the $16.45 he paid for it. Am. Compl. ¶ 33. Although he now claims that he wanted 25.7 pounds of ham for that price, *id.* ¶ 33, that is not the same as alleging actual damages, as "disappointed bargain-hunters do not allege any 'actual injury' simply because they did not get as good a deal as they had hoped." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080, 2017 WL 744596, at *3, 6 (S.D.N.Y. Feb. 23, 2017) (dismissing FDUTPA claim, as "Florida law . . . do[es] not recognize any injury based solely on allegations that the plaintiff subjectively believed that he was getting a better bargain than turned out to be true"). Plaintiff's failure to allege a diminution in market value is fatal to his FDUTPA claim. *See Prohias*, 485 F. Supp. 2d at 1336-37 (rejecting "price inflation" theory that was "purely speculative," lacking any criteria for assessing a diminution in market value); *Reilly*, 711 F. App'x 525 (plaintiff's actual damages theory too "speculative" where amount she paid for burrito following alleged deceptive practice was "identical" to market value for "comparable" burritos); *Circuitronix, LLC v. Shenzhen Kinwong Elec. Co.*, No. 17-cv-22462, 2018 WL 7287192, at *14 (S.D. Fla. Jan. 31, 2018)

---

ham, calculations would be unnecessary; simply eyeballing or picking up the ham would inform a consumer that it did not weigh 25.7 pounds, as suggested by the erroneous unit price.

7

(dismissing FDUTPA claim where "Plaintiff pleads no facts from which one could plausibly infer the degree to which, or even whether, the market value of any product . . . has changed." (internal quotation marks omitted)).

Plaintiff's reliance on *Heckman v. SBE ENT Holdings, LLC*, No. 18-cv-22258, 2019 WL 1468555 (S.D. Fla. Feb. 25, 2019), Opp. at 14, illustrates precisely why he has failed to adequately allege any actual damages. There, this Court found that a plaintiff who was charged undisclosed service and gratuity fees adequately alleged actual damages under FDUTPA because the "plaintiff's payment of the charges was involuntary" due to lack of any "notice." *Id.* (citing *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241 (S.D. Fla. 2018)). The plaintiff's payment was involuntary because he was "charg[ed] a 20% [pool bar] service charge instead of the 18% displayed on the menu" and a "room service delivery charge [of] . . . $4.00 instead of $3.50 displayed on [the] in-room dining menu." *Id.* Thus, Plaintiff's actual damages were easy to calculate: what he was charged minus the charges listed on the menus of which he had notice, totaling the undisclosed amount he was involuntarily charged. *Id.*

Here, Plaintiff did not incur any involuntary charges. Rather, he was charged the exact reduced-sale price that appeared in "bright yellow" on every Walmart product he purchased. For that price, he received the exact amount of meat represented by the correctly-stated weight that was clearly visible on every package. The unit price he paid was not "undisclosed," as Plaintiff now characterizes it. It was disclosed at the register when he paid. For example, when he paid $16.45 for an 11.61 pound ham, he paid a unit price of $1.42 per pound ($16.45 ÷ 11.61 lbs = $1.42 / lb). In other words, Walmart did not have a secret, higher *sales* price that it applied at the cash register, resulting in Plaintiff being charged more money than was ever disclosed to him, the only situation that would be analogous to the damages theory in *Heckman*.

In an attempt to evade this obvious damages failure, Plaintiff tries to reframe his damages theory by repeatedly claiming that he was "charged an undisclosed unit price at the point of sale." Opp. at 8, 14. But customers are not charged by unit price at the register—they are charged the sales price stated on the product—and Plaintiff's characterization would only fit within *Heckman*'s damages paradigm if, at the register, a Walmart cashier applied an "undisclosed unit price" to his purchases that resulted in a *higher sales price* than the one stated on the package that Plaintiff agreed to pay. Plainly, that is not what Plaintiff is alleging. For just this reason, Plaintiff cannot cite to a single case, under any state's unfair or deceptive trade practices act, where an erroneous

8

unit price damages theory has ever been countenanced. Because Plaintiff suffered no actual damages, his case should be dismissed.

## IV. The Amended Complaint Fails to State a Claim for Unjust Enrichment.

Plaintiff does not address the *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) decision, cited in the Motion, unequivocally holding that where, as here, "the factual allegations underlying FDUTPA and unjust enrichment claims are exactly the same[,] [a] Plaintiff should not be permitted to plead an unjust enrichment claim in the alternative." *Id*. & n.7 (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007)). These decisions are fatal to Plaintiff's unjust enrichment claim. The primary case Plaintiff *does* cite, this Court's decision in *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349 (S.D. Fla. 2018), confirms this. In *Coleman*, the Court made it clear that, although a Plaintiff "is permitted to plead an unjust enrichment claim in the alternative" to a FDUTPA claim, the unjust enrichment claim *may not* be "based on the same predicate common facts underlying" the FDUTPA claim, as that is not a true alternative pleading. *Id.* at 1367. Where, as here, the factual predicates of both claims are identical, the unjust enrichment claim must be dismissed. *See id.* (dismissing unjust enrichment claim for that reason).[5] Dismissal should be with prejudice because the factual allegations in the Amended Complaint establish that Plaintiff's unjust enrichment claim will always be duplicative of his FDUTPA claim.

Plaintiff's unjust enrichment claim independently should be dismissed with prejudice on the merits for the same reasons as his FDUTPA claim. Just as he has failed to allege actual damages, Plaintiff has failed to allege that he conferred a benefit on Walmart that it inequitably retained. *See Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1322 (S.D. Fla. 2009) ("There must be actual damages incurred before a plaintiff can recover for a claim of unjust enrichment."). *aff'd*, 395 F. App'x 583 (11th Cir. 2010).

## CONCLUSION

For these reasons, and those set forth in Walmart's Motion to Dismiss, the Amended Complaint should be dismissed with prejudice.

---

[5] The other cases cited in the Opposition confirm this unremarkable proposition. *See* Opp. at 16.

9

Dated: June 7, 2019 Respectfully submitted,

By:    /s/ Mark A. Salky
     Mark A. Salky
     Florida Bar No. 058221
     Email: salkym@gtlaw.com
     James E. Gillenwater
     Florida Bar No. 1013518
     Email: gillenwaterj@gtlaw.com
     **GREENBERG TRAURIG, P.A.**
     333 S.E. 2nd Avenue, Suite 4400
     Miami, Florida 33131
     Telephone: (305) 579-0500
     Facsimile:  (305) 579-0717

     and

     Chad J. Doellinger
     (*Admitted Pro Hac Vice*)
     **GREENBERG TRAURIG, LLP**
     77 West Wacker Drive
     Suite 3100
     Chicago, IL  60601
     Telephone: (312) 456-1014
     Email: doellingerc@gtlaw.com

     *Attorneys for Defendant Walmart Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ James E. Gillenwater
James E. Gillenwater

## SERVICE LIST
***Kukorinis v. Walmart, Inc.*,**
**Case No. 1:19-cv-20592-JEM**
**United States District Court, Southern District of Florida**

*Counsel for Plaintiff*:

John A. Yanchunis
jyanchunis@forthepeople.com
Ryan McGee
rmcgee@forthepeople.com
MORGAN & MORGAN
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434