UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:19-CV-20592-MARTINEZ-OTAZO REYES

VASSILIOS KUKORINIS, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

WALMART, INC., a Delaware corporation,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon the Motion to Dismiss filed by Walmart, Inc. The Court has carefully reviewed the Motion (DE 24), the Response (DE 25), and the Reply thereto (DE 26). The Court is otherwise fully advised on the premises. For the reasons that follow, the Motion to Dismiss is **DENIED**.

**I.**     **BACKGROUND**

Plaintiff brings this class action suit against Walmart on behalf of himself and others similarly situated to redress what he alleges are unfair, deceptive, and unconscionable business practices on the part of Walmart. (*Id*. at ¶1). Plaintiff alleges that from February 7, 2015 to the present (the "class period"), Walmart advertised false unit prices for perishable goods ("Weighted Goods") that were nearing expiration. (*Id*. at ¶ 2). The gravamen of the complaint is that Walmart has, throughout the class period, consistently reduced the price of Weighted Goods nearing expiration but continually states incorrect unit prices on the labels of said Weighted Goods. (*Id*.). As a result, Plaintiff alleges that Walmart overcharged for reduced-priced Weighted Goods and

that he and others similarly situated did not receive the promised value for Weighted Goods purchased throughout the class period. (*Id.*).

In Walmart stores, Weighted Goods such as beef, poultry, and pork, contain white price labels that include the total price, the unit price (per pound), and the item's weight in pounds. (*Id.* at ¶ 23). When Weighted Goods approach expiration, Walmart reduces the price of said goods and affixes a bright yellow sales label in addition to the original white label. (*Id.*). The yellow label states the weight of the item in pounds, the unit price, the total price, and the amount saved (the difference between the original price and the sales price). (*Id.*).

The problem with Walmart's pricing system, as alleged by the Plaintiff, is that the unit prices stated on the yellow sales labels do not reflect the total price charged for the item. (*Id.* at ¶¶ 24–27, 32–36). Everything besides the unit prices listed on the yellow labels is correct, i.e., the weight of the item, the total price charged, and the difference between the original price and the sale price. (*Id.* at ¶¶ 33–35). Plaintiff identified three specific instances in which he personally purchased Weighted Goods with yellow sales labels. *See* (*Id.* at ¶¶ 33–35). On April 19, 2018, Plaintiff purchased a spiral ham at a Walmart store in Delray Beach, Florida. (*Id.* at ¶ 33). The yellow sales label stated that the ham weighed 11.61 pounds at a unit price of $0.64 per pound, but the total price on the yellow label stated $16.45. (*Id.*). As alleged, Walmart received an extra $9.02 (i.e., the difference between $16.45 and $7.43) on the sale because the unit price reflected that the ham should have only cost $7.43. (*Id.*).

On January 4, 2018, Plaintiff purchased a pork loin at a Walmart store in Davie, Florida. (*Id.* at ¶ 34). The yellow sales label stated that the pork loin weighed 1.77 pounds at a unit price of $2.28 per pound, but the total price stated $4.05. (*Id.*). Accordingly, Plaintiff contends that Walmart received an extra $0.02 (i.e., the difference between $4.05 and $4.03) because the pork

loin should have only cost $4.03 by calculation of the unit price. (*Id.*). Finally, Plaintiff purchased another spiral ham at a Walmart store in Orlando, Florida. (*Id.* at ¶ 35). This time, the yellow sales label stated that the ham weighed 9.13 pounds at a unit price of $0.69 per pound. The total price was listed as $10.10. (*Id.*). Accordingly, Walmart received an extra $3.80 (i.e., the difference between $10.10 and $6.30) because the ham should have only cost $6.30 as per the listed unit price. (*Id.*).

Plaintiff also identifies thirteen other instances in which Weighted Goods at Walmart stores throughout Florida contained yellow sales labels with incorrect unit prices. (*Id.* at 36). He does not, however, identify any details pertaining to these additional thirteen instances. (*Id.*). For example, he does not state what items are included in this list and whether or not anyone actually purchased these particular items. (*Id.*). He does, however, allege that based on the incorrect unit prices identified throughout the class period, a reasonable consumer would have believed that they were purchasing more of the product than they actually received. (*Id.* at ¶¶ 24–27, 33–35, 37). As framed in the Amended Complaint, the yellow sales labels are designed to, and do, induce consumers into believing they are getting more of the product for their money. (*Id.* at 31–35). Plaintiff further contends that he and class members relied on the listed unit prices to their detriment and that he and class members would not have purchased these items or, at least, would have demanded the appropriate price upon purchase had they known the unit prices were incorrect. (*Id.*).

Based on these events, Plaintiff asserts two causes of action against Walmart. (*Id.* at ¶¶ 49–71). Count I alleges that these practices constitute a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (*Id.* at ¶¶ 49–61). Count II asserts a claim, in the alternative, for unjust enrichment. (*Id.* at ¶¶ 62–75). Walmart has moved to dismiss the claims

for four reasons. (DE 24 at 1–2). First, Walmart contends that Plaintiff's allegations fail to meet the requisite particularity requirement for claims sounding in fraud. (*Id*. at 1). Second, Walmart argues that Plaintiff lacks Article III standing to bring a claim because Plaintiff fails to allege that he suffered a concrete injury in fact. (*Id*. at 2). Third, Walmart argues that the Amended Complaint fails to state a FDUTPA claim. (*Id*. at 2). Finally, Walmart argues that Plaintiff's unjust enrichment claim is barred as a matter of law because it is duplicative of his FDUTPA claim. (*Id*. at 2). For the reasons set forth herein, Defendant Walmart's Motion to Dismiss is denied.

## II.    LEGAL STANDARD

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept all factual allegations within the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) only requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1359 (S.D. Fla. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The pleading must assert enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

A claim for relief is facially plausible if the facts alleged allow the Court to reasonably infer that the Defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. The allegations need not be such that it is probable that the defendant is liable but it must be more than merely possible that the defendant is liable. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A heightened pleading standard must be satisfied for claims sounding in fraud or mistake. Fed. R. Civ. P. 9(b); *U.S. ex rel. Matheny v. Medco Health Sols.', Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). To satisfy Rule 9(b), the party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Matheny*, 671 F.3d at 1222. The particularity requirement serves to put the defendant on notice of the "precise misconduct with which they are charged." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

### III. <u>ANALYSIS</u>

In its motion, Walmart asserts four arguments in support of dismissal. Because the issue of standing is ultimately a jurisdictional issue, it should be addressed at the outset. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Accordingly, section A will address whether Plaintiff has standing to bring this action. Because the same allegations resolve the issues of whether Plaintiff sufficiently pleaded a cause of action under the FDUTPA with enough particularity, those arguments will be addressed together in section B. Section C will address Walmart's argument that Plaintiff has failed to state a claim for unjust enrichment.

#### A. Standing

Walmart contends that Plaintiff's FDUTPA and unjust enrichment claims should be dismissed under Rule 12(b)(1) because Plaintiff lacks standing. *See* Fed. R. Civ. P. 12(b)(1); (DE 24 at 12). Because Walmart only challenges Plaintiff's standing on the grounds that Plaintiff has failed to allege an actual injury, the Court will only address that issue.

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Stalley*, 524 F.3d at 1232. To establish Article III standing, "the plaintiff must have suffered or be

5

imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). An injury in fact for Article III standing purposes is an invasion of a legally protected interest, which is concrete, particularized, and actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It may not be conjectural or hypothetical. *Id.*

Walmart argues that the fact that Plaintiff continued purchasing Weighted Goods with incorrect unit prices indicates that he did not suffer any actual harm as a result of Walmart's pricing practices. Similarly, Walmart contends that because Plaintiff ultimately agreed to pay the correct "total" price for each purchase, he cannot show a particularized injury in fact.

In response, Plaintiff points to the three specific instances where he purchased Weighted Goods for a higher price than the unit price listed. (DE 25 at 11; Am. Compl. at ¶¶ 33–35). Specifically, Plaintiff alleges he overpaid for a spiral ham by $9.02, a spiral ham on an additional occasion by $3.80, and overpaid for a pork loin by $0.02. (Am Compl. at ¶¶ 33–35). Accepting these allegations as true and construing them in favor of the complainant, as the Court must, Plaintiff has alleged a particularized and concrete harm. *Pielage*, 516 F.3d at 1284. The concrete and particular harm alleged is that he was overcharged for Weighted Goods. Contrary to Walmart's assertion, (DE 24 at 13), the fact that Plaintiff continued to purchase Weighted Goods does not negate his injury but may in fact highlight the pervasive effect of the alleged misconduct. *See Fox v. Loews Corp.*, 309 F.Supp.3d 1241, 1247–48 (S.D. Fla. 2018) (rejecting defendant's standing argument that plaintiff failed to allege any harm because he paid disputed gratuities charges, ". . . whether he had the right or even the knowledge to contest the charges at the time he paid them . . . does not cancel his injury).

Walmart also points out that the yellow sales labels stated the correct weight and correct price of the Weighted Goods. (DE 24 at 12–13). Framed in this light, Plaintiff and class members suffered no harm because they received the listed weight at the listed price. (*Id.*). This argument is unpersuasive. The alleged harm is that throughout the class the period, consumers overpaid for Weighted Goods and/or believed they were receiving more value than they actually were because the unit prices were incorrect. (Am. Compl. at ¶¶ 24–27, 33–35). Therefore, the Court finds that Plaintiff has sufficiently alleged a concrete and particularized "injury in fact" as required to establish Article III standing.

### B. Plaintiff has Sufficiently Pled a Claim Under the FDUTPA with Particularity.

Walmart asserts that Plaintiff has failed to satisfy the pleading requirements of Rule 9(b). (DE 24 at 8). Specifically, Walmart argues that Plaintiff has failed to set forth particular allegations stating the party responsible for the incorrect unit prices, how the pricing practices were deceptive, and how the pricing practices misled Plaintiff and other similarly situated consumers. *Id*. at 8–9. The crux of Walmart's position is that Plaintiff has failed to set forth allegations showing that consumers relied on the incorrect unit prices when making decisions to purchase Weighted Goods. *Id*. at 9–12.

A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *YMD Records, LLC v. Ultra Enters.', Inc.*, 361 F. Supp. 3d 1258, 1267 (S.D. Fla. 2019) (quoting *Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-CIV, 2013 WL 12199875, at *4 (S.D. Fla. Apr. 22, 2013)). To obtain relief, a consumer must plead both that the conduct complained of was unfair and deceptive and that the consumer was aggrieved by the unfair and deceptive act. *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997). The FDUTPA is designed to protect consumers from "unfair or deceptive acts and practices which

diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985). To assert a claim under the FDUTPA, reliance is not required; the plaintiff need only show that a reasonable person would have been deceived. *See, e.g.*, *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (noting that district court's analysis that actual reliance is not required to state a FDUPTA claim was correct).

Under Rule 9(b), Plaintiff has sufficiently pled a cause of action under the FDUTPA. To meet the requirements of Rule 9(b) the complaint must state, "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions) not making them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba*, 256 F.3d at 1202).

The Court recognizes that the Southern District is split on the issue of whether Rule 9(b) applies to FDUTPA claims. *Compare Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (finding that Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims) *with Begualg Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (finding that Rule 9(b) applies to FDUTPA claims). Because this Court has applied the heightened pleading requirement to FDUTPA claims in the past, the Court will apply Rule 9(b) to Plaintiff's claims. *See Begualg*, 2011 WL 4434891, at *5.

In its amended complaint, Plaintiff identifies precise statements placed on the labels of Weighted Goods that Plaintiff claims constitute unfair and deceptive practices. (Am. Compl. ¶¶

8

33–35). For example, Plaintiff alleged that he personally purchased Weighted Goods on three separate occasions where the unit price stated on the label was incorrect. (*Id.*). Plaintiff identified the precise dates and locations of Walmart stores where he made these purchases. (*Id.* at ¶¶ 33–35). Further, Plaintiff has sufficiently identified Walmart as the party responsible for making the statements, "Mr. Kukorinis read and relied upon false and misleading statements prepared and approved by Walmart and its agents . . ." (*Id.* at ¶ 10). Walmart argues that these allegations do not establish that the unit price mistakes were not isolated errors or that the mistakes did not result from a faulty labeling machine, computer glitch, or human error. (DE 24 at 8). However, Plaintiff is not required to make such a showing at the pleading stage—even under the 9(b) standard. Such a showing is more properly addressed at the summary judgment stage of litigation. Plaintiff need only plead, "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and which rises above the level of speculation. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Taking Plaintiff's factual allegations as true, again as the Court must, Plaintiff has satisfied the first two pleading requirements under Rule 9(b).

The Court now turns to whether the content of the statements misled Plaintiff and what Walmart received as a result of the statements. Walmart contends that Plaintiff has failed to establish exactly how the incorrect unit prices were misleading or that he factored unit-prices when deciding to purchase Weighted Goods. (DE 24 at 10). This argument is unpersuasive. Contrary to Walmart's contentions, Plaintiff specifically alleged that he read and relied upon the unit prices in making purchases, and that he "understood that he was paying a specific unit price for the item and that such pricing was being offered by Walmart for a limited time due to the imminent expiration date of the item." (*Id.* at ¶ 10). As alleged, the incorrect unit prices induced Plaintiff and others similarly situated into believing they were getting more for their money— "consumers

did not receive the promised value for the Weighted Goods they purchased during the class period." (*Id*. at ¶ 31–35). Walmart counters that because Plaintiff continued to purchase Weighted Goods with incorrect unit prices, the only plausible inference is that Plaintiff was ignoring the unit prices altogether and thus never relied on the incorrect unit prices in making purchases. (DE 24 at 10). While this is a plausible inference, another plausible inference is that the misrepresentations were so subtle that Plaintiff and other reasonable consumers failed to notice until a closer inspection was made. Again, this fact may highlight the pervasive effect of the alleged misconduct. *See Fox*, 309 F.Supp.3d at 1247–48.

Finally, Plaintiff has sufficiently alleged what benefit Walmart received as a consequence of its alleged unfair and/or deceptive conduct. Plaintiff alleges that Walmart listed a unit price for Weighted Items placed on sale but charged more than the unit price at check out. (Am. Compl. At ¶¶ 33–35). Regardless of whether the total price was listed on both the original and the sales labels, the fact remains that, as alleged, Walmart represented Weighted Goods as costing one price per unit but charged a different price. (*Id*.).

Walmart also contends that even if Plaintiff has satisfied Rule 9(b), he has still failed to state a claim upon which relief can be granted. In support of its motion, Walmart asserts that Plaintiff's FDUTPA claim is barred because the incorrect unit prices are contradicted by the correctly stated sales prices and weights. (DE 24 at 14). This may be a reasonable interpretation of the facts, but it is not the only interpretation. The gravamen of the Amended Complaint is that Walmart overcharges for Weighted Goods. (Am. Compl. at ¶ 1).

Further, Walmart relies on distinguishable cases in support of its theory. In *Vital Pharmaceuticals*, the court addressed a FDUTPA claim in the summary judgment context. *Vital Pharm., Inc. v. Balboa Capital Corp.*, No. 14-62469-CIV, 2016 WL 4479370, at *6 (S.D. Fla.

10

Aug. 25, 2016). The dispute revolved around a lease contract in which plaintiffs believed that they were entitled to a purchase option upon the termination of the lease. *Id*. The court rejected the plaintiff's contentions that they relied on pre-lease and post-lease representations because the contract clearly indicated that all leased equipment would remain the property of the lessor. *Id*. at *7.

First, *Vital Pharmaceuticals* was resolved at the summary judgment stage, not on a motion for dismissal. *Id*. at *6–7. More importantly, the legal principle on which Walmart relies does not apply under the facts as alleged by Plaintiff. In *Vital Pharmaceuticals*, the parties had a valid written agreement that contradicted the plaintiff's assertions of misrepresentations. *Id*. at *6. Here, the alleged unfair and deceptive conduct is that Walmart incorrectly stated the unit prices on labels of Weighted Goods. (Am. Compl. at ¶ 2). There is no agreement between Walmart and Plaintiff that would resolve the dispute over whether Walmart's pricing practices are in fact deceptive or unfair. That issue is best resolved by a fact-finder.

Walmart also cites *Dorestin*, another distinguishable case in which there was a written contract that resolved the dispute. *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010). In *Dorestin*, plaintiffs asserted claims against a car dealership under the FDUTPA alleging misrepresentations in connection to a requirement to purchase extended warranties for a vehicle. *Id*. at 825. The plaintiffs claimed that the dealership's employees misrepresented the fact that they were required to purchase an extended warranty for a vehicle they were purchasing. *Id*. The court reversed a jury verdict in favor of the plaintiffs on their FDUTPA claim because the extended warranty contract expressly provided that the warranty was not required in order to obtain financing for the vehicle. *Id*. The Court finds *Dorestin* distinguishable for the same reasons *Vital Pharmaceuticals* is distinguishable—the alleged deceptive and unfair

conduct in the present dispute has nothing to do with an agreement between the parties. *See Vital Pharmaceuticals*, 2016 WL 4479370, at *6; *Dorestin*, 45 So. 3d at 824–25.

Walmart further asserts that Plaintiff's amended complaint fails to allege actual damages. (DE 24 at 15). Actual damages are an essential element of a FDUTPA claim. *YMD Records*, 361 F. Supp. 3d at 1267. Walmart contends that to sufficiently plead damages, Plaintiff must allege a difference between the market value of the Weighted Goods he purchased and the market value in the condition in which the Weighted Goods should have been delivered. *Mantz v. TRS Recovery Servs.', Inc.*, No. 11-80580-CIV, 2011 WL 5515303, at *2–3 (S.D. Fla. Nov. 8. 2011); (DE 24 at 13). In response, Plaintiff points out that the alleged damages are the differences in the sales price and the cost of the Weighted Goods as determined by reference to the unit price. (DE 25 at 14). The Court finds that Plaintiff has sufficiently pled actual damages. Throughout the Amended Complaint, Plaintiff consistently alleges that Walmart listed a unit price that did not reflect the price charged at check out, resulting in Walmart receiving extra profits. *See* (Am. Compl. at ¶¶ 24–27, 33–35).

Plaintiff has sufficiently pled a claim under the FDUTPA. Plaintiff alleged Walmart listed sale-priced items with incorrect unit prices. As a result of the listed unit prices, Plaintiff and others similarly situated purchased Weighted Goods from various Walmart Stores. The damages plaintiff and class members suffered are found in the difference between the total prices paid and item costs as calculated by the listed unit prices. It is not unreasonable to this Court that an objectively reasonable purchaser could be deceived by the misstated unit prices, especially in the context of comparison shopping. Therefore, Plaintiff's FDUPTA claim survives dismissal.

### C. Unjust Enrichment

Finally, Walmart argues that Plaintiff's unjust enrichment claim fails for two reasons. First, Walmart contends that Plaintiff cannot assert a claim for unjust enrichment that is based on the same factual predicate as his FDUTPA claim. Second, Walmart contends that Plaintiff's unjust enrichment claim fails because Plaintiff did not allege that he conferred a benefit on Walmart that was inequitably retained. (DE 24 at 17). Because Walmart argues that Plaintiff's unjust enrichment claim fails for the same reasons that his FDUTPA claim fails, the Court need only address the first objection.

"There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." *Zamber v. Am. Airlines, Inc*, 282 F. Supp. 3d 1289, 1301 (S.D. Fla. 2017). This Court has previously stated that, "where the Court is limited to the face of the complaint, Plaintiff's unjust enrichment claim may be appropriately pleaded in the alternative." *Begualg*, 2011 WL 4434891, at *7 (citing Fed. R. Civ. P. 8(d)(2) and (3)). Further, to recover on an unjust enrichment claim, the plaintiff must allege that he has no adequate remedy at law. *Charouhis v. American Automobile Insurance Company*, No. 11-24547-CIV, 2012 WL 13014693, at *5 (S.D. Fla. June 18, 2012).

According to the above authority, Plaintiff's unjust enrichment claim survives. Plaintiff alleges that he overpaid for Weighted Goods, thus conferring a benefit unto Walmart in the form of increased profits. (Am. Compl. at ¶ 33–35). Plaintiff also alleges that Walmart voluntarily accepted overpayment for Weighted Goods. (*Id*.). As alleged by Plaintiff, it would be inequitable to allow Walmart to retain the extra profits received from sales of items listed with incorrect unit

prices. (Am. Compl. at ¶ 71). Further, the Court rejects Walmart's contention that Plaintiff's unjust enrichment claim must fail because it shares a factual predicate with Plaintiff's FDUTPA claim. (DE 24 at 17). As discussed above, Plaintiff can assert a claim for unjust enrichment in the alternative so long as he expressly alleges that the claim is being brought in the alternative and that no adequate legal remedy exists. *Begualg*, 2011 WL 4434891, at *7. Plaintiff satisfied this burden in paragraphs 63 and 74 where he expressly states that the, "[u]njust Enrichment cause of action herein is pled in the alternative to Plaintiff's FDUTPA cause of action alleged above," and later, "Plaintiffs and class members have no adequate remedy at law." (Am. Compl. at ¶¶ 63, 74). At this stage, Plaintiff's cause of action for unjust enrichment survives.

## IV. CONCLUSION

For the foregoing reasons, Walmart's Motion to Dismiss Plaintiff's Amended Complaint (DE 24) is **DENIED**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 29th day of May 2020.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record