UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:19-CV-20592-MARTINEZ/OTAZO-REYES

VASSILIOS KUKORINIS, on behalf of
himself and those similarly situated,

               Plaintiff,

     v.

WALMART, INC., a Delaware
corporation

               Defendant.

PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
INCORPORATED MEMORANDUM OF LAW[1]

     Plaintiff Vassilios Kukorinis ("Plaintiff"), respectfully moves for an order directing class

notice and granting preliminary approval of the proposed class action settlement with Defendant

Walmart, Inc. ("Walmart" or "Defendant") (together, the Plaintiff and Walmart are referred to as

the "Parties"), the terms of which are set forth in the "Settlement Agreement and Release"

("Settlement Agreement"), attached hereto as **Exhibit 1**. In so moving, Plaintiff respectfully

requests the Court: 1) enter the Proposed Order directing dissemination of the Class Notice,

attached as Exhibit D to the Settlement Agreement; 2) appoint Epiq Class Action and Claims

Solutions, Inc., as the Claims Administrator; 3) certify the Settlement Class as defined herein; 4)

appoint Plaintiff as Class Representative for the Settlement Class; 5) appoint Plaintiff's Counsel

---

[1] Walmart does not concede the Plaintiff's allegations, nor does it concede all of the factual
statements set forth herein.  For purposes of this Settlement, however, Walmart does not oppose
the filing of this Motion for Preliminary Approval.

as Settlement Class Counsel; 6) approve the establishment of the Qualified Settlement Fund; and

7) set a hearing for the purpose of deciding whether to grant final approval of the Settlement.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF LITIGATION ........................................................................... 3

        A.      Procedural History ................................................................................ 3

        B.      Information About the Settlement ........................................................ 4

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 5

        A.      The Settlement Class.............................................................................. 5

        B.      The Settlement Benefits ........................................................................ 6

        C.      Business Practice Commitments............................................................ 7

        D.      Proposed Notice Program ..................................................................... 7

        E.      Service Awards and Attorneys' Fees, Costs, and Expenses .................. 8

        F.      Release of Claims .................................................................................. 9

IV.     ARGUMENT ...................................................................................................... 9

        A.      Legal Standards..................................................................................... 9

        B.      The Proposed Nationwide Settlement is Permissible ......................... 10

        C.      The Proposed Settlement is Fair, Reasonable, and Adequate............. 11

                1.      The Settlement Class was Adequately Represented ................. 11

                2.      The Proposed Settlement was Negotiated at Arm's-Length..... 12

                3.      Plaintiff had Sufficient Information to Weigh the Benefits of Settlement 12

                4.      The Settlement Relief is Fair, Reasonable, and Adequate....... 13

                5.      Agreements Required to be Identified by Rule 23(e)(3) ......... 18

                6.      Class Members are Treated Equitably Relative to Each Other................ 18

        D.      Certification of the Settlement Class is Appropriate .......................... 18

                1.      The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3) 19

                        a.      Numerosity..................................................................19

|     |     | b.  | Commonality .................................................................................... | 20 |
|     |     | c.  | Typicality ........................................................................................ | 21 |
|     |     | d.  | Adequacy ........................................................................................ | 21 |
|     |     | e.  | Predominance ................................................................................. | 22 |
|     |     | f.  | Superiority ...................................................................................... | 23 |

E.    The Proposed Class Notice Satisfies Rule 23 ..................................................... 24

F.    The Court Should Approve the Establishment of a Qualified Settlement Fund ... 25

G.    The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines . 25

VI.   CONCLUSION ................................................................................................................ 26

## **TABLE OF AUTHORITIES**

### **Cases**

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004)................................................ 23

*Allen v. Alabama State Bd. of Ed.*, 190 F.R.D. 602 (M.D. Ala. 2000) ......................................... 16

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ..................................................... 19, 22

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.1984) ....................................................... 10, 15

*Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ................................................................. 21

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977).........................................................................15

*David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. April 15, 2010) ......................23

*Deas v. Russell Stover Candies, Inc.*, 2005 WL 8158201 (N.D. Ala. Dec. 22, 2005)..................23

*Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001 ............................................. 19

*Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292 (S.D. Fla. 2007) .................................. 21

*Francisco v. Numismatic Guaranty Corp. of Am.*, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008).. 11

*Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895 (S.D. Fla. May 14, 2007) .................... 9, 12

*Gonzalez v. TCR Sports Brd. Holding, LLP*, 2019 WL 2249941 (S.D. Fla. May 24, 2019).. 13, 18

*Hines v. Widnall*, 334 F.3d 1253 (11th Cir. 2003)....................................................................... 21

*Ibrahim v. Acosta*, 326 F.R.D. 696 (S.D. Fla. 2018) .................................................................. 11

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011)............... 10, 12, 20, 23

*In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323 (S.D. Fla. 2001).................................................. 15

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992)............................................. 10, 15, 16

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983). .................................................................... 21

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ............................................................... 22

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ................................. 21

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997). ...................................................... 20

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)........................... 12, 13, 19, 21

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013)............... 20

*Morgan v. Public Storage*, 301 F.Supp.3d 1237 (S.D. Fla. 2016)................................................. 11

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012)............................ 14

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ....................................... 12, 15, 16

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ................... 13

*Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002) ....................................................... 23

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................................. 10–11

*Turner v. Gen. Elec. Co.*, 2006 WL 2620275 (M.D. Fla. Sept. 13, 2006)................. 10, 11, 15, 16

*Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). ................................. 19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011) ............................................. 22

*Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)............................. 20

*Wolff v. Cash 4 Titles*, 2012 WL 5290155 ................................................................................... 18

## Other Authorities

Attorneys' Fees in Class Actions: 2009-2013 ............................................................................. 18

Manual for Complex Litig. at § 30.42 ....................................................................................... 12

Newberg on Class Actions § 13:10............................................................................................. 9

## Rules

Fed. R. Civ. P 23 .................................................................................................................. *passim*

Fed. R. Evid. 408 ......................................................................................................................1, 4

## I. INTRODUCTION[2]

On February 13, 2019, Plaintiff filed this proposed class action against Walmart concerning the alleged systematic overcharging for beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing and sold accordingly thereto (the "Weighted Goods"). Specifically, from February 13, 2015, to present (the "Class Period"), Plaintiff alleged that Walmart advertised deceptive unit prices for Weighted Goods placed on sale close to their respective expiration dates. It is further alleged that Walmart advertised those Weighted Goods at specific unit sales prices, but upon closer inspection, the final sale prices did not coincide with the unit sales prices based on the weight of the products as represented on the original labels (the "Pricing Practice"). As a result, Walmart consumers did not receive the promised value for the Weighted Goods they purchased.

By way of example, on November 18, 2018, Walmart sold a package of chicken tenders that weighed 1.18 pounds, at a unit price of $5.78 per pound, that originally retailed for $6.82. (Doc. No. 1-1). Walmart provided this information on the original label of the chicken tenders. As the product's expiration date approached, Walmart reduced the unit sale price to $3.77 per pound, which should have resulted in a reduced sale price of $4.45 based on the information on the original label (*i.e.*, 1.18 pounds at $3.77 per pound). (Doc. No. 1-1). Instead, however, the price for those chicken tenders Walmart charged at checkout was $5.93, which resulted in an overcharge of $1.48 more than was justified by the sales label. (Doc. No. 1-1). Through investigation and information exchanged pursuant to Rule 408, Plaintiff and Class Counsel identified numerous examples of the Pricing Practice impacting the final sales price of Weighted

---

[2] Unless otherwise noted, all capitalized terms are defined in the Settlement.

1

Goods in Florida, as well as California, Illinois, Louisiana, and other states nationwide. (Doc. No. 32, ¶ 37, 38). Based on a rigorous analysis of that evidence and information, Class Counsel has determined the average overcharge for the Pricing Practices on the Weighted Goods nationwide was approximately $1.67 for each purchase of the Weighted Goods.

Now, following significant investigation and lengthy arms'-length settlement negotiations spanning months, the Parties have agreed on a classwide nationwide settlement to resolve the claims described above (the "Settlement"). The pertinent terms of the Settlement are as follows:

Walmart will fund a non-reversionary Qualified Settlement Fund of a Floor of at least $4,500,000.00 and, should the Settlement exceed $4,500,000.00, Walmart will fund that Qualified Settlement Fund up to a Ceiling of $9,500,000.00. The Qualified Settlement Fund will be used to pay for: (1) reimbursement of Settlement Class Members' overcharges, including up to $10.00 for sworn attestation of purchases of Weighted Goods, $40.00 for documented purchases of Weighted Goods with receipts or proofs of purchase, but without the packaging to demonstrate the actual amount overcharged, and non-capped amounts for all documented purchases of Weighted Goods with receipts, proofs of purchase, and packaging demonstrating the actual amount of the overcharge, as more fully described in sections 6.3.1.1 through 6.3.1.3 of the Settlement Agreement; (2) notice and claims administration costs; (3) the Service Award; (4) Attorneys' Fees, Costs, and Expenses; and (5) Litigation Expenses. As part of the Settlement, Walmart has also agreed to maintain certain business practice commitments relating to remediation of the pricing and marking of Weighted Goods, which has been provided to Plaintiff's Counsel.

Pursuant to Rule 23(e)(1)(B), an order directing notice to the class is justified where the Court concludes it will likely be able to: (1) approve the Settlement as fair, reasonable, and adequate; and (2) certify the class for purposes of judgment on the Settlement. Accordingly,

Plaintiff requests that the Court permit the issuance of Notice to the Settlement Class of the proposed Settlement, approve the form and manner of Notice to the class, appoint Epiq Class Action and Claims Solutions, Inc., to administer the class notice plan and to fulfill the duties of the Claims Administrator as outlined in the Settlement Agreement, appoint Plaintiff as Settlement Class Representative, appoint Plaintiff's Counsel as Settlement Class Counsel, approve the establishment of the Qualified Settlement Fund and schedule a final approval hearing to determine whether the Settlement should be finally approved.

## II.  SUMMARY OF LITIGATION

### A.  Procedural History

Plaintiff filed this proposed class action against Walmart for the Pricing Practices related to the Weighted Goods, seeking to recover the overpayments for the proposed Florida class during the Class Period. (Doc. No. 1). In pursuit of the proposed Florida class, Plaintiff brought two causes of action: 1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and 2) unjust enrichment. (Doc. No. 1).

On April 8, 2019, Walmart moved to dismiss Plaintiff's Class Action Complaint, which focused on the alleged lack of details concerning the purchases and harm, and also challenged the legal bases of Plaintiff's claims. (Doc. No. 14). Following Walmart's first Motion to Dismiss, Plaintiff amended his complaint on April 22, 2019, to supplement his allegations and detail additional examples of the Pricing Practices for the Weighted Goods, as well as detailing the locations at which the Pricing Practices for the Weighted Goods were observed throughout twelve stores in Florida's Middle and Southern Districts. (Doc. No. 15, ¶¶ 33–36(l)).

On May 17, 2019, Walmart moved to dismiss Plaintiff's Amended Complaint, (Doc. No. 24), to which Plaintiff responded in opposition on May 31, 2019, (Doc. No. 25), and Walmart replied on June 7, 2019. (Doc. No. 26). After fully briefing the dispositive motion, the Parties

began exploring potential resolution of the case, and in September 2019, the Parties formally selected a nationally known and extremely experienced mediator, Michelle Yoshida of Phillips ADR, to mediate the case. (Doc. No. 29). Following two mediations under the guidance of Ms. Yoshida, the Parties were substantially close to settlement of this matter on a nationwide basis, and on May 28, 2020, jointly requested a stay of deadlines to permit the Parties to focus efforts toward resolution. (Doc. No. 29).

On June 1, 2020, the Court denied Walmart's Motion to Dismiss. (Doc. No. 30). On June 8, 2020, anticipating the Settlement presented in this Motion, the Parties stipulated to the amendment of Plaintiff's Amended Complaint to include nationwide allegations pursuant to Federal Rule of Civil Procedure 15(a)(2). (Doc. No. 31). Plaintiff, unopposed by Walmart, now respectfully moves this Court for preliminary approval of the Settlement for the benefit of the nationwide Settlement Class and to disseminate Notice of same.

### B. Information About the Settlement

To help facilitate settlement negotiations, the Parties agreed on and retained Michelle Yoshida of Phillips ADR to conduct a mediation. JAY Decl., ¶ 13. As a condition of mediation, Plaintiff's Counsel sought pertinent information from Walmart regarding the Pricing Practices and Weighted Goods, including sales data for the Weighted Goods during the Class Period. Walmart agreed to provide this information pursuant to Federal Rule of Evidence 408. JAY Decl., ¶ 14.

In advance of the mediation, the Parties briefed their respective positions on the facts, claims, defenses, and assessments of the continued risks of litigation before Ms. Yoshida. JAY Decl., ¶¶ 15, 16. On November 19, 2019, the Parties participated in their first full-day mediation session with Ms. Yoshida that included attorneys and representatives for both Parties on behalf of the proposed Florida class. Following those negotiations, the Parties agreed to exchange additional information and engage in additional discovery to pursue a second mediation on behalf of a

4

nationwide settlement class. On March 18, 2020, the Parties then engaged in the second mediation on behalf of a nationwide class, and participated in additional sessions in the following weeks culminating in the Settlement Agreement currently before this Court for approval. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Following these multiple day-long negotiations, the Parties were able to reach an agreement on the substantive terms of the Settlement. JAY Decl., ¶¶ 17–20. As a condition of Settlement, Walmart produced certain documents responsive to Plaintiff's first discovery requests and provided detailed sales data for Weighted Goods Walmart sold in Florida and nationwide during the Class Period. JAY Decl., ¶¶ 14, 18, 26.

Based on Plaintiff Counsel's independent investigation of the relevant facts and applicable law, experience with other fraudulent, deceptive, and unfair trade practices cases, and the information provided by Walmart, as well as work with an expert in this field, Plaintiff's Counsel has determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. JAY Decl., ¶¶ 26–33, 39. Accordingly, the Parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto. *Ibid*.

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Class

The proposed Settlement Class is defined as all persons who purchased Weighted Goods from Walmart in the United States from February 13, 2015, to the date of publication of notice of settlement (*i.e.*, Court approved settlement) whose Weighted Goods' unit sale price was not

accurately reflected in the final sale price.[3] SA, § 2.29.

### B.  The Settlement Benefits

Walmart has agreed to fund a non-reversionary Qualified Settlement Fund with a minimum of $4,500,000.00 (the "Floor") and a maximum of $9,500,000.00 (the "Ceiling"). SA, §§ 6.1, 6.2.1–6.2.4.3; JAY Decl., ¶ 27. The Qualified Settlement Fund will be used to pay for the reimbursement of purchases of Weighted Goods that were purchased during the Class Period and the reduced sale price was inaccurate based on the Pricing Practices (the "Overpayments"). *See* SA, § 6.3.1–6.3.1.3. Examples of Overpayments that are eligible for reimbursement through the Settlement include:

- Undocumented Overpayments, capped at six (6) purchases with an average Overpayment of $1.67 per purchase, summed to $10.00;
- Overpayments where the Settlement Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, but lacks proof to substantiate the actual amount overcharged, capped at ten (24) purchases with an average Overpayment of $1.67 per purchase, summed to $40.00; and
- Overpayments where the Settlement Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, and the Settlement Class Member has the packaging to demonstrate the actual amount overcharged, the Settlement Class Member will recover the actual amount of Overpayments, without any cap.

The documentation necessary to establish Overpayments is not overly burdensome and can consist of documents such as receipts, product packaging, among other relevant documentation. *See* SA, § 6.3.1–6.3.1.3; JAY Decl., ¶¶ 28–31. If the claim is rejected for any reason, there is also a consumer-friendly process whereby claimants will have the opportunity to cure any deficiencies

---

[3] Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA, § 2.29.

in their submission if the Claims Administrator determines a claim for Overpayments is deficient in whole or part. SA, § 6.3.9; JAY Decl., ¶ 42.

### C.  Business Practice Commitments

In addition to the monetary compensation provided to class members by the Settlement, Walmart has reviewed the examples of the Pricing Practices identified in Plaintiff's Second Amended Complaint and provided during mediation, and committed to the remediation of the Pricing Practices. These commitments will be paid for by Walmart separate and apart from the Qualified Settlement Fund. JAY Decl., ¶ 33.

### D.  Proposed Notice Program

The Parties propose that Epiq Class Action and Claims Solutions, Inc. ("Epiq") be appointed as the Claims Administrator tasked with providing Notice and processing claims. Epiq is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which Plaintiff's Counsel and Epiq believe is an effective program. *See* Declaration of Cameron Azari of Epiq Class Action and Claims Solutions, Inc., In Support of Class Notice and Claims Administration ("Azari Decl."), ¶¶ 2–8, attached as **Exhibit 3**; JAY Decl., ¶ 34.

Subject to Court approval, this Notice program involves utilizes national consumer print publications, internet banner advertising, social media, sponsored search, and a national informational release. Azari Decl., ¶¶ 9–26; JAY Decl., ¶ 34. The approximate cost of notice and administration is $560,000.00, which will be paid from the Qualified Settlement Fund. Azari Decl., ¶ 30; JAY Decl., ¶ 34; SA, § 6.2.3.

Epiq will also establish a Settlement Website in the form agreed to by the Parties and the Court. Azari Decl., ¶ 27; JAY Decl., ¶ 35. In addition to the Notice, the Settlement Website will include information about the Settlement, related case documents, and the Settlement Agreement.

Class members can submit claims electronically on the Settlement Website or by mail. SA, § 2.37; JAY Decl., ¶ 35. The documentation necessary to establish overcharges can be uploaded through the Settlement Website or mailed in paper form. JAY Decl., ¶¶ 28–32, 35. The Claim Form provides examples of documentation that can establish various types of losses. *See* Claim Form, Exhibit C to SA.

The proposed Notice meets the standards of Rule 23(c)(2)(B). *See* Summary Notice, Exhibit A to SA. The Notice uses plain English in an easy-to-read format that concisely explains to Settlement Class Members the nature of the Litigation and their options under the Settlement. It includes information such as the case caption, a description of the Settlement Class, a description of the claims and the history of the Litigation, a description of the Settlement and the claims being released, the names of counsel proposed to be appointed to represent the Settlement Class, a statement of the maximum amount of attorneys' fees, costs, and expenses that Plaintiff's Counsel will seek, the maximum amount Plaintiff will seek for a Service Award at the final approval hearing, a description of the procedures and deadlines for requesting exclusion and objecting to the Settlement, the URL to access the Settlement Website containing relevant case documents, and how to obtain further information. *See* Summary Notice, Exhibit A; JAY Decl., ¶ 35.

**E.  Service Awards and Attorneys' Fees, Costs, and Expenses**

The Qualified Settlement Fund will be used to pay for an award of Attorneys' Fees, Costs, and Expenses and a Service Award payment as approved by the Court. Plaintiff's Counsel will move for an attorneys' fee award not to exceed twenty five percent (25%) of the Qualified Settlement Fund Ceiling and for reimbursement of Litigation Costs not to exceed $100,000. SA, § 6.2.1; JAY Decl., ¶ 37. Plaintiff's Counsel will also move for a Service Award payment for the Plaintiff not to exceed $25,000.00 for his time and effort in pursing this Litigation on behalf of the Settlement Class. SA, § 6.2.2; JAY Decl., ¶ 37. Plaintiff's approval of the Settlement is not

conditioned in any manner on his receiving a Service Award or its amount. JAY Decl., ¶ 37. Plaintiff's Counsel will file the motion for Attorneys' Fees, Costs, and Expenses, and a Service Award payment no later than 21 days before the Opt-Out and Objection Deadlines. Walmart takes no position on the amounts to be sought for Attorneys' Fees, Costs, and Expenses or for a Service Award, but does not object to reasonable awards by the Court. SA, §§ 6.2.1–6.2.2; JAY Decl., ¶ 37.

### F.  Release of Claims

In exchange for the benefits provided under the Settlement, Settlement Class Members will release any legal claims that may arise from or relate to the facts alleged in the Second Amended Complaint, as specified in Section 13 of the Settlement Agreement. SA, §§ 2.31, 13.1–13.5; JAY Decl., ¶ 38.

## IV. ARGUMENT

### A.  Legal Standards

Approval of a proposed settlement is a two-step process. First, the court decides whether the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007), to decide "whether to direct notice … to the class, invite the class's reaction, and schedule a final fairness hearing." 4 Newberg on Class Actions § 13:10 (5th ed. 2015). Second, at the final approval hearing, the court decides if the settlement is fair, reasonable, and adequate. *Id*.

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it is "more likely than not" to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, a court should consider whether: (1) the class was adequately represented; (2) the

settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. *Id*. In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit may also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*. (citations omitted).

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co*., 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992).

**B. The Proposed Nationwide Settlement is Permissible**

On June 9, 2020, this Court inquired whether a tort-based claim with a Florida-based plaintiff is certifiable for settlement purposes on a nationwide basis. (Doc. No. 35). This Court is well within its discretion to do so. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1331 (S.D. Fla. 2011) (King, J.) (certifying nationwide class action settlement based on common law and state-based consumer protection laws). *Sullivan v. DB Investments,*

*Inc.*, 667 F.3d 273, at 310 (3d Cir. 2011) (noting that "were [courts] to mandate that a class include only those alleging 'colorable' claims, [courts] would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action."); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1243 (S.D. Fla. 2016) (approving nationwide settlement following decertification of a contested nationwide class leaving only proposed FDUTPA-based class for trial) (Ungaro, J.); *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, *3 (S.D. Fla. Jan. 31, 2008) (certifying nationwide settlement class of coin purchasers for alleged misrepresentations from coin company based on Florida consumer protection law and common law) (Martinez, J.); *Turner*, 2006 WL 262027, *1 (approving nationwide settlement class of appliance purchasers based on warranty, negligence, and unjust enrichment claims) (Steele, J.).

## C.  The Proposed Settlement is Fair, Reasonable, and Adequate

### 1.  The Settlement Class was Adequately Represented

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted). Here, Plaintiff has the same interests as Settlement Class Members as he is asserting the same claims and shares the same injuries. Further, the record demonstrates that Plaintiff's Counsel worked diligently to bring this Litigation to resolution, including securing meaningful monetary benefits for the Settlement Class. Finally, as supported by the declaration of John Yanchunis, Plaintiff's Counsel are experienced in the area of class litigation, and as the Court may recall, Mr. Yanchunis served as co-lead counsel in the resolution

of the *Fresco* litigation in 2008, where this Court approved a class settlement of claims under the Driver's Protection Privacy Act. *See* JAY Decl., ¶¶ 4, 15–26, 31, 32, 39, 42.

### 2. The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Litigation, assisted by an experienced mediator. JAY Decl., ¶¶ 15–17. These circumstances weigh in favor of approval. *See, e.g., In re Checking*, 275 F.R.D. at 662 (approving settlement where it "was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also* Manual for Complex Litig. at § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal marks omitted).

Additionally, the Parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for approval. JAY Decl., ¶¶ 17–24. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. JAY Decl., ¶ 17.

### 3. Plaintiff had Sufficient Information to Weigh the Benefits of Settlement

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) (citations omitted). In addition, "[e]arly settlements are

favored" such that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted).

While the Parties settled somewhat early in the litigation, the Parties had sufficient information to adequately evaluate the merits of the case. The Parties exchanged significant information in conjunction with settlement. After an exchange of discovery requests, the Parties met, conferred, and agreed upon the scope of information Walmart would produce concerning sales data for Weighted Goods in Florida and nationwide, which were reviewed by Plaintiff's Counsel and their expert in conjunction with the Settlement. JAY Decl., ¶¶ 11–16, 18.

Additionally, Plaintiff's Counsel had information developed during their independent investigation, and we relied on our experience presenting expert evidence and litigating the key legal issues in other mislabeling and products cases to assist in evaluating the merits of this case. JAY Decl., ¶¶ 11–16, 18, 21, 22, 26, 39. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiff had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 4. The Settlement Relief is Fair, Reasonable, and Adequate

In terms of relief offered, this Settlement is comprehensive, and the specific benefits are real and substantive for Settlement Class Members who otherwise would have no avenue for recovery against Walmart for the Pricing Practices, including full refund for the amount of Weighted Goods purchased if the Settlement Class Member can demonstrate with receipts, proof

of purchase, packaging labels, and other documentation the amount the Settlement Class Member was overcharged for the Weighted Goods. If the Settlement Class Member has documentation to demonstrate purchases of the Weighted Goods, but does not have the packaging to demonstrate the amount overcharged, that Settlement Class Member will be entitled to recover up to $40.00. If the Settlement Class Member has no documentation, but attests to purchasing Weighted Goods during the Class Period, that Settlement Class Member will be entitled to recover up to $10.00.

For example, in the case of the Plaintiff's allegations in the Second Amended Complaint, because he has receipts, proof of purchase, and packaging to demonstrate the exact amount overcharged, he would be entitled to recover all monies he was overcharged for his purchases of Weighted Goods. If the Plaintiff did not have the packaging, but had his receipts, he would be entitled to recover $1.67 (the average overcharge revealed from the investigation) for each purchase of a Weighted Good during the Class Period, capped at 24 purchases (*i.e.*, a total of $40.00). Finally, if the Plaintiff had no documentation, but attested to the number of purchases he made during the Class Period, he would be entitled to recover $1.67 for each purchase of a Weighted Good during the Class Period, capped at 6 purchases (*i.e.*, a total of $10.00).

Plaintiff's Counsel assert that the relief is fair, reasonable, adequate, and superior to the relief individuals could obtain in litigation; this relief is based on documentary evidence and designed to fairly compensate Settlement Class Members without requiring cumbersome production of information Settlement Class Members may not have retained due to the nature of these types of purchases. JAY Decl., ¶ 28. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

14

### a. The Risks, Costs, and Delay of Continued Litigation

The costs, risks, and delay of trial and appeal weigh in favor of settlement approval. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims indeed survived Walmart's Motion to Dismiss, (Doc. No. 30), but would need to succeed at class certification—a risky and uncertain aspect of this particular litigation. JAY Decl., ¶¶ 25, 39, 40.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493; *Bennett*, 737 F.2d at 986 (approval of class action settlement should be granted so long as the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."). The Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id.* at 986. "[A]bsent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own judgment for that of counsel," and may rely on the opinions and representations of experienced class counsel in approving a settlement. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement." *Perez*, 501 F.Supp.2d at 1380 (Moreno, J.) (citing *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1330–31 (S.D. Fla. 2001)).

The risk involved is highlighted by the fact that ascertainability in this case would prove challenging and require complex evidence and analysis that would engulf the litigation expenses and likely eclipse the amount recovered on behalf of the class. *See, e.g.*, *Turner*, 2006 WL 2620275, at *2 (holding that settlements have "special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]").

15

Although Plaintiff survived Walmart's Motion to Dismiss, Plaintiff and the Settlement Class still face risks in defeating summary judgment and certifying a class. *Id.*. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493 (holding that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits"). Indeed, "the question is not 'whether the proposed [settlement] is the best possible deal,' but whether it is 'at a minimum, fair, adequate and reasonable.'" *Allen v. Alabama State Bd. Of Ed.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (citation omitted); *see Perez*, 501 F.Supp.2d at 1380 (evaluating risk in favor of settlement).

The delay attendant in continuing to litigate this case also favors approval of the Settlement. This Litigation has been pending more than a year. Even before the COVID-19 pandemic, which has and will likely continue to cause significant delays across federal civil cases, many more months and significant additional costs would be required for the Parties and the Court to complete the pre-trial proceedings, summary judgment and *Daubert* motions, and class certification. After trial, the Parties could appeal the Court's orders on that motions practice, which could take years to complete. Assuming the Parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court or on appeal. JAY Decl., ¶ 25, 39, 40.

By contrast, the proposed Settlement provides the Settlement Class with substantial, guaranteed relief. A relatively early settlement is especially warranted because Settlement Class Members benefit *immediately* from refunds and payments to be applied as they see fit for any purpose; the relief in this case does not involve coupons, gift cards, or any other form of payment that would restrict the manner in which the Settlement Class Member would enjoy the benefits. JAY Decl., ¶¶ 27–32. At trial, there is a possibility that only class members who already experienced damages in the form of monetary losses would be able to recover. By contrast, this

Settlement provides benefits to the *entire* class, including not only reimbursement for monetary damages and time, but also benefits like business practice commitments. JAY Decl., ¶ 27–32.

Thus, the cost, risks, and delay of trial and appeal support a finding that this Court will likely approve the Settlement.

### b. The Method of Distributing Relief is Effective

The settlement distribution process, developed with Plaintiff's Counsel's knowledge and experience overseeing the administration of myriad settlements, will be efficient and effective. Settlement Class Members can easily file claims for the amounts they believe they were overcharged or opt for relief based on the number of purchases they made either with documentary proof or based on a sworn attestation thereof. JAY Decl., ¶¶ 27–32. Documentation requirements are not onerous, and not even required for some benefits; and, there is a consumer-friendly dispute process if a claim is denied in whole or part. JAY Decl., ¶¶ 27–32; Azari Decl., ¶¶ 19, 27.

### c. The Terms Relating to Attorneys' Fees, Costs, and Expenses are Reasonable

Plaintiff's Counsel will separately move for attorneys' fees in an amount not to exceed $2,375,000.00, or twenty-five percent (25%), of the Settlement Fund Ceiling and reimbursement of Litigation Expenses not to exceed $100,000. JAY Decl., ¶ 37. Pursuant to the Settlement Agreement, Plaintiff's Counsel will file their motion for attorneys' fees and expenses at least 21 days before the Opt-Out and Objection Deadlines and promptly post the filing on the Settlement Website so that Settlement Class Members will have the opportunity to present their views on the request. SA, §§ 2.37, 6.3.2, 6.3.4, 10.2.1. Payment for these fees, costs, and expenses will not be issued until after the Effective Date of Settlement. SA, § 6.2.1, 11.1.2.

"Although there is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee, an award of one-third of the common fund is consistent with the

trend in this Circuit." *Gonzalez*, 2019 WL 2249941, at *6 (internal quotations omitted and citing cases); *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5–6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); Eisenberg, *et al*., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in the 11th Circuit is 33%). Here, Class Counsel are not seeking the full 33% to which they could be entitled under 11th Circuit law.

While Plaintiff's Counsel will provide a more thorough analysis of the reasonableness of its forthcoming motion for attorneys' fees, costs, and expenses, at this stage, the Court can conclude that it is likely to approve the Settlement for purposes of sending Notice to the Settlement Class, even if it has not yet made a final determination as to attorneys' fees, costs, and expenses, especially here where the proposed attorneys' fees for which Class Counsel will petition are no greater than 25%—well below the presumptive 33% in the 11th Circuit.

### 5.  Agreements Required to be Identified by Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the Parties, except as set forth in the Settlement Agreement. JAY Dec., ¶ 37.

### 6.  Class Members are Treated Equitably Relative to Each Other

The last requirement under Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably relative to one another because all are eligible to receive reimbursement based on their damages, not on any unequitable basis. JAY Dec., ¶¶ 27–32.

### D.  Certification of the Settlement Class is Appropriate

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed

settlement. Here, the Settlement Class meets the requirements for certification under Rule 23(b)(3), so the Court should conclude that issuing notice is justified.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma*, 406 F. Supp. 2d at 1313–14 (quotations omitted). The Supreme Court has held that because a class settlement obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, the settlement context demands "undiluted, even heightened, attention" to "unwarranted or overbroad class definitions." *Id*. Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Because this case meets all of the requirements of Rule 23(a) and (b)(3), as set forth below, certification for settlement purposes is appropriate.

## 1.  The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)

### a.  Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,'

Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, the Settlement Class is all persons who purchased Weighted Goods from Walmart in the United States from February 13, 2015, to present (or the date the Court approves this Settlement), whose Weighted Goods' unit sale price was not accurately reflected in the final sale price. Hundreds of thousands, if not millions, of consumers over this more than five-year period would potentially fall into the Settlement Class. Numerosity is thus easily satisfied.

### b. Commonality

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking*, 275 F.R.D. at 659. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because Settlement Class Members are joined by the common questions of law and fact that arise from the same behavior—the Pricing Practice related to the Weighted Goods. As Plaintiff alleged, the critical issues posed by this action include: 1) whether the Pricing Practices on Weighted Goods resulted in Walmart being unjustly enriched; and 2) whether Plaintiff and Settlement Class Members sustained damages. These common issues aggregate toward the singular conduct of Walmart with respect to the Pricing Practice. *Perez*, 501 F.Supp.2d at 1373 (finding that proposed settlement class certified under Rule 23(b)(3) had common questions of law and fact predominated over any

individualized inquiries for settlement class members); *Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292, 1319 (S.D. Fla. 2007) (same); *Lipuma*, 406 F.Supp.2d at 1314 (same).

### c.  Typicality

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.") (internal quotations omitted). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement. Specifically, Plaintiff's claims are typical of those of the Settlement Class because they arise from the same Pricing Practice and from the same legal duty Walmart had to charge the proper amount for the Weighted Goods that Plaintiff and the Settlement Class Members purchased across the country, comprising a clear nexus between Plaintiff's claims and those of the Settlement Class Members. *Hines*, 334 F.3d at 1256. Typicality is thus satisfied.

### d.  Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representatives' counsel "must be qualified, experienced, and generally able to conduct the

litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. As noted above, the Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. JAY Decl., ¶ 44. Plaintiff purchased the Weighted Goods from Walmart and was harmed because he was overcharged for the Weighted Goods. Additionally, Plaintiff has vigorously prosecuted this Litigation for the benefit of all Settlement Class Members by filing the underlying action, reviewing pleadings, conferring with Plaintiff's Counsel, attending mediation, and providing input in crafting and approving the Settlement. *Id.*

In addition, Plaintiff's Counsel are qualified to represent the Settlement Class. JAY Decl., ¶¶ 4, 15–26, 31, 32, 39, 42. In this case, we have spent considerable time investigating Settlement Class Members' injuries and claims and negotiating a well-informed Settlement on behalf of the Settlement Class. Accordingly, the Rule 23(a) prerequisites have been met.

### e.   Predominance

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011), and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

In this case, the key predominating questions are whether Walmart had a duty to charge Plaintiff and Settlement Class Members the amount for the Weighted Goods as reflected in the reduced unit price and weight, and whether Walmart breached that duty. The many common questions of fact and law that arise from Walmart's conduct predominate over any individualized issues. *See, e.g.*, *Deas v. Russell Stover Candies, Inc.*, No. CV-04-C-0491-S, 2005 WL 8158201,

*3 (N.D. Ala. Dec. 22, 2005) (common issues concerning mislabeling predominate over individualized inquires). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, *3 (S.D. Fla. April 15, 2010) (Gold, J.). Accordingly, the common questions of fact and law that arise from Walmart's conduct predominate over any individualized issues.

### f.  Superiority

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. See Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this Litigation that any Settlement Class Member wishes to litigate their claims individually, and there are no other cases that have been filed. And with the high cost of litigating a case like this—requiring expert investigation and testimony to prove how and why the Pricing Practices occurred and resulted in overpayment for the Weighted Goods in small amounts sometimes fewer than one dollar, individualized litigation is impracticable. *See In re Checking*, 286 F.R.D. at 659 ("The class action fills an essential role when the [plaintiffs] would not have the

incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

Accordingly, resolution of this Litigation through a class action settlement in this Court will achieve significant economies for the Parties, the proposed Settlement Class, and the Court, satisfying the superiority requirement. The Court respectfully should certify the Settlement Class, as the superiority requirement, along with all other requirements Rule 23(a) and (b), is satisfied.

### E. The Proposed Class Notice Satisfies Rule 23

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Summary Notice (Exhibit A to the Settlement Agreement) and Class Notice (Exhibit B to the Settlement Agreement) readily meet these requirements, and the Notice program, using multiple modes of providing notice to the class via national consumer print publications, internet banner advertising, social media, sponsored search, and a national information release, constitutes the best practicable notice under the circumstances of this case. The Notice uses "plain English" to inform Settlement Class Members of, among other things, the nature of the class claims, the essential terms of the Settlement, the date, time and place of the Final Approval Hearing, how to object or opt-out of the Settlement, and the binding effect of the Settlement on Settlement Class Members. The Notice also contains information regarding Plaintiff's Counsel's request for fees and expenses, and the proposed Service Award to Plaintiff. Thus, the Notice satisfies the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently

informs Settlement Class Members of the terms of the proposed Settlement and their available options, and is the best notice that is practicable under the circumstances.

**F.  The Court Should Approve the Establishment of a Qualified Settlement Fund**

Establishing a Qualified Settlement Fund to receive and hold the settlement funds, and to distribute the funds according to the terms of the SA and under the administration of the Claims Administrator, meets the criteria under the regulations and also would serve the best interests of the Parties.  The Qualified Settlement Fund will be a segregated bank account opened at a financial institution mutually agreed by the Parties.  The Qualified Settlement Fund will receive the settlement funds from Walmart and will hold that sum, and any earnings thereon, until the Claims Administrator has completed all administration of such funds and income thereon, as well as disbursements to Settlement Class Members, Plaintiff and Settlement Class Counsel, and payment of taxes and administrative costs, as more fully set forth in Section 11 of the SA and subject to further approvals of this Court, if required.

**G.  The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines**

In connection with the preliminary approval of the Settlement, Plaintiff proposes that the Court adopt the following schedule, which is set forth in the accompanying proposed order:

| Event | Timing |
|---|---|
| Deadline for Walmart to disseminate CAFA notices | [10 days from the filing of this motion] |
| Notice Deadline | [30 days following Preliminary Approval Order] |
| Deadline for Plaintiff's Counsel to file motion for attorneys' fees, costs, expenses and service award | [21 days before Objection and Opt-Out Deadlines] |
| Objection Deadline | [40 days after Notice Deadline] |
| Opt-Out Deadline | [40 days after Notice Deadline] |
| Deadline for Plaintiff to file motion for final approval of settlement and responses to any timely submitted Settlement Class Member objections, which shall | [21 days prior to Final Approval hearing] |

| include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | |
| --- | --- |
| Claims Deadline | [100 days after Notice Deadline] |
| Final Approval Hearing | No earlier than 100 days after entry of the Preliminary Approval Order |

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter the accompanying Proposed Order directing dissemination of Notice, appointing Epiq Class Action and Claims Solutions, Inc., as Claims Administrator, certifying the Settlement Class for settlement purposes, appointing Plaintiff as Class Representative for the Settlement Class, appointing Plaintiff's Counsel as Settlement Class Counsel, approving the establishment of the Qualified Settlement Fund and setting a hearing for the purpose of deciding whether to grant final approval of the Settlement.

Dated: August 7, 2020                    Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

/s/ John A. Yanchunis
John A. Yanchunis (Bar No. 324681)
Ryan McGee (Bar No. 64957)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on any and all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *John A. Yanchunis*

27