**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:19-CV-20592-MARTINEZ/OTAZO-REYES**

VASSILIOS KUKORINIS, on behalf of himself and those similarly situated,

        Plaintiff,

v.

WALMART, INC., a Delaware corporation

        Defendant.

**PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND EXPENSES AND SUPPORTING MEMORANDUM OF LAW**

After an extensive and vigorous investigation, successfully surviving dismissal, and meritoriously negotiating a Settlement affording benefits worth up to the actual amount of a Class Member's overpayment to Walmart, Plaintiff requests the Court award to Plaintiff's Counsel attorneys' fees of $2,375,000.00, or 25 percent of the value of the Qualified Settlement Fund Ceiling (*i.e.*, $9,500,000.00), and for reimbursement of Litigation Costs of $61,961.33, which is $38,038.67 less than the permissible $100,000.00 under the Settlement.[1]

Plaintiff does not at present seek a Service Award. Should the law change as it concerns *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sep. 17, 2020), Plaintiff would request permission of the Court to then consider a Service Award.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release ("Settlement"), which was previously filed. (Doc. 48-1).

1

The requested relief is demonstrably reasonable and appropriate and amply supported by the record.[2] The Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein—negotiated over a six-month period, including two day-long mediation sessions. This factor alone merits great weight and consideration by the Court in ruling on Plaintiff's motion. Further, Plaintiff seeks a fee award that is eminently reasonable under the controlling "percentage of the benefit" fee-assessment method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991). ("There is no hard and fast rule mandating a certain percentage[.]"). *See Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291, 1292–98 (11th Circ. 1999) (33.33% award was appropriate); *Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) ("[A] fee award of 33% ... is consistent with attorneys' fees awards in federal class actions in [the Eleventh] Circuit."). Plaintiff also seeks a cost and expense reimbursement of $61,961.33, comprising out-of-pocket costs and expenses reasonably advanced by Class Counsel in prosecuting this action to final and successful resolution, as well as future anticipated costs. Finally, although *Johnson* currently forbids service awards in the Eleventh Circuit, Plaintiff does not currently seek a service award; however, in this case in the event *Johnson* is vacated and considered *en banc*, Plaintiff would then seek a service award.

## I.     INTRODUCTION

On February 13, 2019, Plaintiff filed this proposed class action against Walmart

---

[2] Plaintiff incorporates by reference in this motion Plaintiff's Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion"), (Doc. No. 41), and the Court's granting same. (Doc. No. 42).

concerning the alleged systematic overcharging for beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing and sold accordingly thereto (the "Weighted Goods"). Specifically, from February 13, 2015, to present (the "Class Period"), Plaintiff alleged that Walmart advertised deceptive unit prices for Weighted Goods placed on sale close to their respective expiration dates. It is further alleged that Walmart advertised those Weighted Goods at specific unit sales prices, but upon closer inspection, the final sale prices did not coincide with the unit sales prices based on the weight of the products as represented on the original labels (the "Pricing Practice"). As a result, Walmart consumers did not receive the promised value for the Weighted Goods they purchased.

By way of example, on November 18, 2018, Walmart sold a package of chicken tenders that weighed 1.18 pounds, at a unit price of $5.78 per pound, that originally retailed for $6.82. (Doc. No. 1-1). Walmart provided this information on the original label of the chicken tenders. As the product's expiration date approached, Walmart reduced the unit sale price to $3.77 per pound, which should have resulted in a reduced sale price of $4.45 based on the information on the original label (*i.e.*, 1.18 pounds at $3.77 per pound). (Doc. No. 1-1). Instead, however, the price for those chicken tenders Walmart charged at checkout was $5.93, which resulted in an overcharge of $1.48 more than was justified by the sales label. (Doc. No. 1-1). Through investigation and information exchanged pursuant to Rule 408, Plaintiff and Class Counsel identified numerous examples of the Pricing Practice impacting the final sales price of Weighted Goods in Florida, as well as California, Illinois, Louisiana, and other states nationwide. (Doc. No. 32, ¶ 37, 38). Based on a rigorous analysis of that evidence and information, Class Counsel has determined the average overcharge for the

3

Pricing Practices on the Weighted Goods nationwide was approximately $1.67 for each purchase of the Weighted Goods.

On May 17, 2019, Walmart moved to dismiss Plaintiff's Amended Complaint, (Doc. No. 24), to which Plaintiff responded in opposition on May 31, 2019, (Doc. No. 25), and Walmart replied on June 7, 2019. (Doc. No. 26). After fully briefing the dispositive motion, the Parties began exploring potential resolution of the case, and in September 2019, the Parties formally selected a nationally known and experienced mediator, Michelle Yoshida of Phillips ADR, to mediate the case. (Doc. No. 29). Following two day-long mediations under the guidance of Ms. Yoshida, the Parties were substantially close to settlement of this matter on a nationwide basis, and on May 28, 2020, jointly requested a stay of deadlines to permit the Parties to focus efforts on resolution. (Doc. No. 29).

On June 1, 2020, the Court denied Walmart's Motion to Dismiss. (Doc. No. 30). On June 8, 2020, anticipating the Settlement presented in this Motion, the Parties stipulated to the amendment of Plaintiff's Amended Complaint to include nationwide allegations pursuant to Federal Rule of Civil Procedure 15(a)(2). (Doc. No. 31). Plaintiff, unopposed by Walmart, now respectfully moves this Court to award to Plaintiff's Counsel attorneys' fees of $2,375,000.00, or 25 percent of the value of the Qualified Settlement Fund Ceiling (*i.e.*, $9,500,000.00), and for reimbursement of Litigation Costs of $61,961.33.

Following significant investigation and lengthy arms'-length settlement negotiations spanning months, the Parties agreed on a classwide nationwide settlement to resolve the claims described above (the "Settlement"), which the Court preliminarily approved the Settlement on August 26, 2020. (Doc. No. 26). The pertinent terms of the Settlement are as

4

follows:

Walmart will fund a non-reversionary Qualified Settlement Fund of a Floor of at least $4,500,000.00 and, should the Settlement exceed $4,500,000.00, Walmart will fund that Qualified Settlement Fund up to a Ceiling of $9,500,000.00. The Qualified Settlement Fund will be used to pay for: (1) reimbursement of Settlement Class Members' overcharges, including up to $10.00 for sworn attestation of purchases of Weighted Goods, $40.00 for documented purchases of Weighted Goods with receipts or proofs of purchase, but without the packaging to demonstrate the actual amount overcharged, and non-capped amounts for all documented purchases of Weighted Goods with receipts, proofs of purchase, and packaging demonstrating the actual amount of the overcharge, as more fully described in sections 6.3.1.1 through 6.3.1.3 of the Settlement Agreement; (2) notice and claims administration costs; (3) the Service Award;[3] (4) Attorneys' Fees, Costs, and Expenses; and (5) Litigation Expenses. As part of the Settlement, Walmart has also agreed to maintain certain business practice commitments relating to remediation of the pricing and marking of Weighted Goods, which has been provided to Plaintiff's Counsel.

At all times the parties' negotiations were adversarial, non-collusive, and conducted at arm's length, and with an experienced and well-respected mediator engaged at all times.

---

[3] Subject to Plaintiff's prior arguments concerning *Johnson*.

## II. ARGUMENT

### A. The Court Should Afford Substantial Weight to the Settlement on Fees and Costs

The Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein. The Settlement provides that Class Counsel will apply to the Court for a fee and cost award of up to $2,375,000.00, representing 25 percent of the monetary value of the Qualified Settlement Fund Ceiling of $9,500,000.00, for their fees, as well as $61,961.33 for their costs and expenses. *See* SA, § 6.2.1. Walmart takes no position on the amounts to be sought in this motion, but does not object to reasonable awards the Court may grant, and the Settlement and its benefits to the Settlement Class expressly remains in full force and effect regardless of whether, or to what extent, the Court grants Plaintiff's application for fees, costs, and expenses. SA § 6.2.1.

The Court must independently evaluate the requested fees, costs, and expenses and is certainly not bound by the parties' agreement in the Settlement regarding fees, costs, and expenses. The Settlement is entitled to great weight, however, because it resulted from adversarial negotiations after the merits were decided. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816 at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 at *34 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). As has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive. Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.

> Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944 at *28 (M.D. Tenn. Aug. 11, 1999) (internal citations omitted); *see also, e.g.*, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Citing *Manners* with approval, a court in this Circuit held:

> The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 28582 at *6–7 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Manners v. Am. Gen. Life Ins. Co.*, No. 3–98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. August 11, 1999).

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (Corrigan, J.) (*Hinson I*).

Practical and prudential considerations warrant judicial deference toward the Settlement in this case. First, there is no one reasonable fee or cost amount mandated by applicable law. The notion of reasonableness encompasses a range of amounts about which there can be a legitimate difference of opinion. As long as the requested fee is one that the Court agrees falls within the range of reasonableness, it should be approved. Further, the competing pressures on the parties served as a substitute for the incentives that normally drive private fee negotiations, ensuring that the agreed-upon fee did not constitute a windfall. *See*

7

*generally In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572–73 (7th Cir. 1992); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974).

### B.  The Requested Fee is Clearly Reasonable under the Common Fund Doctrine

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I,* 946 F.2d at 774–75. Courts have a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), and any other "unique" circumstances. *Camden 1* at 775. In *Camden I,* the Eleventh Circuit recognized that a fee award of 50 percent is the upper limit, and that the majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774–75. As stated in *Camden I*, unless specific circumstances suggest otherwise, 25 percent serves as the default "benchmark." *Id.* at 774–75; *accord In re Rayonier Inc. Securities Litig.*, 3:14-cv-1397-J-32JBT, 2017 WL 454852, at *1 (M.D. Fla. October 10, 2017); *Hinson I*, 2012 WL 12952592, at *2.

For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit is considered. *Camden I*, 946 F.2d at 771. Here, Class Counsel seek a fee and cost award of $2,375,000.00, which is

25 percent of the common fund—a fee award clearly within the bounds of reasonableness in this Circuit. Class Counsel also seek reimbursement of their litigation costs and expenses, totaling $61,961.33, which is $38,038.67 less than the Settlement permits. SA, § 6.2.1.

### C. The *Camden I* Factors Clearly Support the Requested Fee

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (Middlebrooks, J.) (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular

case." *Id*. (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

### 1. Time and Labor Involved

As recounted above, and as set forth in the supporting declarations herewith of John A. Yanchunis (**Exhibit 1**) ("Yanchunis Decl."), Class Counsel expended significant effort to achieve the settlement for the Class. Class Counsel spent considerable time investigating and litigated this action vigorously. They have engaged in extensive motion practice and exchanged productions of documents and data relevant to the litigation. *Id.* Class Counsel reached a hard-fought settlement after two full-day mediations and numerous subsequent settlement discussions, all conducted by an experienced and well-respected mediator. *Id*.

In performing the aforementioned work on behalf of the Class, Class Counsel spent over 595 hours of attorney and paralegal time, and reasonably anticipates at least another 675 hours of attorney and paralegal time to bring this Settlement to finality through final approval, objections, appeals, and other litigation, without any assurance that the extraordinary commitment of time and effort to this case would result in payment of a fee. Class Counsel should be justly compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its persistence and efficiency in achieving a positive result.

### 2. The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys

This factor strongly favors an award of the fees requested. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at

*15 (S.D. Fla. Jan. 31, 2008). That this dispute presents complex issues as outlined above is evidenced not only by the history of the case, but also by the caliber of lawyers representing the parties. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson.*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested …. In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011) (quotations and citations omitted). Here, Class Counsel enjoy a strong reputation in the area of class action and consumer-protection litigation. Yanchunis Decl., ¶¶ 2–7. Class Counsel have successfully litigated and settled similar cases across the country, and, in this case, have been challenged by highly experienced and skilled counsel who are equal to the task and who deployed very substantial resources on Defendant's behalf. Yanchunis Decl., ¶¶ 2–17.

### 3. The Claims Against Defendant Entailed Considerable Risk

Prosecuting these claims was a significant undertaking. Potential legal hurdles such as a challenging road toward ascertainability requiring complex evidence and analysis that would engulf the litigation expenses and likely eclipse the amount recovered on behalf of the Settlement Class, Class Counsel were able to secure real, tangible, and immediate benefits for

Class Members. *See, e.g.*, *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (holding that settlements have "special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]"). Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (holding that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits"). Settlement Class Members need not submit complicated claim forms or provide heavy documentation to obtain relief. Indeed, "the question is not 'whether the proposed [settlement] is the best possible deal,' but whether it is 'at a minimum, fair, adequate and reasonable.'" *Allen v. Alabama State Bd. Of Ed.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (citation omitted); *see Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) (evaluating risk in favor of settlement). "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336.

Here, Walmart disputes the allegations of the Litigation and strongly opposes the contention that Plaintiff could certify a class and succeed at trial. Accordingly, this factor also militates in favor of awarding Class Counsel the requested fee amount.

### 4. Class Counsel Assumed Substantial Risk in Pursuing this Action on a Pure Contingency Basis, and Were Precluded from Other Employment

Class Counsel prosecuted this case entirely on a contingent fee basis. Yanchunis Decl., ¶ 17. As such, they assumed a significant risk of nonpayment or underpayment. Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988) (King, J.)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Ala. State Bd. of Ed.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986). As Judge King observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Class Counsel spent substantial time litigating this case that they could not spend on other matters. Thus, consideration of this factor also justifies the request.

### 5. The Fee Requested Comports with Customary Fees Awarded in Similar Cases

An award of 25 percent of the monetary value of the common fund is well within the benchmark and growing trend in this Circuit.[4] It is also consistent with fee awards in other data breach cases in this Circuit. As one court observed, "[a] fee of 33% is at the market rate of what the Class could have negotiated with counsel in this as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) (Ungaro, J.).

Accordingly, Class Counsel's requested fee award of $2,375,000.00 or 25 percent of the monetary value of the common fund, as well as $61,961.33 in costs, is appropriate.

---

[4] *See Waters v. Intern. Precious Metals Corp., supra* at 1292–98 (11th Circ. 1999) (affirming fee award of 33.33% of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8–10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) after expending significant time and resources on a purely contingent basis under the common fund theory).

### 6. The Remaining *Camden I* and Other Factors Favor Approval Of The Fee Requested

The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be maintained to ensure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1368.[5]

### D. A Lodestar Analysis Confirms the Reasonableness of the Requested Fee

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking*, 830 F. Supp. 2d at 1362–63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees …without discussing lodestar at all") (internal marks omitted). Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *In re Sunbeam*, 176 F. Supp. 2d at 1336).

---

[5] Plaintiffs will address any objections lodged in this case in due course and in accord with the timeline set by the Court.

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined…the court must next consider the necessity of an adjustment for results obtained." *Id*. at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id*. (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). "This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate." *Id*. "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id*.

The following chart summarizes the time and hourly rates entered by attorneys and the professional staff of the firm in this matter:

| MORGAN & MORGAN COMPLEX LITIGATION GROUP | | | |
|---|---|---|---|
| **Name** | **Hourly Rate** | **Hours Billed** | **Total** |
| John Yanchunis, Lead Partner | $950 | 91.2 | $86,640.00 |
| Ryan J. McGee | $742 | 337.3 | $250,276.60 |
| Jean Sutton Martin | $894 | 1.4 | $1,251.60 |
| Patrick Barthle | $658 | 5.4 | $3,553.20 |
| Marcio Valladares | $864 | 18.5 | $15,984.00 |
| David Reign, Investigator | $300 | 56.4 | $16,920.00 |
| Lee Walters, Investigator | $300 | 52.5 | $15,750.00 |

| Andrea Carbone, Paralegal | $202 | 18 | $3,636.00 |
| --- | --- | --- | --- |
| Lorraine Carreiro, Paralegal | $202 | 8.9 | $1,797.80 |
| Jennifer Cabezas, Paralegal | $202 | 4.9 | $989.80 |
| **Total** | | **595** | **$397,128.00** |

Here, Class Counsel have been prosecuting the claims against Defendant, they have expended 595 hours. Yanchunis Decl. ¶ 18. At their current hourly rates, the lodestar is $397,128.00. Yanchunis Decl. ¶ 18. Of course, as this this Court knows, Class Counsel will continue to invest significant time in this matter through the settlement administration process, to respond to objections, to prepare for and attend the final hearing to obtain final approval, and to defend the Court's Final Judgment on any subsequent appeals. Yanchunis Decl., ¶ 21. The additional time is estimated at approximately 675, at a blended rate of $650 per hour, for an additional sum of attorneys' fees totaling $438,750.00. Yanchunis Decl., ¶ 21. This would bring the total amount of attorneys fees, if requested under a lodestar analysis to $835,878.00. Yanchunis Decl. ¶¶ 18, 21.

Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Class Counsel would have sought a "substantial multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Class Counsel had to skillfully address, and the contingent nature of Class Counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar). This would

17

further support Class Counsel's fee request if based on lodestar with a multiplier, as the requested $2,375,000.00 would result in an approximate 2.84 multiplier.

### E. Class Counsel's Expenses Are Reasonable

In addition to attorneys' fees, Class Counsel seek reimbursement of the expenses incurred in prosecuting this case against Defendant. Since the filing of the case, and as of October 12, 2020, they have incurred expenses in excess of approximately $51,961.33. Yanchunis Decl. ¶ 19. The amount of costs actually expended and advanced by counsel include: filing and PACER fees, process service, *pro hac vice* fees, research/Westlaw charges, copying and mailing expenses, expert costs, mediation expenses, and travel expenses in connection with mediations. Yanchunis Decl. ¶ 19. As this Court can certainly be assured, however, this litigation is not over, and Class Counsel will continue to incur and advance costs through final judgment, and, if necessary, through any appeals, likely amount to an additional $10,000.00 in costs and expenses. Yanchunis Decl. ¶ 21. Accordingly, Class Counsel respectfully submit that they are entitled to recover these expenses totaling $61,961.33.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the request for attorney's fees, costs, and expenses.

Dated: October 14, 2020    Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor

Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Court-Appointed Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*