```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO. 1:19-cv-20592-JEM
 3

 4     VASSILIOS KUKORINIS,

 5     On behalf of himself and those
       Similarly situated
 6
                 Plaintiff,                      October 7, 2020
 7
       vs.                                   2:03 p.m. to 2:40 p.m.
 8
       WALMART, INC., a Delaware Corporation
 9
                 Defendant.
10     _____

11
                           STATUS CONFERENCE
12                       BEFORE THE HONORABLE
          UNITED STATES DISTRICT MAGISTRATE JUDGE JOSE MARTINEZ
13

14
       APPEARANCES:
15
       FOR THE PLAINTIFF:        JOHN YANCHUNIS, ESQUIRE
16                               RYAN MCGEE, ESQUIRE
                                 MORGAN & MORGAN
17                               201 North Franklin Street
                                 7th Floor
18                               Tampa, Florida 33602
                                 Jyanchunis@forthepeople.com
19                               Rmcgee@forthepeople.com

20
       FOR THE DEFENDANT:        MARK SALKY, ESQUIRE
21                               NAOMI BEER, ESQUIRE
                                 GREENBERG TRAURIG, P.A.
22                               333 Southeast 2nd Avenue
                                 Suite 4400
23                               Miami, Florida 33131
                                 Msalky&gtlaw.com
24                               Nbeer@gtlaw.com

25
```

```
 1

 2   FOR INTENDED CLASS MEMBER:     STEVEN HELFAND, ESQUIRE
                                    1400 SW 137th Avenue
 3                                  # F112
                                    Pembroke Pines, Florida  33027
 4                                  Steven.helfand@gmail.com

 5


 6
     STENOGRAPHICALLY REPORTED BY:
 7
                                    SHARON VELAZCO, RPR, FPR
 8                                  Official Court Reporter
                                    United States District Court
 9                                  400 North Miami Avenue
                                    11th Floor
10                                  Miami, Florida 33128
                                    (305) 523-5178
11

12

13

14                        —      —      —

15

16

17

18

19

20

21

22

23

24

25
```

1   (The following proceedings were had:)

2        THE COURTROOM DEPUTY:  Case number 19-200592, Kukorinis

3   versus Walmart, Incorporated.

4        Counsel, could you please state your name for the

5   record, starting with the Government.

6        MR. McGEE:  Plaintiff.

7        THE COURTROOM DEPUTY:  With the plaintiff.

8        MR. YANCHUNIS:  John Yanchunis, here with Ryan McGee,

9   my associate, and also my client, Vassilios Kukorinis.

10       MR. SALKY:  Good afternoon, your Honor.  This is Mark

11   Salky from Greenberg Traurig on behalf of the defendant,

12   Walmart, Inc., and with me is my colleague, Naomi Beer.

13       MS. BEER:  Good morning -- or good afternoon.

14       MR. HELFAND:  Good afternoon, your Honor.  Steven

15   Helfand on behalf of the intended class member -- a putative

16   pro se --

17       THE COURT REPORTER:  Your Honor, there is reverb --

18       THE COURT:  I would ask all of you, unless you are

19   speaking, I'm getting feedback from hearing it.

20       Okay.

21       This status conference was originally set to discuss

22   the named plaintiff's declaration which had been stricken from

23   the record and temporarily restricted from public access

24   because it was filed by a person that was represented by

25   counsel, and it was not filed by counsel.

1          As set forth in that order, in the order from

2    yesterday, we are not going to be discussing the contents of

3    the declaration or any of the specifics due to the potential

4    that there are confidential communications within it.

5          Instead, we are here to discuss whether the declaration

6    and a future hearing on the issues presented with it should be

7    sealed.

8          Mr. Helfand is here to discuss and will be permitted to

9    address the Court briefly as to this argument only.

10          Counsel for the parties may confer and determine who

11    will be speaking on their behalf, since that is a joint issue,

12    about ten minutes for each side.

13          So, Mr. Helfand, how is this not similar to discovery

14    material for which there is no common law right of access?

15          Shouldn't this be considered more protected, given the

16    nature of the documents?

17          MR. HELFAND:  No, your Honor, because it is not

18    discovery material.  It is not a trade secret.  It is not

19    sensitive information.

20          And, I refer your Honor to the case from the 11th

21    Circuit in re:  Alexander Grant and Company litigation, 820

22    So.2d 352.356.  And, I would also refer your Honor to a Middle

23    District case by U.S. Magistrate Judge Carol Mirando which

24    discusses all of these issues and analyzes them, and that is

25    United States versus Lee Memorial Health System, 2018 U.S.

1   District, Lexus 177525, 2018, Westlaw 5014534.

2         These are not discovery materials that are produced in

3   discovery.  This was a filing made voluntarily by the named

4   representative.  It wasn't in response to an interrogatory or

5   an admission.  It wasn't inadvertently produced.  The filing

6   was likely highly ill-advised and unquestionably misguided;

7   however, it was made.  Perhaps it was made in the instance of

8   misguided candor.  It says what it says.  And, the public has a

9   right to access these materials, especially in light of the

10  fact that this is not some litigant.  This is a named

11  representative in a class action which purports to settle

12  claims.  There is a tremendous public interest in finding out

13  what this gentleman has to say.

14        Now, your Honor definitely has discretion to review the

15  declaration if, in fact, it contains privileged information.

16  Obviously, your Honor has the remedy, and rightly so.  And no

17  one, I think, is going to hold any of this against you, the

18  class counsel or the named representative, and claim there is

19  some sort of inadvertent waiver of privilege.  No one is making

20  that assertion.  I don't think anyone can.

21        But, he said what he said, and there is definitely a

22  public interest in this.  And, this was a voluntary act by him.

23        And, we are very fortunate to live in a country where

24  judicial records are public.  Remember, we are not in Cuba.

25  When a person makes a decision to file something, there are

1    consequences for doing it.  And, that means that the public has

2    a right to see what is written.

3              And, this was not a document that was originally under

4    seal that was made with a disclosure asking for it to be

5    ultimately sealed.  This was a document that was served

6    willingly, not by mistake.  It might have been ill-advised, but

7    it was made and we have a right to see it.

8              And with that, your Honor, unless you have any

9    questions for me, that's all I would like to say.

10             THE COURT:  Okay.  I will note that the only time I

11   have ever been in Cuba, I was there as an officer in the United

12   States Navy.

13             MR. HELFAND:  And we are glad you were there, your

14   Honor.

15             THE COURT:  Other than that, never been over there.

16             MR. HELFAND:  Thank you for your service.

17             THE COURT:  All right.  Let me hear from whoever else

18   wants to talk with me.

19             MR. YANCHUNIS:  Your Honor, John Yanchunis for the

20   plaintiffs in the putative class.

21             The information that was filed contains certainly not

22   trade secrets, but it is nothing but privileged.  It contains

23   information that is protected by the attorney/client privilege,

24   the mediation privilege, as well as work product.  And, my

25   client, plaintiff, wishes to withdraw that from the public

1   record and have it stricken.

2        And, there is no need for Mr. Helfand or the public to

3   see that.  The settlement agreement stands.  It is well

4   written, and it could be judged in accordance with the facts

5   and the law.  There is no prohibition if anyone wants to object

6   or voice concern or comment to that settlement, that there is

7   anything prohibiting them from doing so.  But, we seek to have

8   this information kept from the public record, and there is

9   specifically no need for its disclosure.

10        THE COURT:  Can't your client waive attorney-client

11   privilege, whether it is intentionally or unintentionally?

12        MR. YANCHUNIS:  He certainly can; not the mediation

13   privilege, not the work product.  But, the attorney/client

14   privilege -- he did not appreciate the act that he was doing.

15   He is here today.  He is right to my left, and certainly didn't

16   appreciate what -- you know, what the waiver entailed, or that

17   the act was a waiver.

18        THE COURT:  Does that matter?

19        MR. YANCHUNIS:  I think it does matter, because to make

20   an informed decision about the privilege, you have to

21   appreciate what, in fact, you are doing.

22        THE COURT:  All right.

23        Mr. Helfand, I want to ask you, Florida law doesn't

24   allow mediation communications to be disclosed.  What do you

25   have that counters that?

1           MR. HELFAND:  Well, here is my counter to it.  And it

2    may --

3           THE COURT:  Can everybody shut off their mics, please.

4           MR. HELFAND:  I will start again.  I haven't been privy

5    to the declaration so I can't comment whether or not any of the

6    information is derived from the mediation, as opposed to

7    something else.

8           And, it seems to me that counsel has just identified

9    the problem.  He says that there is attorney/client privilege,

10   there is a mediation privilege, and then he even asserts work

11   product somehow.  And the concern is he is not particularizing

12   any of the information that he deems to be sensitive that

13   shouldn't be disclosed.

14          So, in other words, just because information might be

15   from the mediation privilege, that information could certainly

16   be sealed and redacted.  But, counsel has also thrown in that

17   it is work product and attorney/client privilege, which can be

18   waived and, generally, it is a conclusory statement.

19          And, there is a presumption in the 11th Circuit on

20   disclosure.  And when you file a conclusory document from a

21   named representative of a class action that, by the way,

22   happens to have a fiduciary interest to the rest of the class,

23   this is a real problem.  And, whether or not it is mediation,

24   we don't know that.

25          And, the fact that we've lumped in two or three

1    assertions on this suggests that it is just all a mish-mash

2    without any specifics.  If there is a statement that should be

3    withheld because it was said in the mediation, fine.  But, the

4    mental impressions of the named rep are not subject to the

5    mediation privilege.  If he later had second thoughts and left

6    the mediation and decided he wanted to disclose his view that

7    he objected to this deal, he is free to do so.

8         And, by the way, you know, we are running around acting

9    as if what he says is important.  Perhaps it is.  We don't

10   know.  But, the public has, certainly, an interest.

11        And, in the Officers for Justice, which is a 9th

12   Circuit case, we don't even need the named representative to,

13   you know, have a point of view.  He could oppose the

14   settlement.  It could still be approved.  And, that suggests

15   that any of the information he has is immaterial, which leads

16   to a presumption of disclosure.

17        So, counsel is saying they didn't want to disclose this

18   information because it might not be relevant, or whatever.

19   That's particularly the purpose for why we have due process and

20   open courts.  The fact that it's irrelevant suggests that it

21   should be disclosed to the public so that everyone can make

22   their own conclusion.  But, we can't allow just a broad-brush

23   statement by counsel.  That doesn't meet the burden.  It

24   doesn't even engage it.

25        THE COURT:  What is the standard that you think the

1   Court should use, the good cause standard or strict scrutiny

2   test?

3           Let me start with Mr. Helfand.

4           MR. HELFAND:  I believe the standard, your Honor, is a

5   presumption in favor of disclosure.  However, the Court can

6   certainly -- if the material doesn't meet the five-factor test

7   which is outlined by the 11th Circuit, that would be

8   sufficient, regardless of the standard.  So, there's a

9   five-factor balancing test in Alexander.  If your Honor engages

10  it, presumptively, you will meet whatever standard that

11  applies.

12          THE COURT:  Is that the good cause standard?

13          MR. HELFAND:  I believe, your Honor, it would be the

14  good cause standard.

15          THE COURT:  Okay.  Let me hear from the parties.

16          MR. YANCHUNIS:  I will let Mr. Salky or Ms. Beer go

17  after I just make some brief comments.  I don't want to not

18  give them the opportunity to speak.

19          THE COURT:  Okay.

20          MR. YANCHUNIS:  Your Honor, again, the material that

21  was filed is of the most sensitive nature, both in terms of the

22  relationship with our client, the work product of the lawyers

23  and our client, as well as information that would violate the

24  mediation privilege.

25          It is not a good cause standard.  It is the most strict

1   standard possible.  And, our client has withdrawn that.  He has

2   expressed his intent in a declaration that he filed, and he

3   supports the settlement.  And, I think that is sufficient to

4   address any concern by the public about his position here.

5          So, there is, again, this standard -- or the focus

6   ought to be the settlement agreement, whether it is, one,

7   adequate, can that be ascertained from the records on file as

8   well as from the settlement agreement, itself?

9          THE COURT:  Well, are there --

10         MR. YANCHUNIS:  Those other documents are not necessary

11   for this inquiry.

12         THE COURT:  All right.  Are there any aspects of the

13   communication that everyone agrees shouldn't be privileged?

14         Are you saying that everything should be privileged?

15         MR. YANCHUNIS:  Yes, everything is either privileged or

16   protected by the work product doctrine.  There is no

17   communication that is outside that.

18         THE COURT:  Can a party waive work product?

19         I understand that an attorney can waive it, but can a

20   party waive the work product?

21         MR. YANCHUNIS:  I -- you know, for any waiver, there

22   has to be an appreciation or understanding of the potential act

23   of waiver.  It can't be caused by negligence; for instance,

24   something is sent out the door by a lawyer to their opposition,

25   accidentally, that's not a waiver, because there was no intent.

```
1            Here, certainly, my client is not a lawyer.  We have

2    since had an opportunity to talk to him.  He is here and can

3    address any questions the Court would have of him, and he

4    submitted his declaration indicating his position.  So, I think

5    that should end the inquiry.

6            THE COURT:  All right.  Anything -- any further

7    argument at this time?

8            MR. SALKY:  Your Honor, this is Mark Salky on behalf of

9    Walmart.  Let me begin where your Honor began.  When your Honor

10   first read the declaration -- and that was your Honor

11   recognized that the declaration was a violation of our local

12   rules.  Your Honor looked at local Rule 7.7 and local Rule 11.1

13   (d)(4).  It was a filing by a plaintiff who was represented by

14   counsel.  It was an improper filing that your Honor

15   appropriately struck.  That means it is not technically part of

16   the public record.

17           Your Honor -- your Honor's striking of that filing was

18   the appropriate remedy, and I have got a half dozen cases that

19   I could cite to your Honor that says that is the appropriate

20   remedy; you strike it from the public docket.

21           I will cite to the opinion from Judge Moreno, the GVBMD

22   versus Aetna Health Inc., case.  It's at 2020 Westlaw, 1692635

23   Southern District of Florida, April 7th of this year, 2020.

24           I will cite a Judge Matthewman opinion, 282 F.Supp 3d

25   1268 at Page 1273, Southern District of Florida, 2017;
```

1          A Judge Lenard opinion, United States v. Williams,

2     2017, Westlaw, 7411024, at Page 4 of the Westlaw decision,

3     Southern District of Florida, January 27, 2017.

4          And, I have got three more I could cite, your Honor.

5          But, the point is, is that when your Honor struck it,

6     it is gone from the public record.  I think that it was an

7     appropriate thing for your Honor to do, and there is no reason

8     to undo what your Honor did.

9          MR. HELFAND:  Your Honor, if I could just respond --

10    Steven Helfand -- when a document gets struck from the docket,

11    it doesn't seal the docket -- it doesn't seal the item.  What

12    it means is it is struck from consideration by the Court, and

13    it essentially has no bearing on the ultimate outcome.  The

14    Court is not going to consider that document as if it is not

15    filed.

16         But, that is completely different from what is being

17    sought here, which is to seal it.  So, a document that is in

18    the docket that is struck is still accessible by the general

19    public; however, a document that is sealed is not.

20         And, I believe that Mr. Salky has perhaps misstated

21    those cases, because striking a document does not amount to

22    sealing, and this is what is occurring.  And, there is a very

23    rigorous standard and there's a presumption against sealing.

24    And, whether -- and I understand that plaintiff's counsel

25    disagrees with me over the standard.  I don't know why, but

```
 1   quite frankly, they haven't met their burden to even establish
 2   in a particularized fashion that any of this should be stricken
 3   or sealed.
 4           I understand there is a local rule, but that doesn't
 5   mean that the class is left in the dark and so is the general
 6   public.  If the named plaintiff violated a local rule, there is
 7   a sanction.  His document isn't considered.  But, the general
 8   public shouldn't be deprived of the right to see what's
 9   happening.  The due process rights of the public are not
10   somehow, you know, supplanted by a local rule of the Court.
11           We have the Constitution of the United States which
12   overrides any local rule.  And, we have an absolute right,
13   presumptively, to look at the entirety of the Court file,
14   especially in this case, which it is not a discovery document.
15   It's a filing made.  It might be an objection.  And, if it is
16   an objection, your Honor, we don't know that it is or it isn't.
17   But presumably, it might be.  I am not so sure that the local
18   rule can prevent the filing because Rule 23 would permit it.
19           But, after the order of preliminary approval came out
20   and notice was distributed to the class, the named plaintiff
21   has every right to file an objection, just like any other class
22   member.  And, he is not dependent or reliant on his counsel
23   to -- to come in and do a substitution.  And, even if he were
24   allowed to do it, that is a different question from is the
25   public allowed to see what he wrote?
```

1          Your Honor, I think you are on mute.

2          THE COURT:  I am just asking Mr. Salsky, if you could,

3     address the implications of the -- this being a class action

4     and how this should weigh into the factor-balancing test.

5          MR. SALKY:  Well, here is what we know, your Honor.  We

6     know that Mr. Kukorinis has withdrawn his affidavit.  He

7     provided an affidavit stating that he does not object to the

8     settlement, and that's where things stand now.

9          You know, if Mr. Helfand intends to object to the

10    settlement, he has the right to do that, and there is a process

11    in place for him to do that, and for him to appear at the final

12    fairness hearing after we have the benefit of seeing his

13    written objections to the class settlement.  There is no

14    unfairness there, your Honor.

15         MR. HELFAND:  I think you are muted.

16         THE COURT:  Usually, I don't -- does the fact that it

17    is a class action affect the standard that we use, or implicate

18    anything that we should be considering when ruling on this,

19    Mr. Salky?

20         MR. SALKY:  Your Honor, it shouldn't.  It was an

21    improper filing, in violation of the local rules, that was

22    properly stricken.

23         He has submitted an affidavit supplanting the prior

24    affidavit that says he does not object to the class settlement

25    and that the prior affidavit was withdrawn, and he asked that

1    it be sealed.  I don't think that the fact that this is a class

2    settlement alters the local rules in any way.

3         MR. HELFAND:  Well, it does, your Honor, because

4    Rule 23 -- I believe it was E, requires that if an objection is

5    withdrawn, the Court needs to, first of all, approve the

6    withdrawal.

7         But, moreover, there generally is a statement from

8    counsel which discusses the circumstances of the objection made

9    in the first instance; and, especially important, whether there

10   has been any quid pro quo.

11        Now, Mr. Salky is right.  All of this could ultimately

12   lead to, you know, a joint commotion at the fairness hearing,

13   and I think that at the fairness hearing, this would certainly

14   be an issue that it gets discussed because it raises questions

15   about adequacy of counsel, conflicts of interest, and the like.

16        But, it seems to me if we are looking to and they are

17   looking to get this deal approved, they should give access to

18   this information, period.  And, to the extent they want to

19   create these issues, which implicates substantive due process

20   rights, which is access to information and then also procedural

21   due process, which is notice, the inability of the class to

22   find out what the named representative had to say -- and yeah,

23   he withdrew his objection, according to Mr. Salky -- we are

24   entitled to know why he had the objection in the first place;

25   what went on; who did what with whom, and when; what was he

1    promised, if anything.

2          And so this raises a huge issue for the fairness issue.

3    I agree.  But, we are not at that stage.  We are just at the

4    point of did they meet the burden to seal this document.  And,

5    I submit that they haven't.

6          And, I don't think any of the counts have shown good

7    cause, or let alone any cause to seal it, because nothing they

8    say is particularized, and I think it is admitted by

9    plaintiff's counsel that now it is a work product objection,

10   and that can always be waived.

11         THE COURT:  Who can waive the work product?

12         MR. HELFAND:  Well, typically, the work product

13   protection belongs to the attorney, typically.  However,

14   however, here's the problem -- I don't think that's the

15   problem.

16         THE COURT:  Wait.  Everybody else is on mute.

17         MR. HELFAND:  But, theoretically, the individual, the

18   client can theoretically waive the work product.

19         And, there are -- I have to get the court cases, but

20   I'm aware of work product.  I just don't see how what

21   Mr. Kukorinis wrote could implicate work product because he

22   wrote it on his own, without inquiring from counsel.  It was an

23   uninvited filing.  He left them in the dark; there is no

24   question.  How would he even know what their work product is?

25         And, they haven't even said that they disclosed it to

1    him.  So, their declarations are totally, woefully inadequate.

2    They never said they gave him any work product.

3           THE COURT:  Well, that is just silly.  If they didn't

4    give it to him, obviously, it's not work product.  The client,

5    obviously, gets work product from his lawyer on a regular basis

6    during the representation.  So, I don't think that's --

7           MR. HELFAND:  Well, what would be the work product?

8           He disagrees and he objects to the settlement.  That's

9    not work product.

10          THE COURT:  I don't know exactly what the work product

11   is.  But, I can imagine several things that could be work

12   product that could be involved in that.

13          And how about the mediation discussions?

14          How is that in any way discoverable by anybody?

15          MR. HELFAND:  Well, it's not that it is discoverable,

16   your Honor.  It is that he divulged it.  So, in other words, we

17   are not serving a deposition notice or an interrogatory.  So,

18   we haven't served discovery.

19          This isn't discovery information that we are seeking to

20   uncover.  This is a declarant who has filed a document on his

21   own accord.  No one is using the imprimatur of the discovery

22   rules to elicit mediation, privilege-protected information.  To

23   the extent that the plaintiff broke the mediation privilege,

24   perhaps the defendants might have an action against him.

25   Perhaps they might have an action for sanctions.  Perhaps they

1   might have some sort of remedy.  But, the remedy is not to

2   preclude the general public from seeing what is written.  That

3   is not the remedy, and there is no case law that says that is

4   the remedy.

5          The presumption is that the general public gets to see

6   what he wrote.  And, whether or not he made a mistake, you

7   know, there is a saying, "tough luck."

8          THE COURT:  I don't think that Florida law

9   distinguishes between discovery or inadvertent or anything

10  else.  It says "shall not be disclosed."

11         "No communication of mediation shall be disclosed."

12         So, I don't really think that that's open to an awful

13  lot of discussion.  Let me see --

14         MR. HELFAND:  I could just say, your Honor, the fact

15  that it has been disclosed is a different issue, "it shall not

16  be disclosed," but then what is the remedy?

17         Is the remedy to seal the record, or is it some other

18  remedy?

19         THE COURT:  The remedy is that it should not be

20  disclosed to outside parties.  Disclosing it to the parties

21  that were in the thing is not disclosure.  Disclosure to the

22  Court has been resolved by it being stricken.

23         You know, you can argue all you want to the mediation.

24  I don't see the mediation material as being discoverable, in

25  any event.  The other, it might be a little bit more open.

1           MR. HELFAND:  Okay.

2           THE COURT:  All right.  I will ask both parties to

3    submit proposed orders within three business days before the

4    end of the week.  Submit them in Word format to my chambers,

5    and I will rule on it as soon as I can.

6           Anything else?

7           MR. HELFAND:  Your Honor, does that include me?

8           Can I submit a proposed order, or is it just for --

9           THE COURT:  I don't have a problem with that.

10          MR. HELFAND:  I will submit one, as well, your Honor.

11          THE COURT:  That's fine.  You have until Friday.

12          Anybody else say anything?

13          Any housekeeping matters we need to talk about?

14          Otherwise, in my order, I will deal with the next step.

15          MR. YANCHUNIS:  Nothing from the plaintiffs, your

16   Honor.

17          THE COURT:  All right. Thank you very much.

18          MR. SALKY:  Thank you, your Honor.

19          (Proceedings concluded at 2:40 p.m.)

20

21                      _     _     _

22

23

24

25

```
 1                   C E R T I F I C A T E

 2

 3            I hereby certify that the foregoing is an

 4   accurate transcription of the proceedings in the

 5   above-entitled matter.

 6

 7            Please note:  This hearing occurred during the

 8   COVID-19 pandemic and is therefore subject to the

 9   technological limitations of reporting remotely.

10

11

12

13
     October 7, 2020        /s/Sharon Velazco
14   DATE                   SHARON VELAZCO, RPR, FPR
                            Official Court Reporter
15                          United States District Court
                            400 North Miami Avenue, 11th Floor
16                          Miami, Florida 33128
                            (786) 371-7438
17

18

19

20

21

22

23

24

25
```

## /

**/s/Sharon** [1] - 21:13

## 1

**11.1** [1] - 12:12
**11th** [5] - 2:9, 4:20, 8:19, 10:7, 21:15
**1268** [1] - 12:25
**1273** [1] - 12:22
**137th** [1] - 2:2
**1400** [1] - 2:2
**1692635** [1] - 12:22
**177525** [1] - 5:1
**19-200592** [1] - 3:2
**1:19-cv-20592-JEM** [1] - 1:2

## 2

**201** [1] - 1:17
**2017** [3] - 12:25, 13:2, 13:3
**2018** [2] - 4:25, 5:1
**2020** [4] - 1:6, 12:22, 12:23, 21:13
**23** [2] - 14:18, 16:4
**27** [1] - 13:3
**282** [1] - 12:24
**2:03** [1] - 1:7
**2:40** [2] - 1:7, 20:19
**2nd** [1] - 1:21

## 3

**305** [1] - 2:10
**33027** [1] - 2:3
**33128** [2] - 2:10, 21:16
**33131** [1] - 1:22
**333** [1] - 1:21
**33602** [1] - 1:18
**352.356** [1] - 4:22
**371-7438** [1] - 21:16
**3d** [1] - 12:24

## 4

**4** [1] - 13:2
**400** [2] - 2:9, 21:15
**4400** [1] - 1:22

## 5

**5014534** [1] - 5:1
**523-5178** [1] - 2:10

## 7

**7** [2] - 1:6, 21:13
**7.7** [1] - 12:12
**7411024** [1] - 13:2
**786** [1] - 21:16
**7th** [2] - 1:17, 12:23

## 8

**820** [1] - 4:21

## 9

**9th** [1] - 9:11

## A

**above-entitled** [1] - 21:5
**absolute** [1] - 14:12
**access** [5] - 3:23, 4:14, 5:9, 16:17, 16:20
**accessible** [1] - 13:18
**accidentally** [1] - 11:25
**accord** [1] - 18:21
**accordance** [1] - 7:4
**according** [1] - 16:23
**accurate** [1] - 21:4
**act** [4] - 5:22, 7:14, 7:17, 11:22
**acting** [1] - 9:8
**action** [6] - 5:11, 8:21, 15:3, 15:17, 18:24, 18:25
**address** [4] - 4:9, 11:4, 12:3, 15:3
**adequacy** [1] - 16:15
**adequate** [1] - 11:7
**admission** [1] - 5:5
**admitted** [1] - 17:8
**advised** [2] - 5:6, 6:6
**Aetna** [1] - 12:22
**affect** [1] - 15:17
**affidavit** [5] - 15:6, 15:7, 15:23, 15:24, 15:25
**afternoon** [3] - 3:10, 3:13, 3:14
**agree** [1] - 17:3
**agreement** [3] - 7:3, 11:6, 11:8
**agrees** [1] - 11:13
**Alexander** [2] - 4:21, 10:9
**allow** [2] - 7:24, 9:22
**allowed** [2] - 14:24,

14:25
**alone** [1] - 17:7
**alters** [1] - 16:2
**amount** [1] - 13:21
**analyzes** [1] - 4:24
**appear** [1] - 15:11
**APPEARANCES** [1] - 1:14
**applies** [1] - 10:11
**appreciate** [3] - 7:14, 7:16, 7:21
**appreciation** [1] - 11:22
**appropriate** [3] - 12:18, 12:19, 13:7
**appropriately** [1] - 12:15
**approval** [1] - 14:19
**approve** [1] - 16:5
**approved** [2] - 9:14, 16:17
**April** [1] - 12:23
**argue** [1] - 19:23
**argument** [2] - 4:9, 12:6
**ascertained** [1] - 11:7
**aspects** [1] - 11:12
**assertion** [1] - 5:20
**assertions** [1] - 9:1
**asserts** [1] - 8:10
**associate** [1] - 3:9
**attorney** [3] - 7:10, 11:19, 17:13
**attorney-client** [1] - 7:10
**attorney/client** [4] - 6:23, 7:13, 8:9, 8:17
**Avenue** [4] - 1:21, 2:2, 2:9, 21:15
**aware** [1] - 17:20
**awful** [1] - 19:12

## B

**balancing** [2] - 10:9, 15:4
**basis** [1] - 18:5
**bearing** [1] - 13:13
**BEER** [2] - 1:20, 3:13
**Beer** [2] - 3:12, 10:16
**BEFORE** [1] - 1:12
**began** [1] - 12:9
**begin** [1] - 12:9
**behalf** [5] - 1:5, 3:11, 3:15, 4:11, 12:8
**belongs** [1] - 17:13
**benefit** [1] - 15:12
**between** [1] - 19:9
**bit** [1] - 19:25

**brief** [1] - 10:17
**briefly** [1] - 4:9
**broad** [1] - 9:22
**broad-brush** [1] - 9:22
**broke** [1] - 18:23
**brush** [1] - 9:22
**burden** [3] - 9:23, 14:1, 17:4
**business** [1] - 20:3
**BY** [1] - 2:6

## C

**candor** [1] - 5:8
**Carol** [1] - 4:23
**CASE** [1] - 1:2
**case** [7] - 3:2, 4:20, 4:23, 9:12, 12:22, 14:14, 19:3
**cases** [3] - 12:18, 13:21, 17:19
**caused** [1] - 11:23
**certainly** [8] - 6:21, 7:12, 7:15, 8:15, 9:10, 10:6, 12:1, 16:13
**certify** [1] - 21:3
**chambers** [1] - 20:4
**Circuit** [4] - 4:21, 8:19, 9:12, 10:7
**circumstances** [1] - 16:8
**cite** [4] - 12:19, 12:21, 12:24, 13:4
**claim** [1] - 5:18
**claims** [1] - 5:12
**CLASS** [1] - 2:2
**class** [15] - 3:15, 5:11, 5:18, 6:20, 8:21, 8:22, 14:5, 14:20, 14:21, 15:3, 15:13, 15:17, 15:24, 16:1, 16:21
**client** [10] - 3:9, 6:25, 7:10, 10:22, 10:23, 11:1, 12:1, 17:18, 18:4
**colleague** [1] - 3:12
**comment** [2] - 7:6, 8:5
**comments** [1] - 10:17
**common** [1] - 4:14
**commotion** [1] - 16:12
**communication** [3] - 11:13, 11:17, 19:11
**communications** [2] - 4:4, 7:24
**Company** [1] - 4:21

**completely** [1] - 13:16
**concern** [3] - 7:6, 8:11, 11:4
**concluded** [1] - 20:19
**conclusion** [1] - 9:22
**conclusory** [2] - 8:18, 8:20
**confer** [1] - 4:10
**conference** [1] - 3:21
**CONFERENCE** [1] - 1:11
**confidential** [1] - 4:4
**conflicts** [1] - 16:15
**consequences** [1] - 6:1
**consider** [1] - 13:14
**consideration** [1] - 13:12
**considered** [2] - 4:15, 14:7
**considering** [1] - 15:18
**Constitution** [1] - 14:11
**contains** [3] - 5:15, 6:21, 6:22
**contents** [1] - 4:2
**Corporation** [1] - 1:8
**Counsel** [1] - 3:4
**counsel** [15] - 3:25, 4:10, 5:18, 8:8, 8:16, 9:17, 9:23, 12:14, 13:24, 14:22, 16:8, 16:15, 17:9, 17:22
**counter** [1] - 8:1
**counters** [1] - 7:25
**country** [1] - 5:23
**counts** [1] - 17:6
**COURT** [30] - 1:1, 3:17, 3:18, 6:10, 6:15, 6:17, 7:10, 7:18, 7:22, 8:3, 9:25, 10:12, 10:15, 10:19, 11:9, 11:12, 11:18, 12:6, 15:2, 15:16, 17:11, 17:16, 18:3, 18:10, 19:8, 19:19, 20:2, 20:9, 20:11, 20:17
**court** [1] - 17:19
**COURTROOM** [2] - 3:2, 3:7
**courts** [1] - 9:20
**COVID-19** [1] - 21:8

create [1] - 16:19
Cuba [2] - 5:24, 6:11

**D**

d)(4) [1] - 12:13
dark [2] - 14:5, 17:23
DATE [1] - 21:14
days [1] - 20:3
deal [3] - 9:7, 16:17, 20:14
decided [1] - 9:6
decision [2] - 5:25, 7:20, 13:2
declarant [1] - 18:20
declaration [9] - 3:22, 4:3, 4:5, 5:15, 8:5, 11:2, 12:4, 12:10, 12:11
declarations [1] - 18:1
deems [1] - 8:12
defendant [2] - 1:9, 3:11
DEFENDANT [1] - 1:20
defendants [1] - 18:24
definitely [2] - 5:14, 5:21
Delaware [1] - 1:8
dependent [1] - 14:22
deposition [1] - 18:17
deprived [1] - 14:8
DEPUTY [2] - 3:2, 3:7
derived [1] - 8:6
determine [1] - 4:10
different [3] - 13:16, 14:24, 19:15
disagrees [2] - 13:25, 18:8
disclose [2] - 9:6, 9:17
disclosed [9] - 7:24, 8:13, 9:21, 17:25, 19:10, 19:11, 19:15, 19:16, 19:20
disclosing [1] - 19:20
disclosure [7] - 6:4, 7:9, 8:20, 9:16, 10:5, 19:21
discoverable [3] - 18:14, 18:15, 19:24
discovery [9] - 4:13, 4:18, 5:2, 5:3, 14:14, 18:18, 18:19, 18:21,

19:9
discretion [1] - 5:14
discuss [3] - 3:21, 4:5, 4:8
discussed [1] - 16:14
discusses [2] - 4:24, 16:8
discussing [1] - 4:2
discussion [1] - 19:13
discussions [1] - 18:13
distinguishes [1] - 19:9
distributed [1] - 14:20
DISTRICT [3] - 1:1, 1:1, 1:12
District [7] - 2:8, 4:23, 5:1, 12:23, 12:25, 13:3, 21:15
DIVISION [1] - 1:2
divulged [1] - 18:16
docket [4] - 12:20, 13:10, 13:11, 13:18
doctrine [1] - 11:16
document [12] - 6:3, 6:5, 8:20, 13:10, 13:14, 13:17, 13:19, 13:21, 14:7, 14:14, 17:4, 18:20
documents [2] - 4:16, 11:10
door [1] - 11:24
dozen [1] - 12:18
due [5] - 4:3, 9:19, 14:9, 16:19, 16:21
during [1] - 18:6, 21:7

**E**

either [1] - 11:15
elicit [1] - 18:22
end [2] - 12:5, 20:4
engage [1] - 9:24
engages [1] - 10:9
entailed [1] - 7:16
entirety [1] - 14:13
entitled [2] - 16:24, 21:5
especially [3] - 5:9, 14:14, 16:9
ESQUIRE [5] - 1:15, 1:16, 1:20, 1:20, 2:2
essentially [1] - 13:13
establish [1] - 14:1
event [1] - 19:25

exactly [1] - 18:10
expressed [1] - 11:2
extent [2] - 16:18, 18:23

**F**

F.Supp [1] - 12:24
F112 [1] - 2:3
fact [8] - 5:10, 5:15, 7:21, 8:25, 9:20, 15:16, 16:1, 19:14
factor [2] - 10:6, 10:9, 15:4
factor-balancing [1] - 15:4
facts [1] - 7:4
fairness [4] - 15:12, 16:12, 16:13, 17:2
fashion [1] - 14:2
favor [1] - 10:5
feedback [1] - 3:19
fiduciary [1] - 8:22
file [5] - 5:25, 8:20, 11:7, 14:13, 14:21
filed [7] - 3:24, 3:25, 6:21, 10:21, 11:2, 13:15, 18:20
filing [9] - 5:3, 5:5, 12:13, 12:14, 12:17, 14:15, 14:18, 15:21, 17:23
final [1] - 15:11
fine [2] - 9:3, 20:11
first [4] - 12:10, 16:5, 16:9, 16:24
five [1] - 10:6, 10:9
five-factor [2] - 10:6, 10:9
Floor [3] - 1:17, 2:9, 21:15
FLORIDA [1] - 1:1
Florida [10] - 1:18, 1:22, 2:3, 2:10, 7:23, 12:23, 12:25, 13:3, 19:8, 21:16
focus [1] - 11:5
following [1] - 3:1
FOR [3] - 1:15, 1:20, 2:2
foregoing [1] - 21:3
format [1] - 20:4
forth [1] - 4:1
fortunate [1] - 5:23
FPR [2] - 2:7, 21:14
Franklin [1] - 1:17
frankly [1] - 14:1
free [1] - 9:7
Friday [1] - 20:11
future [1] - 4:6

**G**

general [5] - 13:18, 14:5, 14:7, 19:2, 19:5
generally [2] - 8:18, 16:7
gentleman [1] - 5:13
given [1] - 4:15
glad [1] - 6:13
Government [1] - 3:5
Grant [1] - 4:21
Greenberg [1] - 3:11
GREENBERG [1] - 1:21
GVBMD [1] - 12:21

**H**

half [1] - 12:18
Health [2] - 4:25, 12:22
hear [2] - 6:17, 10:15
hearing [6] - 3:19, 4:6, 15:12, 16:12, 16:13, 21:7
HELFAND [20] - 2:2, 3:14, 4:17, 6:13, 6:16, 8:1, 8:4, 10:4, 10:13, 13:9, 15:15, 16:3, 17:12, 17:17, 18:7, 18:15, 19:14, 20:1, 20:7, 20:10
Helfand [8] - 3:15, 4:8, 4:13, 7:2, 7:23, 10:3, 13:10, 15:9
hereby [1] - 21:3
highly [1] - 5:6
himself [1] - 1:5
hold [1] - 5:17
Honor [40] - 3:10, 3:14, 3:17, 4:17, 4:20, 4:22, 5:14, 5:16, 6:8, 6:14, 6:19, 10:4, 10:9, 10:13, 10:20, 12:8, 12:9, 12:10, 12:12, 12:14, 12:17, 12:19, 13:4, 13:5, 13:7, 13:8, 13:9, 14:16, 15:1, 15:5, 15:14, 15:20, 16:3, 18:16, 19:14, 20:7, 20:10, 20:16, 20:18
Honor's [1] - 12:17
HONORABLE [1] - 1:12
housekeeping [1] - 20:13
huge [1] - 17:2

**I**

identified [1] - 8:8
ill [2] - 5:6, 6:6
ill-advised [2] - 5:6, 6:6
imagine [1] - 18:11
immaterial [1] - 9:15
implicate [2] - 15:17, 17:21
implicates [1] - 16:19
implications [1] - 15:3
important [2] - 9:9, 16:9
impressions [1] - 9:4
imprimatur [1] - 18:21
improper [2] - 12:14, 15:21
inability [1] - 16:21
inadequate [1] - 18:1
inadvertent [2] - 5:19, 19:9
inadvertently [1] - 5:5
Inc [2] - 3:12, 12:22
INC [1] - 1:8
include [1] - 20:7
Incorporated [1] - 3:3
indicating [1] - 12:4
individual [1] - 17:17
information [16] - 4:19, 5:15, 6:21, 6:23, 7:8, 8:6, 8:12, 8:14, 8:15, 9:15, 9:18, 10:23, 16:18, 16:20, 18:19, 18:22
informed [1] - 7:20
inquiring [1] - 17:22
inquiry [2] - 11:11, 12:5
instance [3] - 5:7, 11:23, 16:9
instead [1] - 4:5
INTENDED [1] - 2:2
intended [1] - 3:15
intends [1] - 15:9
intent [2] - 11:2, 11:25
intentionally [1] - 7:11
interest [5] - 5:12, 5:22, 8:22, 9:10, 16:15
interrogatory [2] - 5:4, 18:17
involved [1] - 18:12

irrelevant [1] - 9:20
issue [5] - 4:11,
16:14, 17:2, 19:15
issues [3] - 4:6, 4:24,
16:19
item [1] - 13:11
itself [1] - 11:8

**J**

January [1] - 13:3
JOHN [1] - 1:15
John [2] - 3:8, 6:19
joint [2] - 4:11, 16:12
JOSE [1] - 1:12
Judge [4] - 4:23,
12:21, 12:24, 13:1
JUDGE [1] - 1:12
judged [1] - 7:4
judicial [1] - 5:24
Justice [1] - 9:11
Jyanchunis@
forthepeople.com [1]
- 1:18

**K**

kept [1] - 7:8
Kukorinis [4] - 3:2,
3:9, 15:6, 17:21
KUKORINIS [1] - 1:4

**L**

law [5] - 4:14, 7:5,
7:23, 19:3, 19:8
lawyer [3] - 11:24,
12:1, 18:5
lawyers [1] - 10:22
lead [1] - 16:12
leads [1] - 9:15
Lee [1] - 4:25
left [4] - 7:15, 9:5,
14:5, 17:23
Lenard [1] - 13:1
Lexus [1] - 5:1
light [1] - 5:9
likely [1] - 5:6
limitations [1] - 21:9
litigant [1] - 5:10
litigation [1] - 4:21
live [1] - 5:23
local [10] - 12:11,
12:12, 14:4, 14:6,
14:10, 14:12, 14:17,
15:21, 16:2
look [1] - 14:13
looked [1] - 12:12
looking [2] - 16:16,
16:17

luck [1] - 19:7
lumped [1] - 8:25

**M**

Magistrate [1] - 4:23
Mark [2] - 3:10, 12:8
MARK [1] - 1:20
MARTINEZ [1] - 1:12
mash [1] - 9:1
material [5] - 4:14,
4:18, 10:6, 10:20,
19:24
materials [2] - 5:2,
5:9
matter [3] - 7:18,
7:19, 21:5
matters [1] - 20:13
Matthewman [1] -
12:24
McGee [2] - 3:6, 3:8
MCGEE [1] - 1:16
mean [1] - 14:5
means [3] - 6:1,
12:15, 13:12
mediation [17] -
6:24, 7:12, 7:24, 8:6,
8:10, 8:15, 8:23, 9:3,
9:5, 9:6, 10:24, 18:13,
18:22, 18:23, 19:11,
19:23, 19:24
meet [4] - 9:23, 10:6,
10:10, 17:4
member [2] - 3:15,
14:22
MEMBER [1] - 2:2
Memorial [1] - 4:25
mental [1] - 9:4
met [1] - 14:1
MIAMI [1] - 1:2
Miami [5] - 1:22, 2:9,
2:10, 21:15, 21:16
mics [1] - 8:3
Middle [1] - 4:22
might [9] - 6:6, 8:14,
9:18, 14:15, 14:17,
18:24, 18:25, 19:1,
19:25
minutes [1] - 4:12
Mirando [1] - 4:23
misguided [2] - 5:6,
5:8
mish [1] - 9:1
mish-mash [1] - 9:1
misstated [1] - 13:20
mistake [2] - 6:6,
19:6
Moreno [1] - 12:21
moreover [1] - 16:7
MORGAN [2] - 1:16

morning [1] - 3:13
most [2] - 10:21,
10:25
MR [35] - 3:6, 3:8,
3:10, 3:14, 4:17, 6:13,
6:16, 6:19, 7:12, 7:19,
8:1, 8:4, 10:4, 10:13,
10:16, 10:20, 11:10,
11:15, 11:21, 12:8,
13:9, 15:5, 15:15,
15:20, 16:3, 17:12,
17:17, 18:7, 18:15,
19:14, 20:1, 20:7,
20:10, 20:15, 20:18
MS [1] - 3:13
msalky&gtlaw.com
[1] - 1:23
mute [2] - 15:1,
17:16
muted [1] - 15:15

**N**

name [1] - 3:4
named [10] - 3:22,
5:3, 5:10, 5:18, 8:21,
9:4, 9:12, 14:6, 14:20,
16:22
NAOMI [1] - 1:20
Naomi [1] - 3:12
nature [2] - 4:16,
10:21
Navy [1] - 6:12
nbeer@gtlaw.com
[1] - 1:23
necessary [1] -
11:10
need [4] - 7:2, 7:9,
9:12, 20:13
needs [1] - 16:5
negligence [1] -
11:23
never [2] - 6:15, 18:2
next [1] - 20:14
NO [1] - 1:2
North [3] - 1:17, 2:9,
21:15
note [2] - 6:10, 21:7
nothing [3] - 6:22,
17:7, 20:15
notice [3] - 14:20,
16:21, 18:17
number [1] - 3:2

**O**

object [4] - 7:5, 15:7,
15:9, 15:24
objected [1] - 9:7
objection [8] - 14:15,

14:16, 14:21, 16:4,
16:8, 16:23, 16:24,
17:9
objections [1] -
15:13
objects [1] - 18:8
obviously [3] - 5:16,
18:4, 18:5
occurred [1] - 21:7
occurring [1] - 13:22
October [2] - 1:6,
21:13
OF [1] - 1:1
officer [1] - 6:11
Officers [1] - 9:11
Official [1] - 21:14
official [1] - 2:8
one [5] - 5:17, 5:19,
11:6, 18:21, 20:10
open [2] - 9:20,
19:12, 19:25
opinion [3] - 12:21,
12:24, 13:1
opportunity [2] -
10:18, 12:2
oppose [1] - 9:13
opposed [1] - 8:6
opposition [1] -
11:24
order [5] - 4:1, 14:19,
20:8, 20:14
orders [1] - 20:3
originally [2] - 3:21,
6:3
otherwise [1] - 20:14
ought [1] - 11:6
outcome [1] - 13:13
outlined [1] - 10:7
outside [2] - 11:17,
19:20
overrides [1] - 14:12
own [3] - 9:22, 17:22,
18:21

**P**

P.A [1] - 1:21
p.m [3] - 1:7, 20:19
Page [2] - 12:25,
13:2
pandemic [1] - 21:8
part [1] - 12:15
particularized [2] -
14:2, 17:8
particularizing [1] -
8:11
particularly [1] -
9:19
parties [5] - 4:10,
10:15, 19:20, 20:2

party [2] - 11:18,
11:20
Pembroke [1] - 2:3
perhaps [6] - 5:7,
9:9, 13:20, 18:24,
18:25
period [1] - 16:18
permit [1] - 14:18
permitted [1] - 4:8
person [2] - 3:24,
5:25
Pines [1] - 2:3
place [2] - 15:11,
16:24
Plaintiff [1] - 1:6
plaintiff [7] - 3:6, 3:7,
6:25, 12:13, 14:6,
14:20, 18:23
PLAINTIFF [1] - 1:15
plaintiff's [3] - 3:22,
13:24, 17:9
plaintiffs [2] - 6:20,
20:15
point [3] - 9:13, 13:5,
17:4
position [2] - 11:4,
12:4
possible [1] - 11:1
potential [2] - 4:3,
11:22
preclude [1] - 19:2
preliminary [1] -
14:19
presented [1] - 4:6
presumably [1] -
14:17
presumption [5] -
8:19, 9:16, 10:5,
13:23, 19:5
presumptively [2] -
10:10, 14:13
prevent [1] - 14:18
privilege [15] - 5:19,
6:23, 6:24, 7:11, 7:13,
7:14, 7:20, 8:9, 8:10,
8:15, 8:17, 9:5, 10:24,
18:22, 18:23
privilege-protected
[1] - 18:22
privileged [5] - 5:15,
6:22, 11:13, 11:14,
11:15
privy [1] - 8:4
pro [2] - 3:16, 16:10
problem [5] - 8:9,
8:23, 17:14, 17:15,
20:9
procedural [1] -
16:20
Proceedings [1] -

20:19
**proceedings** [2] -
3:1, 21:4
**process** [5] - 9:19,
14:9, 15:10, 16:19,
16:21
**produced** [2] - 5:2,
5:5
**product** [22] - 6:24,
7:13, 8:11, 8:17,
10:22, 11:16, 11:18,
11:20, 17:9, 17:11,
17:12, 17:18, 17:20,
17:21, 17:24, 18:2,
18:4, 18:5, 18:7, 18:9,
18:10, 18:12
**prohibiting** [1] - 7:7
**prohibition** [1] - 7:5
**promised** [1] - 17:1
**properly** [1] - 15:22
**proposed** [2] - 20:3,
20:8
**protected** [4] - 4:15,
6:23, 11:16, 18:22
**protection** [1] -
17:13
**provided** [1] - 15:7
**public** [22] - 3:23,
5:8, 5:12, 5:22, 5:24,
6:1, 6:25, 7:2, 7:8,
9:10, 9:21, 11:4,
12:16, 12:20, 13:6,
13:19, 14:6, 14:8,
14:9, 14:25, 19:2,
19:5
**purports** [1] - 5:11
**purpose** [1] - 9:19
**putative** [2] - 3:15,
6:20

## Q

**questions** [3] - 6:9,
12:3, 16:14
**quid** [1] - 16:10
**quite** [1] - 14:1
**quo** [1] - 16:10

## R

**raises** [2] - 16:14,
17:2
**re** [1] - 4:21
**read** [1] - 12:10
**real** [1] - 8:23
**really** [1] - 19:12
**reason** [1] - 13:7
**recognized** [1] -
12:11
**record** [7] - 3:5, 3:23,

7:1, 7:8, 12:16, 13:6,
19:17
**records** [2] - 5:24,
11:7
**redacted** [1] - 8:16
**refer** [2] - 4:20, 4:22
**regardless** [1] - 10:8
**regular** [1] - 18:5
**relationship** [1] -
10:22
**relevant** [1] - 9:18
**reliant** [1] - 14:22
**remedy** [11] - 5:16,
12:18, 12:20, 19:1,
19:3, 19:4, 19:16,
19:17, 19:18, 19:19
**remember** [1] - 5:24
**remotely** [1] - 21:9
**rep** [1] - 9:4
**REPORTED** [1] - 2:6
**REPORTER** [1] -
3:17
**Reporter** [2] - 2:8,
21:14
**reporting** [1] - 21:9
**representation** [1] -
18:6
**representative** [6] -
5:4, 5:11, 5:18, 8:21,
9:12, 16:22
**represented** [2] -
3:24, 12:13
**requires** [1] - 16:4
**resolved** [1] - 19:22
**respond** [1] - 13:9
**response** [1] - 5:4
**rest** [1] - 8:22
**restricted** [1] - 3:23
**reverb** [1] - 3:17
**review** [1] - 5:14
**rightly** [1] - 5:16
**rights** [2] - 14:9,
16:20
**rigorous** [1] - 13:23
**RPR** [2] - 2:7, 21:14
**rule** [6] - 14:4, 14:6,
14:10, 14:12, 14:18,
20:5
**Rule** [4] - 12:12,
14:18, 16:4
**rules** [4] - 12:12,
15:21, 16:2, 18:22
**ruling** [1] - 15:18
**running** [1] - 9:8
**RYAN** [1] - 1:16
**Ryan** [1] - 3:8

## S

**SALKY** [6] - 1:20,

3:10, 12:8, 15:5,
15:20, 20:18
**Salky** [7] - 3:11,
10:16, 12:8, 13:20,
15:19, 16:11, 16:23
**Salsky** [1] - 15:2
**sanction** [1] - 14:7
**sanctions** [1] - 18:25
**scrutiny** [1] - 10:1
**se** [1] - 3:16
**seal** [5] - 6:4, 13:11,
13:17, 17:4, 17:7,
19:17
**sealed** [6] - 4:7, 6:5,
8:16, 13:19, 14:3,
16:1
**sealing** [2] - 13:22,
13:23
**second** [1] - 9:5
**secret** [1] - 4:18
**secrets** [1] - 6:22
**see** [9] - 6:2, 6:7, 7:3,
14:8, 14:25, 17:20,
19:5, 19:13, 19:24
**seeing** [2] - 15:12,
19:2
**seek** [1] - 7:7
**seeking** [1] - 18:19
**sensitive** [3] - 4:19,
8:12, 10:21
**sent** [1] - 11:24
**served** [2] - 6:5,
18:18
**service** [1] - 6:16
**serving** [1] - 18:17
**set** [2] - 3:21, 4:1
**settle** [1] - 5:11
**settlement** [12] - 7:3,
7:6, 9:14, 11:3, 11:6,
11:8, 15:8, 15:10,
15:13, 15:24, 16:2,
18:8
**several** [1] - 18:11
**shall** [3] - 19:10,
19:11, 19:15
**SHARON** [2] - 2:7,
21:14
**shown** [1] - 17:6
**shut** [1] - 8:3
**side** [1] - 4:12
**silly** [1] - 18:3
**similar** [1] - 4:13
**similarly** [1] - 1:5
**situated** [1] - 1:5
**So.2d** [1] - 4:22
**soon** [1] - 20:5
**sort** [2] - 5:19, 19:1
**sought** [1] - 13:17
**Southeast** [1] - 1:21
**SOUTHERN** [1] - 1:1

**Southern** [3] - 12:23,
12:25, 13:3
**speaking** [2] - 3:19,
4:11
**specifically** [1] - 7:9
**specifics** [2] - 4:3,
9:2
**stage** [1] - 17:3
**stand** [1] - 15:8
**standard** [13] - 9:25,
10:1, 10:4, 10:8,
10:10, 10:12, 10:14,
10:25, 11:1, 11:5,
13:23, 13:25, 15:17
**stands** [1] - 7:3
**start** [2] - 8:4, 10:3
**starting** [1] - 3:5
**state** [1] - 3:4
**statement** [4] - 8:18,
9:2, 9:23, 16:7
**STATES** [2] - 1:1,
1:12
**States** [6] - 2:8, 4:25,
6:12, 13:1, 14:11,
21:15
**stating** [1] - 15:7
**STATUS** [1] - 1:11
**status** [1] - 3:21
**STENOGRAPHICA
LLY** [1] - 2:6
**step** [1] - 20:14
**Steven** [1] - 13:10
**STEVEN** [1] - 2:2
**steven** [1] - 3:14
**steven.helfand@
gmail.com** [1] - 2:4
**still** [2] - 9:14, 13:18
**Street** [1] - 1:17
**stricken** [5] - 3:22,
14:1, 14:2, 15:22,
19:22
**strict** [2] - 10:1,
10:25
**strike** [1] - 12:20
**striking** [2] - 12:17,
13:21
**struck** [5] - 12:15,
13:5, 13:10, 13:12,
13:18
**subject** [2] - 9:4,
21:8
**submit** [5] - 17:5,
20:3, 20:4, 20:8,
20:10
**submitted** [2] - 12:4,
15:23
**substantive** [1] -
16:19
**substitution** [1] -
14:23

**sufficient** [2] - 10:8,
11:3
**suggests** [3] - 9:1,
9:14, 9:20
**Suite** [1] - 1:22
**supplanted** [1] -
14:10
**supplanting** [1] -
15:23
**supports** [1] - 11:3
**SW** [1] - 2:2
**System** [1] - 4:25

## T

**Tampa** [1] - 1:18
**technically** [1] -
12:15
**technological** [1] -
21:9
**temporarily** [1] -
3:23
**ten** [1] - 4:12
**terms** [1] - 10:21
**test** [4] - 10:2, 10:6,
10:9, 15:4
**THE** [34] - 1:12, 1:15,
1:20, 3:2, 3:7, 3:17,
3:18, 6:10, 6:15, 6:17,
7:10, 7:18, 7:22, 8:3,
9:25, 10:12, 10:15,
10:19, 11:9, 11:12,
11:18, 12:6, 15:2,
15:16, 17:11, 17:16,
18:3, 18:10, 19:8,
19:19, 20:2, 20:9,
20:11, 20:17
**theoretically** [2] -
17:17, 17:18
**therefore** [1] - 21:8
**thoughts** [1] - 9:5
**three** [3] - 8:25, 13:4,
20:3
**thrown** [1] - 8:16
**today** [1] - 7:15
**totally** [1] - 18:1
**tough** [1] - 19:7
**trade** [2] - 4:18, 6:22
**transcription** [1] -
21:4
**Traurig** [1] - 3:11
**TRAURIG** [1] - 1:21
**tremendous** [1] -
5:12
**two** [1] - 8:25
**typically** [2] - 17:12,
17:13

## U

**U.S** [2] - 4:23, 4:25
**ultimate** [1] - 13:13
**ultimately** [2] - 6:5, 16:11
**uncover** [1] - 18:20
**under** [1] - 6:3
**undo** [1] - 13:8
**unfairness** [1] - 15:14
**unintentionally** [1] - 7:11
**uninvited** [1] - 17:23
**united** [1] - 2:8
**UNITED** [2] - 1:1, 1:12
**United** [5] - 4:25, 6:11, 13:1, 14:11, 21:15
**unless** [2] - 3:18, 6:8
**unquestionably** [1] - 5:6

## V

**Vassilios** [1] - 3:9
**VASSILIOS** [1] - 1:4
**VELAZCO** [2] - 2:7, 21:14
**Velazco** [1] - 21:13
**versus** [3] - 3:3, 4:25, 12:22
**view** [2] - 9:6, 9:13
**violate** [1] - 10:23
**violated** [1] - 14:6
**violation** [2] - 12:11, 15:21
**voice** [1] - 7:6
**voluntarily** [1] - 5:3
**voluntary** [1] - 5:22
**vs** [1] - 1:7

## W

**wait** [1] - 17:16
**waive** [6] - 7:10, 11:18, 11:19, 11:20, 17:11, 17:18
**waived** [2] - 8:18, 17:10
**waiver** [6] - 5:19, 7:16, 7:17, 11:21, 11:23, 11:25
**WALMART** [1] - 1:8
**Walmart** [3] - 3:3, 3:12, 12:9
**wants** [2] - 6:18, 7:5
**week** [1] - 20:4
**weigh** [1] - 15:4

**Westlaw** [4] - 5:1, 12:22, 13:2
**Williams** [1] - 13:1
**willingly** [1] - 6:6
**wishes** [1] - 6:25
**withdraw** [1] - 6:25
**withdrawal** [1] - 16:6
**withdrawn** [4] - 11:1, 15:6, 15:25, 16:5
**withdrew** [1] - 16:23
**withheld** [1] - 9:3
**woefully** [1] - 18:1
**Word** [1] - 20:4
**words** [2] - 8:14, 18:16
**written** [4] - 6:2, 7:4, 15:13, 19:2
**wrote** [4] - 14:25, 17:21, 17:22, 19:6

## Y

**Yanchunis** [2] - 3:8, 6:19
**YANCHUNIS** [1] - 1:15, 3:8, 6:19, 7:12, 7:19, 10:16, 10:20, 11:10, 11:15, 11:21, 20:15
**year** [1] - 12:23
**yesterday** [1] - 4:2