

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:19-CV-20592-MARTINEZ/OTAZO-REYES

VASSILIOS KUKORINIS, on behalf of himself
and those similarly situated,

    Plaintiff,

vs.

WALMART, INC., a Delaware
Corporation

    Defendants.

## OPPOSITION TO MOTION TO SEAL DECLARATION OF HELFAND [Docket No. 58] & REQUEST FOR HEARING: DEMAND FOR LIMITED INTERVENTION TO CONTEST THE SEALING OF JUDICIAL RECORDS

### I. INTRODUCTION AND ARGUMENT SUMMARY

The parties' efforts to litigate this case in secrecy, over the objection of absent class member, Steven F. Helfand, in *pro se* – and in violation of clear Eleventh Circuit precedent – are especially troubling.[1] Both parties have wholly failed to comply with the Court's procedural and substantive requirements for sealing. The *Motion to Seal* fails to make the particularized showing of *good cause* that is required by both Eleventh Circuit precedent and Local Civil Rule 5.4.

*First,* the *Motion to Seal* would keep evidence secret from the public on an issue of enormous public interest: approval of a proposed class action between one of the largest com-

---

1 The right of access to judicial records pursuant to common law is well-established. See *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); see also *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).

mercial enterprises in the world and its customers. The public interest in this case cannot be overstated, as evidenced by myriad news articles that link the declaration the Movants' continue to try and cloak in secrecy. This case has the potential to not only affect the rights of the millions of class members, but also to set precedent on what may be best described as a, rare, whistleblower complaint by a named class action representative.[2]

*Second*, unlike court proceedings among solely private parties, this matter involves the workings of a proposed class action settlement. The public's presumptive right of access to the court filings of the parties and non-parties is therefore especially strong.

*Third*, the evidence that the Movants seek to keep secret from the public relates to one of the most critical issues in accessing final approval of the proposed settlement: whether the named plaintiff or *Morgan & Morgan* are adequate representatives. That is the very last type of evidence that should be kept secret from the public for any purpose, especially where it bears on a settlement which provides a pittance to class members while enriching their counsel; all the while being, potentially, collusive.

*Fourth*, the possibility of prejudice to those opposing disclosure is vague and conjectural in this case. To support a claim of prejudice, more than conclusory assertions are necessary; the party requesting secrecy must offer a particularized, factual demonstration of potential harm. See

---

[2] Perhaps not following the correct procedural rules, Kukorinis claims that Attorney Yanchunis violated, at least, two *Florida State Bar Rules*, including Rule 4-1.4 ["Communication" with a client and keeping him reasonably informed of case developments]. Mr. Yanchunis then may have compounded this alleged problem by speaking with the press and making what may be, further, inaccurate assertions, to the general public and the Class. Rules Regulating the Florida Bar 4-4.1(a) (prohibiting lawyer from making false statement of material fact or law to third party in course of representing client). Similarly, Mr. Yanchunis may have violated his duties by failing to obtain consent to the Settlement Agreement.

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987) (claims of prejudice from disclosure of financial statements, without supporting affidavits or meaningful details, could not overcome presumption in favor of access to judicial records).

*Fifth*, the parties have failed to overcome the Eleventh's Circuit's strong presumption that records filed in a civil case are available to the public. Neither party has presented sufficiently specific or compelling reasons to hide documents from public view.

*Sixth*, while purporting to argue, without basis and in *Soviet* styled-revisionism, that ECF Documents 43 and 58 should be sealed for non-existent privileges that either do not exist or were otherwise waived or now mooted by public disclosure, Kukorinis filed ECF Document 51 on October 1, 2020, which explicitly waives, at least, on a limited basis, attorney-client privilege and opens the door for unsealing all of these documents, regardless of public disclosure. ECF Document 51 discloses:

> ***As I have have been told*** by John Yanchunis that the agreement does not and will not exclude the ability of pursuing those other claims, and will be made clear on the record, I withdraw my prior declaration and request that it be sealed. ECF Document 51, ¶ 3 [emphasis added].

Yet, the settling parties have ignored all of this. They have not moved to seal ECF Document 51. The settling parties inconsistently purport to rely on the same attorney-client privilege to seal *other* documents, omitting the favorable waivers, while, attempting to strike and then bury the unfavorable ones, in secrecy. The reason for this rank, hypocrisy, is woefully, obvious. ECF document 51, states, *inter alia*, that Kukorinis, at least, now, approves of the settlement he did not know about and previously labeled as a "fiasco." ECF Document 51, ¶ 3; ECF Document 43; *Helfand Declaration*, Ex. A. It was also filed by Kukorinis in *pro se* [see the mailing

envelop scanned into the record] in spite of his representation by Mr. Yanchunis. Yet, mysteriously, this filing, directly by Kukorinis, has not been struck for any violation of Local Rules, at the request of the settling parties, based on present representation. Only those documents favorable to settlement opposition are *struck/sealed by the settling parties when deemed inconvenient.* The dichotomy is straight out of *Havana* or *Beijing*.

*Finally*, the parties have asked the Court to reflexively seal the *Declaration of Steven Helfand* [the "*Declaration*"] in a class action case that impacts millions of Americans, in spite of allowing selective waivers of privilege from Kukorinis when beneficial to them. Moreover, all of this hypocrisy from the settling parties is made in spite of the fact that the relevant attachment to the *Declaration* was obtained from an **independent** source. *See*, Exhibit, A; *e.g.*, *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of the Navy*, 860 F.3d 1244, 1260, (9th Cir. 2016), 2017 U.S. App. LEXIS 11407, 2017 WL 2766091 [dissemination of documents is permissible so long as obtained from an independent source].[3]

## II. RELEVANT FACTUAL SUMMARY OF INFORMATION SOUGHT TO BE SEALED BUT WHICH SHOULD BE ALLOWED TO BE INCLUDED IN THE COURT RECORD & ACCESSED ON PACER BY CLASS MEMBER AS INSTRUCTED BY THE CLASS ACTION NOTICE

The *gist* of Exhibits A, B, and C, attached to the *Declaration of Steven Helfand* states:

---

[3] The *Declaration of Helfand*, and even the one originally filed by Kukorinis, is, in essence, material filed in connection with any substantive pretrial motion, unrelated to discovery, and is subject to the common law right of access. *Chi. Tribune*, 263 F.3d at 1312 (difference between "material filed with discovery motions and material filed in connection with more substantive motions"); see also *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993). ("[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").

- "Morgan & Morgan's duties were to keep (Kukorinis) reasonably informed of the status of this matter." *Declaration of Helfand*, Ex. A; B.

- "Unfortunately, the plaintiffs' attorneys (failed) to keep this promise." *Declaration of Helfand*, Ex. A; B.

- "Kukorinis said he had not heard from class counsel at Morgan & Morgan since January 2020." *Declaration of Helfand*, Ex. A; B; C.

- Kukorinis said he had not been "informed, participated or updated" after that and only found out about Judge Martinez's preliminary approval of the settlement because he happened to search for the name of his case on Google. *Declaration of Helfand*, Ex. B.

- "I am refusing to accept the agreed service award money," Kukorinis said, "because I don't want to participate [or presumably, be a party (indicating recusal)] to this fiasco/ cover up and betrayal to all class action members, orchestrated without my knowledge." *Declaration of Helfand*, Ex. A; B. As Kukorinis declined to be a named representative; the class is now, without, one.

In response to this extremely ***problematic*** narrative from a named class action representative, in late October, 2020, Messrs. Yanchunis and Salky weighed in on a, now, raging, public debate, suggesting a counter-narrative to the documents they now purport to *seal* in statements to the press:

- John Yanchunis of *Morgan & Morgan* told me by email that Kukorinis was "was always informed of the progress and status" of the case, noting that the lead plaintiff traveled to the November 2019 mediation with class counsel. *Declaration of Helfand*, Ex. B.

- In response to my specific question about whether *Morgan & Morgan* sought Kukorinis' consent before moving for preliminary approval of the settlement, Yanchunis said by email, "Yes, of course we did." *Declaration of Helfand*, Ex. B.

- Salky referred the matter to a *Walmart* spokesperson who indicated its pleasure with the proposed settlement. *Declaration of Helfand*, Ex. B.

### III. THE CRITICAL INQUIRY THAT SHOULD NOT & CANNOT BE SEALED IS WHETHER KUKORINIS AUTHORIZED THE SETTLEMENT OR NOT

There is a ***complete*** disconnect between representations of the named representative, Kukorinis, and Mr. Yanchunis, all of which may implicate questions of adequacy of representation, to be addressed, at the scheduled fairness hearing. Kukorinis' declaration, in fact, has very little to do with mediation (whether this is a valid basis for sealing the record or not), attorney-client privilege, work-product or the scope of the release, ascertained from communications, however belated, and after preliminary approval and settlement acceptance, from and by Mr. Yanchunis. Messrs. Yanchunis and Salky likely misspoke.

Sadly, the exact, ***opposite***, is explicitly suggested by Kukorinis, and this makes all of this a matter of enormous public scrutiny. Kukorinis, specifically, disavows that he had any communication(s) with Mr. Yanchunis during relevant time-periods, in contrast with the statements by Mr. Yanchunis. Kukorinis claims he did not attend the second mediation or authorize the settlement, also in contrast with Mr. Yanchunis. Both cannot be accurate. In spite of this incredible contrast, there, are, many questions for Mr. Yanchunis remaining that he has been dodging, while presenting a contrasting public narrative. Full transparency and *glasnost*, is the only, sound, remedy. Mr. Yanchunis on *reply* is invited to unequivocally specify:

- Whether the named representative was included in the second mediation and whether he participated in any way, shape or form.

- Was Kukorinis alerted as to the date and time for the second mediation sufficiently beforehand? If yes, how and when and by what means?

- Did the named representative approve and authorize the proposed *Settlement Agreement* prior to the preliminary approval motion being filed on August 7, 2020.

- Why is Kukorinis not a signatory to the proposed *Settlement Agreement*?

- Did the retainer agreement between *Morgan & Morgan* and Kukorinis allow Mr. Yanchunis to accept any settlement on Kukorinis' behalf, without Kukorinis' explicit authorization and/or execution; which is in violation of *Florida State Bar Rules*.

- Did Mr. Yanchunis violate applicable *Florida State Bar Rules* concerning acceptance of a settlement on behalf of a client, without authorization? If authorization was given, was it oral or written? Would oral acceptance be valid under *Florida State Bar Rules?*

- Were fees negotiated at the second session or, sometime, *afterwards*? If yes, how was this possible ,if, as contended, the named representative was not present?

- Will the mediator waive her privilege and provide a declaration as to who specifically appeared at the second mediation session?

- Has Mr. Yanchunis maintained contemporaneous time - records, and did he present them to Kukorinis for review, at any time? Will Mr. Yanchunis reveal his time records in redacted form to indicate specific dates of communication with Kukorinis? If there was no communications indicated, will Mr. Yanchunis agree to take immediate corrective, disclosure measures, so as to inform the class of his malfeasance?

- Will Mr. Yanchunis agree to have John Morgan substitute into this case; given that Mr. Yanchunis' credibility is now reasonably subject to question?

Kukorinis is **_notably absent_** from the *Settlement Agreement*. Rather, as indicated, *supra*, the document is executed by only Mr. Yanchunis, "on behalf of plaintiff and settlement class members" on "August 7, (sic) [undated year]" and a representative of Walmart, presumably from Greenberg. But, **_something is plainly amiss_**. There is **_no way_** that the preliminary approval documents, proposed notice **_and_** Settlement Agreement were prepared on the **_same_** date, August 7, 2020. Normally, a settlement agreement is negotiated first, and only then, and afterwards, are preliminary approval documents and notice prepared, *afterwards*. The Settlement Agreement typically bears a signature of the named representative.

Here, everything is somehow done contemporaneously and out of the regular order, all of which square with the whistle-blower representations made by Kukorinis. It may also suggest-collusion between Messrs. Salky and Yanchunis. Compounding any reasonable comprehension of all of this and why the class has been forced to now try and reconcile this messy situation, is Mr. Yanchunis' indication of Kukorinis' integral involvement warranted an "award" for up to $25,000; in spite of Kukornis' claims of non-involvement. The proposed award, now disavowed, by Kukorinis, reflects what would be an enormous payment, presumably based on a sufficient body of work, but there is significant doubt much of it was relied upon by Mr. Yanchunis, given the absence of communication between him and Kukorinis.[4]

---

[4] Both the named representative and Messrs. Yanchunis and Salkly should voluntarily submit to deposition if they hope to preserve this proposed settlement. Their unwillingness to do so, let alone, meet and confer in good faith, is puzzling, but entirely consistent with their ham-fisted approach to date.

## IV. EITHER THE CLASS REPRESENTATIVE OR ATTORNEY YANCHUNIS HAS UN-FORTUNATELY, MADE, AT BEST, INACCURATE REPRESENTATIONS.

There is **_no_** indication, other than by what may be, sadly, imprecise, representations, that the named representative, in fact, denies, in Exhibit A, that anything was authorized by him in the first place, possibly, *dooming* this proposed settlement *ex ante*. The importance of all of this cannot be swept under the rug especially in light of the plain absence of any particularized showing for *good cause* in sealing anything. In this regard:

- The named representative claims he had no communication with Mr. Yanchunis; *a fortiori*, privileges, work product protection are inapplicable.

- Since the named representative expressly claims he did not participate in the second mediation session where this settlement scheme was hatched, no mediation privilege can be implicated, even if one where found to exist, which it does not, in the Eleventh Circuit.

- The named representative indicates he did substantial work documenting the case. He is not an attorney. It is not claimed to have been performed at the behest of Mr. Yanchunis. It is not work-product; and even if it were, it doesn't matter, because it is not relevant to the *core* issue as to whether or not the named representative approved the settlement agreement prior to submission of preliminary approval documents by Mr. Yanchunis.

This all then cries out for more transparency, and, **_not_** less, especially when Mr. Yanchunis specifically inserted himself in the public debate; publicly denying sealed allegations, all the while offering what may prove to be an incomplete or inaccurate counter-narrative. There is a **_complete_** disconnect between the named representative and Mr. Yanchunis; and it has **_nothing_** to do with the scope of the release. Having ventured into the public debate to make partisan com-

mentary favorable to *Morgan & Morgan*, the public record on *Pacer*, including the complete file, must be fully divulged and this Court should not participate in secrecy efforts or rancor instigated by the settling parties.

The *Motion to Seal* should be denied, and all documents in this litigation should be publicly available, unless the parties satisfy the high bar for demonstrating that sealing is, actually, necessary. They cannot, because the key document in question, Exhibit A, attached to the *Declaration of Steven Helfand*, is already public. See, *Perez-Guerrero v. United States AG*, 717 F.3d 1224, 1235, 2013 U.S. App. LEXIS 11809, 24 Fla. L. Weekly Fed. C 351, 2013 WL 2500607 (11th Cir. 2013) ["We decline to conceal Perez-Guerrero's identity because his name has unfortunately already been disclosed in news articles"].

## REQUEST FOR HEARING

The parties should discuss the present state of sealing; and limited intervention by Helfand. Helfand desires limited intervention to take the depositions of Messrs. Kukornis, Yanchunis and Salky and this, or a briefing schedule, in this regard, shall be discussed. HELFAND requests a hearing on Zoom with thirty minutes assigned to each side. The issues of mootness, the complexity of the required analysis, and further development may benefit from *colloquy* with the Court.

November 9, 2020

/S/ [signature]
Steven F. Helfand
1400 SW 137th Avenue. F112
Pembroke Pines, FL 33027
786.676.1018

Steven Helfand
1400 SW 137th Ave Apt 112
Pembroke Pnes, FL 33027-6941

MIAMI FL 330
9 NOV 2020 PM 4

United States District Court
Civil Clerk
299 E. Broward Blvd., Ste 108
Fort Lauderdale, FL 33301

33301-197799