FILED BY ___PG___ D.C.

NOV 13 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and those similarly situated, **Plaintiff,** | Case No. 1:19-CV-20592-MARTINEZ/OTAZO-REYES |
| v. | |
| WALMART, INC., a Delaware corporation **Defendant.** | |

## OBJECTION[1] TO CLASS CERTIFICATION AND PLAINTIFF'S ATTORNEY FEE[2]

In a class-action settlement, this Court owes a "role as a fiduciary and guardian for the unrepresented class members [to] guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members." *Managed Care Advisory Group v. Cigna Healthcare*, 939 F.3d 1145, 1162 (11th Cir. 2019).

The Court—as the class's guardian—should cut Plaintiff's attorney fee to *lodestar*.

### Preliminary Statement

I.  Shiyang Huang is the full name of objecting class member.[3]

II. Huang is in Settlement Class subgroup (2): "those who attest to the number of Weighted Goods they purchased and have receipts, but no packaging or

---

[1] ***Certificate of Service:*** I certify that a true and correct copy of the foregoing was filed with the Clerk of Court by U.S. mail. CM/ECF will then notify all counsels of record.

[2] Huang also maintains Named Plaintiff cannot receive a "service award", even if *Johnson v. NPAS Solutions, LLC*, -F.3d-, 2020 WL 5553312 (11th Cir. Sep. 17, 2020) were vacated.

[3] See signature for address and phone.

1

other documentation to demonstrate how much they were overcharged". Class Notice 3. Huang filed a claim with claim number HU2OBA1S.

III. Huang objects in good faith and the objection applies to the entire class. Huang is objecting without counsel, and this Court should "avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards." *Rule 23 Committee Notes—2018 amendment* at subdivision (e)(5)(A).

Huang explicitly objects to the deficiency in Class Notice and Settlement Website, which both omitted requirements for objectors to "state whether it applies only to the objector, to a specific subset of the class, or to the entire class". Fed. R. Civ. P. 23(e)(5)(A). Thus, any objector's failure to disclose such is entirely at the fault of Settlement Class Counsel, not of objectors.

IV. Huang fully discloses two past and pending cases where he filed objections. To preempt *ad hominems*, Huang further discloses non-objector actions.[4]

---

[4] (1) Huang opposed a Motion for Class Notice in *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK, Doc. 332. The court denied the motion before Rule 23(e) notice, for reasons resembling Huang's key arguments. 2020 WL 836673, *13-17 (N.D. Cal. Feb. 20, 2020).
(2) Huang moved for ECF permission in *In re: Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 5:2016-md-02752, Doc. 391 (N.D. Cal.). That motion was denied; Huang did not object.
(3) Huang *filed a motion* in *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-2420, Doc. 2645 (N.D. Cal.). Class Counsel resolved it amicably for Huang to file a late claim.
(4) Huang *moved to appear as amicus curiae* in *Larson v. Allina Health Sys.*, No. 0:17-cv-3835-SRN-TRL, Doc. 103, 104 (D. Minn.). The motion was denied.

1. *Schultz, et. al. v. Edward D. Jones & Co. L.P., et al.*, No. 4:16-cv-1346-JAR (E.D. Mo.), *aff'd*, 791 F' App'x 638 (8th Cir. 2020), *cert. denied*, No. 19-1366 (Oct. 5, 2020).

2. *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.), *appeal pending, Huang et al. v. Spector et al.*, No. 20-10249 (11th Cir.)

Additionally, Huang discloses that, as Huang's simultaneous *unopposed motion* shows, Huang *already* recovered $25,000 for *this* Class if the settlement is approved.

## Argument

***First***, Plaintiff's counsel purported to seek 25% (from a *variable* common-fund between $4.5 million "floor" and $9.5 million "ceiling"). Without knowing *actual* common-fund size, Plaintiff's $2.375 million flat-fee is a preposterous **_52.8% fee_** to the $4.5 million "*floor*", despite "25% fee [is what] this circuit has said [a]s the benchmark". *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011). *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("38.9% ... is clearly excessive"); *Pearson v. NBTY*, 772 F.3d 778, 782 (7th Cir. 2014) ("attorneys' fees awarded to class counsel should ***not exceed a third or at most a half*** of ... money going to class members".) (emphasis added).

Plaintiff's flat-rate $2.375 million request from a $4.5 million "floor" is so objectionable even for Plaintiff's own "25% benchmark" arguments: **_52.8%_** flat-fee request flunked all standards at once. And Plaintiff's motion *repeatedly* only pitched for 25% throughout, (*e.g.*, Plaintiff's Motion for Fees [Doc. 56] at 14 ("An award of 25 percent of the monetary value of the common fund is well within the benchmark")), which ought to be a ***variable, pending actual size of the "fund"***. Plaintiff cannot enjoy unjust enrichment for up to ***$1,250,000*** without adding a penny more than the $4.5 million "floor". Rule 23 demands "affirmatively demonstrate[d]" compliance. *Wal-Mart Stores v. Dukes*,

3

564 U.S. 338, 350 (2011). Even *arguendo* Plaintiff's percentage-of-fund pitch, the fiduciary-bound attorneys cannot ask more 25% of the ***actual class common-fund***, which is what Plaintiff argued for. Absent class members are "not designed as a form of economic relief to improve the financial lot of attorneys". *Penn. v. Del. Valley Citizens' Council*, 478 U.S. 546, 565 (1986). But here, less than $400,000 of lodestars "were bumped up to $[2.375] million through [a] multiplier that's essentially sort of plucked out of the air. It's just a reverse justification for taking $2 million in fees off of [a] settlement". *Tr. of Oral Arg.* at 36, *Frank v. Gaos*, 139 S. Ct. 1041 (2019) (argument of the Solicitor General of the United States as *amicus curiae*). While Plaintiff might ask for deference of their "experienced" judgment, "no such assumption may be indulged ... in any class action settlement with the potential for gigantic fees." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999). The creation of a $2.375 million fee request out of under $400,000 lodestar is precisely a "windfall" criticized by *Penn, supra*, and *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985). *Accord In re Bluetooth*, 654 F.3d 935, 942 (9th Cir. 2011); *Pearson*, 772 F.3d at 787 ("selfish deal"). *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting "[t]he [Rule 23(a)(4)] adequacy heading also factors in competency and conflicts of class counsel.") *If Class Counsel is found to be conflicted for money reasons—losing the absolute fiduciary loyalty, then Fed. R. Civ. Proc. 23(a)(4)— adequacy representation under Due Process—utterly failed here to defeat class certification.*

***Second***, class certification should be denied for Rule 23(a)(4), 23(e) and Rule 23(g) noncompliance. Plaintiffs "may be" inadequate representatives with Class Counsel's "greater willingness to compromise". *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*,

4

874 F.3d 692, 697-698 (11th Cir. 2017). To be sure, Huang as an objector "does not have to show actual antagonistic interest; the potentiality is enough". *Valley Drug, infra* at 1194-1195. That burden of proof undisputedly rests with advocates of class certification—the settling parties. *Dukes*, 564 U.S. at 350. Certification is reviewed under "undiluted, even heightened[] attention" in the settlement context. *Amchem*, 521 U.S. at 620.

*(1)* The "economic reality" sadly reveals, *supra*, an inequitable fund with up to 52.8% going to fees. *Valley Drug Co. v. Geneva Pharms.*, 350 F.3d 1181, 1195 (11th Cir. 2003).

*(2)* Perverse incentives appear to have led to a burdensome claims process (*e.g.*, to claim *possibly* $40 requires a mind-bogging count of 24 receipts, uploading them—all assuming someone had to read the ***Settlement Agreement*** to know 24 receipts are minimum for up to full $40 *pro rata*). And "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004). Thus, it can be assumed that very few will have a mountain of WalMart "weighted goods" receipts for claims—let alone greasy labels—by submitting every mindbogging receipt to recover $1.67 each.

But Class Counsel can profit from a burdensome claims process—it helps to make the "ceiling" a mere illusion for favorable attorney's fee basis, while Defendant prefer a minimal "package deal" payout (*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)) under the settlement, and especially when WalMart reserved the right to contest Plaintiff's fees in retaliation. *See Pearson*, 772 F.3d at 783 ("class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims.") *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174-175 (3d Cir. 2013) (demanding "inclusion of a mechanism for additional payouts to

5

individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund"). *Also see ibid.* (vacating approval for "not know[ing] the amount of compensation that will be distributed directly to the class.") A burdensome claim process here suggests Plaintiff's inadequate representation—in exchange for a sweetheart deal: WalMart gets a boosted chance to cap payout at $4.5 million; Plaintiff's Counsel seeks $2.375 million, or **_52.8%_** of that "floor" class fund, unless the claims made it expensive for WalMart to add more. "This is a case in which "the lawyers support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information.'" *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014) (Posner, J.) *Accord In re Dry Max Pampers Litig.*, 724 F.3d 713, 717–18 (6th Cir.2013). If "vast majority of claimants have not submitted documentary proof entitling them to a greater award," it would "cast[] doubt" on the settlement fairness altogether. *In re Baby Prods., supra. Also see* Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Actions: Improving Investor Protection* 7 (2005) (criticizing a class settlement yielding $8 million to class' claims process, while lawyers received over $80 million).[5] This

---

[5] *See* Mayer Brown, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions* 7–8 (Dec. 11, 2013). "Single-digit percentage" is probably an overstatement: one settlement administrator acknowledged that the median claims rate is far less than 1% in settlements without direct notice and without easy claims processes. See, e.g., *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366 at *4 (N.D. Cal. Aug. 25, 2016) (citing authorities); *Pearson*, 772 F.3d at 782 (same); Alison Frankel, *A Smoking Gun in Debate over Consumer Class Actions?*, Reuters (May 9, 2014); Daniel Fisher, *27*

might be a commendable great deal for WalMart—but not so for the absent Class.

*(3)* Given implications of Rule 23(a)(4) that questions ability to represent the Class, the absentee Class should get to revive Named Plaintiff Kukorinis' stricken declaration as a docket record. Even the press noticed Named Plaintiff Kukorinis' exceedingly unusual flip-flop posture—adding doubts to the Rule 23(a)(4) compliance. *See* Alison Frankel, *Lead plaintiff in $9.5 mln Walmart class action says Morgan & Morgan settled without telling him.* Reuters.com (Accessed Nov. 2, 2020).[6] (Huang already formally informed Counsels for settling parties that he has no knowledge whatsoever of the article until November 1, 2020, but repeats it here to preempt *ad hominems*.) "Rule 23 would be subverted" if a Named Plaintiff by happenstance "learns of a pending [settlement] involving a class of which he is a part"; instead, "it is the responsibility of the class representative to protect the interests of all class members." *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)[7]. "[O]ne of the class representative's functions is to monitor class counsel so as to ensure that counsel does not accept a relatively weak class recovery in return for the promise of a large fee." 1 William B. Rubenstein, *Newberg on Class*

---

*Odds Of A Payoff In Consumer Class Action? Less Than A Straight Flush*, Forbes (May 8, 2014). Even when the class is directly mailed, response rates "rarely exceed seven percent." *Sullivan v. DB Investments*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc).

[6] https://www.reuters.com/article/legal-us-otc-leadplaintiff/lead-plaintiff-in-9-5-mln-walmart-class-action-says-morgan-morgan-settled-without-telling-him-idUSKBN27C2YL

[7] Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Actions* § 3:77 (5th ed. 2018); id. § 3:70 (stating that the law presumes that class representatives will monitor class counsel). Without such a structure in place, "the class loses one check on counsel's capacity to sell out the class's claims." Id. § 3:77. "Permitting class counsel who are not effectively monitored to prosecute a class action is" having lawyers as "both class representative and class attorney". *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996)

*Stare decisis* also requires disclosure as public policy. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The media and public presumptively have a right to access judicial records. *Comm'nr v. Adv. Local Media, LLC*, 918 F.3d 1162, 1166-67 (11th Cir. 2019) (citing *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam)). *Id.* ("materials submitted by litigants—whether or not they are formally filed with the district court—that are 'integral to the "judicial resolution of the merits"' in any action taken by that court are subject to the common law right of access"). *Shane Grp., Inc. v. BCBS of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[I]n class actions—where by definition some 'members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied . . . with particular strictness.'") (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

*Additionally*, if this Court agrees with Huang that Plaintiff's fee request is excessive, awarding a "reasonable" expended lodestar of under $400,000 is more than enough for attorneys' hourly rates, and it will save nearly $2 million for the Class versus

as-is. Huang expressly preserve the argument that a "reasonable fee" for plaintiff's counsel should be a reasonable lodestar—all related arguments are under the footnote.[8]

---

[8] The common-fund doctrine only requires absent class members "contribute their due proportion of the expenses which he has **fairly incurred**", *In re Air Crash Disaster*, 549 F.2d 1006, 1017-1018 (5th Cir. 1977). (emphasis added), Imaginary lodestar-multipliers are ***not "fairly incurred"*** against absent class members. For example, if Plaintiff litigated to judgment, unenhanced lodestar would be "presumptively reasonable".
Despite temptations to misread "calculation of attorney's fees [within] the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class", *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), *Blum*'s "percentage-of-fund" footnote only implies that a common-fund fee cannot theoretically exceed 100%, or some "reasonable" percentage under the power of equity. (Unlike common-fund cases, for example, a Plaintiff could obtain a $1 judgment, with $999,999 in fees from a Defendant via fee-shifting—which is impossible under common-fund doctrine.) That is why ***"the features that distinguished our common-fund cases from cases where the shifting of fees was inappropriate."*** *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added). *Blum* "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 18 (2000).
Lodestar method is supported by *Perdue v. Kenny A.*, 559 U.S. 542, 546, 550-60 (2010) and *Copper Liquor v. Adolph Coors Co.*, 624 F.2d 575, 583 n.15 (5th Cir. 1980) (noting "[t]he *Johnson [v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)] test ... ***is similar to the Third Circuit's "lodestar" method of computing attorneys' fees."***) (emphasis added). *Also see* post-*Blum* decisions, *e.g.*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 n.4 (7th Cir. 1988) (despite arguments that "percentage fee arrangement would be more efficient ... we will not overturn" lodestar approach); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 n.10 (1st Cir. 1991) (criticizing "tendency exhibited by some courts, particularly in common fund cases, to jettison the lodestar in favor of a 'reasonable percent of the fund' approach").
*Copper Liquor* and *Johnson*'s lodestar adoption is ***binding*** under *stare decisis*, *i.e.*, the issue is settled. Although *panel decisions* from the Eleventh Circuit sound favorable to Plaintiff (*e.g.*, *Faught, supra*, or *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991)), binding "prior decision[s] of the circuit ... could not be overruled by a panel but only by the [Eleventh Circuit] sitting en banc." *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*). "When faced with an intra-circuit split we must apply the 'earliest case' rule, meaning 'when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel

Lastly, if Plaintiff wants to raise belated arguments, "the doctrine of judicial estoppel will prevent those parties from taking an opposite position in future proceedings." *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 798 (7th Cir. 2018). And other "issues and contentions not timely raised in the briefs are deemed abandoned." *United States v. Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001). That includes—e.g., arguing for a lodestar multiplier (as *Camden I* would even reject), or a fee that exceeds 25% of the common-fund (which was not raised in the motion).

*In conclusion*, Plaintiff's attorney fee should be limited to a *reasonable* lodestar. In any event, Plaintiff's fee should be capped at 25% of the *actual* size of the Class fund. The Court should apply "heightened[] attention" (*Amchem*, 521 U.S. at 620) to evaluate compliance under Fed. R. Civ. P. 23(a)(4), 23(g), and Rule 23(e), 23(h) as a Class fiduciary.

Dated: November 2, 2020                     Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2800 SW Engler Ct., Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

---

cannot be overturned by a later panel.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) *accord Arias v. Cameron*, 776 F.3d 1262, 1273 n.8 (11th Cir. 2015);
  Likewise, class members should not pay for *anticipated* lodestars. A fiduciary—such as Class Counsel—should not "take selfish advantage of his trust, or … benefit himself or prejudice" absentees. *In re Angelle*, 610 F.2d 1335, 1338 (5th Cir. 1980).

john doe <defectivesettlement@gmail.com>

## Re: *EXT* Attn: Walmart Weighed Goods Settlement

**John Yanchunis x2191** <JYanchunis@forthepeople.com>  Wed, Oct 28, 2020 at 8:36 PM
To: Defectivesettlement <defectivesettlement@gmail.com>
Cc: "salkym@gtlaw.com" <salkym@gtlaw.com>, "BeerN@gtlaw.com" <BeerN@gtlaw.com>

Mr. Huang, if you believe you have valid objections , please do not interpret my earlier response as seeking to stop you from filing any objection that you believe to be meritorious .

**John Yanchunis**
Attorney
My Bio

**P:** (813) 275-5272
**F:** (813) 222-4736
**A:**

> On Oct 28, 2020, at 8:17 PM, Defectivesettlement <                          > wrote:
>
> CAUTION: Use caution when clicking on links or opening attachments in this external email.
>
> _____
> Attaching Mr. Kukorinis' previous declaration. That's the one I'm talking about, unless I'm mistaken.
>
>
> Mr. Yanchunis and Walmart's counsel.
>
> I'm writing to confer my intent to move for a nominal $1 objector award for saving $25,000 for the settlement Class. No attorney's fee with it, just $1 incentive award to me as objector. I prefer that the $1 come from Plaintiff's attorney fee allocation, not from the $25,000 that is recovered to the Class.
>
> If Plaintiff and Defendant agree to not oppose, then I will forget about writing an objection to other aspects of the settlement. I have read the interesting pro se declaration by Named Plaintiff himself. and I also believe the 25% fee based on the impossible "ceiling" common fund is actually a 53% fee based on the minimum (or most likely) common fund size that Defendant will actually pay into? Plus that Plaintiff's footnote insistence that a vacatur of NPAS would trigger Plaintiff's incentive award request again is very troubling, especially when NPAS was decided on historical grounds, not by making new laws.
>
> Unlike named plaintiff's incentive award ban, class objectors award is certainly authorized by latest Rule 23 itself and caselaw. See Advisory Committee Notes - 2018 amendment at Rule 23(e)(5)(B) "Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance". Also see In re Sw. Airlines Voucher Litig., 898 F.3d 740, 744 (7th Cir. 2018) ("Objectors who add value to a class settlement may be compensated for their efforts."). The Eleventh Circuit's NPAS decision surely does not bar a good faith, meritorious objector from getting $1 objector award either.
>
> I will only do it by the book via motion in open record, after both parties agree to non-opposition. Since I'm moving for a nominal $1 award, not a real painful amount, I expect that you can decide quickly before my Saturday morning, and tell



CLERK OF COURT
ATTN CASE NO 1:19-cv-20592-JEM
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FL, MIAMI DIVISION
400 NORTH MIAMI AVE
MIAMI, FL 33128

NOV 13 2020
2:17 PM

**USMS
INSPECTED   RECEIVED**

SHIYANG HUANG
2900 SW ENGLER CT
TOPEKA KS 66614