FILED BY___*PG*___D.C.

**NOV 1 6 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

VASSILIOS KUKORINIS,
    Plaintiff,

v.

WALMART, INC.,
    Defendant.

Case No. 1:19-CV-20592-
MARTINEZ/OTAZO-REYES

## EXPEDITED MOTION FOR EXTENTION OF TIME TO FILE A CLASS MEMBER OBJECTION AS TIMELY (RULING REQUIRED BY JAN. 22, 2021)

Shiyang Huang respectfully requests that this Court grant a motion for extension of time to file a class-member objection to the pending class-action settlement motions. As Huang explains in detail (*see also* Exhibit A, Huang Declaration In Support of Motion) Huang timely mailed a class-member objection (*two copies of* Exhibit B), in compliance with the postmark deadline for objections. But this Court's docket has not yet reflected the filing as of November 13, 2020. Huang's motion should be granted for good cause.

### Factual Background

Relevant parts of this section are reproduced *verbatim* in an attached declaration under penalty of perjury. *See* Exhibit A.

1. This Court granted Plaintiff's motion for class notice. Doc. 42. Objections "must be postmarked no later than November 4, 2020". *Class Notice* at 6.[1] Deadline for Plaintiff's response to objections, is on February 5, 2021.  Doc. 42 at 10. The settlement

---

[1] www.walmartweightedgoodssettlement.com/Content/Documents/Notice.pdf

website also demanded objections to be sent to this Court, and also to Plaintiff/Defense Counsel. [2] The Court also set instructions for class member's objections. Doc. 42 at 6-7.[3]

2. Huang timely filed a claim under claim number HU2OBA1S. (Exhibit B).

3. On October 31, 2020, Huang shared his unfinished draft objection to Plaintiff and Defendant, suggesting parties agree to revise the settlement. Parties did not respond.

4. Assuming Huang needed to file an objection, On Monday, Nov. 2, 2020 (3:40AM CST), Huang asked whether Settling Parties may allow Huang to serve his objection via email—if they grant written consent under Fed. R. Civ. P. 5(b). Parties did not respond.

6. On Nov. 3, 2020 (12:29PM CST), Huang informed Settling Parties that he has sent first-class mail copies of the objection to the Court, and to addresses for Plaintiff and Defendant's Counsel. For his copy to the Court, Huang also additionally included an unopposed motion, and a consent form to ECF notifications.

7. On Nov. 3, 2020, Huang realized his objection included only a typeface signature block, similar to his filings at the United States Court of Appeals for the Eleventh

---

[2] https://www.walmartweightedgoodssettlement.com/Home/FAQ (FAQ No. 14)

[3] As a separate note, the settlement website, settlement agreement (Doc. 41 at 11), and class notice (*supra* at 5-6) all failed to provide instructions of this Court's subsection (d) requirement that reflects a "must" have requirement. Fed. R. Civ. P. 23(e)(5)(A).

Despite such deficiency in class notice, Parties already once used such non-substantive requirement to discredit objecting class objection's validity, although the fault belongs to interim Class Counsel for providing a defective Class Notice without correct instructions. *See* Doc. 51 at 4 (criticizing objector Helfand for failure to respond to subsection (d)).

Circuit,[4] but it may be ambiguous as to the "signature" requirement in the class notice. *See* Class Notice at 5 (asking one to "personally sign" but not specifying whether that signature must be handwritten). Huang also signed accompanying ECF notification consent form, and did not recall to the signature requirement while preparing for mailing.

8. Out of abundance of caution, Huang reprinted a copy of the objection he sent on November 2, 2020, and added a handwritten signature. Huang also included a notice for explanations. Exhibit C. First-class mail was sent before pickup deadline on Nov. 3, 2020.

9. Huang called this court's clerk's office on Nov. 10th and 12th, regarding whether this Court has received his objection. Huang was informed that the courthouse is still processing after Nov. 9th and 11th closure for weather and Veteran's Day.

10. On Nov. 12, 2020, Huang requested consent from Settling Parties on whether they would consent to this instant motion by Huang to seek extension of objection deadline, or for all purposes, have the objection considered as otherwise timely. While Huang and Plaintiff's Counsel Mr. McGee agree that the first-class mail may be delayed for the Presidential Election, ongoing COVID-19 pandemic, and court holidays, Plaintiff refused to provide consent to non-opposition. Defendant's Counsel did not respond.

Huang therefore presents this motion for relief in good faith.

---

[4] *See generally, Shiyang Huang et al. v. Brian Spector, et al.,* No. 20-10249 (11th Cir.), *oral arg. scheduled for February 2021.* Huang includes an example letter he filed with the Eleventh Circuit, using the same font and an identical signature block. Exhibit D.

## **ARGUMENT**

### I. **Huang's Motion For Extension Of Time Can Be Granted Under Either "Good Cause" Or "Excusable Neglect" Standard**

This Court has the discretion to grant an extension for good causes or excusable neglect. Fed. R. Civ. P. 6(b). *Perez v. Wells Fargo NA,* 774 F.3d 1329, 1337 n.7 (11th Cir. 2014) (good cause standard tests "whether the default was culpable or willful, whether setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense ... courts have also considered factors such as "whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default".) *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't,* 878 F.3d 1008, 1012 (11th Cir. 2017) ("A timely motion to extend is reviewed for good cause, not excusable neglect ... and "should be liberally granted absent a showing of bad faith ... or undue prejudice.") Similarly, this Court may also grant an extension of time if the reasons qualify under "excusable neglect". *Pioneer Inv. Servs. Co. v. Brunswick Assos.,* 507 U.S. 380, 395 (1993).

### II. **Huang's Motion Should Be Granted For Good Cause**

Under the good-cause standard, the first *Perez* factor considers willfulness. Huang, *pro se,* is not eligible to file papers electronically at this Court, filed his objection twice, and has no interest to file untimely papers--subjecting himself to contested motions that create risks to appellate jurisdiction. This Court required that objections are postmarked by Nov. 4, 2020. *Class Notice* at 6. Huang mailed *two copies* of the same objection before that postmark deadline—with one having extra handwritten signature. Huang would have

4

easily satisfied the requirements if *either* copy arrived at the Court. Huang's filing of *two* copies of objection is unquestionably far from willfulness.

The second *Perez* factor considers prejudice to the non-moving party—none exists in this case for Plaintiff's nor Defendant's Counsel. There are months left (up to 62 business days, or 93 days with holidays and weekends included) to respond to Huang's objections between November 4, 2020 and their February 5, 2021 reply deadline. It is far more generous than, for example, Huang's appeal of *Equifax Data Breach*, in which class counsel there had to respond to over 300 valid objections in 14 business days. [5] In any case, Plaintiff will have more days to respond to Huang's objection versus, for example, the 14-day standard for motion oppositions in this Court. S.D. Fla. L.R. 7.1(c). And further, this motion, and its exhibits—including the objection—will be served to Settling Parties via email, despite their refusal to consent to E-mail service.

The Third *Perez* factor considers whether Huang would have a "meritorious defense". Huang does. The requirement was to have Huang's objection postmarked by November 4, 2020. Huang's mailings have made it occur twice—he just needs one of the two copies to appear on the docket with such postmark. But US Postal Service is reasonably experiencing difficulties in delivery, as Plaintiff's Counsel Mr. McGee agrees in his email. ("[I]t was sent during the Presidential election, during a pandemic, and likely traveled through the USPS over a weekend and during a federal holiday.")

---

[5] *In re Equifax Inc. Cust. Data Sec. Breach Litig.,* 1:17-md-02800-TWT, Doc. 742 at 15 (N.D. Ga.) (objection due: Nov. 19, 2019; Plaintiffs' response due: December 5, 2019).

The additional *Perez* factors consider (a) implication to the public; (b) financial loss to non-movants, and (c) promptness to cure the defect. Those standards are satisfied:

(a) Huang's objection stated that his objection applies to the entire Class. Fed. R. Civ. P. 23(e)(5)(A). Huang identified serious defects to the pending class-action settlement, which includes pecuniary conflicts of Plaintiff's Counsel, as well as "potentials" of inadequate class representation. If Huang's objection isn't considered by this Court for timeliness, it would only cause unnecessary procedural motions to cure such a trivial defect to the Settling Parties (e.g., Motion to Intervene *as of right*, Motion to Reconsider). And extra motions practice—if granted—is no different from granting this motion; and if denied, Huang would retain the right to appeal from denial of such motions. Granting relief to treat Huang objection as timely is best suited for judicial economy.

(b) There is little to no financial loss to non-movants, except those volunteered by Setting Parties themselves. Huang invited Settling Parties to state non-opposition during Local Rule 7.1(a)(3)(A) meet-and-confer requests, and it would have caused no harm as compared to a *timely* copy of Huang's objection. And although Mr. McGee for Plaintiff refused to consent to this motion, he indicated that he wanted to see Huang's objection anyway. ("If you would please provide a copy, we will file it with the Court and note your representation that the pleading was sent to us via USPS Nov. 2, but that we have not yet received it, and upon receipt, a follow-up copy will be filed with the Court.") Inexplicably, Mr. McGee's posture would rather create *more* work for Plaintiff's Counsel, and a potential opposition to Huang's instant motion would also cause more work for

themselves. But a non-opposition to Huang's motion would have saved Plaintiff's counsel from all of that for less work involved, while they are to read Huang's objection *anyway*.

(c) Huang's good faith effort to cure such uncertainty is timely. First, Huang monitored actively of whether his objection arrived. Second, with voluntary E-mail service of *this motion* and exhibits to the Settling Parties, they will see a *verbatim* copy of Huang's objection when they see this instant motion—leaving them plenty of time beyond Local Rule's standard 14 days to produce their opposition arguments.

For the foregoing reasons, Huang's motion should be granted for good cause.

**III.   Alternatively, The Motion Should Be Granted For "Excusable Neglect"**

*Pioneer Inv.* also applies many good-cause factors around "the danger of prejudice to the [non-movant(s)], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395.

Those overlapping factors support excusable neglect: the prejudice to non-movants are minimal to none. (*supra*, the second *Perez* factor); the length of delay and impact are low if the motion is granted (additional *Perez* factor (c)); Huang also acted in good faith, including requesting meet-and-confer as Local Rule required. (additional *Perez* factor (c)).

The only addition question from *Pioneer* is whether the delay "was within the reasonable control of the movant". *Supra*. It is not. Huang was instructed to be compliant with the objection deadline, by having his objection postmarked by November 4, 2020. He did so twice by subjecting *two copies* to be picked up by U.S. Postal Service. The major delays cannot be estimated either—Huang would have sent it another way if he knew.

In sum, Huang's motion can be also granted under excusable neglect.

## Conclusion

For the foregoing reasons, this motion should be granted. The Court should make a ruling by January 22, 2021 or earlier if possible, for Settling Parties to have at least fourteen days to respond to Huang's objections by their February 5, 2021 deadline.

Dated: November 12, 2020                    Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2800 SW Engler Ct.,
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

## Certification of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

/s/Shiyang Huang

## Certificate of Service

I certify that a true and correct copy of the foregoing was filed with the Clerk of Court by mail. ECF will notify all counsels of record and Objector Mr. Helfand. Huang additionally certify to have served a copy of this filing via E-mail to all parties. Huang explicitly authorizes email service to defectivesettlement@gmail.com under FRCP 5(b).

/s/Shiyang Huang

Exhibit A

### Declaration of Shiyang Huang

1. My name is Shiyang Huang and I am over the age of 18. I have personal knowledge of the matters stated herein and, if called as a witness, could testify competently thereto.

2. Huang timely filed a claim under claim number HU2OBA1S.

3. On Monday, Nov. 2, 2020, I asked whether Settling Parties may allow me to serve my objection via email—if they granted written consent under Fed. R. Civ. P. 5(b). Neither Settling Parties responded.

6. On Nov. 3, 2020, I informed Settling Parties that I have sent first-class mail copies of the objection to the Court, with two more copies sent to Plaintiff and Defendant's Counsel—and I did so. For the copy to the Court, I also additionally included an additional unopposed motion, and a consent form to ECF notifications within.

7. On Nov. 3, 2020, I realized my objection included only a typeface signature block similar to ones in my ongoing appeal at the United States Court of Appeals for the Eleventh Circuit, but it may be ambiguous as to required "signature" by the class notice.

8. I reprinted a copy of the objection I sent on Nov. 2, 2020, and added a handwritten signature. I also included a notice for explanations as to not repeat my objection. The first-class mail was sent before pickup deadline on Nov. 3, 2020.

9. I called this court's clerk's office on Nov. 10th and 12th, regarding whether this Court has received his objection. I was informed that the courthouse is still processing stamp filings after Nov. 9th and 11th closure for weather and Veteran's Day.

10. Pursuant to Local Rule 7.1(a)(3)(A), I requested consent from Settling Parties on whether they would consent to seek extension of objection deadline, or for all purposes, have the objection considered as otherwise timely. As of Nov. 13, 2020 (Eastern Time), Plaintiff refused to provide consent. Defendant did not respond.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2020.

/S/ Shiyang Huang
SHIYANG HUANG
2800 SW Engler Ct.
Topeka, KS 66614
(314) 669-1858

Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

VASSILIOS KUKORINIS, on behalf of
himself and those similarly situated,
**Plaintiff,**

　　v.

WALMART, INC., a Delaware corporation
**Defendant.**

Case No. 1:19-CV-20592-
MARTINEZ/OTAZO-REYES

## OBJECTION[1] TO CLASS CERTIFICATION AND PLAINTIFF'S ATTORNEY FEE[2]

In a class-action settlement, this Court owes a "role as a fiduciary and guardian for the unrepresented class members [to] guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members." *Managed Care Advisory Group v. Cigna Healthcare*, 939 F.3d 1145, 1162 (11th Cir. 2019).

The Court—as the class's guardian—should cut Plaintiff's attorney fee to *lodestar*.

### Preliminary Statement

I.　　Shiyang Huang is the full name of objecting class member.[3]

II.　　Huang is in Settlement Class subgroup (2): "those who attest to the number of Weighted Goods they purchased and have receipts, but no packaging or

---

[1] **Certificate of Service:** I certify that a true and correct copy of the foregoing was filed with the Clerk of Court by U.S. mail. CM/ECF will then notify all counsels of record.

[2] Huang also maintains Named Plaintiff cannot receive a "service award", even if *Johnson v. NPAS Solutions, LLC*, -F.3d-, 2020 WL 5553312 (11th Cir. Sep. 17, 2020) were vacated.

[3] See signature for address and phone.

other documentation to demonstrate how much they were overcharged". Class Notice 3. Huang filed a claim with claim number HU2OBA1S.

III.  Huang objects in good faith and the objection applies to the entire class. Huang is objecting without counsel, and this Court should "avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards." *Rule 23 Committee Notes—2018* amendment at subdivision (e)(5)(A).

Huang explicitly objects to the deficiency in Class Notice and Settlement Website, which both omitted requirements for objectors to "state whether it applies only to the objector, to a specific subset of the class, or to the entire class". Fed. R. Civ. P. 23(e)(5)(A). Thus, any objector's failure to disclose such is entirely at the fault of Settlement Class Counsel, not of objectors.

IV.  Huang fully discloses two past and pending cases where he filed objections. To preempt *ad hominems*, Huang further discloses non-objector actions.[4]

_____

[4] (1) Huang opposed a Motion for Class Notice in *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK, Doc. 332. The court denied the motion before Rule 23(e) notice, for reasons resembling Huang's key arguments. 2020 WL 836673, *13-17 (N.D. Cal. Feb. 20, 2020).
(2) Huang moved for ECF permission in *In re: Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 5:2016-md-02752, Doc. 391 (N.D. Cal.). That motion was denied; Huang did not object.
(3) Huang *filed a motion* in *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-2420, Doc. 2645 (N.D. Cal.). Class Counsel resolved it amicably for Huang to file a late claim.
(4) Huang *moved to appear as amicus curiae* in *Larson v. Allina Health Sys.*, No. 0:17-cv-3835-SRN-TRL, Doc. 103, 104 (D. Minn.). The motion was denied.

1. *Schultz, et. al. v. Edward D. Jones & Co. L.P., et al.*, No. 4:16-cv-1346-JAR (E.D. Mo.), *aff'd*, 791 F' App'x 638 (8th Cir. 2020), *cert. denied*, No. 19-1366 (Oct. 5, 2020).

2. *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.), *appeal pending, Huang et al. v. Spector et al.*, No. 20-10249 (11th Cir.)

Additionally, Huang discloses that, as Huang's simultaneous *unopposed motion* shows, Huang *already* recovered $25,000 for *this* Class if the settlement is approved.

## Argument

***First***, Plaintiff's counsel purported to seek 25% (from a *variable* common-fund between $4.5 million "floor" and $9.5 million "ceiling"). Without knowing *actual* common-fund size, Plaintiff's $2.375 million flat-fee is a preposterous ***52.8% fee*** to the $4.5 million *"floor"*, despite "25% fee [is what] this circuit has said [a]s the benchmark". *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011). *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("38.9% … is clearly excessive"); *Pearson v. NBTY*, 772 F.3d 778, 782 (7th Cir. 2014) ("attorneys' fees awarded to class counsel should ***not exceed a third or at most a half*** of … money going to class members".) (emphasis added).

Plaintiff's flat-rate $2.375 million request from a $4.5 million "floor" is so objectionable even for Plaintiff's own "25% benchmark" arguments: ***52.8%*** flat-fee request flunked all standards at once. And Plaintiff's motion *repeatedly* only pitched for 25% throughout, (*e.g.*, Plaintiff's Motion for Fees [Doc. 56] at 14 ("An award of 25 percent of the monetary value of the common fund is well within the benchmark")), which ought to be a ***variable, pending actual size of the "fund"***. Plaintiff cannot enjoy unjust enrichment for up to ***$1,250,000*** without adding a penny more than the $4.5 million "floor". Rule 23 demands "affirmatively demonstrate[d]" compliance. *Wal-Mart Stores v. Dukes*,

3

564 U.S. 338, 350 (2011). Even *arguendo* Plaintiff's percentage-of-fund pitch, the fiduciary-bound attorneys cannot ask more 25% of the ***actual class common-fund***, which is what Plaintiff argued for. Absent class members are "not designed as a form of economic relief to improve the financial lot of attorneys". *Penn. v. Del. Valley Citizens' Council*, 478 U.S. 546, 565 (1986). But here, less than $400,000 of lodestars "were bumped up to $[2.375] million through [a] multiplier that's essentially sort of plucked out of the air. It's just a reverse justification for taking $2 million in fees off of [a] settlement". *Tr. of Oral Arg.* at 36, *Frank v. Gaos*, 139 S. Ct. 1041 (2019) (argument of the Solicitor General of the United States as *amicus curiae*). While Plaintiff might ask for deference of their "experienced" judgment, "no such assumption may be indulged … in any class action settlement with the potential for gigantic fees." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999). The creation of a $2.375 million fee request out of under $400,000 lodestar is precisely a "windfall" criticized by *Penn, supra*, and *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985). *Accord In re Bluetooth*, 654 F.3d 935, 942 (9th Cir. 2011); *Pearson*, 772 F.3d at 787 ("selfish deal"). *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting "[t]he [Rule 23(a)(4)] adequacy heading also factors in competency and conflicts of class counsel.") *If Class Counsel is found to be conflicted for money reasons—losing the absolute fiduciary loyalty, then Fed. R. Civ. Proc. 23(a)(4)— adequacy representation under Due Process—utterly failed here to defeat class certification.*

**Second**, class certification should be denied for Rule 23(a)(4), 23(e) and Rule 23(g) noncompliance. Plaintiffs "may be" inadequate representatives with Class Counsel's "greater willingness to compromise". *Tech. Training Assocs.* v. *Buccaneers Ltd. P'ship*,

874 F.3d 692, 697-698 (11th Cir. 2017). To be sure, Huang as an objector "does not have to show actual antagonistic interest; the potentiality is enough". *Valley Drug, infra* at 1194-1195. That burden of proof undisputedly rests with advocates of class certification—the settling parties. *Dukes,* 564 U.S. at 350. Certification is reviewed under "undiluted, even heightened[] attention" in the settlement context. *Amchem,* 521 U.S. at 620.

(1) The "economic reality" sadly reveals, *supra,* an inequitable fund with up to 52.8% going to fees. *Valley Drug Co.* v. *Geneva Pharms.,* 350 F.3d 1181, 1195 (11th Cir. 2003).

(2) Perverse incentives appear to have led to a burdensome claims process (*e.g.,* to claim *possibly* $40 requires a mind-bogging count of 24 receipts, uploading them—all assuming someone had to read the **Settlement Agreement** to know 24 receipts are minimum for up to full $40 *pro rata*). And "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l,* 376 F.3d 656, 661 (7th Cir. 2004). Thus, it can be assumed that very few will have a mountain of WalMart "weighted goods" receipts for claims—let alone greasy labels—by submitting every mindbogging receipt to recover $1.67 each.

But Class Counsel can profit from a burdensome claims process—it helps to make the "ceiling" a mere illusion for favorable attorney's fee basis, while Defendant prefer a minimal "package deal" payout (*Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996)) under the settlement, and especially when WalMart reserved the right to contest Plaintiff's fees in retaliation. *See Pearson,* 772 F.3d at 783 ("class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims.") *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 174-175 (3d Cir. 2013) (demanding "inclusion of a mechanism for additional payouts to

individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund"). *Also see ibid.* (vacating approval for "not know[ing] the amount of compensation that will be distributed directly to the class.") A burdensome claim process here suggests Plaintiff's inadequate representation—in exchange for a sweetheart deal: WalMart gets a boosted chance to cap payout at $4.5 million; Plaintiff's Counsel seeks $2.375 million, or *52.8%* of that "floor" class fund, unless the claims made it expensive for WalMart to add more. "This is a case in which "the lawyers support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information.'" *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014) (Posner, J.) *Accord In re Dry Max Pampers Litig.*, 724 F.3d 713, 717–18 (6th Cir.2013). If "vast majority of claimants have not submitted documentary proof entitling them to a greater award," it would "cast[] doubt" on the settlement fairness altogether. *In re Baby Prods., supra. Also see* Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Actions: Improving Investor Protection* 7 (2005) (criticizing a class settlement yielding $8 million to class' claims process, while lawyers received over $80 million).[5] This

---

[5] *See* Mayer Brown, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions* 7–8 (Dec. 11, 2013). "Single-digit percentage" is probably an overstatement: one settlement administrator acknowledged that the median claims rate is far less than 1% in settlements without direct notice and without easy claims processes. See, e.g., *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366 at *4 (N.D. Cal. Aug. 25, 2016) (citing authorities); *Pearson*, 772 F.3d at 782 (same); Alison Frankel, *A Smoking Gun in Debate over Consumer Class Actions?*, Reuters (May 9, 2014); Daniel Fisher, *27*

might be a commendable great deal for WalMart—but not so for the absent Class.

(3) Given implications of Rule 23(a)(4) that questions ability to represent the Class, the absentee Class should get to revive Named Plaintiff Kukorinis' stricken declaration as a docket record. Even the press noticed Named Plaintiff Kukorinis' exceedingly unusual flip-flop posture—adding doubts to the Rule 23(a)(4) compliance. *See* Alison Frankel, *Lead plaintiff in $9.5 mln Walmart class action says Morgan & Morgan settled without telling him.* Reuters.com (Accessed Nov. 2, 2020).[6] (Huang already formally informed Counsels for settling parties that he has no knowledge whatsoever of the article until November 1, 2020, but repeats it here to preempt *ad hominems*.) "Rule 23 would be subverted" if a Named Plaintiff by happenstance "learns of a pending [settlement] involving a class of which he is a part"; instead, "it is the responsibility of the class representative to protect the interests of all class members." *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)[7]. "[O]ne of the class representative's functions is to monitor class counsel so as to ensure that counsel does not accept a relatively weak class recovery in return for the promise of a large fee." 1 William B. Rubenstein, *Newberg on Class*

---

*Odds Of A Payoff In Consumer Class Action? Less Than A Straight Flush*, Forbes (May 8, 2014). Even when the class is directly mailed, response rates "rarely exceed seven percent." *Sullivan v. DB Investments*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc).

[6]     https://www.reuters.com/article/legal-us-otc-leadplaintiff/lead-plaintiff-in-9-5-mln-walmart-class-action-says-morgan-morgan-settled-without-telling-him-idUSKBN27C2YL

[7] Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Actions* § 3:77 (5th ed. 2018); id. § 3:70 (stating that the law presumes that class representatives will monitor class counsel). Without such a structure in place, "the class loses one check on counsel's capacity to sell out the class's claims." Id. § 3:77. "Permitting class counsel who are not effectively monitored to prosecute a class action is" having lawyers as "both class representative and class attorney". *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996)

*Stare decisis* also requires disclosure as public policy. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The media and public presumptively have a right to access judicial records. *Comm'nr v. Adv. Local Media, LLC*, 918 F.3d 1162, 1166-67 (11th Cir. 2019) (citing *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam)). *Id.* ("materials submitted by litigants—whether or not they are formally filed with the district court—that are 'integral to the "judicial resolution of the merits"' in any action taken by that court are subject to the common law right of access"). *Shane Grp., Inc. v. BCBS of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[I]n class actions— where by definition some 'members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied . . . with particular strictness.'") (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

*Additionally*, if this Court agrees with Huang that Plaintiff's fee request is excessive, awarding a "reasonable" expended lodestar of under $400,000 is more than enough for attorneys' hourly rates, and it will save nearly $2 million for the Class versus

as-is. Huang expressly preserve the argument that a "reasonable fee" for plaintiff's counsel should be a reasonable lodestar—all related arguments are under the footnote.[5]

----

[5] The common-fund doctrine only requires absent class members "contribute their due proportion of the expenses which he has **_fairly incurred_**", *In re Air Crash Disaster*, 549 F.2d 1006, 1017-1018 (5th Cir. 1977). (emphasis added), Imaginary lodestar-multipliers are **_not "fairly incurred"_** against absent class members. For example, if Plaintiff litigated to judgment, unenhanced lodestar would be "presumptively reasonable".

Despite temptations to misread "calculation of attorney's fees [within] the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class", *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), *Blum*'s "percentage-of-fund" footnote only implies that a common-fund fee cannot theoretically exceed 100%, or some "reasonable" percentage under the power of equity. (Unlike common-fund cases, for example, a Plaintiff could obtain a $1 judgment, with $999,999 in fees from a Defendant via fee-shifting—which is impossible under common-fund doctrine.) That is why "**_the features that distinguished our common-fund cases from cases where the shifting of fees was inappropriate._**" *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added). *Blum* "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 18 (2000).

Lodestar method is supported by *Perdue v. Kenny A.*, 559 U.S. 542, 546, 550-60 (2010) and *Copper Liquor v. Adolph Coors Co.*, 624 F.2d 575, 583 n.15 (5th Cir. 1980) (noting "[t]he *Johnson* [*v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)] test ... **_is similar to the Third Circuit's 'lodestar' method of computing attorneys' fees._**") (emphasis added). *Also see* post-*Blum* decisions, *e.g.*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 n.4 (7th Cir. 1988) (despite arguments that "percentage fee arrangement would be more efficient ... we will not overturn" lodestar approach); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 n.10 (1st Cir. 1991) (criticizing "tendency exhibited by some courts, particularly in common fund cases, to jettison the lodestar in favor of a 'reasonable percent of the fund' approach").

*Copper Liquor* and *Johnson*'s lodestar adoption is **_binding_** under *stare decisis, i.e.*, the issue is settled. Although *panel decisions* from the Eleventh Circuit sound favorable to Plaintiff (*e.g.*, *Faught, supra*, or *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991)), binding "prior decision[s] of the circuit ... could not be overruled by a panel but only by the [Eleventh Circuit] sitting en banc." *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*). "When faced with an intra-circuit split we must apply the 'earliest case' rule, meaning 'when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel

Lastly, if Plaintiff wants to raise belated arguments, "the doctrine of judicial estoppel will prevent those parties from taking an opposite position in future proceedings." *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 798 (7th Cir. 2018). And other "issues and contentions not timely raised in the briefs are deemed abandoned." *United States v. Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001). That includes—e.g., arguing for a lodestar multiplier (as *Camden I* would even reject), or a fee that exceeds 25% of the common-fund (which was not raised in the motion).

*In conclusion*, Plaintiff's attorney fee should be limited to a *reasonable* lodestar. In any event, Plaintiff's fee should be capped at 25% of the *actual* size of the Class fund. The Court should apply "heightened[] attention" (*Amchem*, 521 U.S. at 620) to evaluate compliance under Fed. R. Civ. P. 23(a)(4), 23(g), and Rule 23(e), 23(h) as a Class fiduciary.

Dated: November 2, 2020              Respectfully Submitted,

                                     /s/Shiyang Huang
                                     Shiyang Huang
                                     2800 SW Engler Ct., Topeka, KS 66614
                                     314-669-1858
                                     defectivesettlement@gmail.com

---

cannot be overturned by a later panel.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) *accord Arias v. Cameron*, 776 F.3d 1262, 1273 n.8 (11th Cir. 2015);
    Likewise, class members should not pay for *anticipated* lodestars. A fiduciary—such as Class Counsel—should not "take selfish advantage of his trust, or ... benefit himself or prejudice" absentees. *In re Angelle*, 610 F.2d 1335, 1338 (5th Cir. 1980).

## Re: *EXT* Attn: Walmart Weighed Goods Settlement

**John Yanchunis x2191** <JYanchunis@forthepeople.com>                    Wed, Oct 28, 2020 at 8:36 PM
To: Defectivesettlement <defectivesettlement@gmail.com>
Cc: "salkym@gtlaw.com" <salkym@gtlaw.com>, "BeerN@gtlaw.com" <BeerN@gtlaw.com>

Mr. Huang, if you believe you have valid objections , please do not interpret my earlier response as seeking to stop you from filing any objection that you believe to be meritorious .


**John Yanchunis**
Attorney
My Bio

**P:** (813) 275-5272
**F:** (813) 222-4736
**A:** 201 N Franklin St, 7th Floor, Tampa, FL 33602

## MORGAN & MORGAN
FOR THE PEOPLE.COM

PRACTICE AREAS  |  LOCATIONS    ATTORNEYS  |  RESULTS  |

*COVID-19 Update: Morgan & Morgan continues to be fully operational and enabled to service our clients Nationwide. You can learn more about our remote resources here. We are here for you.*


> On Oct 28, 2020, at 8:17 PM, Defectivesettlement <defectivesettlement@gmail.com> wrote:
>
> CAUTION: Use caution when clicking on links or opening attachments in this external email.
>
> _____
> Attaching Mr. Kukorinis' previous declaration. That's the one I'm talking about, unless I'm mistaken.
>
>
> Mr. Yanchunis and Walmart's counsel,
>
> I'm writing to confer my intent to move for a nominal $1 objector award for saving $25,000 for the settlement Class. No attorney's fee with it, just $1 incentive award to me as objector. I prefer that the $1 come from Plaintiff's attorney fee allocation, not from the $25,000 that is recovered to the Class.
>
> If Plaintiff and Defendant agree to not oppose, then I will forget about writing an objection to other aspects of the settlement. I have read the interesting pro se declaration by Named Plaintiff himself, and I also believe the 25% fee based on the impossible "ceiling" common fund is actually a 53% fee based on the minimum (or most likely) common fund size that Defendant will actually pay into? Plus that Plaintiff's footnote insistence that a vacatur of NPAS would trigger Plaintiff's incentive award request again is very troubling, especially when NPAS was decided on historical grounds, not by making new laws.
>
> Unlike named plaintiff's incentive award ban, class objectors award is certainly authorized by latest Rule 23 itself and caselaw. See Advisory Committee Notes - 2018 amendment at Rule 23(e)(5)(B) "Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance". Also see In re Sw. Airlines Voucher Litig., 898 F.3d 740, 744 (7th Cir. 2018) ("Objectors who add value to a class settlement may be compensated for their efforts."). The Eleventh Circuit's NPAS decision surely does not bar a good faith, meritorious objector from getting $1 objector award either.
>
> I will only do it by the book via motion in open record, after both parties agree to non-opposition. Since I'm moving for a nominal $1 award, not a real painful amount, I expect that you can decide quickly before my Saturday morning, and tell

Exhibit C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

VASSILIOS KUKORINIS, on behalf of
himself and those similarly situated,
**Plaintiff,**

v.

WALMART, INC., a Delaware corporation
**Defendant.**

Case No. 1:19-CV-20592-
MARTINEZ/OTAZO-REYES

## NOTICE[1] OF OBJECTION AMENDED WITH SIGNATURE, AND, NOTICE OF INTENT NOT TO APPEAR IN THE FAIRNESS HEARING

Shiyang Huang previously filed an identical 10-page objection. The objection, however, included a signature block without actual signature, because Huang signed other accompanying filings. While the content of objection remains identical, Huang hereby timely includes a *signed* copy of objection as demanded by the Settlement Notice.

Huang additionally elects not to attend the fairness hearing.[2]

Dated: November 3, 2020

Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2800 SW Engler Ct., Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

---

[1] ***Certificate of Service:*** I certify that a true and correct copy of the foregoing was filed with the Clerk of Court by U.S. mail. CM/ECF will then notify all counsels of record.
[2] And the Court still can "examine the settlement … and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

1

Exhibit D

Shiyang Huang
2800 SW Engler Ct.
Topeka, KS 66614

Hon. David J. Smith
Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth St., N.W.
Atlanta, GA 30303

**VIA ECF**

Re:   ***Huang, et al.* v. *Spector et al.,* No. 20-10249;**
       **Response to Supplemental Authority Pursuant to Rule 28(j)**

Dear Mr. Smith,

     *Muransky* v. *Godiva Chocolatier,* —F.3d—, 2020 WL 6305084 (11th Cir. Oct. 28, 2020) (*en banc*) ("slip op.") directly controls disposition here. Plaintiffs' "goal of settlement" (Plaintiffs Br. 26) cannot override Article III courts' jurisdictional scrutiny. Slip op. 3.

     *First, Muransky*'s rejection of conclusory pleadings requires vacatur. Slip op. 12 n.1. While proper pleadings might support standing, this *en banc* Court never "excused" Plaintiffs "from the ordinary bar on conclusory allegations". Slip op. 30. *See* Huang Br. 27. Like *Muransky,* "no court has had the opportunity to consider any facts supporting [Plaintiffs'] conclusory allegation of harm". Slip op. 34. And Plaintiffs' state-law claims (letter response 1) cannot save "parties who … lack standing". *Hollingsworth* v. *Perry,* 570 U.S. 693, 714-715 (2013). Plaintiffs' case is even weaker than *Muransky* because **(a)** no federal statutory-violation claims remain (Huang Br. 30 n.8), **(b)** multiple standing objections existed (Huang Br. 21), and **(c)**

1

Hon. David J. Smith
November 4, 2020
Page 2

the Supreme Court's *Spokeo* came two years before Plaintiffs' operative complaint. Huang Br. 25.

   *Second*, Plaintiffs (letter response 2) thought "existing law does not impose an evidentiary requirement". But "when standing is questioned by … an opposing party, ***the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm.***" *Va. House of Delegates* v. *Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (emphasis added). *Accord* Huang Reply Br. 10 (quoting multiple binding precedents).[1] Plaintiffs rejected that. Their refusal to "firm up" evidentiary obligations for standing "confirms … suspicions of inadequacy". Slip op. 29, 34.

   *Lastly*, Plaintiffs cannot escape *Clapper*'s risk-of-harm standing analysis for concreteness (Huang Br. 22-30). Slip op. 16-17. Nor could Plaintiffs (Br. 27) conflate self-inflicted "management-of-risk" theories without "arguments about actual risk" to save standing. Slip op. 24. *See* Huang Br. 33.

   This Court's *en banc Muransky* decision is dispositve: Plaintiffs lack standing. The settlement approval should be vacated and remanded with instructions to dismiss the complaint for lack of Article III jurisdiction.

Very Truly Yours,

*/s/ Shiyang Huang*
Shiyang Huang

---

[1] Huang (Br. 26) also demanded Plaintiffs to *prove* standing with evidence. Regardless of Plaintiffs' disagreement, this case should be similarly disposed for conclusory pleadings (slip op. 12 n.1) and/or lack of evidence.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Fed. R. App. Proc. 28(j) because the body of this letter contains no more than 350 words, as counted by Microsoft Word 2007.

This brief complies with the requirements of Fed. R. App. P. 32(a)(5), 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point font.

/s/ SHIYANG HUANG

## CERTIFICATE OF SERVICE

I, Shiyang Huang, hereby certify that on November 4, 2020, I caused a copy of the foregoing to be served by this Court's CM/ECF system on all *pro se* parties and counsels of record.

/s/ SHIYANG HUANG




**UNITED STATES POSTAL SERVICE** ®

www.paypal.com

US POSTAGE
11/13/2020
From 66614

Zone 6

Pitney Bowes
ComBasPrice
Flat Rate Envelope

026W0004897538

**PRIORITY MAIL EXPRESS 1-DAY™**

Shiyang Huang
2800 SW Engler Ct
Topeka KS 66614

Scheduled Delivery Date: 11/14/202

0007

WAIVER OF SIGNATURE

C075

U.S. DIST. COURT, S.D. FLA.
400 NORTH MIAMI AVE
ATTN: CASE NO. 1:19-CV-20592-JEM
MIAMI FL 33128-1801

USPS TRACKING #

9470 1282 0633 4151 5792 47





EP13F Oct
OD: 12 1/2