

FILED BY _____ D.C.

DEC - 7 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

VASSILIOS KUKORINIS,
    Plaintiff,

v.

WALMART, INC.,
    Defendant.

Case No. 1:19-CV-20592-
MARTINEZ/OTAZO-REYES

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OBJECTION

Objector Shiyang Huang respectfully submits the Eleventh Circuit's recent published decision in *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, —F.3d—, 2020 U.S. App. LEXIS 37439 (11th Cir. Dec. 1, 2020) ("Slip Op."), which prohibits Class Counsel from having "particular duty" beyond its duty[1] to all absentee class members.

In *Oppenheim*, the Eleventh Circuit noted the following:

1. "[I]n the context of approving or disapproving a class settlement, some courts 'have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class'". Slip op. 22 (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).[2]

---

[1] *See* Fed. R. Civ. P. 23(a)(4), 23(g)(1)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)) ; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (same).

[2] *Accord* Huang Objection [DE 64] at 1 (quoting *Managed Care Advisory Group v. Cigna Healthcare*, 939 F.3d 1145, 1162 (11th Cir. 2019) (*per curiam*)).

2. "One cardinal rule defines the scope of counsel's ethical obligations in class actions: class counsel owes a duty to the class as a whole and ***not to any individual member of the class.***" Slip op. at 16. (emphasis added).

3. "[C]lass counsel *does not owe a particular duty to* any group comprised of class members, *such as class representatives, distinct from the duty owed to the class.*" Slip op. 17 (citing *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982)). (emphasis added)

*Oppenheim* shows that the pending class-action settlement cannot be approved, because the record demonstrates that Plaintiff's Counsel currently owes "a particular duty to … class representative[]", through its insistence of seeking incentive awards—at the expense of absent class members, and in light of "change of heart" by named Plaintiff himself, which was well-documented by the Press. *Infra* (Exhibits, [DE 58] at 30-36).

Plaintiff's motion for fees recognized *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1260 (11th Cir. 2020), which prohibited special "incentive awards" exclusive to settling class representatives. [DE 56] at 1 (noting *Johnson*). But nevertheless, Plaintiff insisted that "[s]hould the law change as it concerns [*NPAS*], Plaintiff would request permission" (*id.*) for such "prohibited" incentive award that *NPAS* explicitly banned.

But *NPAS* did not make new holdings—it says it is hands-tied by multiple binding precedents from the Supreme Court, and, the "former Fifth Circuit" binding precedent of *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981), all closing doors on "service awards" before *Johnson. See Kincade,* 635 F.2d at 506 n.5 (""by choosing to bring their action as a class action … named plaintiffs `disclaim[] any right to a preferred position in the settlement."") And *Oppenheim*'s explicit recognition of *Kincade* as "a

decision still binding on us" (slip op. 16) means "service awards"—whether *Johnson v. NPAS* is vacated or not— remains banned by *Kincade*. This Court—and even three-judge panels of the Eleventh Circuit—ought to follow the rule of *stare decisis* and apply instructions in *Kincade*, unless and until *Kincade* is overruled or undermined to the point of abrogation by the Supreme Court or the Eleventh Circuit sitting *en banc*.

It is troubling enough that that Plaintiff insisted the hypothetical to later seek such "incentive awards" for the sole named Plaintiff, *exclusively*, "[s]hould the law change as it concerns [*NPAS*]". [DE 56] at 1. The more troubling observation is that "Plaintiff ***would*** request permission" as an obligation to seek incentive award exclusive to named Plaintiff, as soon as *NPAS* loses its binding force, beyond that Counsel "***may***" or "***might***" do so. *Id.* (emphasis added). *Merriam-Webster dictionary* explains the word "would" is a word "used in auxiliary function to express plan or intention".[3] That intent demonstrates the "particular duty" that *Oppenheim* rejected. Slip op. 16. (And, it is obvious that absent absentees do not enjoy such exclusive "service award" to settle his/her claim.)

And the appearance of "special" obligation to named plaintiff—forbidden by *Oppenheim*—is not an accident. It was already in the language within the Settlement agreement. "Settlement Class Counsel ***shall*** apply to the Court for a Service Award that shall count against the Floor." Settlement Agreement [DE 41-1] at § 6.2.2. But in comparison of other examples other settlements performed by Plaintiff's lead counsel,

---

[3] https://www.merriam-webster.com/dictionary/would

some in this Circuit,[4] this case highlighted a "particular duty" for Class Counsel to seek service award for the named Plaintiff. *Oppenheim* made abundantly clear that "class counsel does not owe a particular duty to any group ... distinct from the duty owed to the class." Slip op. 17. And that is "not to any individual member of the class", such as its example of named Plaintiff(s). Slip op. at 16. 17.

It is also worth noting that the Ninth Circuit already reversed a settlement with (a) such "shall seek" obligation to get "service award" for named Plaintiff, (b) in exchange for named Plaintiff's support of the settlement. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1162-68 (9th Cir. 2013). The obligations observed in the settlement agreement and fee motion papers aligns with condition (a), which is now explicitly prohibited by *Oppenheim*. For part (b), the extraordinary posture for named Plaintiff to support the settlement, [DE 45], after a lengthy protest in the stricken *pro se* filing [DE 43], is well-documented by journalists (e.g., DE 58 at 30-36 (Exhibits of two journalist articles on the web)), and speaks for itself of the "potentiality" that would preclude class certification. *Valley Drug v. Geneva Pharms.*, 350 F.3d 1181, 1194 (11th Cir. 2003). And, "for purposes

---

[4] *See In re: EQUIFAX, Inc., Cust. Data Sec. Breach Litig.*, 17-md-02800, DE 739-2 at 10.1 (N.D. Ga. Jul. 22, 2019) ("*may* seek Service Awards for the Settlement Class Representatives." (Mr. Yanchunis signed the papers as member of steering committee).
*Also see In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939 at *8 (N.D. Cal. July 22, 2020). (emphasizing the fact that "[t]he Settlement Agreement merely states that Class Counsel *'may seek'* Service Awards for the Settlement Class Representatives" reduces the appearance of conflicted representation of absent class members).
*Also see id.* (noting it would be troubling *if* the settlement agreement contained "any promise that Plaintiff's counsel will seek Service Awards".)

of analyzing whether any antagonistic interests exist between the proposed representatives and the rest of the class, 'the [objector] does not have to show actual antagonistic interests; *the potentiality is enough*'". *Ibid.* (emphasis added).

## Conclusion

In light of facts in this case, *supra*, and *Oppenheim*'s binding instructions prohibiting "particular duty" to class representative beyond those obligations to the Class as a whole, the pending class-action settlement should be denied.


Dated: December 5, 2020                    Respectfully Submitted,

                                           /s/Shiyang Huang
                                           Shiyang Huang
                                           2800 SW Engler Ct.,
                                           Topeka, KS 66614
                                           314-669-1858
                                           defectivesettlement@gmail.com




## Certificate of Service

I certify that a true and correct copy of the foregoing was filed with the Clerk of Court by mail. ECF will notify all counsels of record and Objector Steven F. Helfand. All parties are additionally served with a copy of this filing and its exhibits via E-mail.

                                           /s/Shiyang Huang

[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 18-13714

_____

D.C. Docket No. 8:16-cv-01477-CEH-CPT

MEDICAL & CHIROPRACTIC CLINIC, INC.,

Plaintiff - Appellant,

versus

DAVID M. OPPENHEIM,
an individual,
BOCK LAW FIRM, LLC,
d.b.a. Bock, Hatch, Lewis & Oppenheim, LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 1, 2020)

Before WILSON, NEWSOM, Circuit Judges, and PROCTOR,[*] District Judge.

_____

[*] Honorable R. David Proctor, United States District Judge for the Northern District of
Alabama, sitting by designation.



PROCTOR, District Judge:

In 1966, the modern version of the class action rule was born. *See* Fed. R.

Civ. P. 23. The new rule was intended to make it easier for parties to litigate

complex lawsuits involving many claimants. Under that new rule, when a

defendant engaged in conduct that violated the rights of others, it could find itself

defending against a single class action involving hundreds or thousands of class

members instead of facing hundreds or thousands of individual suits. That was in

1966. Things have continued to evolve since then. Now, over 50 years later, when

a defendant engages in questionable business practices on a widespread basis, it

may not only face one class action, but several. And, when there are multiple

competing class actions against a defendant, there are usually multiple lawyers

competing to be appointed as class counsel. That is what occurred in this case.

Buccaneers Limited Partnership ("the Buccaneers") does business as the

Tampa Bay Buccaneers. Well before it signed Tom Brady and Rob Gronkowski to

play in the 2020 football season, it was sued in at least five class action

complaints.[1] Each one alleged that the Buccaneers sent telefax advertisements in

violation of the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227.

---

[1] *Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-1592-AEP (M.D. Fla.); *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 8:16-cv-1622-AEP (M.D. Fla.) (originally filed but dismissed in state court); *Accounting To You, Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-2929-AEP (M.D. Fla.); *Stein, D.D.S., M.S.D., P.A. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-2136-AEP (M.D. Fla.); and *Cinque v. Buccaneers Ltd. P'ship*, No. 09-CA-21839 (Fla. Circuit Ct., Hillsborough County).

Two of those class actions are relevant here. In the first, lawyers at the firm of Anderson & Wanca ("the AW Firm"), who had previously filed suit on behalf of a different plaintiff, added another class action representative, Medical & Chiropractic Clinic, Inc. ("M&C"). A mediation was conducted but it was unsuccessful. Shortly after it concluded, David Oppenheim, an attorney at the AW Firm who was principally involved in the mediation, jumped ship to join the Bock Law Firm, LLC ("the Bock Firm"). Within a month of Oppenheim's departure from the AW Firm, the Bock Firm filed a separate class action against the Buccaneers raising the same TCPA claims. And, within two months of filing the second class action, the Bock Firm reached a proposed settlement with the Buccaneers.

M&C and its attorneys were not happy. Brian Wanca, a principal at the AW Firm, encouraged M&C to sue the Bock Firm in state court and allege they had breached fiduciary duties owed to it as a named class representative. M&C and its counsel claimed Oppenheim gave attorneys at the Bock Firm confidential information about settlement negotiations in the AW Firm's class action, which assisted the Bock Firm in settling their class action quickly and to the detriment of the class.

After the case was removed, the parties filed cross-motions for summary judgment. The district court concluded that Oppenheim and the Bock Firm did not

3

violate any fiduciary duty and, in any event, no damages resulted from any such breach. Therefore, the district court granted summary judgment in favor of Oppenheim and the Bock Firm. This appeal followed.

M&C and Wanca argue the district court erred in granting summary judgment. We disagree. In explaining our decision, we are required to address a unique question: does class counsel owe a duty of loyalty and confidentiality to a named class representative that is distinct from the duty owed to the putative class? We conclude, consistent with our precedent, that the duties owed to a class representative do not differ from the duties owed to a class. We also take this opportunity to clarify the duties owed by class counsel in class actions generally and in the context of this case specifically. And, we determine that in filing this action M&C and Wanca launched an impermissible collateral attack on the Bock Firm's attempt to certify and settle a class action. Their assertions should have been made only before the court that was exercising jurisdiction over the Rule 23 putative class action — the court in which the request to certify a settlement class and approve the settlement was made.

## I.    Background

Because, as we have noted above, the fiduciary duty claims in this case are intertwined with two previously-referenced class actions (and Oppenheim's successive employment at the two of the law firms that worked on those actions),

we begin our discussion with a more fulsome description of those cases and Oppenheim's move from the AW Firm to the Bock Firm.

## A.   The *Cin-Q* Class Action

In June 2013, Cin-Q Autos, Inc. filed a putative class action against the Buccaneers for alleged TCPA violations. *Cin-Q Autos, Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-1592-AEP (M.D. Fla), (Doc. # 1) ("*Cin-Q*"). The original *Cin-Q* complaint was filed by Michael Addison of the Addison & Howard firm and Wanca and Ryan Kelly of the AW Firm. M&C was not an original plaintiff in that class-action complaint but was later joined in the *Cin-Q* class action as one of several named class representatives. Like other plaintiffs in *Cin-Q*, M&C is primarily represented by the AW Firm.

Although the AW Firm was a major player in litigating the *Cin-Q* class action, Oppenheim played a relatively minor role during much of that litigation. But, that changed after the parties agreed to mediate. Addison and Wanca retained final authority over whether to accept any settlement offer, but the record indicates that Oppenheim took over the role of "closer."[2]

---

[2] The record is unclear as to whether Oppenheim took over an increased role when the parties began mediating or whether his larger role only occurred with regard to the mediation before Judge Anderson (there were several rounds of mediation). However, the record is more clear on this point: during the course of those negotiations, Oppenheim never received any information that was proprietary, unique, or specific to M&C. In fact, Oppenheim's only *Cin-Q*-related communications with M&C occurred at dinner the night before the mediation and the next day during the mediation.

Mediating *Cin-Q* proved difficult because Wanca wanted a larger settlement than the Buccaneers were willing to pay. Wanca refused to settle for less than a $99,000,000 "settlement fund" and a $24,750,000 attorney fee (25% of the settlement fund).[3] When talks stalled, Addison suggested the parties negotiate the fund in a bracket between $10,000,000 and $50,000,000. Wanca was less than enthusiastic and responded, "I am NOT going down to $50 million on this case."

Mediation failed soon thereafter, and the *Cin-Q* plaintiffs moved for class certification. That publicly-filed motion included an expert report by Robert Biggerstaff ("the Biggerstaff Report"), which listed the telephone numbers used by the Buccaneers in sending the fax advertisements. *Cin-Q*, No. 8:13-cv-1592-AEP, (Docs. # 207-5; 207-6).

## B.   Oppenheim's Move from the AW Firm to the Bock Firm

A week after the *Cin-Q* plaintiffs moved for class certification, Phillip Bock recruited Oppenheim to leave the AW Firm and join the Bock Firm. Bock and Oppenheim met on April 3, 2016, to work out the details. At that time, they did not discuss the *Cin-Q* case or any of the other class actions filed against the Buccaneers. Four days after meeting with Bock, Oppenheim gave notice to the

---

[3] The TCPA allows recovery of actual monetary loss or statutory damages of $500 per telefax, whichever is greater. 47 U.S.C. § 227(b)(3)(B). The parties negotiated on the basis of a virtual "settlement fund" against which class members could make claims, with any unclaimed monies reverting to Buccaneers. With approximately 343,000 faxes at issue, Buccaneers' total estimated potential exposure was $170,000,000. But the parties estimated that the claims rate would be no more than ten per cent (10%) of the fund.

AW Firm that he had accepted employment with the Bock Firm. When Oppenheim left the AW Firm, he believed that he and Wanca would continue to work together amicably on cases jointly handled by the Bock Firm and the AW Firm.[4] As it turns out, Oppenheim was wrong.

Oppenheim's departure from the AW Firm was the catalyst that set the stage for this lawsuit. Before leaving, Oppenheim copied the hard drive on his AW Firm computer to the computer he planned to use at the Bock Firm. The hard drive contained briefs, pleadings, and other documents he had worked on at the Bock Firm along with a year's worth of his e-mails.

But, most important to this appeal, Wanca complains that within weeks of beginning at the Bock Firm, Oppenheim shared inside knowledge of the *Cin-Q* litigation with Bock. Bock had e-mailed Oppenheim to ask why Wanca had rejected Judge Anderson's proposal in another mediation involving the AW Firm and the Bock Firm. Oppenheim responded that Wanca likely rejected the proposal because he "doesn't like how the Tampa Bay Bucs mediation process went and resents Andersen's continued efforts [in that case]." Oppenheim later elaborated, "Yeah. [Wanca] wants to set a record above the Capital One $75 million

---

[4] The Bock Firm and the AW Firm had previously appeared together in dozens of TCPA class actions. Indeed, before 2009, Wanca and Bock, the two firms' principals, agreed to prosecute all of their TCPA class actions jointly. And, although Wanca decided to stop partnering with the Bock Firm with regard to new cases, the firms planned to remain co-counsel on previously-filed, pending cases.

settlement. The magistrate judge it's in front of is squeamish and is giving the Defendants a broad shot at disproving [vicarious liability]. Sort of like *Sarris*."[5] At the end of this exchange, Bock remarked, "[Buccaneers' counsel] is a settler." Oppenheim replied, "That was Andersen's read."

**C.     The *TTA* State and Federal Class Actions**

Before hiring Oppenheim, the Bock Firm conducted several mail-marketing campaigns to identify potential plaintiffs for future TCPA class actions. Some of the recipients of those communications -- including Technology Training Associates ("TTA") -- already had expressed interest in pursuing TCPA claims before Oppenheim moved to the Bock Firm. By cross-referencing those that responded to their marketing efforts with the names listed on the Biggerstaff Report, the Bock Firm was prepared to file a TCPA class action against the Buccaneers to compete with the AW Firm's efforts in *Cin-Q*.

About a month after hiring Oppenheim and two weeks after Oppenheim's email exchange with Bock, the Bock Firm filed a class action in a Florida state court against the Buccaneers. *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 16-CA-4333 (Fla. Cir. Ct.) (Doc. 1) ("the *TTA* state class action").

---

[5] Oppenheim was apparently referring to a TCPA case in which a district court granted summary judgment to defendants, in part, because of its determination that plaintiffs failed to establish liability under an agency theory. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 981 F. Supp. 2d 1239, 1253 (S.D. Fla. 2013). A panel of this court later reversed and remanded. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1257-58 (11th Cir. 2015).

Like the *Cin-Q* class action, the *TTA* state class action alleged TCPA claims
against the Buccaneers. Although the Bock Firm represented the named plaintiffs
and putative class in the *TTA* state class action, the firm screened Oppenheim from
any involvement.

Soon after the Bock Firm filed the *TTA* state class action, the Buccaneers
filed a Notice of Pendency of Related Action in the *Cin-Q* case, which disclosed
the existence of the *TTA* state class action to the *Cin-Q* plaintiffs. The turf war
began. The *Cin-Q* plaintiffs moved to intervene in the *TTA* state class action and,
in *Cin-Q*, filed a Motion to Enjoin Defendant from Proceeding in a Competing
Case. The Bock Firm responded by voluntarily dismissing the *TTA* state class
action. However, though the Bock Firm dismissed the *TTA* state class action, the
firm began mediating with the Buccaneers. And, in June 2016, the Bock Firm
reached a proposed settlement with the Buccaneers.[6]

The Bock Firm refiled this class action complaint in federal court and
immediately sought preliminary approval of the class settlement. *Technology
Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 8:16-cv-1622-AEP (M.D.
Fla.) (Docs. # 1, 18). M&C and Cin-Q, both plaintiffs in the *Cin-Q* action, moved
to intervene in the now federal *TTA* action. The district court denied the motion

---

[6] Under the terms of the settlement agreement, the Buccaneers agreed to create a $19.5
million settlement fund and pay the Bock Law Firm $4,875,000 in attorneys' fees.

and granted preliminary approval of the class settlement. On interlocutory appeal, however, this court reversed the district court's decision on the motion to intervene before remanding the case for further proceedings. *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). That decision allowed M&C and Cin-Q to intervene in the federal *TTA* case to protect their interests.

### D.    The Filing of this Case and the Subsequent Conclusion of the *TTA* Federal Case

On June 1, 2016, less than two weeks before the Buccaneers filed for preliminary approval of the settlement in the federal *TTA* case, M&C filed this breach of fiduciary duty suit against Oppenheim and the Bock Firm in Florida state court. M&C alleged that Oppenheim breached the fiduciary duties owed to it as a named class representative—specifically the duties of loyalty and confidentiality. The complaint also asserted that the Bock Firm aided and abetted Oppenheim in the breach. M&C sought money damages, attorney's fees, and (quite oddly) an injunction preventing the Bock Firm from representing clients in the *TTA* action or reaching a settlement in any matter substantially related to the *Cin-Q* action. To be clear, M&C agreed to pursue fiduciary breach litigation, but Wanca promised to pay all of their fees and expenses in doing so. He did so because he thought the Bock Firm and Oppenheim had stolen "his" case. The record indicates Wanca and the AW Firm have spent over $500,000 financing this action.

Oppenheim and the Bock Firm removed the case to the Middle District of
Florida, and the parties filed cross motions for summary judgment. The district
court found (1) that Oppenheim did not owe an individual fiduciary duty to M&C,
(2) that even assuming such a duty existed, M&C failed to show Oppenheim or the
Bock Firm breached that duty, and (3) that, in any event, M&C failed to prove
damages. Consistent with these findings, the district court granted Oppenheim's
and the Bock Firm's motion for summary judgment, denied M&C's motion for
summary judgment, and entered judgment in favor of Oppenheim and the Bock
Firm. M&C appealed.

Soon after filing this appeal, the *Cin-Q* intervenors (including M&C) in the
federal *TTA* action filed a renewed motion to decertify the settlement class. *TTA*,
No. 8:16-cv-01622-AEP, (Doc. # 131). The court in that action granted the motion
and decertified the *TTA* class under Rule 23(a)(4), after finding that (1) class
counsel in the federal *TTA* action may have undercut *Cin-Q*'s counsel's negotiating
position and (2) unlike the plaintiffs in *Cin-Q*, the *TTA* plaintiffs' claims were
potentially barred by the statute of limitations. *Id.*, (Doc. # 169). Although the
federal *TTA* action is now decertified, this appeal remains.

## II.    Standard of Review

We review a district court's order granting summary judgment *de novo*.
*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291 (11th Cir. 2012). Summary

judgment is appropriate where "there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
We "tak[e] all of the facts in the record and draw[] all reasonable inferences in the
light most favorable to the non-moving party." *Peppers v. Cobb Cty.*, 835 F.3d
1289, 1295 (11th Cir. 2016) (citations omitted).

## III.   Analysis

M&C asserts the district court erred in finding (1) Oppenheim did not owe
an individual fiduciary duty to M&C separate from the duty owed to the class and
(2) M&C failed to prove damages resulting from Oppenheim's breach. We agree
with the district court on both counts and take this opportunity to clarify class
counsel's fiduciary obligations in this unique context.

A federal court sitting in diversity jurisdiction applies the substantive law of
the forum state (in this case, Florida) alongside federal procedural law. *Global
Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). M&C
claims that Oppenheim violated a fiduciary duty owed to it and that the Bock Firm
aided and abetted that violation. So, we turn to Florida law to evaluate the merits of
those claims. We note that to establish a breach of fiduciary duty under Florida
law, a plaintiff must prove three elements: the existence of a fiduciary duty, a
breach of that duty, and that the plaintiff's damages were proximately caused by
the breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). Further, to prove

12

aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) a

fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary

duty, (3) knowledge of the breach by the alleged aider and abettor, and (4) the

aider and abettor's substantial assistance or encouragement of the wrongdoing."

*AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). We begin by

examining the fiduciary obligations owed by counsel in class action litigation.

**A.   Duty**

The parties all agree that, as putative class counsel, Oppenheim owed

fiduciary duties to the class as a whole. But, that is not the issue we must address.

M&C does not argue (at least in this case) that Oppenheim violated a duty owed to

the class. Rather, M&C and Wanca assert that Oppenheim owed a heightened

fiduciary duty to M&C as a putative class representative. Therefore, in evaluating

this claim, we must first determine whether class counsel owes a fiduciary duty to

class representatives that is distinct from the fiduciary duty owed to the class. We

conclude class counsel does not.

M&C offers a simple syllogism to explain why class counsel owes a

separate and heightened fiduciary duty to class representatives: (1) if all attorney-

client relationships create duties of loyalty and confidentiality and (2) if class

counsel's representation of class representatives (but of not the rest of the class)

creates an attorney-client relationship, then it follows that (3) class counsel's

representation of class representatives creates duties of loyalty and confidentiality separate from the duties owed to the class. However, this syllogism breaks down under proper scrutiny.

As support for its assertion that all attorney-client relationships create duties of loyalty and confidentiality, M&C cites to Florida case law and the Florida Rules of Professional Conduct ("Florida Rules").[7] *See Fla. Bar v. Padgett*, 481 So.2d 919, 919 (Fla. 1986) ("Attorneys owe a fiduciary duty to their clients…."); Florida Rules 4-1.9(c) (stating that a lawyer who has formerly represented a client may not afterwards "reveal information relating to the representation except as these rules would permit or require with respect to a client"). Of course, M&C is correct that Florida courts, interpreting the Florida Rules, have found that attorneys generally owe duties of confidentiality and loyalty to former clients. *See, e.g., Tambourine Comercio Int'l S.A. v. Solowsky*, No. 06-20682-Civ, 2007 WL 689466, at *29 (S.D. Fla. Mar. 4, 2007) ("Florida courts have recognized that an attorney owes both a duty of confidentiality *and* a duty of loyalty to former clients with respect to matters that are substantially related."). For example, it is obviously impermissible for a lawyer to misuse a client's funds or to represent adverse parties in substantially related matters. *See Fla. Bar v. Bailey*, 803 So.2d 683, 694 (Fla.

---

[7] The Preamble to the Florida Rules, however, states: "[The Florida Rules] are not designed to be a basis for civil liability." R. Regulating Fla. Bar 4, Preamble.

2001) ("[Counsel]'s self-dealing constitutes a complete abdication of his duty of loyalty to his client."); *Estright v. Bay Point Improvement Ass'n, Inc.*, 921 So.2d 810, 811 (Fla. 1st DCA 2006) (concluding trial court correctly disqualified petitioners' attorney because petitioners' attorney represented adverse parties in substantially related matters). M&C, however, fails to point to any class action-specific authority extending duties of loyalty or confidentiality to an attorney's representation of a class representative in a class action.[8] And this is where M&C's syllogism breaks down. M&C relies heavily on rules and decisions from outside the class action context. But class actions, wherein lawyers represent absent parties, involve different considerations than cases in which counsel is actually retained by a client (or multiple clients).

---

[8] M&C cites two district court cases for the proposition that an attorney-client relationship exists between class counsel and class representatives that is distinct from that between class counsel and the class. However, we are not persuaded by either decision. First, neither decision cited by M&C applies the Florida Rules. *See In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4401970 (E.D. La. Sept. 22, 2008); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419 (D. N.J. 2000). Second, both decisions addressed the narrow issue of whether class counsel could assert privileges with respect to absent class member before class certification—not the scope of class counsel's duty to the class versus the named class representatives. *See In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970, at *2-3 (holding class counsel cannot prevent defendants from contacting absent class members before class certification); *Morisky*, 191 F.R.D. at 424 (holding that the attorney-client privilege is inapplicable to communications with absent class members).

In *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981), the former Fifth Circuit, in a decision still binding on us,[9] dealt with the ethical quandaries specific to class actions. The *Kincade* court determined that attorney-client relationships in class actions are "unique" because (1) "the 'client' in a class action consists of numerous unnamed class members as well as the class representatives" and (2) "the class itself often speaks in several voices." *Id.* at 508 (quoting *Pettway American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)). Because of this unique attorney-client relationship, the *Kincade* court determined counsel in class actions have different ethical duties to their clients than in ordinary cases. As an illustration of that difference, the *Kincade* court decided that cases "holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable" to class actions. *Kincade*, 635 F.2d at 508. What, then, determines the scope of class counsel's ethical duties?

One cardinal rule defines the scope of counsel's ethical obligations in class actions: class counsel owes a duty to the class as a whole and not to any individual member of the class.[10] Applying this rule, courts like *Kincade* have rejected

_____

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the en banc Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[10] As one of our sister circuits has recognized, however, defining the outer parameters of these duties can be difficult. *See Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758

attempts by class members to derail settlements beneficial to the class. *See*

*Kincade*, 635 F.2d at 508. But, an important corollary stems from this principle:

class counsel does not owe a particular duty to any group comprised of class

members, such as class representatives, distinct from the duty owed to the class.

*See Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (holding the duty of

counsel in the class-action context "is to the entire class and is not dependent on

the special desires of the named plaintiffs"). To hold otherwise would threaten one

of the defining purposes of class actions—the consolidation of claims into one suit

where a class of plaintiffs may speak with one voice. *See Pettway*, 576 F.2d at

1176 ("The interests of the named plaintiffs and those of other class members may

diverge, and a core requirement for preventing abuse of the class action device is

some means of ensuring that the interests and rights of each class member receive

consideration by the court."). If courts required class counsel to give special ethical

considerations to class representatives (or any other subset of the class), the

remaining class members would necessarily receive reduced ethical considerations

in comparison. And, in cases where the interests of the class representative diverge

from the interests of class members, class counsel would be required to choose the

interests of some class members over the rest of the class. Such outcomes could

---

F.2d 86, 91 (3d Cir. 1985) ("The bounds of fiduciary duty are undoubtedly not easy to define."). But, this case simply does not involve the outer parameters of the duties owed by class counsel to the class.

splinter class actions, lead to costly litigation between class members, and encourage class members to opt-out.

By deciding that Oppenheim did not owe a heightened duty to M&C because of its status as a class representative, the district court faithfully followed the case law adopted by our circuit as set forth in *Kincade*. Furthermore, the district court did not err when it rejected M&C's request that it apply the Florida Rules to Oppenheim's behavior. The Florida Rules are intended to instruct attorneys in the representation of clients outside of the class action context and are "simply inapplicable" to this case. *Kincade*, 635 F.2d at 508. The precedent of our circuit implicitly (if not explicitly) warned the district court not to apply such ethical rules to class counsel. *Pettway*, 576 F.2d at 1176 ("Certainly it is inappropriate to import the traditional understanding of the attorney-client relationship into the class action context by simply substituting the named plaintiffs as the client.").

The absence of a traditional attorney-client relationship between Oppenheim and M&C, the unique relationship between class counsel and class representatives, and application of our *Kincade* precedent all lead us to affirm the district court's ruling. However, we are obliged to make one additional observation. M&C's filing of this suit in state court against Oppenheim and the Bock Firm strikes us as an attempt to end run around the *TTA* court, which was solely responsible for making

all Rule 23 determinations related to the Bock Firm's requests to certify a class and approve a class settlement. Rule 23 makes clear that the district court in which a class action is filed operates as a gatekeeper. It is that court, and that court alone, that has the task of deciding a number of Rule 23 questions, including whether to certify a class, whether to appoint class counsel, and whether to approve a proposed class settlement.

We are aware that, separate and apart from filing this action, M&C and Wanca objected to the *TTA* settlement and attempted to intervene in the *TTA* action.[11] And, although the *TTA* court preliminarily approved the settlement, ultimately that court reversed course and decertified the class. But, that was not until well after M&C and Wanca filed this action in state court. We are troubled by that filing. We have no hesitation in calling it what it was: a thinly-veiled attempt to derail the *TTA* settlement.[12] That is clear because of certain aspects of the relief

---

[11] The district court denied the *Cin-Q* plaintiff's motion to intervene ruling that the "*Cin-Q* plaintiffs may assert [their] objections in the normal course of these proceedings, as anticipated by Rule 23." *TTA*, No. 8:16-cv-01622-AEP (Docs. # 56). It also preliminarily approved the settlement. A panel of this court reversed the decision to deny the intervention motion. *Tech Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017). And after remand, the objections asserted by the AW Firm proved successful as the *TTA* settlement failed after the district court granted a motion filed by the AW Firm (on behalf of the *Cin-Q* plaintiffs) to decertify the TTA settlement class. *TTA*, No. 8:16-cv-1622-AEP (Docs. # 131, 169).

[12] To the extent that Wanca and the AW Firm protest that they filed this action to protect the interests of the class and M&C, we firmly remind them that a class's interests are due to be protected in a manner consistent with Rule 23—that is, by filing an objection in the federal court where the class action resides and any class settlement is proposed.

sought in this action. M&C claimed not only money damages and attorneys' fees, but it also requested an injunction preventing the Bock Firm from proceeding as class counsel in the *TTA* action or settling that action. So, in filing this suit, M&C and its counsel asked a state court judge to enjoin putative class counsel in a separate federal class action. As the saying goes, that won't work. There is only one gatekeeper under Rule 23 and it was wholly inappropriate for M&C and its counsel to go to state court in an attempt to employ another one.

M&C and Wanca may contend that their substantive objections were valid. After all, once M&C was permitted to intervene, the district court eventually decertified the class and rejected the settlement. But, that is precisely the point. It is emphatically the role of the district court to address those matters, for it is the only forum in which such a challenge should have been launched—certainly not a different court. So, regardless of the merits of the objections, M&C crossed a line by attempting to litigate them in another court.

For these reasons, we affirm the district court's holding that M&C failed to prove the first element of both of its claims, *i.e.,* that Oppenheim owed a fiduciary duty to M&C separate from the fiduciary duty he owed to the class.

## B.    Damages

In the alternative, the district court determined that M&C failed to show it suffered damages as a result Oppenheim's alleged fiduciary breach. We also agree with that ruling.

M&C argues that it was harmed by Oppenheim's and the Bock Firm's conduct. It contends that, "[b]ut for Oppenheim's sharing of confidential and mediation privileged information with [the Bock Firm], [the Bock Firm] would not have filed the *TTA* State Court and Federal Actions." As a result of the Bock Firm filing the *TTA* federal action, M&C claims it was injured by having its position as putative class representative usurped and by being "forced to expend time and other resources to prevent an improper settlement between [the Bock Firm] and the Buccaneers resulting from [the Bock Firm] and the Buccaneer's aligned interests." M&C asserts these injuries occurred only because the *TTA* federal action settled for an artificially and improperly low amount due to the Bock Firm's rush to undercut the AW Firm's settlement efforts in the *Cin-Q* action.[13]

But, M&C's theory of damages in this case necessarily relies on it proving that the proposed *TTA* settlement was to the detriment of the class. As we noted above, the proper forum to raise that objection was in the federal *TTA* action. Our

---

[13] This scenario is sometimes referred to as a "reverse auction." *See, e.g., Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1305 (S.D. Fla. 2005).

observations about M&C's attempt to circumvent the *TTA* court's handling of the

class action before it are equally applicable here. Rule 23 provides class members

and objectors like M&C with procedural mechanisms to file these types of

challenges. And, Rule 23 squarely places the responsibility for ruling on such

challenges in the district court that has jurisdiction over the class action claims, not

a state court. Again, in accordance with Rule 23, it is the district court -- and only

the district court -- that is tasked with making determinations about class

certification, class counsel, and class settlements. *See Reynolds v. Beneficial Nat.*

*Bank*, 288 F.3d 277, 280 (7th Cir. 2002) (stating that, in the context of approving

or disapproving a class settlement, some courts "have gone so far as to term the

district judge in the settlement phase of a class action suit a fiduciary of the class").

Neither a lone putative class member, a competing putative class representative

such as M&C,[14] nor competing putative class counsel, such as Wanca and the AW

Firm, may circumvent the district court's Rule 23 role by launching a collateral

attack in another court against class counsel.

For these reasons, any objections to the federal *TTA* settlement, or any claim

that the *TTA* settlement somehow injured M&C, should have been raised before the

---

[14] As part of its claim for monetary damages, M&C also sought to recover the loss of its incentive award in the *Cin-Q* class action. However, a panel of this court recently concluded that such service awards are foreclosed by Supreme Court precedent. *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (*en banc* petition pending).

court in the federal *TTA* case in accordance with Rule 23. The district court did not permit M&C to circumvent the *TTA* judicial officer and the text of Rule 23. We will not either.

We find no error in the district court's determination that M&C failed to establish that it was damaged by any alleged breach of a fiduciary duty owed to it by Oppenheim.

## IV.   Conclusion

For all these reasons, we affirm the district court's grant of summary judgment in favor of Oppenheim and Bock Law Firm.

**AFFIRMED**.

GUARANTEED* ★ ★ ★
★ ★ TRACKED
★ ★ INSURED ★

FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


EMS

UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL
EXPRESS®

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

UNITED STATES
POSTAL SERVICE®

www.paypal.com

PRIORITY MAIL EXPRESS 2-DAY™

US POSTAGE
12/05/2020
From 66614
Zone 6

Pitney Bowes
ComBasPrice
Flat Rate Envelope

026W0004897469

E

0007

Scheduled Delivery Date: 12/07/2020

WAIVER OF SIGNATURE

US DISTRICT COURT, S.D. FLA.
400 NORTH MIAMI AVE.
ATTN: CASE NO. 1:19-CV-20592-JEM
MIAMI FL 33128-1801

C075

USPS TRACKING #

9470 1282 0633 4168 3546 46

000006