**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**Case No. 1:19-CV-20592-MARTINEZ/OTAZO-REYES**

VASSILIOS KUKORINIS, on behalf of
himself and those similarly situated,

                 Plaintiff,

      v.

WALMART, INC., a Delaware
corporation

                 Defendant.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL,**
**AMENDED ATTORNEYS' FEE REQUEST, RESPONSES**
**TO OBJECTIONS, AND INCORPORATED MEMORANDUM OF LAW[1]**

Plaintiff, Vassilios Kukorinis ("Plaintiff"), respectfully moves for an order that finally

approves the settlement between Plaintiff and Defendant Walmart Inc. ("Walmart" or

"Defendant") (together, the Plaintiff and Walmart are referred to as the "Parties"), the terms of

which are set forth in the "Settlement Agreement and Release" ("Settlement"), previously filed

with the Court. (Doc. No. 41-1). In so moving, Plaintiff respectfully requests the Court: 1) approve

the Settlement as fair, reasonable, and adequate under Rule 23(e); 2) finally certify the Settlement

Class under Rule 23(b)(2) and (b)(3); 3) finally appoint Plaintiff as Class Representative for the

Settlement Class; 4) finally appoint as Class Counsel John A. Yanchunis and Ryan J. McGee of

---

[1] Walmart does not concede the Plaintiff's allegations, nor does it concede all of the factual
statements set forth herein. For purposes of this Settlement, however, Walmart does not oppose
the filing of this Motion.

i

the law firm of Morgan & Morgan Complex Litigation Group; 5) find the Notice program as implemented satisfies Rule 23 and due process; 6) finally appoint Epiq Class Action and Claims Solutions, Inc., as the Claims Administrator; 7) grant Class Counsel's Motion for Attorneys' Fees, as amended in the amount of $1,187,500.00, well as Litigation Costs in the amount of $61,961.33; 8) strike the objection of Steven Helfand or, in the alternative, find as moot and overrule his objections; 9) find as moot and overrule the objection of Shiyang Huang; and 10) grant any further relief as the Court deems just and proper. A proposed order is attached hereto as **Exhibit 1**.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF LITIGATION .......................................................................... 2

    A.  Procedural History ..................................................................................... 2

    B.  Information About the Settlement ............................................................. 3

III. THE TERMS OF THE SETTLEMENT AGREEMENT ................................. 4

    A.  The Settlement Class................................................................................... 4

    B.  The Settlement Benefits ............................................................................. 5

    C.  Business Practice Commitments................................................................. 6

    D.  The Notice Program ................................................................................... 6

    E.  Attorneys' Fees, Costs, and Expenses ...................................................... 7

    F.  Release of Claims ....................................................................................... 7

IV. ARGUMENT...................................................................................................... 8

    A.  Certification of the Settlement Class is Appropriate ................................. 8

        1.  The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)........ 9

            a.  Numerosity............................................................................ 9

            b.  Commonality.......................................................................... 10

            c.  Typicality ............................................................................... 10

            d.  Adequacy ............................................................................... 11

            e.  Predominance......................................................................... 12

            f.  Superiority.............................................................................. 13

    B.  Plaintiff's Counsel Should be Appointed as Class Counsel ...................... 14

    C.  The Settlement is Fair, Reasonable, and Adequate.................................... 14

        1.  The Settlement is Not the Product of Fraud or Collusion.............................. 15

2. The Complexity, Expense, and Duration of Further Litigation, as well as the Probability of Success at Trial, Supports Approval of the Settlement ................. 16

3. The Factual Record was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment .................................................................................. 17

4. The Benefits Provided by the Settlement are Fair, Adequate, and Reasonable ....................................................................................................... 17

5. The Opinions of Class Counsel, the Class Representative, and Absent Class Members Favor Approval of the Settlement ........................................................ 18

D. Class Counsel's Amended Attorney Fee Request ...................................................... 20

E. Responses to Objections .......................................................................................... 20

1. Steven Helfand's Objection (Doc. No. 55) .................................................... 21

a. Mr. Helfand's Objection should be stricken ............................................. 21

b. To the extent it is not stricken, Mr. Helfand's objection should be overruled ........................................................................ 23

2. Shiyang Huang's Objection (Doc. No. 64) .................................................... 24

**V. CONCLUSION** ...................................................................................................... **26**

## **TABLE OF AUTHORITIES**

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004)................................................13

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)....................................................8, 9, 11, 12

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ......................................................15, 18

*Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1 (2nd Cir. 2012) .........................................15

*Braynen v. Nationstar Mortgage, LLC*, No. 14-CV-20726,
    2015 WL 6872519 (S.D. Fla. Nov. 9, 2015).......................................................................22

*Brown v. Hain Celestial Grp., Inc.*, No. 11-c-v03082-LB,
    2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ...............................................................22–23

*Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800,
    2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ........................................................................8

*Cherry v. Dometic Corp.*, --- F.3d ---, 2021 WL 346121 (11th Cir. Feb. 2, 2021) ......................23

*Collins v. Quincy Bioscience, LLC*, No. 19-22864-CIV-COOKE/GOODMAN
    (S.D. Fla. Nov. 16, 2020)...................................................................................................21

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ...................................................................25

*Cooper v. S. Co.*, 390 F.3d 695 (11th Cir. 2004) ......................................................................10

*David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278,
    2010 WL 1628362 (S.D. Fla. April 15, 2010) ...................................................................12

*Deas v. Russell Stover Candies, Inc.*, No. CV-04-C-0491-S,
    2005 WL 8158201 (N.D. Ala. Dec. 22, 2005)...................................................................12

*Dennis v. Kellogg Co.*, No. 09-cv-1786-L WMC,
    2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...................................................................22

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ......................................................................................16

*Fabricant v. Sears Roebuck*, 202 F.R.D. 310 (S.D. Fla. 2001) ...................................................8

*Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292 (S.D. Fla. 2007) ...................................10

*Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ...........................9

*Great Neck Capital Appreciation Investment P'ship, L.P. v.*
    *PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002) ............................18

*Hall v. Bank of America, N.A.*, No. 1:12-cv-22700,
    2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..................................................................19

*Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749,
    2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ..................................................................19

*Hines v. Widnall*, 334 F.3d 1253 (11th Cir. 2003)..................................................................10, 11

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*,
    2015 WL 6872519 (S.D. Fla. 2015) ...............................................................................19

*In re Apple Sec. Litig.*, 2011 WL 1877988 (ND. Cal. May 17, 2011)...........................................22

*In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 659 (S.D. Fla. 2010)................................10, 13

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) .............................................................22

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ............................18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020)...................................................................22

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994)...............23

*In re Hydroycut Mkting and Sales Practices Litig.*, No. 09CV1088 BTM KSC,
    2013 WL 5275618 (S.D. Cal. Sept. 17, 2013)................................................................22

*In re: Managed Care Litig. V. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) .................25

*In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317,
    (Doc. 1557) (S.D. Fla. Apr. 19, 2005) ............................................................................25

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)..................................................16

*Johnson v. NPAS Solutions, LLC*, No. 18-12344,
    2020 WL 5553312 (11th Cir. Sep. 17, 2020) .............................................................7, 23

*Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983) .............................................................11

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ...............................................................12

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ..................................10

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) .........................................................9

*Leverso v. Lieberman*, 18 F.3d 1527 (11th Cir. 1994)....................................................15

*Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..................8–10, 14, 17

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013)................9

*Montoya v. PNC Bank, N.A.*, No. 14-20474,
    2016 WL 1529902 (S.D. Fla. April 13, 2016) ....................................................15

*Morgan Pub. Storage*, 301 F. Supp. 3d 1237 (S.D. Fla. 2016) ....................................................25

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429 (11th Cir. 2012)........................15

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ....................................................10

*Pierre-Val v. Buccaneers Ltd. Partn.*, No. 8:14-CV-01182,
    2015 WL 3776918 (M.D. Fla. June 17, 2015)..........................................................14–15

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) ..........................................................17

*Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) .................15, 17–18

*Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002) ..........................................................13

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)..........................................22

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633 (M.D. Fla. 2005)....................................16

*Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003)....................................18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................................12

*Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) ............................................8

*Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292–98 (11th Cir. 1999) .................25

*Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) ..........................................18

*Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350 (11th Cir. 2009)..........................................10

*Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) .................14

*Wolff v. Cash 4 Titles*, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..........................................25

## I.   INTRODUCTION[2]

On February 13, 2019, Plaintiff filed this proposed class action against Walmart concerning the alleged systematic overcharging for beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing and sold accordingly thereto (the "Weighted Goods"). Specifically, from February 13, 2015, to when the Court granted preliminary approval on August 26, 2020 (the "Class Period"), Plaintiff alleged that Walmart advertised deceptive unit prices for Weighted Goods placed on sale close to their respective expiration dates. It is further alleged that Walmart advertised those Weighted Goods at specific unit sales prices, but upon closer inspection, the final sale prices did not coincide with the unit sales prices based on the weight of the products as represented on the original labels (the "Pricing Practice"). As a result, Walmart consumers did not receive the promised value for the Weighted Goods they purchased.

The proposed Settlement, reached after significant investigation, exchanging and analyzing substantial documentation, and lengthy arms'-length settlement negotiations spanning months, provides resolution of the claims of consumers against Walmart on a classwide nationwide basis (the "Settlement"). In exchange for the releases in the Settlement, Walmart agreed, as set forth in the Settlement, to fund a non-reversionary Qualified Settlement Fund ("QSF") of at least $4,500,000.00 (the "Floor") and, should the Settlement exceed $4,500,000.00, Walmart will fund that QSF up to $9,500,000.00 (the "Ceiling"). The QSF will be used to pay for: (1) reimbursement of Settlement Class Members' overcharges, including up to $10.00 for sworn attestation of purchases of Weighted Goods, $40.00 for documented purchases of Weighted Goods with receipts or proofs of purchase, but without the packaging to demonstrate

---

[2] Unless otherwise noted, all capitalized terms are defined in the Settlement.

the actual amount overcharged, and non-capped amounts for all documented purchases of Weighted Goods with receipts, proofs of purchase, and packaging demonstrating the actual amount of the overcharge, as more fully described in sections 6.3.1.1 through 6.3.1.3 of the Settlement Agreement; (2) notice and claims administration costs; (3) the Service Award;[3] (4) Attorneys' Fees; and (5) Litigation Expenses. As part of the Settlement, Walmart has also agreed to maintain certain business practice commitments relating to remediation of the pricing and marking of Weighted Goods, which has been provided to Plaintiff's Counsel. The Settlement offers a significant recovery for class members and is an excellent result. For the following reasons, Plaintiff respectfully requests the Court enter an order granting final approval of the Settlement and finally certifying the Settlement Class.

## II.  SUMMARY OF LITIGATION

### A.  Procedural History

Plaintiff filed this proposed class action against Walmart for the Pricing Practices related to the Weighted Goods, seeking to recover the overpayments for the proposed Florida class during the Class Period. (Doc. No. 1). In pursuit of the proposed Florida class, Plaintiff brought two causes of action: 1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and 2) unjust enrichment. (Doc. No. 1).

On April 8, 2019, Walmart moved to dismiss Plaintiff's Class Action Complaint, which focused on the alleged lack of details concerning the purchases and harm, and also challenged the legal bases of Plaintiff's claims. (Doc. No. 14). Following Walmart's first Motion to Dismiss, Plaintiff amended his complaint on April 22, 2019, to supplement his allegations and detail

---

[3] Plaintiff is not seeking a service award. (Doc. No. 56).

additional examples of the Pricing Practices for the Weighted Goods, as well as detailing the locations at which the Pricing Practices for the Weighted Goods were observed throughout twelve stores in Florida's Middle and Southern Districts. (Doc. No. 15, ¶¶ 33–36(l)).

After fully briefing Walmart's motion to dismiss, (Doc. Nos. 24–26), the Parties began exploring potential resolution of the case, and in September 2019, the Parties formally selected a nationally known and extremely experienced mediator, Michelle Yoshida of Phillips ADR, to mediate the case. (Doc. No. 29). Following two mediations under the guidance of Ms. Yoshida, the Parties were substantially close to settlement of this matter on a nationwide basis, and on May 28, 2020, jointly requested a stay of deadlines to permit the Parties to focus efforts toward resolution. (Doc. No. 29). On June 1, 2020, the Court denied Walmart's Motion to Dismiss. (Doc. No. 30). On June 8, 2020, anticipating the Settlement presented in this Motion, the Parties stipulated to the amendment of Plaintiff's Amended Complaint to include nationwide allegations pursuant to Federal Rule of Civil Procedure 15(a)(2). (Doc. No. 31). On August 7, 2020, Plaintiff filed his unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement, (Doc. No. 41), which the Court granted on August 26, 2020. (Doc. No. 42).

**B.  Information About the Settlement**

To help facilitate settlement negotiations, the Parties agreed on and retained Michelle Yoshida of Phillips ADR to conduct a mediation. Declaration of John A. Yanchunis, previously filed on August 7, 2020, (Doc. No. 41-2), at ¶ 13 (hereinafter the "JAY Decl."). As a condition of mediation, Plaintiff's Counsel sought pertinent information from Walmart regarding the Pricing Practices and Weighted Goods, including sales data for the Weighted Goods during the Class Period. Walmart agreed to provide this information pursuant to Federal Rule of Evidence 408. JAY Decl., ¶ 14.

In advance of the mediation, the Parties briefed their respective positions on the facts,

claims, defenses, and assessments of the continued risks of litigation before Ms. Yoshida. JAY Decl., ¶¶ 15, 16. On November 19, 2019, the Parties participated in their first full-day mediation session with Ms. Yoshida that included attorneys and representatives for both Parties on behalf of the proposed Florida class. Following those negotiations, the Parties agreed to exchange additional information and engage in additional discovery to pursue a second mediation on behalf of a nationwide settlement class. On March 18, 2020, the Parties then engaged in the second mediation on behalf of a nationwide class, and participated in additional sessions in the following weeks culminating in the Settlement Agreement currently before this Court for approval. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Following these multiple day-long negotiations, the Parties were able to reach an agreement on the substantive terms of the Settlement. JAY Decl., ¶¶ 17–20. As a condition of Settlement, Walmart produced certain documents responsive to Plaintiff's first discovery requests and provided detailed sales data for Weighted Goods Walmart sold in Florida and nationwide during the Class Period. JAY Decl., ¶¶ 14, 18, 26.

Based on Plaintiff Counsel's independent investigation of the relevant facts and applicable law, experience with other fraudulent, deceptive, and unfair trade practices cases, and the information provided by Walmart, as well as work with an expert in this field, Plaintiff's Counsel has determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. JAY Decl., ¶¶ 26–33, 39. Accordingly, the Parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto. *Ibid.*

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Class

The proposed Settlement Class is defined as all persons who purchased Weighted Goods

from Walmart in the United States from February 13, 2015, to August 26, 2020 (*i.e.*, the date the Court entered its preliminary approval, (Doc. No. 42)) whose Weighted Goods' unit sale price was not accurately reflected in the final sale price.[4] SA, § 2.29.

### B. The Settlement Benefits

Walmart has agreed to fund a non-reversionary QSF with a minimum of $4,500,000.00 and a maximum of $9,500,000.00. SA, §§ 6.1, 6.2.1–6.2.4.3; JAY Decl., ¶ 27. The QSF will be used to pay for the reimbursement of purchases of Weighted Goods that were purchased during the Class Period and the reduced sale price was inaccurate based on the alleged Pricing Practices (the "Overpayments"). *See* SA, § 6.3.1–6.3.1.3. Examples of Overpayments that are eligible for reimbursement through the Settlement include:

- Undocumented Overpayments, capped at six (6) purchases with an average Overpayment of $1.67 per purchase, summed to $10.00;
- Overpayments where the Settlement Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, but lacks proof to substantiate the actual amount overcharged, capped at ten (24) purchases with an average Overpayment of $1.67 per purchase, summed to $40.00; and
- Overpayments where the Settlement Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, and the Settlement Class Member has the packaging to demonstrate the actual amount overcharged, the Settlement Class Member will recover the actual amount of Overpayments, without any cap.

The documentation necessary to establish Overpayments is not overly burdensome and can consist of documents such as receipts, product packaging, among other relevant documentation. *See* SA, § 6.3.1–6.3.1.3; JAY Decl., ¶¶ 28–31. If the claim is rejected for any reason, there is also

---

[4] Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA, § 2.29.

a consumer-friendly process whereby claimants have the opportunity to cure any deficiencies in their submission if the Claims Administrator determines a claim for Overpayments is deficient in whole or part. SA, § 6.3.9; JAY Decl., ¶ 42.

### C.  Business Practice Commitments

In addition to the monetary compensation provided, Walmart has reviewed the examples of the alleged Pricing Practices identified in Plaintiff's Second Amended Complaint and provided during mediation, and committed to the remediation of the alleged Pricing Practices if applicable. These commitments will be paid for by Walmart separate and apart from the QSF. JAY Decl., ¶ 33.

### D.  The Notice Program

On August 26, 2020, the Court appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Claims Administrator, "with responsibility for class notice and claims administration" consistent with the terms of the Settlement. (Doc. No. 42, ¶ 6). On September 24, 2020, Epiq commenced the Notice program. Azari Decl., ¶¶ 10–25. The Notice program utilized national consumer print publications, internet banner advertising, social media, sponsored search, and a national informational release. Azari Decl., ¶¶ 10–25; JAY Decl., ¶ 34. The digital banner ads reached over 87% of adults aged 18 or older who shop at or have expressed an interest in Walmart, with approximately 522,685,558 nationwide impressions delivered through this medium from September 25, 2020 through October 28, 2020. Azari Decl., ¶¶ 12–17. Additionally, informational and publication releases were utilized from September 25, 2020 through October 26, 2020, in PR Newswire, *People*, and *Parade*, with estimated circulations exceeding 21.4 million and readership of 74 million. Azari Decl., ¶¶ 10–11, 20–21. The Notice program is estimated to cost an approximate total of $560,000.00, with $387,950.60 invoiced to date, which is to be paid from the QSF should the Court grant final approval of this class action. Azari Decl., ¶ 30; JAY

Decl., ¶ 34. Epiq also established a Settlement Website, published on September 24, 2020. Azari Decl., ¶ 22; JAY Decl., ¶ 35. The Settlement Website provided information about the Settlement, related case documents, and the Settlement Agreement itself, and was visited approximately 1,331,424 times with 281,579 unique visitors. Azari Decl., ¶¶ 22–23. Settlement Class Members were able to submit claims electronically on the Settlement Website or by mail. SA, § 2.37; Azari Decl., ¶ 22. Settlement Class Members were able to upload documents or mail in paper form the documentation necessary to establish overcharges. Azari Decl., ¶¶ 22.

### E. Attorneys' Fees, Costs, and Expenses

The QSF will be used to pay for an award of Attorneys' Fees, Costs, and Expenses. Consistent with the Eleventh Circuit decision in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sep. 17, 2020)—which was decided *after* the Settlement Agreement was executed and after this Court granted preliminary approval—Plaintiff does not seek a Service Award. On October 14, 2020, Plaintiff's Counsel moved for an attorneys' fee award of $2,375,000.00, or 25 percent of the value of the QSF Ceiling, and for reimbursement of Litigation Costs of $61,961.33, which was $38,038.67 less than the permissible $100,000.00 under the Settlement. (Doc. No. 56). Plaintiff's approval of the Settlement was not conditioned in any manner on his receiving a Service Award or its amount. JAY Decl., ¶ 37. Walmart took no position on the amounts to be sought for Attorneys' Fees, Costs, and Expenses, but does not object to reasonable awards by the Court. SA, §§ 6.2.1–6.2.2; JAY Decl., ¶ 37. Class Counsel have amended their request for attorneys' fees to $1,187,500.00, or 25% of the QSF Floor (instead of the Ceiling). *Supra*, § IV.D.

### F. Release of Claims

In exchange for the benefits provided under the Settlement, Settlement Class Members will release any legal claims that may arise from or relate to the facts alleged in the Second Amended

Complaint, as specified in Section 13 of the Settlement Agreement. SA, §§ 2.31, 13.1–13.5; JAY Decl., ¶ 38.

## IV. ARGUMENT

### A. Certification of the Settlement Class is Appropriate[5]

As this Court has already held, the Settlement Class meets the requirements for certification for settlement purposes under Rule 23. (Doc. No. 42). Specifically, the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). Fed. R. Civ. P 23(a)(1)–(4), (b)(3). *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative(s), and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC,* No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v.*

---

[5] Walmart denies liability and does not waive its objections to class certification.  However, Walmart does not object to certification of the settlement class, solely for purposes of settlement. SA, §§ 3.5, 3.6.

*American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem Products, Inc.,* 521 U.S. at 620. This case meets all of the Rule 23(a) and 23(b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

Approval of a proposed settlement is a two-step process. First, the court decides whether the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007), to decide "whether to direct notice … to the class, invite the class's reaction, and schedule a final fairness hearing." 4 Newberg on Class Actions § 13:10 (5th ed. 2015). Second, at the final approval hearing, the court decides if the settlement is fair, reasonable, and adequate. *Id.*

### 1.   The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)

#### a.   Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, the Settlement Class is all persons who purchased Weighted Goods from Walmart in the United States from February 13, 2015, to present (or the date the Court approves this Settlement), whose Weighted Goods' unit sale price was not accurately reflected in the final sale price. Hundreds of thousands of consumers over this more than five-year period would potentially fall into the Settlement Class.

9

Numerosity is thus easily satisfied.

### b.  Commonality

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 659 (S.D. Fla. 2010). "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because Settlement Class Members are joined by the common questions of law and fact that arise from the same behavior—the Pricing Practice related to the Weighted Goods. As Plaintiff alleged, the critical issues posed by this action include: 1) whether the Pricing Practices on Weighted Goods resulted in Walmart being unjustly enriched; and 2) whether Plaintiff and Settlement Class Members sustained damages. These common issues aggregate toward the singular conduct of Walmart with respect to the Pricing Practice. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1373 (S.D. Fla. 2007) (finding that proposed settlement class certified under Rule 23(b)(3) had common questions of law and fact predominated over any individualized inquiries for settlement class members); *Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292, 1319 (S.D. Fla. 2007) (same); *Lipuma*, 406 F.Supp.2d at 1314 (same).

### c.  Typicality

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the

typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.") (internal quotations omitted). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement. Specifically, Plaintiff's claims are typical of those of the Settlement Class because they arise from the same Pricing Practice and from the same legal duty Walmart had to charge the proper amount for the Weighted Goods that Plaintiff and the Settlement Class Members purchased across the country, comprising a clear nexus between Plaintiff's claims and those of the Settlement Class Members. *Hines*, 334 F.3d at 1256. Typicality is thus satisfied.

### d. Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. As noted above, the Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. JAY Decl., ¶ 44. Plaintiff purchased the Weighted Goods from Walmart and was harmed because he was overcharged for the Weighted Goods. Additionally, Plaintiff has vigorously prosecuted this Litigation for the benefit of all Settlement Class Members by filing the underlying action, reviewing pleadings, conferring with Plaintiff's Counsel, attending mediation, and providing input in crafting and approving the Settlement. *Id*. Although Plaintiff filed a regrettable declaration in this case, Plaintiff clarified that the declaration was the result of a misunderstanding of the scope of the Settlement and sought to withdraw the declaration from consideration. (Doc. No. 45).

Indeed, Plaintiff appeared before the Court at the October 7, 2020 status conference concerning the requested withdrawal of the declaration and expressed full support for the Settlement.

In addition, Plaintiff's Counsel are qualified to represent the Settlement Class. JAY Decl., ¶¶ 4, 15–26, 31, 32, 39, 42. In this case, we have spent considerable time investigating Settlement Class Members' injuries and claims and negotiating a well-informed Settlement on behalf of the Settlement Class. Accordingly, the Rule 23(a) prerequisites have been met.

### e. Predominance

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011), and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

In this case, the key predominating questions are whether Walmart had a duty to charge Plaintiff and Settlement Class Members the amount for the Weighted Goods as reflected in the reduced unit price and weight, and whether Walmart breached that duty. The many common questions of fact and law that arise from Walmart's conduct predominate over any individualized issues. *See, e.g.*, *Deas v. Russell Stover Candies, Inc.*, No. CV-04-C-0491-S, 2005 WL 8158201, *3 (N.D. Ala. Dec. 22, 2005) (common issues concerning mislabeling predominate over individualized inquires). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, *3 (S.D. Fla. April 15, 2010) (Gold, J.). Accordingly, the common questions

of fact and law that arise from Walmart's conduct predominate over any individualized issues.

    **f. Superiority**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. See Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this Litigation that any Settlement Class Member wishes to litigate their claims individually, and there are no other cases that have been filed. And with the high cost of litigating a case like this—requiring expert investigation and testimony to prove how and why the Pricing Practices occurred and resulted in overpayment for the Weighted Goods in small amounts sometimes fewer than one dollar, individualized litigation is impracticable. *See In re Checking*, 286 F.R.D. at 659 ("The class action fills an essential role when the [plaintiffs] would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

Accordingly, resolution of this Litigation through a class action settlement in this Court will achieve significant economies for the Parties, the proposed Settlement Class, and the Court, satisfying the superiority requirement. The Court respectfully should certify the Settlement Class,

13

as the superiority requirement, along with all other requirements Rule 23(a) and (b), is satisfied.

**B. Plaintiff's Counsel Should be Appointed as Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed and fully explained in the Motion for Preliminary Approval (Doc. Nos. 41, 41-2), and as the Court found in its Order Preliminarily Approving Class Settlement and Directing Class Notice, (Doc. No. 42), proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation and litigation of those claims, and have successfully negotiated the Settlement of this matter to the benefit of Plaintiff and the Settlement Class. *Id*. Accordingly, the Court should appoint John Allen Yanchunis, Sr. and Ryan J. McGee as Class Counsel.

**C. The Settlement is Fair, Reasonable, and Adequate**

"Settlement of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). "For these reasons, 'there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Id*. (quoting *Lipuma*, 406 F. Supp. 2d at 1314). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v.*

*Buccaneers Ltd. Partn.*, No. 8:14-CV-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015)

(citations omitted).

      In deciding whether to approve the Settlement, the Court will analyze whether it is "fair,

adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530

(11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The

Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the

realization that compromise is the essence of settlement." *Wilson*, 2016 WL 457011, at *6, quoting

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012) (quoting

*Bennett*, 737 F.2d at 986). The factors for analyzing the fairness, reasonableness, and adequacy of

a class settlement under Rule 23(e) include:

1. the existence of fraud or collusion behind the settlement;
2. the complexity, expense, and likely duration of the litigation;
3. the stage of the proceedings and the amount of discovery completed;
4. the probability of the Class Representative's success on the merits;
5. the range of possible recovery; and
6. the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement.

*Montoya v. PNC Bank, N.A.*, No. 14-20474, 2016 WL 1529902, at *8 (S.D. Fla. April 13, 2016)

(citing *Leverso*, 18 F.3d at 1530, n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors, set

forth below, shows this Settlement to be eminently fair, adequate, and reasonable.

### 1.  The Settlement is Not the Product of Fraud or Collusion

      "Where the parties have negotiated at arm's length, the Court should find that the

settlement is not the product of collusion." *Wilson*, 2016 WL 457011, at *6 (quoting *Saccoccio v.*

*JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). In such cases, "[t]here is a

presumption of good faith." *Id.* Here, the Settlement was the result of intensive, arms-length

negotiations between experienced attorneys familiar with class action litigation and the legal and

factual issues involved in this case. The Settlement was reached only after mediation before an

experienced neutral. JAY Decl., ¶ 23. *See, e.g.*, *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2nd Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appears on both sides" and "settlement was reached only after contentious negotiations"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "after almost six months of concerted negotiations"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement…counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633, 703 (M.D. Fla. 2005). And here, Class Counsel are in favor of this proposed settlement and recommend it.

## 2. The Complexity, Expense, and Duration of Further Litigation, as well as the Probability of Success at Trial, Supports Approval of the Settlement

The claims and defenses in this case are complex and vigorously contested. Continued litigation will involve substantial delay and expense, which further counsels in favor of final approval. Even if Plaintiff succeeds in obtaining a contested class certification, Plaintiff and the Class would still inevitably face a challenge to that certification, as well as summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would be significant. Complex litigation—like the instant case—"can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wilson*, 2016 WL 457011, at *7 (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). As a result, non-settlement-based recovery would require additional complex, protracted, and expensive litigation.

In addition, in evaluating this factor, "[t]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere

possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp. 2d at 1323 (internal citations and marks omitted). Because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992), there can be no doubt about the adequacy of the present Settlement, which provides meaningful benefits to the Class. Considering the uncertainties inherent in continued litigation, including trial and an appeal, along with the delays and complexities inherent in this type of litigation, settlement is in the best interest of Plaintiff and the Settlement Class. *Lipuma*, 406 F. Supp. 2d at 1324.

### 3. The Factual Record was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

The stage of proceedings at which settlement is reached is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016 WL 457011, at *7 (quoting *Lipuma*, 406 F. Supp. 2d at 1324). This Settlement resulted from arms-length negotiations informed by detailed sales data for Weighted Goods Walmart sold in Florida and nationwide during the Class Period. There was no shortage of information and no rush to settlement in this case. The Settlement was supervised by an experienced mediator who oversaw all stages of the settlement negotiations. Between the exchange of detailed sales data, counsel's investigation, and the legal briefing in this case, the parties were well informed and understood the strengths and weaknesses of their respective positions.

### 4. The Benefits Provided by the Settlement are Fair, Adequate, and Reasonable

In determining whether a settlement is fair in light of the potential range of recovery, "the focus is on the possible recovery at trial." *Wilson*, 2016 WL 457011, at *7 (quoting *Saccoccio*, 297

F.R.D. at 693). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542. Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial. Specifically, Settlement Class Members are entitled to relief based upon the evidence they would have presented at trial: receipts and packaging demonstrating the Overpayments. In the alternative, Settlement Class Members are entitled to relief by attesting to their purchases (limited to six in the aggregate)—which would not be recoverable at trial. This is an excellent result, especially considering the strengths of the parties' legal positions (*i.e.*, claims and defenses), as well as the litigation risks inherent in further pursuing this litigation.

### 5.   The Opinions of Class Counsel, the Class Representative, and Absent Class Members Favor Approval of the Settlement

In addition to the factors discussed above, the Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312–13 (N.D. Ga. 1993 ("In determining whether to approve a proposed settlement,

the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel wholeheartedly endorses the Settlement. Additionally, the reaction of the Settlement Class to the Settlement here has been extremely positive. There have been 171,151 claims, two objections, and one opt-out that was deemed invalid. Azari Decl., ¶¶ 13–18. Likewise, notice under CAFA was provided on August 17, 2020, to the United States Attorney General and the attorneys general for all 50 states and D.C., with no opposition to the Settlement. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (holding that there was overwhelming support where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement).

### D. Class Counsel's Amended Attorney Fee Request

On October 14, 2020, Class Counsel sought $2,375,000.00 in attorneys' fees, costs, and expenses, or 25% of the QSF Ceiling (*i.e.*, the amount provided for in the Settlement Agreement). (Doc. No. 56). Following the Settlement Administrator's preliminary review of the claims made under the Settlement, Class Counsel now seeks $1,187,500.00, which is 25% of the QSF Floor (*i.e.*, 25% of $4,500,000.00). The claims in this case could amount to approximately $1,812,670.00. Azari Decl., ¶ 27 (166,639 claims with a cap of $10 per claim; 3,657 claims with a cap of $40 per claim; 204 claims uncapped). Factoring in the anticipated cost of administration of $560,000.00, Azari Decl., ¶ 30, as well as the $61,961.33 in litigation costs Class Counsel incurred in prosecuting this case—neither of which have been the subject of objection—the total amount to be paid from the QSF is approximately $2,434,631.33 before attorneys' fees.

By amending their request for attorneys' fees to 25% of the QSF Floor, there is at least an anticipated additional $875,000.00 available to Settlement Class Members up to the $4,500,000.00 Floor for a substantial pro-rata increase under the Settlement Agreement. SA, § 6.2.4.1 ("In the event that the combined total of the amounts approved by the Court for Attorneys' Fees, Costs and Expenses, Service Award, and Notice and Administration Costs, plus the aggregate of the approved Claims submitted by all Settlement Class Members, is less than the Floor, the value of approved individual Settlement Class Member Payment to be paid to each claiming Settlement Class Member shall be increased on a pro-rata basis so that the combined total…equals the Floor").

Therefore, Class Counsel respectfully amend their request for attorneys' fees, costs, and expenses to $1,187,500.00, as well as Litigation Costs in the amount of $61,961.33.

### E. Responses to Objections

In this case, only two objections have been filed. (Doc. Nos. 55, 64).

1.   **Steven Helfand's Objection (Doc. No. 55)**

a.   **Mr. Helfand's Objection should be stricken**

As an initial matter, the Settlement requires an objector to provide documents supporting the objection. (Doc. No. 42, at ¶ 11). Mr. Helfand admits he cannot demonstrate that he is a Settlement Class Member. (Doc. No. 55, at ¶ 14) (admitting that he "suffered a casualty that caused the loss of all his paperwork; he simply cannot comply with this requirement because he has no materials in his custody, control and possession."). This is a stark break from prior representations Mr. Helfand has made in other settlements to which he has objected, especially where proof of purchase and documentation were required. For example, in *Mehigan v. Ascena Retail Group, Inc.*, Mr Helfand filed an objection to a class action settlement concerning misrepresented reduced retail prices. No. 15-724 (E.D. Pa. April 11, 2016), attached hereto as **Exhibit 2**. In his *sworn* objection, Mr. Helfand represented that he "did not save the receipts" for the items that he allegedly purchased, and quipped "Who keeps receipts when the purchase went smoothly and without incident?" **Ex. 2**, at 7. In another retail pricing case, Mr. Helfand similarly attested "I don't have receipts. Who knew I should keep them?" *In re: Automotive Parts Antitrust Litig.*, No. 12-md-02311 (E.D. Mich. April 6, 2016), attached hereto as **Exhibit 3**.

Last November, the Honorable Judge Jonathan Goodman undertook a detailed analysis of Mr. Helfand's objection in the matter of *Collins v. Quincy Bioscience, LLC*, No. 1:19-22864-MGC (S.D. Fla. Nov. 16, 2020) (the "*Prevagen* Litigation"), and found Mr. Helfand not to be a "credible witness," and "[t]o the contrary, [Judge Goodman found] that [Mr. Helfand] is not credible. In short, he provided incredible testimony." Doc. No. 195, *Prevagen* Litigation, attached hereto as **Exhibit 4**. Judge Goodman recognized Mr. Helfand's education, his time practicing law, and his numerous objections stricken in the past. **Ex. 4**, at 3, 5. Judge Goodman further noted that Chief District Judge K. Michael Moore (S.D. Fla.) described Mr. Helfand as "a well-known serial

21

objector who has represented himself and third parties in objecting to multiple class action settlements." **Ex. 4**, at 3. Judge Goodman also found that Mr. Helfand, *inter alia*: falsified objections, misled a court and opposing counsel, settled an objection on appeal without the client's authorization, and misappropriated settlement proceeds. **Ex. 4**, at 4. Judge Goodman analyzed Mr. Helfand's "objection," which did not state any facts that established standing as a Settlement Class Member; Mr. Helfand failed to provide details of his purchase, "let alone where, when, how much he paid, and how much Prevagen he bought. Indeed, there is no evidence in the record, which established Objector Helfand is a member of the class." **Ex. 4**, at 4–5. Judge Goodman then acknowledged Mr. Helfand's objection in the *Prevagen* Litigation was "substantially the same boilerplate language in his Objections" in other cases, including this Litigation. **Ex. 4**, at 5.

Here, Mr. Helfand's objection is substantially similar to his objection in the *Prevagen* Litigation, and does not demonstrate that he is a class member. *Braynen v. Nationstar Mortgage, LLC*, No. 14-CV-20726, 2015 WL 6872519, at *11 (S.D. Fla. Nov. 9, 2015); *Dennis v. Kellogg Co.*, No. 09-cv-1786-L WMC, 2013 WL 6055326, at *4 (S.D. Cal. Nov. 14, 2013) (citing *In re Apple Sec. Litig.*, 2011 WL 1877988, at *2 n.4 (ND. Cal. May 17, 2011)). It is Mr. Helfand's burden to prove his class membership. *Id.* (citing *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014); *see also In re Hydroycut Mkting and Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103–04 (1998)). Mr. Helfand has failed to carry his burden.

Further, as like with the *Prevagen* Litigation, Mr. Helfand—even if he could demonstrate he is a Settlement Class Member—has not carried his burden of demonstrating he is an *aggrieved* class member. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 WL 256132, at *16 (N.D. Ga. Mar. 17, 2020) (citing *Brown v. Hain Celestial Grp., Inc.*, No. 11-

c-v03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016)); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member.").

Mr. Helfand has failed to demonstrate any information that establishes class membership; not *one purchase* at Walmart, no documents, or any reference to any information that he intends to present in support of his objection, and the time to do so has expired. *See Brown*, 2016 WL 631880, at *10 (noting that Helfand has "provided no proof that he is a class member," that "he neither provides receipts nor identifies the products he claims to have bought," and that "[t]he court could therefore almost certainly strike his objection."). His objection should be stricken.

**b.   To the extent it is not stricken, Mr. Helfand's objection should be overruled**

Mr. Helfand also objects to the misconception that Section 25.8 of the Settlement Agreement requires him to submit his objection to Ms. Yoshida, who mediated this case. (Doc. No. 55, at ¶ 2). This only applies to the Parties, and therefore should be overruled.

Mr. Helfand also objects to the proposed Service Award contemplated in the Settlement Agreement, which was negotiated and executed on August 7, 2020, and preliminarily approved by this Court on August 26, 2020—both prior to the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*. To the contrary, Plaintiff and Class Counsel *do not seek the Service Award*, recognizing that *Johnson* is controlling. (Doc. No. 56, at 1). Indeed, and to the contrary, Plaintiff was *not promised* any amount of money, and "[t]he denial by the Court of any such application [for a Service Award] *shall not affect the validity and enforceability of the Settlement and shall not be a basis for anyone to seek to void the Settlement*." SA, § 6.2.2. Class Counsel submits that Mr. Helfand's objection is therefore moot and should be overruled.

Mr. Helfand also objects that this "is simply not a certifiable class action due to the inability to identify class members." (Doc. No. 55, ¶ 12). As Chief Judge Pryor found on February 2, 2021,

"A class is 'clearly ascertainable' if we are certain that its membership is 'capable of being' determined. ... But membership can be capable of determination without being capable of *convenient* determination." *Cherry v. Dometic Corp.*, --- F.3d ---, 2021 WL 346121 (11th Cir. Feb. 2, 2021). That it was conceded that publication notice was the best practicable solution for notice *does not preclude* certification of the class. *Id.* Mr. Helfand's objection should be overruled.

Mr. Helfand objects further that internet notice is insufficient; the Notice program in this case consists of *far more than* internet notice, and has reached *hundreds of millions of impressions* in this case—522,685,558 alone through banner notices, Azari Decl., ¶¶ 15, as well as national publications (*People* and *Parade*), an informational release, and website. Azari Decl., ¶¶ 10–25. The Notice program is robust, sufficient, and Mr. Helfand has not demonstrated that it has resulted in an unfair, unreasonable, or inadequate settlement; while he suggests providing notice to "all registered persons for walmart.com [sic]," Mr. Helfand fails to demonstrate how "walmart.com" has any connection to consumers purchasing Weighted Goods based on labels with potentially misrepresented prices for the Weighted Goods. His objection should be overruled.

Finally, Mr. Helfand suggests the "settlement release is over-broad" because it "could be construed to release claims for emotional distress and personal injury." (Doc. No. 55, ¶ 15). Mr. Helfand made a similar argument in the *Prevagen* Litigation and it was summarily denied. Here, the release, § SA 13, clearly relates to the Pricing Practices at issue in this Litigation; the scope of the Release is neither vague nor overly broad. Mr. Helfand offers no evidence, legal authority, or substantive argument, despite having a law degree, practicing law for nearly 20 years, and touting that "he is a prolific class action objector." (Doc. No. 55, p. 5). His objection should be overruled.

### 2.   Shiyang Huang's Objection (Doc. No. 64)

Shiyang Huang objects to the *amount* of Class Counsel's request for attorneys' fees. (Doc. No. 64, at 1). Shiyang Huang does not object to the fairness, reasonableness, or adequacy of the

Settlement—a Settlement in which Shiyang Huang has participated. (Doc. No. 64, at 2). The thrust of Shiynag Huang's argument is that Class Counsel's attorneys' fees request amounts to 52.8% of the QSF Floor, and "should be limited to a *reasonable* lodestar," or "25% of the *actual* size of the Class fund." (Doc. No. 64, at 10). Class Counsel have, in fact, reduced their request for attorneys' fees to $1,187,500.00, which is based on the QSF Floor. A 25% fee award is patently reasonable and below the 33.33% threshold the Eleventh Circuit and its district courts have repeatedly found to be reasonable in common fund cases. *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292–98 (11th Cir. 1999) (approving one third attorneys fees); *Morgan Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) (same); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557, at 8–10) (S.D. Fla. Apr. 19, 2005) (same); *In re: Managed Care Litig. V. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (same).

Although substantial multipliers have been upheld in the 4 to 9 range, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012), here, Class Counsel have reasonably estimated substantial lodestar will be necessary to bring this litigation to finality and administer the benefits to the class, (Doc. No. 56, p. 17), thereby reducing the proposed multiplier from 2.84 to a modest 1.42. Shiyang Huang's objection is moot and should be overruled.

Shiyang Huang also filed a "Supplemental Authority in Support of Objection," (Doc. No. 78). First, this "supplement" is not a supplement—it is a nebulous additional basis for an objection Shiyang Huang did not raise before the Objection Deadline. Nevertheless, Class Counsel have no "particular duty" to the Plaintiff as compared to the Settlement Class. Plaintiff supports the Settlement without condition, and the approval of the Settlement is *not* contingent on the Court's approval of the Settlement. SA, § 6.2.2 (denial of Service Award will not void the Settlement).

## V.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter a Final Order and Judgment Certifying the Class, overruling the objections, approving the Class Settlement, awarding Class Counsel's Attorneys' Fees and Litigation Costs, and dismissing this action with prejudice.

Dated: February 5, 2021                     Respectfully submitted,

                                                              **MORGAN & MORGAN**
                                                              **COMPLEX LITIGATION GROUP**

                                                              /s/ John A. Yanchunis
                                                              John A. Yanchunis (Bar No. 324681)
                                                              Ryan McGee (Bar No. 64957)
                                                              201 N. Franklin St., 7th Floor
                                                              Tampa, FL 33602
                                                              Telephone: (813) 223-5505
                                                              Facsimile: (813) 222-2434
                                                              jyanchunis@forthepeople.com
                                                              rmcgee@forthepeople.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on any and all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ <em>John A. Yanchunis</em>_____

27