

FILED BY _____ D.C.

MAY - 4 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA,
MIAMI DIVISION

Case No. 1:19-CV-20592-MARTINEZ/OTAZO-REYES
KUKORINIS v. WALMART, INC.

## Notice of Supplemental Authority In Support Of Objection to Class Certification, Settlement Approval and Amended Attorney's Fee Motion by Shiyang Huang

Objector Shiyang Huang respectfully submits the Northern District of California's Order Denying Settlement Approval in *Prescott v. Bayer Healthcare*, No. 20-cv-102-NC, ECF No. 87 (N.D. Cal. Apr. 29, 2021) (Cousins, J.) ("Slip Op."). as support of his objection (ECF No. 64). A copy of the slip opinion is attached.

First, *Prescott* noted the "heightened" scrutiny that Plaintiffs failed to meet:

The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights. ... Where "the parties negotiate a settlement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e). In such cases, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. Signs of potential collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement;
> (2) when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and
> (3) when the parties create a reverter that returns unclaimed fees to the defendant.

*Prescott*, Slip Op. 2. (cleaned up).

1

*Accord* ECF No. 64 ("Huang Objection") at 4; *Amchem Prods. v. Windsor*, 520 U.S. 597, 620-622 (1997) (requiring "heightened attention" to such settlements). Huang does not claim—and Settling Parties need not to *explicitly* collude; **but** multiple appellate courts recognized "implicit collusion" that nevertheless require denial of such settlement attempts. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015); *Redman v. Radioshack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (Posner, J.)

In this case, all three "signs" under the Ninth Circuit's standard are present:

1. Counsel for Plaintiff previously sought $2.375 million flat-fee, and only *amended* to $1.125 million after Huang challenged its unfairness to Class.

2. Defendant did not object to Plaintiff's attorney's fee request—it needed not, because the settlement provides a "package deal" to dispose all class claims.

3. The variability of "QSF Floor" and "QSF Ceiling" is a functional reverter. By throttling claims, the putative class was "eligible" for $9.5 million, but would *not even have claimed $4.5 million* without a $4.5 million "QSF floor".

Second, as related to this Court's questions about Notice during the Mar. 10 hearing, the *Prescott* Court holds "ballpark" notice costs cannot justify approval:

> [Parties estimated that] notice and claims administration costs are to be paid from the fund, up to $530,000 plus postage. ... Although counsel posits that the budget is on par with market rates ... these administration costs consist of approximately 23 percent of the settlement fund. ***Without additional information about comparable market bids and costs incurred for administration of notice and claims programs for similar consumer class actions***, the Court cannot conclude that these administrative expenses are distributed proportionately.

*Prescott*, Slip Op. 5-6 (cleaned up, emphasis added).

In this case, Plaintiff's Counsel has requested $560,000 in notice / admin costs. That equated to over 10% of the so-called "QSF Floor" of $4.5 million, and it also has led to a paltry claims rate from shoppers to *the largest grocer nationwide.*

The *Prescott* court further criticized defects in the Class Notice plan:

> The Notice Plan is designed to reach a minimum of 70 percent of the class … It is unclear ***why the Notice Plan is only designed to reach a minimum of 70 percent of class members***, whether that is a common percentage in consumer class actions, and ***what else can be done to reach the remaining 30 percent of class members.*** Furthermore, it is unclear whether the settlement administrator is limited to issuing a press release and internet notice, or ***whether the administrator can obtain the mailing and email addresses of any consumers, or attempt any other effective methods to reach more than 70 percent of consumers.***

*Prescott*, Slip Op. 7. (cleaned up, emphasis added).

*Accord* ECF No. 89, Huang Opp. to Plaintiff's Amended Fee Motion at 1 (contending failures of notice); Huang Objection at 5-7 (contending claims process will fail by Plaintiff's creation of a burdensome the claims process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23.") *Also see* ECF No. 95 (notice of "opt-in" because a Walmart stores shopper *for years* had ***no idea about this settlement, until long after Plaintiff completed its "internet notice"***).

The *Prescott* court denied settling parties' request because the notice only planned to reach 70% of (a much harder-to-reach Coppertone Sunscreens buyer) class. Here, it is now known that "[t]he Notice reached approximately 75% of the Settlement Class", only, and *no attempt was made to* issue "direct notice", despite notice in Walmart stores can do *just that*. ECF No. 84-5 at 2. *That Plaintiff's faulty notice made* **the class lose $5 million dollars (versus achievable QSF Ceiling**). During fairness hearing, Walmart's counsel says COVID-19 pandemic reduced Walmart stores' foot traffic; but *the stores were where Plaintiff's allegation of harm occurred*; the Undersigned objector visited Walmart stores since the COVID-19 pandemic and always saw an enormous check-out line, and Walmart still has **4,743 retail units** in the entire country, and "growth in comparable store sales" of almost **9% per-store sales increase** versus 2019-2020.[1]

Lastly, unlike what Plaintiffs repeatedly stated in clear error, (*see e.g.,* ECF No. 85 at 24-25 ("Huang objects to the amount of Class Counsel's request for attorneys' fees [and] does not object to the fairness" of settlement") Huang repeatedly *challenged Class Certification* given Plaintiff's faulty notice/claims process, even in his undisputedly timely objection (DE 64). *See* DE 64 at 4-8 (challenging "class certification" as to claims process, "Rule 23(a)(4)" adequacy-of-representation, adequacy-of-counsel objections). The fact that Plaintiff's "amended"

---

[1] https://d18rn0p25nwr6d.cloudfront.net/CIK-0000104169/598e8825-536a-4371-ab8a-98b9ee761c43.pdf (Walmart Inc's March 19, 2021 10-K Report to SEC, pp. 28, 39)

motion—which was served to *only 2 class members* (Huang and now-withdrawn-objector Mr. Helfand) failed to comply with Due Process, after Plaintiff revealed its new plan to seek $140,000 of attorney's fee, by treating $560,000 notice costs as a "class benefit" (one the Class never had), instead of excluding notice costs as an expense item before calculating attorney's fee.

And even that is unfair: the *Prescott* court denied settling plaintiffs ask of "a maximum of one-third of the settlement fund to be disbursed for attorneys' fees and costs". *Prescott*, Slip Op. 6. With a twice-as-big proposed common fund, (and almost the same notice/admin costs, Plaintiff *here* still are still seeking a ***whopping 38.9%*** of "attorney's fee and [*all*] costs", even after Huang called out Plaintiff's "scrivener's error" of $60,000 against the Class. (*Infra*, table in ECF No. 89 at 3).

| Kukorinis' Math: **Real** "fees, costs, expenses" against Class | |
|---|---|
| Scrivener's error, $60,000 (p. 2) | "amended" |
| "25%" Attorneys' fee, costs and expenses | $1,125,000 |
| Cost of Notice & Claims Processing | $560,000 |
| "Litigation Costs" | $61,961 |
| TOTAL: | **$1,746,961** |
| as a percentage to $4.5 million "QSF Floor" | 38.8% |

This Court should "treat the failure to respond to [Huang]'s arguments as a concession. *In re D/B Ocean King*, 758 F.2d 1063, 1071 n.9 (5th Cir. 1985); Plaintiff's "failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned" even for an

hypothetical appeal. *CAMP v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).

*Sapuppo v. Allstate Floridian Ins. Co.* 739 F.3d 678, 680-683 (11th Cir. 2014)

("failure to brief" results in abandonments and waivers).

     In light of *Prescott*'s persuasive findings, Plaintiff's pending motion for class

certification, settlement approval, and attorney's fee should be all denied.


Dated: May 3, 2021                          Respectfully Submitted,

                                            Shiyang Huang
                                            /S/ SHIYANG HUANG
                                            2800 SW Engler Ct
                                            Topeka, KS 66614
                                            314-669-1858
                                            defectivesettlement@gmail.com
                                            *Pro Per*


Certificate Of Service

     I certify that I filed the foregoing was sent via U.S. Mail to the Court. This

Court's CM/ECF will notify all Counsels of Record.

     In light of COVID-19, Huang expressly accepts all service filings at

defectivesettlement@gmail.com pursuant to FRAP 5(b).

                                              /S/ SHIYANG HUANG





GUARANTEED* ★ ★
TRACKED ★ ★
INSURED

FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT™

75

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®

PRIORITY®
MAIL
EXPRESS

www.paypal.com

UNITED STATES
POSTAL SERVICE®

US POSTAGE
05/03/2021
From 66614
Zone 6

Pitney Bowes
ComBasePrice
Flat Rate Envelope

026YJ0004698087

PRIORITY MAIL EXPRESS 1-DAY™

0007

2900 sw enight st
Topeka KS 66614-4317

WAIVER OF SIGNATURE

C075

UNITED STATES DISTRICT COURT, S.D. FLA
400 N MIAMI AVE.
ATTN: CASE NO. 1:19-CV-20592-JEM
MIAMI FL 33128-1801

USPS TRACKING #

9470 1282 0633 5473 4834 41

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

PS 10001000006

* Money back guarantee to U.S., select APO/FPO/DPO, and select international destinations. See DMM and IMM at pe.usps.com for complete details.
** For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.