UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, et al., <br> Plaintiffs, <br> v. <br> BAYER HEALTHCARE LLC, et al., <br> Defendants. | Case No. 20-cv-00102-NC <br><br> **ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL** <br><br> Re: Dkt. No. 81 |

Plaintiffs Mike Xavier and Steven Prescott ("Plaintiffs") bring a putative class action against Bayer Healthcare LLC and Beiersdorf, Inc. ("Defendants"). Defendants manufacture, market, and sell Coppertone sunscreen products throughout the United States. Plaintiffs allege that the "mineral-based" label on Defendants' products deceive consumers into believing they contain only mineral active ingredients when they contain chemical active ingredients as well. *See* Dkt. No. 1. Before the Court is Plaintiffs' motion for preliminary approval of class action settlement. Dkt. No. 81 ("Mot."). The Court held a hearing on this motion on April 21, 2021. Having considered the Plaintiffs' motion, the arguments of counsel at the April 21, 2021, hearing, and the record in this case, the Court DENIES without prejudice Plaintiffs' motion for preliminary approval of class action settlement.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, in order to approve a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions . . . The settlement must stand or fall in its entirety." *Id.* at 1026.

Where "the parties negotiate a settlement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (internal quotation marks and citations omitted). In such cases, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Signs of potential collusion include:

"(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant."

*Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *In re Bluetooth*, 654 F.3d at 947) (internal quotations omitted). "The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: "(1) appears to be the product of

serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2011 WL 1627973, at *7 (N.D. Cal. 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1079–80 (N.D. Cal. 2007).

## II. DISCUSSION

The Court denies without prejudice the motion for preliminary approval of the class action settlement for the following reasons: (1) the proposed release in the settlement agreement is overbroad, (2) the parties lack an explanation regarding a non-collusive relationship to the *cy pres* beneficiary, (3) the justification for the exceeding administrative expenses and attorneys' fees request is inadequate, (4) the parties' proposed notice is incomplete, and (5) the settlement fails to comply with Northern District procedural guidance regarding claim forms.

### A. The Proposed Release Is Overbroad

#### 1. Release of Claims

The Court concludes that the release contained within the proposed settlement agreement conflicts with Ninth Circuit precedent, which only allows release of claims "where the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations and citation omitted); *see also Chavez v. PVH Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) ("District courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue.").

Here, the releases contained in the settlement agreement contain sweeping language and are not consistently reflected in the motion for preliminary approval or the proposed order seeking final approval. Under the settlement agreement, "Released Claims" is defined as claims arising out of, or "*relat[ing] in any way to*: (a) allegations, claims, or contentions that were or *could have been asserted in the Litigation*;" (b) the Products,

including but not limited to, their performance as well as any advertising, labeling . . . of *any type whatsoever* regarding such Products;" and "(c) all labels or packaging for the Coppertone sunscreen products that conform to the terms of the Settlement." Dkt. No. 81-4 "Settlement Agr." § 2.35 (emphasis added). In contrast, the proposed order for final approval attached to the settlement agreement specifies that the claims to be released must arise out of, or relate in any manner to "the purchase of Coppertone sunscreen products *that contain a 'mineral-based' label* on or before [Notice Date]." Dkt. No. 81-4, Ex. D (emphasis added).

In light of the sweeping language in the agreement itself, the settlement releases claims that are not "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse*, 598 F.3d at 590. The parties must narrow the scope of the release in the settlement agreement to be more specific about the claims being released to specify that it only pertains to claims about the purchase of Coppertone sunscreen products that contain a "mineral-based" label.

### 2. Release of Parties

Furthermore, under the settlement agreement, the released parties are defined as "Defendants and each and all of their predecessors in interest, former, present and future direct and indirect subsidiaries . . . successors . . . whether specifically named and whether or not participating in the settlement by payment or otherwise." Settlement Agr. § 2.36. Similarly, the language of the release is too broad for class members to ascertain which party is released from future claims. Accordingly, the parties must narrow the scope of the release of parties.

### 3. Waivers

Finally, the settlement agreement contains a waiver of Cal. Civ. Code § 1542. Section 1542 provides that "a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." Cal. Civ. Code § 1542. The Court finds that

4

without written acknowledgement of this waiver from the class members in the agreement, the Court cannot ascertain whether the class members knowingly waive this protection. In any subsequent motion for preliminary approval, the parties must more clearly explain the class members' acknowledgment of this waiver and must narrow the scope of the released claims and parties.

### B. *Cy Pres* Beneficiary

The parties designated Look Good Feel Better as the *cy pres* beneficiary. Settlement Agr. § 2.40. Under the settlement agreement, Defendants agreed to pay a total monetary benefit of $2.25 million into a common fund, with no right of reversion. *See* Mot. at 1. After paying valid claims from settlement class members, attorneys' fees, litigation expenses, service awards, and administrative expenses, any remaining amount will be disbursed to Look Good Feel Better. Settlement Agr. § 3.10. At the hearing on April 21, 2021, the parties indicated that they selected Look Good Feel Better because it is a company that targets cancer, and these Products are often used to avoid cancer. *See* Dkt. No. 86 ("Prelim. Appr. Hearing (Apr. 21, 2021)"). Counsel for the parties also indicated that they are not aware of any connection between the attorneys and the *cy pres* beneficiary, and although Bayer has supported Look Good Feel Better in the past, numerous companies have done so as well. *Id.* Despite those remarks, the Court cannot conclude that there is a non-collusive relationship between the *cy pres* beneficiary and Bayer, or between the *cy pres* beneficiary and counsel. In any subsequent motion for preliminary approval, the parties must more clearly explain how no collusion or conflict of interest exists.

### C. Administrative Expenses and Attorney's Fees

Under the settlement agreement, notice and claims administration costs are to be paid from the fund, up to $530,000 plus postage. *See* Settlement Agr. § 5.7. The Court cannot conclude that this amount reflects a fair and adequate distribution of settlement funds. Although counsel posits that the budget is on par with market rates for other class actions where consumer data is unavailable, *see* Dkt. No. 81-2 "Bruce Decl." ¶ 7, and that

5

the settlement administrator here provides a high level of professionalism, *see* Prelim. Appr. Hearing (Apr. 21, 2021), these administration costs consist of approximately 23 percent of the settlement fund. Without additional information about comparable market bids and costs incurred for administration of notice and claims programs for similar consumer class actions, the Court cannot conclude that these administrative expenses are distributed proportionately.

Additionally, the parties request a maximum of one-third of the settlement fund to be disbursed for attorneys' fees and costs. Settlement Agr. § 6.1; Mot. at 8. Although the parties acknowledged at the hearing that one-third of the settlement fund is a discretionary cap that falls above the Ninth Circuit's 25 percent benchmark, the Court cannot ascertain whether the one-third attorneys' fee award is warranted in this case. The parties cite several cases in the Ninth Circuit where courts awarded one-third of the settlement fund for attorneys' fees upon a showing of vigorous opposition, complex issues, and cases that went on appeal. *See* Mot. at 8, n.6. Those cases, however, are not necessarily similar to the instant case as it pertains to consumer class actions. Upon a subsequent motion for preliminary approval, the parties must further explain, through use of comparable cases, why the Court should depart from the Ninth Circuit's 25 percent benchmark for attorneys' fees.

### D.   Class Notice

The Court also concludes that the proposed notice forms provide incomplete notice to class members. Federal Rule of Civil Procedure 23(e)(1) requires a court to "direct notice [of a proposed settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The Court acknowledges the parties' efforts to contact and secure relief for the class members, but the Court identifies two errors the parties must address.

First, the preliminary approval motion states that notice will be provided to the class using "cost-efficient and effective methods designed to reach consumers of household products," where no contact is reasonably available, including: "(1) a settlement website,

(2) internet impression advertising, (3) targeted search term advertising, and (4) a press release." Settlement Agr., Ex. B ¶¶ 14, 16, 17, 18. The Notice Plan is designed to reach a minimum of 70 percent of the class via online advertising links, is designed to reach 66 million combined impressions on various targeted websites, and targets those who have purchased sunscreen or demonstrated interest in those Products. *See* Mot. at 9; *see also* Settlement Agr., Ex. B ¶¶ 18, 20. It is unclear why the Notice Plan is only designed to reach a minimum of 70 percent of class members, whether that is a common percentage in consumer class actions, and what else can be done to reach the remaining 30 percent of class members. Furthermore, it is unclear whether the settlement administrator is limited to issuing a press release and internet notice, or whether the administrator can obtain the mailing and email addresses of any consumers, or attempt any other effective methods to reach more than 70 percent of consumers.

Second, the Northern District guidelines counsel parties to include instructions in the Notice on how to access the case docket via PACER or in person at any of the court's locations. *See* N.D. Cal. Proc. Guidance for Class Action Settlements. The parties omitted these instructions in both the long-form and short-form notices, and there is no indication whether those instructions will be made available on the website for class members. Thus, the notice forms do not provide adequate notice to class members about the procedure for accessing the case docket. The parties should remedy these deficiencies in any future motion for preliminary approval.

E. **Claim Forms**

Finally, the settlement agreement fails to conform to the Northern District's procedural guidance on claim forms. The procedural guidance dictates that if there is a claim form, the parties should state in their motion for preliminary approval "an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples." N.D. Cal. Proc. Guidance for Class Action

7

Settlements. Here, the preliminary approval motion contains the figures showing the Defendant's percentage of sales, but the preliminary approval motion does not contain an estimate of the number of class members who are expected to submit a claim. The parties must provide the claim form information outlined in the Northern District of California's procedural guidance.

### III. CONCLUSION

In sum, based on the foregoing deficiencies, the Court cannot conclude that the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. Accordingly, the Court DENIES without prejudice Plaintiffs' motion for preliminary approval of class settlement. The Court sets a telephonic further case management conference on **May 26, 2021, at 10:00 a.m.,** with a joint case update due on **May 19, 2021**.

**IT IS SO ORDERED.**

Dated: April 29, 2021

NATHANAEL M. COUSINS
United States Magistrate Judge