IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 19-20592-CV-MARTINEZ-OTAZO-REYES**

VASSILIOS KUKORINIS, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

WALMART, INC., a Delaware corporation,

      Defendant.

_____/

## OMNIBUS ORDER ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT

THIS CAUSE is before the Court upon the following: (1) Plaintiff's Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 84],[1] (2) Plaintiff's Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85], Plaintiff's initial Motion for Approval of Attorneys' Fees, Costs, and Expenses, and Supporting Memorandum of Law, [ECF No. 56], and Objector Shiyan Huang's various Objections and Motion for Objector Award, [ECF Nos. 64–70, 78, 89, 95]. The Court has considered the foregoing filings and all pertinent portions of the record.

After careful consideration of the Motions, the declarations submitted in support of the Settlement, and the respective Objections, the Court concludes that the Settlement is fair, adequate,

_____
[1] This Motion was subsequently denied as moot, in light of the Plaintiff's Amended Motion for Final Approval, [ECF Nos. 85, 96].

and reasonable, and is an acceptable compromise of the Settlement Class Members' claims. The Settlement complies with Federal Rule of Civil Procedure 23(e); therefore, the Court grants final approval of the Settlement, certifies the Settlement Class, and overrules the Objections. The Court, however, will rule on the requested Attorneys' Fees and Costs by separate order.

## I.    **Background**

"Save Money. Live Better."[2] In this case, however, just how much Walmart customers were saving is up for debate. Plaintiff Vassilios Kukorinis, as Class Representative, brought this class action against Defendant on behalf of himself and others similarly situated to redress what he alleges to be unfair, deceptive, and unconscionable business practices in the form of false advertising of unit prices for certain perishable goods. The gravamen of the Complaint was that Walmart has, throughout the class period, reduced the price of certain Weighted Goods[3] nearing expiration but consistently stated incorrect unit prices on the labels. As a result, Plaintiff alleged Walmart overcharged for reduced-priced Weighted Goods and that he and others similarly situated did not receive the promised value purchased throughout the class period.

In Walmart stores, Weighted Goods, such as beef, poultry, and pork, contain white price labels that include the total price, the unit price (per pound), and the item's weight in pounds. As alleged, when the Weighted Goods approach expiration, Walmart reduces the price of said goods and affixes a bright yellow sales label in addition to the original white label.  The yellow label states the weight of the item in pounds, the unit price, the total price, and the amount saved (the difference between the original price and the sales price). For example, Plaintiff identified three

---

[2] *Wal-Mart rolling out new company slogan*, REUTERS (Sept. 12, 2007, 7:34 AM), https://www.reuters.com/article/us-walmart-advertising/wal-mart-rolling-out-new-company-slogan-idUSWEN091820070912.

[3] Unless otherwise provided, the terms in the Settlement Agreement shall have the same meanings in this Order.

specific instances in which he personally purchased Weighted Goods with yellow sales labels. On April 19, 2018, Plaintiff purchased a spiral ham at a Walmart store in Delray Beach, Florida.  The yellow sales label stated that the ham weighed 11.61 pounds at a unit price of $0.64 per pound, but the total price on the yellow label stated $16.45. As alleged, Walmart received an extra $9.02 (i.e., the difference between $16.45 and $7.43) on the sale because the unit price reflected that the ham should have only cost $7.43.

On January 4, 2018, Plaintiff purchased a pork loin at a Walmart store in Davie, Florida. The yellow sales label stated that the pork loin weighed 1.77 pounds at a unit price of $2.28 per pound, but the total price stated $4.05.  Accordingly, Plaintiff contends that Walmart received an extra $0.02 (i.e., the difference between $4.05 and $4.03) because the pork loin should have only cost $4.03 by calculation of the unit price. Finally, Plaintiff purchased another spiral ham at a Walmart store in Orlando, Florida.  This time, the yellow sales label stated that the ham weighed 9.13 pounds at a unit price of $0.69 per pound. The total price was listed as $10.10.  Accordingly, Walmart received an extra $3.80 (i.e., the difference between $10.10 and $6.30) because the ham should have only cost $6.30 as per the listed unit price.

Plaintiff also identifies thirteen other instances in which Weighted Goods at Walmart stores throughout Florida contained yellow sales labels with incorrect unit prices. The problem with Walmart's pricing system, as alleged by the Plaintiff, is that the unit prices stated on the yellow sales labels do not reflect the total price charged for the item. Everything besides the unit prices listed on the yellow labels is correct, i.e., the weight of the item, the total price charged, and the difference between the original price and the sale price. Plaintiff alleges that based on these incorrect unit prices identified throughout the class period, a reasonable consumer would have believed that they were purchasing more of the product than they actually received. As framed in

the Amended Complaint, the yellow sales labels are designed to, and do, induce consumers into believing they are getting more of the product for their money. Plaintiff further contends that he and class members relied on the listed unit prices to their detriment and that the members of the class would not have purchased these items or, at least, would have demanded the appropriate price upon purchase had they known the unit prices were incorrect.

Plaintiff asserted two causes of action against Walmart—one for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and second, in the alternative, for unjust enrichment. On June 6, 2020, after Defendant's Motion to Dismiss was denied, the parties filed a Joint Notice of Settlement, indicating the parties had reached an amicable resolution of this matter, [ECF No. 33], and also indicated an intention to amend the Complaint to plead a nationwide class.[4] Pursuant to Federal Rule of Civil Procedure 23, Plaintiff filed an Unopposed Motion to Direct Class Notice and to Grant Preliminary Approval of the Class Action Settlement, [ECF No. 41].

On August 26, 2020, the Court granted Plaintiff's Motion and preliminarily approved the Class Action Settlement. [ECF Nos. 41–42]. The Court thereby provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a Final Approval Hearing to take place on February 26, 2021. [ECF No. 42].

On September 25, 2020, Plaintiff Kukorinis—on his own behalf—filed the "Kukorinis Declaration," outlining his then-objections to the preliminarily approved settlement, [ECF No. 43]. On September 28, 2020, observing the confidential nature of Plaintiff's filing, the Court *sua sponte*

---

[4] *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (noting that "were [courts] to mandate that a class include only those alleging 'colorable' claims, [courts] would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").

4

issued an Order striking the Declaration as violative of Local Rules 7.7 and 11.1(d)(4). [ECF No. 44]. The Court's Order directed the Clerk to limit public access to Plaintiff's Declaration in light of the seemingly privileged and confidential nature of the filing—including information related to communications made during the parties' confidential mediation discussions. *Id.*; *see* Fla. Stat. § 44.405(1) (mandating that a "mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel"). The Court further ordered the parties to attend a Telephonic Status Conference to discuss the issues raised in the Kukorinis Declaration. *Id.*

On September 28, 2020, Plaintiff Kukorinis filed an additional "Declaration," this time withdrawing his previous declaration and requesting it be placed under seal, ("Second Declaration"), [ECF No. 45]. On October 5, 2020, Mr. Steven F. Helfand filed a "Notice of Appearance by Class Member and Intended Objector," requesting permission to attend the conference and arguing that the public has the right to view the Plaintiff's Declaration. [ECF No. 47]. The Court, after ordering the parties to jointly file briefing, permitted Mr. Helfand to attend the status conference and to address the Court solely as to the issue of public access of the Kukorinis Declaration. [ECF No. 53]. The Court held the status conference on October 7, 2020, and after hearing argument on the matter, the Court issued an Order unsealing the Kukorinis Declaration.

On October 14, 2020, Plaintiff filed its initial Motion for Approval of Attorneys' Fees, Costs, and Expenses, [ECF No. 56], requesting $2,375,000.00 in attorneys' fees—or approximately twenty-five percent (25%) of the Qualified Settlement Fund's Ceiling of $9,500,000.00. Both the Objections and Opt-Out deadline were set for November 4, 2020. [ECF No. 42 at 9].

On February 5, 2021, Plaintiff filed an Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85]. Pursuant to the Amended Motion, Class Counsel amended their request for attorneys' fees to $1,125,000.00—or twenty-five percent (25%) of the Settlement Fund's Floor.

The proposed Settlement Agreement has been objected to by two Objectors—Mr. Helfand and Mr. Shiyan Huang. Mr. Helfand has since withdrawn his objection, [ECF No. 91]. Mr. Huang has filed numerous objections regarding the percentage of requested attorneys' fees, the adequacy of the Class Notice, and the certifiability of the Class, [ECF Nos. 64–70, 78, 89, 95].

On March 10, 2021, the Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the proposed Settlement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing this action with prejudice in favor of Defendants and against all persons or entities who are Settlement Class members who have not requested exclusion from the Settlement Class; and (3) whether and in what amount lead counsel should be awarded attorneys' fees and expenses.[5]

## II.      The Settlement Terms

The proposed Settlement Agreement provides for a Qualified Settlement Fund ("Fund" or "QSF"), to which Walmart has agreed to fund, on a claims-made basis, a minimum Floor amount of $4,500,000.00 up to a maximum Ceiling amount of $9,500,000.00. [ECF No. 41-1 ¶ 6.1]. The Fund will be used to pay for reimbursement to eligible Class Members, notice and administration costs, attorneys' fees, costs, and expenses, and litigation expenses.[6] The Settlement Fund is to be distributed as follows:

---

[5] Again, the Court will issue an order on this matter separately.

[6] Though the Settlement Agreement initially indicated that Plaintiff sought a Service Award, Plaintiff no longer seeks one in light of recent Eleventh Circuit precedent. [ECF No. 85 at 2 n.3].

a) Undocumented Overpayments, where the Class Member does not have receipts, proof of purchase, or other documentation, but attests to purchasing the Weighted Goods on sale during the Class Period, are entitled to $1.67 per purchase, capped at six (6) purchases—i.e., $10.00;

b) Overpayments where the Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, but lacks proof to substantiate the actual amount overcharged, are entitled to $1.67 per purchase, capped at twenty-four (24) purchases—i.e., $40.00; and

c) Overpayments where the Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, and has packaging to demonstrate the actual amount overcharged, are entitled to recover the actual amount of the Overpayments, without any cap.

[*See* ECF No. 41-1 ¶¶ 6.3–6.3.1.3]. If a potential Class Member's claim is rejected for any reason or otherwise deemed invalid, he or she will be given notice and an opportunity to cure the claim's deficiencies.

## III.   <u>Class Certification for Settlement Purposes</u>

The Court hereby certifies, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class, defined as:

All persons who purchased Weighted Goods from Walmart in the United States from February 13, 2015 to August 26, 2020 (i.e., the date the Court entered its preliminary approval), whose Weighted Goods' unit sale price was not accurately reflected in the final sale price.

[ECF Nos. 41-1 ¶ 2.29, 85 at 4–5]. Excluded from the Settlement Class are (1) the Judges presiding over this Litigation and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submitted a valid Request for Exclusion prior to the Opt-Out Deadlines. [*Id.*].

The Court reiterates its preliminary findings, for settlement purposes only, that: (a) the Settlement Class as defined is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class; (d) the Class Representative and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members; (e) Plaintiff alleges that Defendant has acted on grounds that apply generally to the class; (f) the questions of law or fact common to the Settlement Class predominate over the questions affecting on individual Settlement Class Members; and (g) certification of the Settlement Class is superior to the other methods for the fair and efficient adjudication of the controversy.

**IV.**   **Discussion**

Federal Rule of Civil Procedure 23(e) "requires that a settlement or compromise of a class action be approved by the district court." *Bennett v. Behring Corp.*, 737 F.2d 982, 985 (11th Cir. 1984). When evaluating whether approval is appropriate, the Court recognizes that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *4 (S.D. Fla. July 13, 2021) ("As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources."). Moreover, "[t]he court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, *5 (S.D. Fla. Oct. 1, 2020) (citation and internal quotation marks omitted).

Rather, in deciding to enter Final Approval of the Settlement, the Court considers whether (1) the Court has jurisdiction over the subject matter and parties; (2) the Notice Program was reasonably calculated to apprise interested parties of the action and afford them an opportunity to object; (3) the settlement is fair, reasonable, and adequate; and (4) Class Counsel's request for attorneys' fees and litigation expenses is reasonable.

### 1. <u>The Court's Exercise of Jurisdiction is Proper</u>

Pursuant to Title 28, United States Code, Section 1332(d), the Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950)). Additionally, the Court finds that venue is proper under Title 28, United States Code, Section 1391(b)(1). And finally, the Court finds that the named Plaintiff, Vassilios Kukorinis, has standing to pursue this litigation on behalf of the Class.

### 2. <u>Notice was Reasonably Calculated to Inform Class Members of Their Rights</u>

Class actions certified under Federal Rule of Civil Procedure 23(b)(3) require members "receive the best notice that is practicable under the circumstances." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(c)(2)(B)). Moreover, Rule 23(e) "requires absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised," and receive notice that is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations omitted).

On August 26, 2020, the Court approved the appointment of Epiq Class Action and Claims Solutions, Inc. as the Claims Administrator with the responsibility of implementing the notice requirements approved in the Court's Order of Approval, [ECF No. 42]. The media plan included

various forms of notice, utilizing national consumer print publications, internet banner advertising, social media, sponsored search, and a national informational release. [ECF No. 84-5 at 3]. According to the Azari Declaration, the Court-approved Notice reached approximately seventy-five percent (75%) of the Settlement Class on an average of 3.5 times per Class Member. *Id.*

Pertinently, the Claims Administrator implemented digital banner notices across certain social media platforms, including Facebook and Instagram, which linked directly to the Settlement Website. *Id.* at 4. In total, from September 25, 2020 through October 28, 2020, the digital banner notices generated approximately 522.6 million adult impressions online. *Id.*

Insofar as the Objectors object to the adequacy of the notice program, those objections are overruled. For example, at the Fairness Hearing Mr. Huang seemed to imply that Walmart should have, among other things, posted signage within its stores regarding notice of the proposed Settlement Agreement. [*See also* ECF No. 95].[7] Not only would this be unduly burdensome to a Defendant that denies all liability, but Mr. Huang proffers no indication that this form of notice would fare any better than the already-implemented notice program in this case. Indeed, because of the notice program, the Settlement Website was visited approximately 1,331,424 times with 281,579 unique visitors. *Id.* at 6–7. As such, the Court finds that notice was "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Saccoccio*, 297 F.R.D. at 691; Fed. R. Civ. P. 23(e).

As a final matter regarding notice, the Court must address whether Class Counsel's amended request for attorneys' fees and costs—post-objection period—violates potential Class Members' due process rights or otherwise renders notice inadequate under Rule 23(h). *See*

---

[7] Mr. Huang filed the document as a "Notice of Supplemental Authority," when, in reality, the document is a newly lodged Objection to the Settlement Notice Program not contained in any of Huang's previous Objections. As such, the filing is untimely and due to be stricken. Nonetheless, the Court has considered and overrules this "Objection."

*Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1252–53 (11th Cir. 2020) (finding error where Court ordered objections to be due before counsel's motion for fees and costs); Fed. R. Civ. P. 23(h). As the Eleventh Circuit held in *Johnson*, requiring class member objections before class counsel has filed their fee petition violates Rule 23(h)'s clear terms. *Id.*

As in *Johnson*, however, the Court finds that Class Counsel's amended fee petition—in which Counsel requests approximately $1,250,000.00 *less* than its initial petition—does not negatively affect the Class Members' substantial rights. *Id.* at 1254–55 (finding Rule 23(h) error harmless where objector could not show the error "affected the outcome of the proceeding") (internal quotation and citation omitted).

### 3. The Settlement is Fair, Reasonable, and Adequate

To approve the Settlement, the Court must find it fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement. *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984). When evaluating a settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). If there is no "fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (citation omitted). The Court addresses each relevant factor below.

First, there is "no evidence…of collusion on the part of counsel in this case."  *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 n.3 (S.D. Fla. 2001).  The parties worked extensively with mediator Michelle Yoshida of Phillips ADR to resolve this dispute by participating in two full-day mediation sessions. [ECF No. 41-2 ¶¶ 13–16]. Moreover, the parties actively litigated the case: Defendant filed two dispositive motions to dismiss, [ECF Nos. 14, 24], the Complaint was Amended, not once, but twice, [ECF Nos. 15, 32], and Walmart continues to deny liability. Because the parties negotiated at arm's length, the Court finds that the Settlement is not the product of collusion.  *See Saccoccio*, 297 F.R.D. at 692 (noting "[w]here the parties have negotiated at arm's length," and "the case proceeds adversarially" the Court should not find that the settlement was a product of collusion); *Ferron*, 2021 WL 2940240, at *8 ("The fact that the Parties aggressively disputed the issues in the case, engaged in an all-day mediation session overseen by an experienced and well-respected mediator, and only reached an agreement after continued mediation discussions, also overseen by the mediator, forms the basis for the Court's finding that the Settlement was reached through arm's-length negotiations and was not the result of fraud or collusion.").[8]

Second, the complexity, expense, and duration of litigation supports approving the Settlement. Claims under the FDUTPA and for unjust enrichment are not particularly unique, especially in the class action context; however, as litigated in Defendant's Motion to Dismiss, the factual realities underlying Plaintiff's claims—namely, misrepresentations via comparison shopping—create complex legal issues by way of proving deception, reliance, and damages. The

---

[8] The Court would be remiss to disregard the Kukorinis Declaration, [ECF No. 43], which, though stricken by the Court, did raise concerns regarding whether counsel for both sides included Mr. Kukorinis in these mediation discussions. Nonetheless, Mr. Kukorinis has since withdrawn that Declaration and indicated an apparent misunderstanding between himself and Class Counsel. The Court held a hearing on the matter and finds that the Declaration does not raise an inference of collusion in this case.

Court's Order on dismissal highlights that numerous plausible inferences could be drawn from the allegations in the Amended Complaint, [ECF No. 30 at 7–12]. Litigating these issues to resolution would have been difficult and time consuming. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial"). "Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012) (cleaned up).

Third, the Court finds that Plaintiff "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005); *Jairam*, 2020 WL 5848620, at *6 (citation omitted). "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Prior to mediation, the parties engaged in informal discovery and fully briefed a dispositive motion to dismiss on the merits. In addition, throughout the mediation process, the parties exchanged sales data and other information regarding Walmart's pricing practices and the Weighted Goods sold in Florida and nationwide during the Class Period. The Court finds that Plaintiff was "sufficiently informed to negotiate, execute, and recommend approval of this Settlement." *See Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, No. 16-CV-80028, 2016 U.S. Dist. LEXIS 147252, *6 (S.D. Fla. Oct. 21, 2016); *Ferron*, 2021 WL 2940240, at *13 (noting that "although it may appear the matter

settled early, the parties conducted a tremendous amount of behind-the-scenes investigation and pre-suit discovery" and those "efforts provided Plaintiff and Class Counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case and, subsequently, to negotiate and finalize the Settlement proposed to the Court").

The fourth and fifth factors—the probability of Plaintiff's success on the merits and the range of possible recovery—also warrant final approval. When evaluating these factors, Plaintiff's "likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Saccoccio*, 297 F.R.D. at 692. In determining whether the Settlement is fair in comparison to the potential range of recovery, the Court must keep in mind "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Indeed, courts regularly find settlements to be fair even where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988).

Here, it is not clear whether Plaintiff would have prevailed at trial. Indeed, as described above, Plaintiff would have face significant obstacles at both the summary judgment and class certification stages of this litigation. *See Ressler*, 822 F. Supp. at 1555 ("When the potential legal difficulties of plaintiff's case . . . are added to the unpredictability of a lengthy and complex jury trial, the benefits to the class of the present settlement become all the more apparent."). In contrast, the Settlement Agreement provides Class Members real and immediate relief. Indeed, the Court notes the multi-tier approach adopted in the Settlement Agreement provides a valuable benefit even to those individuals who do not have any proof of purchase but will attest to their membership in the Class. *See Ferron*, 2021 WL 2940240, at *11 (commenting favorably upon similar two-tier approach in class action settlement agreement).

14

This case is precisely the type of case for which class actions are particularly suited. The likelihood of individuals bringing solo claims against a corporate conglomerate like Walmart for a "relatively paltry potential recovery" is miniscule. *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Berman v. GM, LLC*, No. 18-14371, 2019 WL 6163798, at *10–11 (S.D. Fla. Nov. 18, 2019) ("Each individual Class Member's damages...is too small to warrant individuals taking on the cost and burden of litigating against a large corporate defendant like GM."); *Deas v. Russel Stover Candies*, No. 04-00491, 2005 WL 8158201, at *8 (N.D. Ala. Dec. 22, 2005) ("In this matter, many of the candies at issue cost consumers less than a dollar or two. As such, this is exactly the type of dispute class actions were created to govern.").

One aspect of the Settlement, however, gives the Court pause. In general, and as previously discussed, the Court looks favorably upon the multi-tiered claims approach set forth in the Settlement Agreement, which provides certain Class Members with a substantial recovery regardless of proof of purchase. On the other hand, the Court takes issue with the third and highest tier of claimants, who are entitled to recover any actual amount overpaid, without any cap to the number of claims they may make, so long as the claimant can provide both proof of purchase and the Weighted Goods' original packaging to demonstrate the actual amount overcharged. [ECF No. 41-1 ¶ 6.3.1.3]. That a Class Member would have kept both a receipt and the original packaging of, say, a pound of chicken, over the course of the last five years seems both unlikely and

unsanitary.[9] In this regard, the Court views this benefit to the Class as somewhat illusory. Nonetheless, because the Settlement Agreement provides for a pro rata increase to Class Members where the aggregate total of approved claims does not reach the $4,500,000 Floor, the third tier's problematic requirements are outweighed by the overall reasonableness of the Settlement Agreement. [ECF No. 41-1 ¶ 6.2.4.1].[10]

Lastly, the opinions of class counsel, the class representatives, and the substance and amount of opposition to the Settlement also weigh in favor of approval. "Class Counsel wholeheartedly endorses the Settlement." [ECF No. 85 at 19]. Additionally, of the 171,151 claims made by Class Members, there are only two[11] objections—one of which that has since been withdrawn—and one opt-out that was deemed invalid. [ECF No. 84-5]; *see also Lipuma*, 406 F. Supp. 2d at 1324 ("The small number of opt-outs and objections, given the large number of claims filed, militates in favor of approval."); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 355 (E.D.N.Y. 2000) (approving settlement based on small number of opt-outs and objections in light of the "huge number of potential Class members and massive nationwide notice"). Class counsel and the parties believe that this Settlement warrants final approval, and the Court agrees.

---

[9] Plaintiff states that there have been approximately 204 claims where the claimant attests that he or she has the original packaging to substantiate the amount overcharged. [ECF No. 84-5 at 8]. First, this amounts to approximately .0012% of all claims made. Second, this approximation does not account for "duplicate and/or fraudulent claims." [*Id.* at 7]. And finally, there is no indication that these 204 claims have been deemed valid after a full audit by the Claims Administrator.

[10] "In the event that the combined total of the amounts approved by the Court for Attorneys' Fees, Costs, and Expenses, Service Award, and Notice and Administration Costs, plus the aggregate of the approved Claims submitted by all Settlement Class Members, is less than the Floor, the value of approved individual Settlement Class Members Payment to be paid to each claiming Settlement Class Member shall be increased on a pro-rata basis so that the combined total…equals the Floor." [ECF No. 41-1 ¶ 6.2.4.1].

[11] The Court notes that Mr. Helfand has been deemed a "professional objector" and Mr. Huang has likewise filed or attempted to file numerous objections to class actions nationwide. *See Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (noting that Helfand is a "professional objector" whose efforts courts have "repeatedly turned aside"); *see also* [ECF No. 64 at 2 n.4].

In sum, considering the relevant factors, the Court finds that the Settlement is fair, adequate, and reasonable.

### 4. __Objections__

The Court has reviewed the Objections of both Mr. Helfand and Mr. Huang and hereby overrules them to the extent they object to the sufficiency of the Settlement Agreement or notice program. Objections regarding the percentage of the QSF to be awarded as attorneys' fees and costs will be dealt with by separate order.

First, Mr. Helfand's Objections have since been withdrawn and are therefore moot. Nonetheless, the Court has considered such Objections and finds that they are either unsubstantiated or insufficient to warrant denial of final approval of the Settlement Agreement in light of the foregoing analysis.

Mr. Huang's Objections fare no better. The gravamen of Huang's Objections centers around whether this Court should cut Class Counsel's attorneys' fees to lodestar as opposed to an award of 25% of the QSF, [ECF No. 64]. These Objections will be dealt with in the Court's order on attorneys' fees and costs. Insofar as Mr. Huang asserts that Class Counsel's fee request renders the entire Settlement unreasonable, those Objections are overruled. As previously found, there is no indication that the Settlement is the product of collusion or that Class Counsel is otherwise inadequate to represent the Class. The Court has considered the Kukorinis Declaration and found that it does not warrant denial of final approval of the Settlement Agreement. Indeed, even had Mr. Kukorinis not withdrawn the Declaration, "the assent of named plaintiffs is not a prerequisite to the approval of a settlement." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).[12] The Court unsealed the Declaration, specifically stating that "class members, including

---

[12] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

potential objectors, should be privy to [Kukorinis's withdrawn objections]—even if they have since been withdrawn—to ensure that the Fairness Hearing is indeed fair." [ECF No. 60].

Finally, to the extent that Huang otherwise objects to certification of the Class or the sufficiency of the Notice program, those Objections are overruled based on the foregoing analysis.

Mr. Huang has also filed an Unopposed Motion for Objector Award based on his assertion that he dissuaded Class Counsel from seeking a Service Award for Lead Plaintiff based on the Eleventh Circuit's recent holding in *Johnson*, 975 F.3d at 1252–53, [ECF No. 69]. The Court questions why *Johnson*'s holding would not similarly apply to a request for an Objector Award; however, in light of the lack of opposition, the nominal amount requested, and the fact that there is no Eleventh Circuit precedent directly on point, the Court will permit the $1.00 award. *See also* Fed. R. Civ. P. 23(e)(5)(B) advisory committee note to 2018 amendment ("Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h).").

### 5. **<u>Adequacy of Representation</u>**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby appoints Lead Plaintiff as Class Representative for the Settlement Class and appoints Lead Counsel John A. Yanchunis and Ryan J. McGee of Morgan & Morgan as Class Counsel for the Settlement Class.  Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement. Lead Counsel have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

6. **Releases**

      In consideration of the Class Settlement amount provided under the Settlement Agreement, and for other good and valuable consideration, each of the Releasing Settlement Class Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against Walmart in accordance with Section 13 of the Settlement Agreement, the terms of which section are incorporated herein by reference, shall have covenanted not to sue Walmart with respect to all such Settlement Class Members Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Settlement Class Member Released Claims against Walmart.

7. **Retention of Jurisdiction**

      Without affecting the finality of this Order in any way, this Court retains continuing and exclusive jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Class Settlement Amount, and the Attorneys' Fees and Litigation Costs Amount, which shall be set forth by separate order of the Court; (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and the Settlement, and the administration of Claims submitted by Settlement Class Members.

      In the event that the Settlement Effective Date does not occur, this Order shall be rendered null and void and shall be vacated, nunc pro tunc, except insofar as expressly provided to the contrary in the Settlement Agreement or at the direction of any appellate court of competent jurisdiction, and without prejudice to the status quo ante rights of Plaintiff, the Settlement Class Members, and Walmart.

**8.  Entry of Final Order**

Final Judgment shall be entered by separate order by the Court pursuant to Federal Rule of Civil Procedure 58.

**V.  Conclusion**

For the foregoing reasons, the Court finds Settlement Agreement to be fair, reasonable, and adequate, and accordingly, grants final approval. As such, and after careful consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85], is **GRANTED IN PART** as set forth herein. Any portions of the Motion regarding attorneys' fees and costs shall be ruled upon by separate order of the Court.

2.  The Settlement Agreement, [ECF No. 41-1], is hereby **FINALLY APPROVED** as fair, reasonable, and adequate, for the exclusive benefit of the Settlement Class Members. The parties are **DIRECTED** to consummate the Settlement Agreement in accordance with its terms.

3.  The planned distribution of the Class Settlement is hereby **APPROVED**. The Class Settlement amount shall be distributed in accordance with the terms of the Settlement Agreement, this Order, and the Court's subsequent Order on attorneys' fees and costs.

4.  Objector Shiyan Huang's various Objections, [ECF Nos. 64–68, 70, 78, 89, 95], insofar as they object to final approval of the Settlement Agreement, Class Notice, or the certifiability of the Class, are **OVERRULED.**

5.  Mr. Huang's Unopposed Motion for an Objector Award of $1.00, [ECF No. 69], is **GRANTED** and shall be awarded from any attorneys' fees and costs approved by the Court by separate order.

6.      As set forth above, the Court will enter Final Judgment dismissing this Action with prejudice in a separate document and direct the Clerk of Court to close this case pursuant to Federal Rule of Civil Procedure 58.

DONE AND ORDERED in Chambers at Miami, Florida this 20th day of September 2021.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Otazo-Reyes