IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 19-20592-CV-MARTINEZ-OTAZO-REYES**

VASSILIOS KUKORINIS, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

WALMART, INC., a Delaware corporation,

      Defendant.

_____/

## ORDER ON ATTORNEYS' FEES AND COSTS

THIS CAUSE is before the Court upon Plaintiff's initial Motion for Approval of Attorneys' Fees, Costs, and Expenses, and Supporting Memorandum of Law, [ECF No. 56], Plaintiff's Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85], and Objector Shiyan Huang's various Objections addressing Class Counsel's fee request, [ECF Nos. 64–70, 78, 89, 95].

In a previous Order, the Court granted final approval of the Settlement in this class action, the facts and procedural history of which are extensively laid out therein. As such, the Court presumes the parties are familiar with the details of this case and will not repeat them here. Nonetheless, as set forth in the Court's Final Approval Order, the Court specifically reserved ruling on Class Counsel's pending request for attorneys' fees, costs, and litigation expenses. The Court addresses this request herein.

## I.      __Background__

As Lead Counsel is aware, size matters—here, the size of the Qualified Settlement Fund from which Counsel seeks an award of attorneys' fees and costs. Based on the facts of this case, however, Counsel will not be bringing home as much bacon as it had hoped.

This class action involves an alleged deceptive pricing practice in which Walmart would systematically mislabel certain perishable Weighted Goods, such as beef, poultry, and pork. The Court-approved Settlement Agreement provides for a Qualified Settlement Fund ("Fund" or "QSF"), to which Walmart has agreed to fund, on a claims-made basis, a minimum Floor amount of $4,500,000.00 up to a maximum Ceiling amount of $9,500,000.00. [ECF No. 41-1 ¶ 6.1]. The Fund will be used to pay for reimbursement to eligible Class Members, notice and administration costs, attorneys' fees, costs, and expenses, and litigation expenses. The Settlement Fund is to be distributed as follows:

a) Undocumented Overpayments, where the Class Member does not have receipts, proof of purchase, or other documentation, but attests to purchasing the Weighted Goods on sale during the Class Period, are entitled to $1.67 per purchase, capped at six (6) purchases—i.e., $10.00;

b) Overpayments where the Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, but lacks proof to substantiate the actual amount overcharged, are entitled to $1.67 per purchase, capped at twenty-four (24) purchases—i.e., $40.00; and

c) Overpayments where the Class Member has receipts or other proof of purchases to substantiate the number of Weighted Goods purchased, and has packaging to demonstrate the actual amount overcharged, are entitled to recover the actual amount of the Overpayments, without any cap.

[*See* ECF No. 41-1 ¶¶ 6.3–6.3.1.3].

On October 14, 2020, Plaintiff filed its initial Motion for Approval of Attorneys' Fees, Costs, and Expenses, [ECF No. 56], requesting $2,375,000.00 in attorneys' fees—or approximately twenty-five percent (25%) of the Qualified Settlement Fund's Ceiling of

$9,500,000.00. Both the Objections and Opt-Out deadline were set for November 4, 2020. [ECF No. 42 at 9].

On February 5, 2021, Plaintiff filed an Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85]. Pursuant to the Amended Motion, Class Counsel amended their request for attorneys' fees to $1,125,000.00—or twenty-five percent (25%) of the Settlement Fund's Floor. Counsel also requests Litigation Costs in the amount of $61,961.33. Based on the Eleventh Circuit's recent ruling in *Johnson v. NPAS Solutions, LLC*, Plaintiff did not seek a service award for Mr. Kukorinis. *See* 975 F.3d 1244 (11th Cir. 2020).

Only two Objections have been filed—one by Mr. Steven Helfand that has since been withdrawn, and one by Mr. Shiyan Huang. The Court previously overruled the Objections with respect to the reasonableness of the Settlement Agreement, the Notice Program, and the certifiability of the Class. [ECF No. 97].

## II.   Discussion

Federal Rule of Civil Procedure 23(h) states that a "court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). It is well-established that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (same). "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). This "common

3

benefit" doctrine is equally applicable to claims-made settlements. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015); *see also Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *18 (S.D. Fla. July 13, 2021). "For that reason, in the Eleventh Circuit, class counsel is awarded a percentage of the funds made available through a settlement, not the amount of funds actually paid out." *Ferron*, 2021 WL 2940240, at *18.[1]

The Court has discretion in determining an appropriate fee percentage with respect to a common fund. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). The Eleventh Circuit has found that a majority of common fund fee awards will fall between 20% and 30% of the fund, with a 25% fee award serving as a "benchmark." *Camden I*, 946 F.2d at 774–75.

The Eleventh Circuit considers several factors when evaluating whether an attorneys' fees award is reasonable: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the client; and (12) fee awards in similar cases. *Id.* at 772 n.3.

These twelve factors are nonexclusive guidelines. *See Sunbeam*, 176 F. Supp. 2d at 1333 ("Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or fees requested

---

[1] For this reason, Huang's Objection that Class Counsel's fee must be reduced to lodestar or based on actual funds paid out is overruled. Indeed, Walmart is required to pay $4,500,000.00 at a minimum.

by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."). Indeed, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

After carefully considering the foregoing factors, as well as the facts and circumstances of this case, the Court finds, in its discretion, that a downward variance to 20% of the Qualified Settlement Fund's Floor of $4,500,000.00 is a reasonable and appropriate attorneys' fee award.

Many of the *Camden I* factors[2] weigh in favor of granting Class Counsel's fee request. To be sure, the economies of class action litigation lend toward meeting these factors as a matter of practice. Of course, class actions require additional obstacles not present in typical civil cases, including certification of the class, approval of any potential settlement, and strong opposition from defense derivative of the potential liability that stems from facing nationwide class litigation. Similarly, class counsel often face added risks where, such as a case like this, their fee is contingent upon approval by the Court. Indeed, the Court does not deny or question the expertise of Mr. Yanchunis, who has extensive experience in complex class action litigation, or of Mr. McGee and other attorneys and staff at Class Counsel's firm. [*See* ECF No. 56-1].

Nonetheless, the Court acts as a fiduciary in protection of the interests of the absent class members. *See, e.g.*, *Sikes v. Am. Tel. and Tel. Co.*, 841 F. Supp. 1572, 1578 (S.D. Ga. 1993) ("Settlements and compromises in class actions thus require the courts to fill a supervisory or fiduciary role to ensure that absent class members are not 'sold out'… in settlement negotiations.") (cleaned up). As such, the Court's deviation from the request is two-fold.

---

[2] Specifically, factors (3)–(7) and (9)–(12) weigh in favor of a substantial fee request.

First, as discussed in the Court's Final Approval Order, [ECF No. 97], the Court takes issue with the inclusion of the third tier of claimants under the Settlement Agreement, who are entitled to recover any actual amount overpaid, without any cap to the number of claims they may make, so long as the claimant can provide both proof of purchase and the Weighted Goods' original packaging to demonstrate the actual amount overcharged. [ECF No. 41-1 ¶ 6.3.1.3]. The Court reiterates its finding that this benefit to the class is illusory given the unlikelihood that a consumer would hold on to—or even document—the packaging of already-expiring perishable goods over the course of five years. [ECF No. 97 at 15–16]. Because the Settlement Agreement provides a pro rata increase to Class Members where the aggregate total of approved claims—and attorneys' fees and costs—does not reach $4,500,000, the Court nonetheless approved the Settlement as reasonable despite these problematic requirements. [*Id.*]

The issue, however, is that, in the Court's view, this group of claimants was potentially added to create the specter of a heightened benefit conferred upon the Class to bolster a request for attorneys' fees and costs.[3] Indeed, this finding is supported by the somewhat-problematic procedural history of Class Counsel's previous requests for fees.

While Class Counsel understandably frames its amended fee request as an attempt to confer an added benefit to the Class, that frame is rose-colored. [*See* ECF No. 85 at 20]. In reality, Class Counsel's initial request of 25% of the Fund's Ceiling of $9,500,000 was patently unreasonable. Indeed, it would have amounted to approximately 53% of the Fund's Floor—a percentage largely beyond what is permitted not only in this Circuit but in almost any class action. *See Camden I*, 946 F.2d at 774–75 (stating an "upper limit of 50% of the fund may be stated as a general rule").

---

[3] Furthermore, Counsel makes a vague reference to non-monetary benefits conferred upon the Class by way of "certain business practice commitments and remedial measures"; however, this does not appear to be a part of the Settlement Agreement and will not be considered. [ECF No. 41-2 at 10].

After receiving Objections, Plaintiff then had to file not one, but two,[4] amended requests for attorneys' fees—both after the Objections and Opt-Out deadline of November 4, 2020. *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1252–53 (11th Cir. 2020) (finding error where the district court ordered objections to be due before counsel's motion for fees and costs). While the Court has found this harmless in light of the reduction of the request, it nonetheless has created legal issues where they otherwise would not exist.

Indeed, much of the complexity of this case was self-afflicted. This finding serves as the Court's second basis for reducing the attorneys' fee award. Without undermining the time spent behind the scenes and in mediation, even a facial review of the docket reveals that much of the litigation occurred after the filing of the Kukorinis Declaration, [ECF No. 43].  The Court does not think Counsel should be rewarded for time spent on issues it—or the Named Plaintiff—created.[5] Besides the filing of the Motions to Dismiss, one of which was denied as moot as a matter of course, this case moved relatively quickly to settlement. Indeed, the issues in this case were not so complex as to require more than the average skill required of litigation in federal court. *See Drazen v. GoDaddy.com, LLC*, No. 1:19-00563-KD-B, 2020 WL 4606979, at *3 (S.D. Ala. Aug. 11, 2020).

Furthermore, the Plaintiff's proposed lodestar cross-check does not meaningfully assist the Court in its analysis. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *see also In re Home Depot Inc.*, 931

---

[4] The second amended attorneys' fee request was submitted—again, after contact from an Objector—because of the "double-counting" of litigation costs in the first amended fee request, [ECF No. 84].

[5] This includes litigating the issues stemming from the Kukorinis Declaration, and responding to Objections or otherwise having to amend the Attorneys' Fee requests based on errors of counsel or patent unreasonableness.

F.3d 1065, 1091 (11th Cir. 2019) ("Courts often use a cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee."); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlement and Their Fee Awards*, 7 J. OF EMPIRICAL LEGAL STUD. 811, 833 (2010) ("Fitzpatrick Article") (observing that in 49% of the 444 settlements studied "district courts said they considered the lodestar calculation as a factor in assessing the reasonableness of the fee percentages awarded").

In the Yanchunis Declaration submitted in support of the initial Motion for Attorneys' Fees, [ECF No. 56-1], Class Counsel submitted billing records indicating that the firm has expended approximately 595 hours[6] litigating this matter to settlement for a total of $397,128.00.[7] First, these billing records—a chart—are not substantiated by any supporting documentation. Indeed, for four out of five of what the Court presumes are attorneys that assisted in this case, the chart does not include any information about what position they hold, or whether they are a partner or associate, making it difficult to assess the reasonableness of their hourly rates. *See Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *7 (N.D. Ala. June 9, 2020) (discussing Mr. Yanchunis's hourly rates). Accepting the $396,799.00 "lodestar" at face value, the fee sought by Class Counsel—25% of the $4,500,000 Floor, or $1,125,000—would result in a multiplier of approximately 2.835. Where courts have used the lodestar as a cross check on the reasonableness of the fee percentages award, the lodestar multiplier "ranged from 0.07 to 10.3 *with a mean of 1.65 and a median of 1.34.*" *See* Fitzpatrick, *supra*, at 833–34 (emphasis added).

To bolster its request, Counsel also contends that it would likely need to continue to invest approximately 675 hours, at a blended rate of $650 per hour, to litigate this matter "through the

---

[6] After computing the hours billed in the attached chart, the hours actually amount to 594.5.

[7] Again, the actual computation based on the chart amounts to $396,799.00.

settlement administration process, to respond to objections, to prepare for and attend the final hearing to obtain final approval, and to defend the Court's Final Judgment on any subsequent appeals." [ECF No. 56 at 17]. Thus, Class Counsel includes an additional $438,750.00 in attorneys' fees in its lodestar computation, bringing the total to approximately $835,549.00. [ECF No. 56-1 at 8–9]. Based on this number, a 25% award of the Floor would result in a multiplier of approximately 1.346. Nonetheless, even though Counsel has since filed two amended fee requests, no update to this hypothetical figure has been provided. Likewise, Counsel does not cite to any authority that time spent on a hypothetical appeal should be included in the Court's lodestar cross-check analysis; therefore, the Court will not consider the 400 additional hours included in the proposed lodestar. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Accordingly, based on the initial lodestar value of $396,799.00, plus an additional 275 hours at a blended $650 hourly rate, the final lodestar that could be considered by the Court as a cross-check—if potential future hours could be considered at all—amounts to $575,549.00. Based on this number, a reasonable 20% award of the Floor—or $900,000—results in a multiplier of approximately 1.564, which is within the average. *See* Fitzpatrick, *supra*, at 833–34. To be clear, the Court "is mindful of the fact that this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *Sunbeam*, 176 F. Supp. 2d at 1336. Rather, the Court utilizes the cross-check as a way to further explain its finding that a 20% award is reasonable under the circumstances of this case.[8]

---

[8] The Court further notes that were it to conduct a full lodestar analysis, it would likely be necessary to reduce hours claimed as the billing records. The Court has not done so, nor has the Court conducted any assessment of the reasonableness of Class Counsel's hourly rates—namely, because Counsel's filings did not permit as much. Engaging in such an exercise would only demonstrate that the multiplier resulting from a 20% award is likely higher than 1.564. Because the Court is convinced that 20% of the Qualified Settlement Fund is a fair and reasonable award in this action and does not find it appropriate under the circumstances to reduce Class Counsel's award below any benchmark range applicable in common fund

In sum, while the motions to dismiss were well-litigated, and the Court looks favorably upon the early resolution of a class action, the Court holds that a 20% attorneys' fee award more accurately reflects the benefit conferred upon the Class and the time and labor spent litigating this action. Furthermore, a 20% fee award provides an added benefit in the form of a pro rata increase for claimants. The reduction provides approximately $225,000 to the QSF to be distributed to Class Members pursuant to the Settlement Agreement.

### III.    Conclusion

Accordingly, after careful analysis of the foregoing factors and the circumstances of this case, it is hereby **ORDERED AND ADJUDGED** that

1.      Plaintiff's initial Motion for Approval of Attorneys' Fees, Costs, and Expenses, and Supporting Memorandum of Law, [ECF No. 56], is **DENIED AS MOOT** in light of the Amended Motion, [ECF No. 85].

2.      Plaintiff's Amended Motion for Final Approval, Amended Attorneys' Fee Request, Responses to Objections, and Incorporated Memorandum of Law, [ECF No. 85], is **GRANTED IN PART.**

3.      The Court **APPROVES** and **AWARDS** payment of Attorneys' Fees to Class Counsel in the amount of $900,000.00, and Litigation Costs in the amount of $61,961.33 in accordance with the terms of the Settlement Agreement. The Court further finds that no attorneys have asserted any attorney liens as to the Attorneys' Fees, Costs, and Expenses or other costs awarded by the Court.

4.      Objector Shiyan Huang's various Objections addressing Class Counsel's fee request, [ECF Nos. 64–70, 78, 89, 95], are **OVERRULED.** As stated herein, the lodestar approach is inappropriate in claims-made settlements. *See Ferron*, 2021 WL 2940240, at *18. Furthermore,

---

cases, the Court finds it unnecessary to engage in any further lodestar analysis to the extent it is even possible.

the Court has already overruled Huang's contention that Class Counsel's fee request renders them inadequate to represent the Class. All other Objections are likewise overruled.

5.     Final Judgment will be entered by separate order pursuant to Federal Rule of Civil Procedure 58.

DONE AND ORDERED in Chambers at Miami, Florida this 21st day of September 2021.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Otazo-Reyes